/

United States District Court
Southern District of Texas
FILED

SEP 3 0 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA §
§
V. § Criminal No. B-98-124-01
§
DORA CISNERNOS §

B-02-191

**MOTION TO VACATE, SET ASIDE, AND CORRECT JUDGMENT & SENTENCE**
**<u>PURSUANT TO 28 U.S.C. § 2255</u>**

DAVID L. BOTSFORD
State Bar No. 02687950
1307 West Avenue
Austin, Texas 78701
512-479-8030: Telephone
512-479-8040: Fax

A.J. "TONY" CANALES
State Bar No. 03737000
P.O. Box 5624
Corpus Christi, Texas 78465-5624
361-883-0601: Telephone
361-884-7023: Fax

Counsel for **DORA CISNEROS**

## TABLE OF CONTENTS


TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . i

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . 1

CUSTODY . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

HISTORY OF PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . .

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . .

CLAIMS FOR RELIEF

**CLAIM FOR RELIEF NO. 1**

CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS THE LEGAL SUFFICIENCY OF THE EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . 20

**CLAIM FOR RELIEF NO. 2**

CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS WHETHER THE ALLEGED JURISDICTIONAL NEXUS (I.E., GARZA'S ALLEGED CALLS FROM MEXICO OR THE CAR CROSSING) HAD A SUFFICIENT RELATIONSHIP TO THE ALLEGED MURDER FOR HIRE SCHEME TO SATISFY THE JURISDICTIONAL ELEMENT . . . . . . . . . . . . . . . . . . . . . . . . 20

**CLAIM FOR RELIEF NO. 3**

CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS THE DENIAL OF CISNEROS' REQUESTED JURY INSTRUCTION ON THE JURISDICTIONAL NEXUS (I.E., GARZA'S ALLEGED CALLS FROM MEXICO OR THE CAR CROSSING) . . . . . 20

**CLAIM FOR RELIEF NO. 4**

CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS THE DENIAL OF CISNEROS' REQUESTED INSTRUCTION ON "CAUSATION" . . . . . . . . . . . . . . . . 20

**CLAIM FOR RELIEF NO. 5**

CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS THE DENIAL OF CISNEROS' REQUESTED INSTRUCTION ON THE STATUTE OF LIMITATIONS . . . . . . . . 20

1. THE JURISDICTIONAL NEXUS, SUFFICIENCY, AND CAUSATION . . . . . . . . . . . . . . . . . . . . . . 24

a. The Second Vacated Panel Opinion decided an important federal question in a way that not only was "dead wrong", but which clearly conflicted with relevant decisions of the Supreme Court by reducing the interstate commerce nexus to a but-for causation requirement . . . . . . . . 25

b. The Second Vacated Panel Opinion clearly conflicts with the decisions of other United States courts of appeals by rejecting the need to find whether the defendant intentionally or knowingly caused the travel or use of an interstate facility . . . . . . . . . . . . . . . . . . . . 26

2. THE JURISDICTIONAL NEXUS, SUFFICIENCY, AND "FURTHERANCE." . . . . . . . . . . . . . . . . . . . . 28

a. The Second Vacated Panel Opinion decided an important federal question in a way that conflicts with relevant decisions of the Supreme Court by making a distinction between "facilitation" and "furtherance." . . . . . . . . . . . . . . . . . 30

b. The Second Vacated Panel Opinion expressly conflicts with the decisions of other courts of appeals on the question whether the use of the facility in interstate commerce must be "in furtherance" of the underlying murder scheme . . . . . . . . . . . . . . . . . . . . . . . 31

3. THE JURISDICTIONAL NEXUS, SUFFICIENCY, AND HAPPENSTANCE . . . . . . . . . . . . . . . . . . . . . 32

a. The Second Vacated Panel Opinion decides an important federal question in conflict with relevant decisions of the Supreme Court by holding that alleged use of a foreign facility of commerce by happenstance may establish a nexus for the alleged murder-for-hire scheme . . . . . . 33

b. The Second Vacated Panel Opinion conflicts with decisions of other courts of appeals by holding that alleged use of a foreign facility of commerce through

happenstance may establish a nexus for the alleged murder-for-hire scheme . . . . . . . 34

4. THE JURISDICTIONAL NEXUS, SUFFICIENCY, AND PROOF OF ELEMENTS WITHIN THE STATUTE OF LIMITATIONS PERIOD . . . . . . . . . . . . . . . . 35

a. The Second Vacated Panel Opinion was "dead wrong" when it found murder-for-hire to be a continuing offense in order to avoid the government's failure to prove all of the elements of the offense within the statute of limitations period . . . . . . . . . . . . . . . . . . . . 35

b. The Second Vacated Panel Opinion conflicts with decisions by other United States Courts of Appeals by finding murder-for-hire to be a continuing offense in order to avoid the government's failure to prove all of the elements of the offense within the statute of limitations period . . . . . . . . . 37

CONCLUSION . . . . . . . . . . . . . . . . . . . . . 40

**CLAIM FOR RELIEF NO. 6**

CISNEROS WAS DENIED HER FIFTH AND SIXTH AMENDMENT RIGHTS TO DUE PROCESS, TO A JURY TRIAL AND TO A RELIABLE JURY VERDICT BECAUSE THE JURY WAS NOT INSTRUCTED (OR, IF INSTRUCTED IN THE LEGAL SENSE, NOT ADEQUATELY INSTRUCTED) ON "CAUSATION" *AND* WHETHER THE FOREIGN COMMERCE HAD TO "FACILITATE" OR "BE IN FURTHERANCE" OF THE ALLEGED MURDER FOR HIRE SCHEME, TWO ESSENTIAL COMPONENTS OF THE FIRST ELEMENT OF THE OFFENSE . . . . . . . . . . . . . . . . . . 43

ASSERTION . . . . . . . . . . . . . . . . . . . . . 43

LAW . . . . . . . . . . . . . . . . . . . . . . . . 43

FACTS . . . . . . . . . . . . . . . . . . . . . . . 43

A. Facts Relating To Causation . . . . . . . . 44

B. Facts Relating To The Relationship Between The Foreign Commerce And The Alleged Murder For Hire Scheme . . . . . . . . . . . . . . . . . . 54

CONCLUSION . . . . . . . . . . . . . . . . . . . . . 71

**CLAIM FOR RELIEF NO. 7**

CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, BY VIRTUE OF THE PROSECUTION'S NON-DISCLOSURE OF THE SEQUENCE OF EVENTS SURROUNDING DANIEL GARZA'S GROSS MODIFICATION OF HIS STORY (AS REFLECTED BY COMPARING HIS STATEMENTS TO THE FBI ON FEBRUARY 5 AND 18, 1998, TO HIS TESTIMONY ON MAY 11, 1998, AT CISNEROS' TRIAL) . . . . . . . . . . . . . . . . . . . . . . . . 73

ASSERTION . . . . . . . . . . . . . . . . . . . . . 73

LAW . . . . . . . . . . . . . . . . . . . . . . . . 73

FACTS . . . . . . . . . . . . . . . . . . . . . . . 74

CONCLUSION . . . . . . . . . . . . . . . . . . . . 88

**CLAIM FOR RELIEF NO. 8**

CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, BY VIRTUE OF THE PROSECUTION'S USE OF FALSE TESTIMONY OF DANIEL GARZA AND THE CREATION OF A FALSE IMPRESSION FOR THE JURY UTILIZING THAT FALSE TESTIMONY . . . . . . . . . . . . . . . . . . . . . . . 91

ASSERTION . . . . . . . . . . . . . . . . . . . . . 91

LAW . . . . . . . . . . . . . . . . . . . . . . . . 91

FACTS . . . . . . . . . . . . . . . . . . . . . . . 92

CONCLUSION . . . . . . . . . . . . . . . . . . . . 93

**CLAIM FOR RELIEF NO. 9**

CISNEROS WAS DENIED HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, BY VIRTUE OF HER TRIAL COUNSELS' ACTS AND OMISSIONS . . . . . . . . . . . . 94

ASSERTION . . . . . . . . . . . . . . . . . . . . . 94

LAW . . . . . . . . . . . . . . . . . . . . . . . . 94

FACTS . . . . . . . . . . . . . . . . . . . . . . . 97

**FIRST ACT/OMISSION**: Trial counsel failed to object to the government's offer of transcripts of conversations between

Daniel Garza and Maria Martinez . . . . . . . . 97

**SECOND ACT/OMISSION**: Trial counsel failed to cross-examine Maria Martinez concerning the fact that she was aware that Daniel Garza had called her from Dallas and San Antonio, but had never been called by Daniel Garza from Mexico, as established by Martinez' prior testimony and her statement to FBI Agent Church on January 28, 1998, and/or develop the fact that Garza had previously told Martinez that he was calling her from Dallas and San Antonio, not Mexico . . . . . . . . . . . . . . . . . . . 102

**THIRD ACT/OMISSION**: Trial counsel failed to cross-examine Daniel Garza with his prior inconsistent statements, his lack of prior consistent statements and the contents of Martinez' prior testimony and statements . . . . . . . . . . . . . . . . . . 113

**FOURTH ACT/OMISSION**: Trial counsel failed to discover and utilize (either on cross-examination of Garza and/or on direct examination of FBI Agent David Church, or as otherwise appropriate) the sequence of events that led to the inclusion in the government's bill of particulars the allegation that Garza had allegedly called Martinez from San Fernando, Mexico, as well as the sequence of events that led to Garza's dramatic change in story from February 18, 1998, to his trial testimony on May 11, 1998 (i.e., change from collect telephone calls from Matamoros in time frame prior to murder for hire to telephone calls from casetas from San Fernando and Matamoros in a time frame arguably within the murder for hire time frame) . . . . . . . . . . . . . . . . . 123

**FIFTH ACT/OMISSION**: Trial counsel failed to adequately request a jury instruction that would have required the jury to find that the foreign commerce (i.e., Garza's alleged calls from Mexico to Martinez and the crossing of the vehicle) was sufficiently related to the murder for hire scheme before the jury could find the first element of the offense beyond a

reasonable doubt . . . . . . . . . . . . . . . . . . 128

**SIXTH ACT/OMISSION**: Trial counsel failed to adequately request a jury instruction that would have required the jury to find that the foreign commerce (i.e., Garza's alleged calls from Mexico to Martinez and the crossing of the vehicle) were actually caused by Cisneros and were more than "but for" or "foreseeable" causation before the jury could find the first element of the offense beyond a reasonable doubt . . . . . . . . . . . 137

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 143

**CLAIM FOR RELIEF NO. 10**

CISNEROS WAS DENIED HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, BY VIRTUE OF HER APPELLATE COUNSELS' ACTS AND OMISSIONS . . . . . . . . 145

ASSERTION . . . . . . . . . . . . . . . . . . . . . . . . 145

LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . 145

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 146

**FIRST ACT/OMISSION**: Appellate counsel failed to raise and/or adequately raise as an issue on appeal the District Court's improper overruling of Cisneros' objections to (a) the failure to instruct the jury that it had to find that the foreign commerce (i.e., Garza's alleged calls from Mexico to Martinez and the crossing of the vehicle) was sufficiently related to the murder for hire scheme before it could find the first element of the crime beyond a reasonable doubt **and** (b) the language of the foreign commerce definition that the District Court actually submitted to the jury . . . . . . . . . . . . . . . . . . . . 147

**SECOND ACT/OMISSION**: Appellate counsel failed to raise and/or adequately raise as an issue on

appeal the District Court's improper overruling of Cisneros' objections to the failure to instruct the jury that it had to find that the foreign commerce (i.e., Garza's alleged calls from Mexico to Martinez and the crossing of the vehicle) were actually caused by Cisneros . . . . . . . . . . 158

**THIRD ACT/OMISSION**: Appellate counsel failed to raise as an issue on appeal the District Court's improper overruling of Cisneros' motion to dismiss the indictment due to misconduct occurring before the grand jury . . . . . . . . . . . . . . . . . . . 166

A. RULE 6 VIOLATIONS, ABUSE OF THE GRAND JURY AND GRAND JURY SUBPOENA POWER . . . . . . . . . . . . . . 168

B. SPECIAL AGENT CHURCH'S TESTIMONY BEFORE THE HOUSTON GRAND JURY . . . . . . . . . . . . 173

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 188

FORMAL REQUEST FOR AN EVIDENTIARY HEARING AND THE ABILITY TO AMEND WITHIN A REASONABLE TIME . . . . . . . 189

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . 189

VERIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . 191

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . 192

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | Criminal No. B-98-124-01 |
| | § | |
| DORA CISNEROS | § | |

**MOTION TO VACATE, SET ASIDE, AND CORRECT JUDGMENT & SENTENCE PURSUANT TO 28 U.S.C. § 2255**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DORA CISNEROS (hereinafter referred to as Cisneros), by and through her counsel of record, David L. Botsford and A.J. "Tony" Canales, and presents this her Motion To Vacate, Set Aside And Correct Judgment & Sentence Pursuant To 28 U.S.C. § 2255, and as grounds therefore, would respectfully show this Honorable Court the following:

**I.**

**JURISDICTION**

Cisneros invokes the jurisdiction of this Court pursuant to **28 U.S.C. § 2255**.

**II.**

**CUSTODY**

Cisneros is a citizen of the United States and was a resident of the State of Texas prior to her incarceration in Cause No. B-98-124-01. She is presently incarcerated in a Federal Correctional Institution in the State of Florida by the Federal Bureau of Prisons pursuant to this Court's judgment and sentence. *See* **Exhibit**

**1.**[1] Cisneros asserts that she was denied a fair trial, is being held in custody in violation of federal law and the Constitution of the United States, and that her judgment and sentence were obtained and imposed in violation of federal law and the Constitution of the United States.

**III.**

**HISTORY OF PRIOR PROCEEDINGS**

On October 27, 1993, Cisneros was indicted in the 357th Judicial District Court, Cameron County, Texas, in Cause No. 93-CR-1515-E, for the capital murder of Albert "Joey" Fischer. Cisneros' Pretrial Exhibit 21 (hereinafter cited as Def.Pr.Ex.____).[2] The indictment also named Israel Olivares, Rafael Soto, Heriberto Pizana, Daniel Garza and Maria Martinez. Def.Pr.Ex.21. Cisneros and Garza were tried together and convicted, with Cisneros receiving a life sentence, Def.Pr.Ex.22; Def.Pr.Ex. 7-12, and Garza receiving a life sentence. 11R1354.[3] Cisneros appealed, Def.Pr.Ex.23, and on

---

[1] Cisneros has filed a separate document styled "Exhibits Tendered In Support Of Dora Cisneros' Motion To Vacate, Set Aside, And Correct Judgment & Sentence Pursuant To 28 U.S.C. § 2255" contempareneously with this motion which contains seventeen (17) exhibits. All references herein to "Exhibits" are to the numbered exhibits contained therein, unless the documents were introduced during the pretrial hearings held in this case, in which case they have been cited to as they were numbered for purposes of the pretrial hearings.

[2] In accordance with footnote 1, *supra*, documents introduced during the pretrial hearings in this case are identified by the number assigned at that time.

[3] References to the appellate record in Cisneros' appeal from her conviction in this federal case are by volume number, followed by the applicable page. Thus 11R1354 is volume 11 of the appellate record at page 1354.

January 25, 1996, the Texas appellate court reversed her conviction due to insufficient evidence. Def.Pr.Ex.24; *Cisneros v. State*, 915 S.W.2d 217 (Tex. App. - Corpus Christi 1996), *pdr ref'd*, 935 S.W.2d 789 (Tex. Crim. App. 1996). The Texas Court of Criminal Appeals denied the State's petition for discretionary review on November 13, 1996, with three judges dissenting. Def.Pr.Ex.25. The dissenters opined that Appellant could be retried despite the finding of insufficient evidence. Def.Pr.Ex.25. However, no further state prosecution has ever been attempted (either prior to or subsequent to the federal prosecution herein).

After discretionary review was denied, all of the evidence in the state trial was released to the Cameron County District Attorney's office. Def.Pr.Ex.27. On March 27, 1997, Oscar Ponce, Assistant District Attorney of Cameron County, released the state court evidence to FBI Agent Barry Ross. Def.Pr.Ex.27.

On February 23, 1998, Cisneros was indicted (along with one co-defendant, Ramon Palomares) for the offense of murder for hire, in violation of 18 U.S.C. § 1958. 1R577.[4] The indictment, returned by a federal grand jury sitting in Houston, was given Cause No. B-98-124-01 and assigned to this Court. The one count indictment alleged that:

> "From in or about September 1992 to on or about April 6, 1993, in the Southern District of Texas and elsewhere and within the jurisdiction of the Court, the Defendants DORA GARCIA CISNEROS and RAMON PALOMARES did cause another to travel in foreign commerce and cause another to use a

[4] The co-defendant, Palomares, was never apprehended prior to Cisneros' federal trial. Cisneros is not aware whether he was subsequently apprehended and prosecuted.

> facility in foreign commerce, namely telephone communications facilities, with the intent that the murder of Albert Joseph (Joey) Fischer, Jr. be committed in violation of the laws of the State of Texas as consideration for a promise and agreement to pay, and the receipt of, $3,000 in United States currency. In violation of Title 18, United States Code, Section 1958 and Section 2."

The government's bill of particulars (filed voluntarily in response to Cisneros' motion for bill of particulars, but prior to the District Court's ruling on Cisneros' motion for bill of particulars) stated that:

> "The evidence in this case will show that, in regards to foreign travel, that Heriberto Pizana and/or other persons unknown travelled from Mexico to Brownsville, Texas, via an international bridge on or about March 2, 1993."
>
> * * *
>
> "The evidence in this case will show, in regards to use of telephone communications facilities in foreign commerce, that Daniel Garza used telephone facilities in San Fernando, Tamaulipas, Mexico, and in Matamoros, Tamaulipas, Mexico, to call Maria Martinez in Brownsville, Texas, from in or about November 1992 to in or about February 1993."

Accordingly, the indictment and bill of particulars only reflect two **possible** evidentiary bases to **potentially** sustain federal jurisdiction: (1) phone calls made from Mexico to Brownsville from Daniel Garza to Maria Martinez, Garza's "curandera" (i.e., the alleged go-between between Garza and Cisneros); and (2) entry by an automobile from Matamoros, Mexico, to Brownsville, Texas, on the evening of March 2, 1993. These two potential evidentiary bases were both based on alleged foreign commerce, and for purposes of this motion, they will be referred to as the two potential foreign commerce bases or prongs of element 1

of 18 U.S.C. § 1958 (or similar language depicting them in a shorthand version).

Trial counsel[5] filed numerous pretrial motions (some of which are addressed in various claims for relief below). Pretrial hearings were held in Brownsville on April 27, 1998. 4R1-59.[6] An additional pretrial motion -- filed on April 29, 1999 -- was addressed that same day and denied.5R2-7.[7]

Jury selection began in McAllen on April 29, 1998, but the Court dismissed the panel and transferred the case to Houston. 5R2-30. Thereafter, on May 4, 1998, jury selection was held in Houston. 6R1 *et. seq*. Trial occurred between May 4, 1998, and May 12, 1998.

Despite an order of the trial court, Assistant U.S. Attorney Oscar Ponce (the same Oscar Ponce who had tried Cisneros in state

---

[5] Trial counsel for Cisneros were Mr. Tony Canales, Ms. Jo Ellen Hewitt (a member of Mr. Canales' law firm), and Mr. David Botsford. Appellate counsel also consisted of the same threesome. Counsel for Cisneros in this Section 2255 motion have prepared and filed this motion due to the complexities of the situation. Obviously, in the event that the Court determines that they need to be witnesses at a federal evidentiary hearing, Cisneros will have to obtain other counsel so that they can testify.

[6] The District Court overruled Cisneros' motion to dismiss due to double jeopardy, a claim based upon her prosecution and ultimate acquittal in state court for the capital murder of Joey Fischer. *See Cisneros v. State, supra*; 1R379-385;394-398 (motions); 4R15-21 (hearing); Def.Pr.Ex.1-28. One of the Assistant U.S. Attorneys who tried this case, Mr. Oscar Ponce, had prosecuted Cisneros in state court. 4R19-21; Defendant's Pretrial Exhibits 7-12, 22, 27.

[7] As a result of the pretrial hearing held on April 27, 1998, Cisneros filed a "Motion To Dismiss The Indictment Due To Violations Of Rule 6, F.R.C.P., And The Submission Of Grossly Inaccurate And Misleading Testimony And Information To The Grand Jury Which Returned The Indictment And Brief In Support" early on the morning of April 29, 1998. This motion was overruled that same day, as indicated above in the text.

court) interjected on more than one occasion the fact that Cisneros had been charged, tried and/or convicted in state court.[8] At the close of the government's jury argument, Assistant United States Attorney Mosbacker told the jury that what the government was asking for "..is for a wrong to be right...." 12R1590.

On May 12, 1998, Cisneros was convicted. 6R1-12R1616. On July 27, 1998, Cisneros was sentenced to life incarceration. 13R7. Notice of appeal was timely filed, 2R131, and Cisneros filed her opening brief, followed by the government's response brief, followed by Cisneros' reply brief.

After oral argument,[9] the Fifth Circuit panel issued an

---

[8] During a break in jury selection, Cisneros' trial counsel requested the District Court to instruct everyone not to make a reference to the fact that Cisneros had been tried and convicted in state court of the capital murder of Fischer. This was put on to the record at 7R493, at which time the District Court affirmed that all counsel had been so instructed and that the record should reflect that instruction if in fact it did not already so reflect. 7R493.

However, at several occasions throughout the trial, the government elicited testimony that Cisneros, Garza and Martinez had been indicted and convicted on state capital murder charges relating to Fischer's death. First, while examining Brownsville Detective Abel Perez, the government twice elicited testimony that Garza, Martinez and Cisneros had been charged with capital murder. 7R384, 7R490-92. Appellant timely objected to this testimony, and the court overruled the objections. 7R384, 7R490-92.

On another occasion, while examining Daniel Garza the Government elicited testimony that Garza had been convicted of capital murder in State court. 11R1354.

This issue was unsuccessfully raised in Cisneros' motion for new trial, 2R48 at 50, as well as on appeal. *See* **ISSUE NO. 2** in Cisneros' appellate brief.

[9] After oral argument was presented in this case, the government filed a supplemental brief addressing Cisneros' assertion that the District Court abused its discretion by denying

opinion on October 28, 1999. *See United States v. Cisneros*, 194 F.3d 626 (5th Cir. 1999). A motion for panel rehearing and a suggestion for rehearing en banc were timely filed by Cisneros.

On February 3, 2000, the original panel opinion of October 28, 1999, was vacated and a new panel opinion issued. *See United States v. Cisneros*, 203 F.3d 333 (5th Cir. 2000). Again, a motion for panel rehearing and a suggestion for rehearing en banc were timely filed by Cisneros.

Without ruling on Cisneros' motions for panel rehearing and her suggestion for rehearing en banc, the Fifth Circuit granted en banc review (on its own) in Cisneros' case, along with *United States v. Marek*, 198 F.3d 532 (5th Cir. 2000). Thus, the panel's second opinion was also vacated. *United States v. Cisneros*, 206 F.3d 448 (5th Cir. 2000). The Fifth Circuit, on its own motion, granted Cisneros leave to file a supplemental en banc brief, which was timely filed. *Id.* By consolidating Cisneros' case with *Marek*, the en banc Court indicated a concern with a conflict of interpretation that had developed between the panel opinions in *Marek* and the second panel opinion in *Cisneros* over whether, in order to satisfy the jurisdictional element of 18 U.S.C. § 1958, a "facility" must be used in an *inter*-state fashion. The Fifth Circuit subsequently noted that this issue was only dicta in the

her requested instruction on limitations. Subsequently, Cisneros filed with the Fifth Circuit her "Motion For Leave To File Reply To Government's Supplemental Brief: Limitations Instruction", which essentially was a reply brief addressing the government's supplemental, post oral argument brief. The Fifth Circuit granted Cisneros leave to file this supplemental brief.

second *Cisneros* panel opinion. *See United States v. Marek*, 238 F.3d 310, 313 (5th Cir. 2001). In light of the vacatur of the panel opinions, Cisneros sought to preserve her statutory rights to appellate and certiorari review by re-briefing the issues that she pressed throughout her appeal.[10]

On January 4, 2001, the Fifth Circuit issued its en banc opinion. *United States v. Marek*, 238 F.3d 310 (5th Cir. 2001). The opinion addressed only the issue of conflict between *Marek* and the second, vacated panel opinion in *Cisneros*, and did nothing to restore those parts of any of the prior opinions in *Cisneros* that related to the issues that she actually had raised and repeatedly had sought to preserve for appellate review. The en banc Court also **radically altered and totally distorted** the facts of Cisneros' case in a manner at odds with the record, the Government's opening statement and both panel opinions (as more fully explained below).

On January 15, 2001, Cisneros timely filed a motion for rehearing from the en banc opinion on the grounds that: (1) the en banc opinion reflected totally novel "uncontroverted facts" that were materially incorrect and contrary to the evidence presented by the Government during its case-in-chief; and (2) the en banc Court only addressed one of the numerous issues on appeal, an issue in fact created by the Court's grant of en banc review, and thus denied Cisneros her right to appellate review of her issues and substantially impaired and impeded her ability to seek certiorari

---

[10] These issues were identical to what was subsequently presented to the Supreme Court via a petition for writ of certiorari.

to the Supreme Court. Cisneros urged the Fifth Circuit to grant rehearing en banc for factual correction and, then, either to address (en banc or panel) the issues in her supplemental en banc brief, or to reinstate those parts of the vacated second panel opinion that were not addressed in the en banc opinion, so that she might retain her right to a full, fair and meaningful appeal. Rehearing was denied without written opinion and the second, vacated panel opinion was not reinstated.

A timely filed petition for writ of certiorari was filed, but on October 1, 2001, the Supreme Court denied certiorari. *Cisneros v. United States*, ___U.S.___, 122 S.Ct. 37, 151 L.Ed.2d 11 (2001).

This is Cisneros' first motion for relief under 28 U.S.C. § 2255. The one year statute of limitations applicable to cases filed under 28 U.S.C. § 2255 has been met because Cisneros' conviction became final on October 1, 2001, when the Supreme Court denied certiorari. The 365th day (i.e., end of the one year period) is October 1, 2002.

IV.

**STATEMENT OF THE CASE**

As noted above, the indictment and bill of particulars only reflect two evidentiary bases to potentially sustain federal jurisdiction: (1) phone calls made by Daniel Garza from Mexico to Maria Martinez, Garza's "curandera" (i.e., the alleged go-between between Garza and Cisneros) in Brownsville between November 1992 and February 1993[11]; and (2) entry by an automobile from Matamoros, Mexico, to Brownsville, Texas, on March 2, 1993 (i.e., car crossing).[12]

The first and second panel opinions addressed the foreign telephone calls, mentioned the vehicle crossing, but avoided resolution of the car crossing as a "more complicated issue." *See United States v. Cisneros*, 194 F.3d 626 at 637 and *United States v. Cisneros*, 203 F.3d 333 at 345.[13]

---

[11] The government conceded in its post oral argument brief on limitations at page 4 that all four of these alleged calls had occurred prior to February 14, 1993, more than five years before the return of the indictment.

[12] As reflected by the record, this license plate number had "crossed" the border (on unidentified vehicle or vehicles) eighteen (18) times between August 1992 and March 1993. 10R1256, Govt.Ex. 49. That same license plate might have "crossed" the border an additional eight (8) times during the same time frame if the Customs official had written down MM as opposed to TA as the prefix. 10R1257-1258; Def. Ex. 72.

[13] Both vacated panel opinions state the following regarding the car crossing:

> "We now turn to a development of uncertain connection to the hired killers, but one that we must mention. At 6:39 that evening, a car crossed into the United States from Mexico at the Brownsville point of entry. Border authorities recorded its Mexican license plate number as

It was the government's position that in at least one of four calls (11R1366) by Garza (who lived in San Antonio, Texas, 11R1355, 1400, 1419, but who had traveled to Mexico to see family members, 11R1402-1403, and harvest land, 11R1422) to Martinez from Mexico, Martinez initiated discussion of the alleged murder-for-hire scheme. Each of the four alleged calls from Mexico made by Garza to Martinez were for the purpose of receiving her advice about his own marital problems. 11R1367. During at least **one** of these four calls from Mexico, Martinez broached the topic of the "job" (paid assault), but Garza lied to her about having obtained someone to do it. 11R1368. The time frame of the calls were from late 1992 to early 1993, but it was not until late January 1993 or early February 1993 that Martinez modified the scheme from one involving only a beating of Fischer to one of killing Fischer. 11R1360-1363.[14]

After the last of these alleged calls, but on a date not

---

"821 THE7". A vehicle with that plat had crossed the border eighteen times between August 1992 and March 1993. At 8:26 p.m., Pizana and Ramon Palomares, another Cuellar hit man, checked into the La Quinta Inn. The receptionist registered their car as a white Grand Marquis with Mexican plates. Her handwriting made it hard to decipher whether the plate number was "821 TWEX" or "821 THE7". *See* 194 F.3d at 630; 203 F.3d at 338.

[14] In **CLAIM FOR RELIEF NO. 7**, Garza's rendition of alleged telephone calls is set forth in rich detail: from his first statement in 1993 to and including his last documented statements to the FBI in February 1998, along with his massive modification thereof at Cisneros' trial in May 1998. Cisneros respectfully suggests that this entire motion should be reviewed and considered in its entirety as the contents of, for instance, **CLAIM FOR RELIEF NO. 7** may impact upon the Court's decision making vis a via, for example, **CLAIM FOR RELIEF NO. 1**.

established by the record,[15] Garza met people in Brownsville who were part of the Cuellar crime gang, which was based in Dallas. Garza ultimately talked to them in Dallas about doing the "hit" and after Garza purchased a pistol in Dallas and gave it to Victor Moreno, the "hit men" traveled from Dallas to Brownsville shortly before the "hit." 8R576.[16] Even the government's opening statement admitted that the "hit-men" traveled from Dallas to Brownsville. 6R97.[17]

The en banc opinion in *Cisneros* stated the following:

> The relevant facts in Cisneros are also undisputed at this juncture. **Doris** (sic) Cisneros wanted to have her daughter's erstwhile boyfriend killed. Cisneros told this to her fortune teller and asked if the seer would find someone to commit the murder for a price. Acting as Cisneros's agent, the clairvoyant -- through another client -- ultimately located and employed two hit-men for Cisneros. In doing so the oracle **placed and received** international phone calls between Texas and Mexico. **The hit-men traveled from Mexico to Brownsville**, Texas, where they shot and killed Cisneros's intended victim. (footnote 10)

---

[15] The murder weapon was purchased in Dallas on February 2, 1993, so it would appear that Garza's last call to Martinez from Mexico occurred sometime before February 2, 1993.

[16] Pizana was a resident alien, 10R1247, but he and Palomares were both residents of Texas. Indeed, Pizana's address during the relevant time frame was 106 Jackson, Brownsville, Texas, 10R1230, and Palomares' address was 601 King Road, San Juan, Texas. 10R1231. *See also* Govt. Exhibits 53 and 54.

[17] According to the government's opening statement:

> "Daniel Garza did look around for somebody and found some killers by the name of Israel Olivarez and Herbiberto Pizana, people who worked for Rudy Cuellar **up in Dallas**, Texas....And you will hear from another person who worked for Rudy Cuellar, Victor Moreno, that Ramon Palomares **came down** with Israel Olivarez and Heriberto Pizana to kill that boy...." *See* 6R97.

Footnote 10: The facts are set forth more fully in the panel opinion. Cisneros, 203 F.3d at 337-39.

*Cisneros, supra* at 238 F.3d at 323.

For purposes of clarity, it should be noted that the fortune teller is Maria Martinez, the "(an)other client" is Daniel Garza, and the hit-men were Eddie and Israel, along with, possibly, a third (Palamores).

However, the government adduced uncontested evidence from Daniel Garza that the hit men were from Dallas; that they were members of the Cuellar organization (drugs and stolen vehicles), that he did not get them lined up to do the "hit" until he met with them in Dallas on or about February 14, 1993, 11R1370, that they agreed to do the "hit" whenever they would next travel from Dallas to Brownsville, 11R1172-1174, and that the "hit men" traveled from Dallas to Brownsville immediately before the "hit". Garza's testimony in this regard corroborated the testimony of Victor Moreno, a member of the Cuellar gang who overheard conversations to this effect while he was in Dallas. Thus, the en banc opinion was "dead wrong" on the facts relating to where the "hit men" had come from.[18]

People identifying themselves as Pizana and Palomares (both of whom lived in Texas) checked into La Quinta Inn in Brownsville,

[18] Similarly, there was absolutely no testimony that Martinez had ever called Garza (or anyone else) while they were in Mexico. Accordingly, the en banc opinion was "dead wrong" on this factual conclusion also. More importantly, at no point in time were the facts surrounding either jurisdictional prong "uncontested": exactly where the en banc Court derived this conclusion is a total mystery.

Texas, on March 2, 1993 at 8:26 p.m. and checked out on March 4, 1993 at 1:18 p.m. 10R1221. On their hotel registration they listed a vehicle license plate number. *Id.* The last three digits of the number were unclear--the record suggests they were either WEX or ME7, but the first four digits were "821T." *Id.* The make of the car was a white Grand Marquis, with border plates. *Id.*

In an effort to prove that this car had crossed the Mexican border into Brownsville on the night before the murder, the government elicited testimony from Customs Inspector Jorge Flores, that a vehicle with the license plate number "821THE7" crossed the Brownsville B&M bridge into Brownsville on March 3, 1993 at 6:39 p.m. 10R1254. The make and model of that car is unknown, although the car had a Tamaulipas, Mexico, plate. 10R1254. The facts adduced at trial concerning this car fail to prove that the two cars are one and the same. Although the two cars had similar license plate numbers, the record does not show that the numbers were the same, or even that they were the same make and model. Moreover, there was no evidence to show who drove the vehicle, who was present inside the vehicle, or why the vehicle was driven across the international bridge. According to Customs' log, the car noted by Customs had crossed the border 18 times between August 1992 and March 1993. 10R1256, Govt.Ex. 49. If this car was actually driven by the "hit men", which the record does not support, the travel on March 2 does not support the proposition that it was in furtherance of or facilitated the murder for hire scheme. Rather, it falls within a continuum of routine crossings, the purposes of which are entirely

unknown.

The record supports no logical inference that anyone associated with this case went to Mexico in connection with the murder for hire.[19] The murder weapon was purchased in Dallas on February 2, 1993. Although one of the "hit men" reportedly had a woman in his room at La Quinta on the night of March 2, it is conceivable that the men went to Mexico to pick up prostitutes, but such a purpose would have no connection to the murder. *See* 11R1379.

The evidence proved that Joey Fischer was murdered at approximately 8:00 a.m. on March 3, 1993. 11R1381.

Cisneros made timely motions for judgment of acquittal during the trial. Ultimately, the issue of jury instructions was reached by the district court. At the charge conference prior to closing arguments, Cisneros timely submitted to the court her proposed jury instructions. 11R1418, 1495. Cisneros' Requested Jury Instructions Nos. 12,[20] 12A, 13 and 14[21] (all of which are reflected at 1R115-

---

[19] *See also* **CLAIM FOR RELIEF NO. 10**, **THIRD ACT/OMISSION**, part **B**, numbered paragraph **2** (page 175-176) which supports the proposition that the "crossing" was **NOT** related to the murder for hire scheme as the "hit men" arrived in Brownsville on the afternoon of March 2, 1993, not in the evening.

Additionally, as reflected by the evidence at trial, the La Quinta was 1/2 mile from the bridge (10R1215) that was "crossed" at 6:39 p.m., 10R1252, but the motel registration reflects that the check in time was approximately 8:30 p.m.(10R1221); almost two hours after the car crossing.

[20] Cisneros' Requested Instruction No. 12 stated, in relevant part:

> For you to find the defendant guilty of this crime, you must be convinced that the government had proved each of the following elements beyond a reasonable doubt:

144) all included language relating to whether the foreign

---

> **FIRST ELEMENT:** That the defendant: (A) caused Heriberto Pizana to travel from Mexico to Brownsville on March 2, 1993, **in furtherance of the alleged murder-for-hire**; and/or (B) caused Daniel Garza to use a facility of foreign commerce to call Maria Martinez in Brownsville from San Fernando and Matamoros, Tamaulipas, Mexico between November 1992 and February 1993, **in furtherance of the alleged murder-for-hire**...

2R115 at 130-133 (emphasis in original).

[21] Cisneros' Requested Instruction No. 14 was a theory of defense instruction, which stated:

> The defendant's position is that she is not guilty of the offense of murder-for-hire. Her position is that she did not agree with Maria Martinez or anyone else, for that matter, to pay anyone to kill Albert Joseph "Joey" Fischer, Jr.
>
> It is also her position that the government has not proven beyond a reasonable doubt either (A) that she **caused** Heriberto Pizana to travel from Mexico to Brownsville on March 2, 1993, in furtherance of the alleged murder-for-hire; and/or (B) that she **caused** Daniel Garza to use a facility of foreign commerce to call Maria Martinez in Brownsville from San Fernando and Matamoros, Tamaulipas, Mexico between November 1992 and February 1993, in furtherance of the alleged murder-for-hire.
>
> Her position is that if Heriberto Pizana traveled in foreign commerce on March 2, 1993, it was not related to any scheme to murder Albert Joseph "Joey" Fischer, Jr., but rather related to his alleged criminal activities of stealing and transporting stolen vehicles and/or distributing drugs. Her position is further that if Daniel Garza called Maria Martinez in Brownsville from San Fernando and Matamoros, Tamaulipas, Mexico between November 1992 and February 1993, any such calls were made by Daniel Garza to consult with Maria Martinez about whether his marital situation with his wife/ex-wife and family was changing and improving.
>
> Finally, it is her position that it is not her burden to prove who killed Joey Fischer or why Joey Fischer was killed because the law never imposed upon a defendant the burden of proving anything.

2R137-138 (emphasis added).

1500, 1520-1521.

Cisneros' Requested Jury Instruction No. 15 addressed the fact that an indictment had to be returned within five years of the date of the alleged crime and that the government had the burden to prove every element of the offense had occurred within that five year period of time. The District Court denied this requested instruction, *see* 11R1502-20, and did not instruct the jury on statute of limitations.

Cisneros' Requested Jury Instruction No. 15A addressed "causation."[23] The District Court denied this requested instruction, *see* 11R1502-20, and did not instruct the jury on causation.[24]

The District Court read its jury instructions on the afternoon

---

[23] This requested instruction read as follows:

> A person "causes" another to travel in foreign commerce or to use facilities in foreign commerce if he does an act with knowledge that the foreign travel or use of facilities in foreign commerce will follow in the ordinary course of business, or where such foreign travel or use of facilities in foreign commerce can reasonably be foreseen, even though not actually intended.

2R.140 The requested instruction was taken from *United States v. Sneed*, 63 F.3d 381 at 385 n.4 (5th Cir. 1995), quoting *Pereira v. United States*, 347 U.S. 1, 8-9 (1954).

Additionally, Cisneros' Requested Instruction No. 14, her theory of defense instruction, also included language relating to causation, as well as the nexus between the foreign commerce and the murder for hire. It too was denied.

[24] Cisneros' Requested Instruction No. 14, relating to her theory of defense, also clearly put the District Court on notice that causation and the lack of relationship between foreign commerce and the murder for hire scheme were important issues to her defense.

of May 11, 1998, 11R1502-1519, after affording trial counsel approximately four minutes to review the written charge. On the morning of May 12, 1998, before final arguments to the jury, the District Court received a note from one of the jurors asking for the District Court's instructions because the juror was not clear on what he or she must find before he or she could find Cisneros guilty. 12R1526. After final arguments, the District Court favored the jury with a copy of what the District Court had read to the jury.

Then, during deliberations, the jury sent out two notes seeking guidance on foreign commerce. *See* 12R1600-1610. Cisneros reurged the essence of her requested jury instructions relating to telling the jury that any foreign commerce (telephone calls or travel) had to be in furtherance of the murder for hire. These requests and objections to the failure to so instruct were all overruled by the District Court. *Id.*[25]

---

[25] As noted by the second, vacated panel opinion (at footnote 9), the jury was never instructed on the nexus requirement (i.e., whether the foreign travel or foreign calls were sufficiently related to the alleged murder for hire scheme to satisfy the federal jurisdictional element of the murder for hire statute. Additionally, the jury was never charged on causation: exactly what, if anything, the government had to prove before the jury could find beyond a reasonable doubt that Cisneros had legally "caused" the alleged foreign travel or the alleged foreign calls. This too was noted by the second vacated panel opinion. 203 F.3d at 347 n. 11.

Regarding the panel's conclusion that Cisneros led the District Court into requesting this language is utterly "dead wrong": the District Court submitted this language as it was requested by the government. *See* 1R193-195 ("Proposed Amended Government's Jury Instruction #1").

## V.

## CLAIMS FOR RELIEF

### CLAIM FOR RELIEF NO. 1

**CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS THE LEGAL SUFFICIENCY OF THE EVIDENCE**

### CLAIM FOR RELIEF NO. 2

**CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS WHETHER THE ALLEGED JURISDICTIONAL NEXUS (I.E., GARZA'S ALLEGED CALLS FROM MEXICO OR THE CAR CROSSING) HAD A SUFFICIENT RELATIONSHIP TO THE ALLEGED MURDER FOR HIRE SCHEME TO SATISFY THE JURISDICTIONAL ELEMENT**

### CLAIM FOR RELIEF NO. 3

**CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS THE DENIAL OF CISNEROS' REQUESTED JURY INSTRUCTION ON THE JURISDICTIONAL NEXUS (I.E., GARZA'S ALLEGED CALLS FROM MEXICO OR THE CAR CROSSING)**

### CLAIM FOR RELIEF NO. 4

**CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS THE DENIAL OF CISNEROS' REQUESTED INSTRUCTION ON "CAUSATION"**

### CLAIM FOR RELIEF NO. 5

**CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW AND A MEANINGFUL APPEAL BY VIRTUE OF THE FIFTH CIRCUIT'S FAILURE TO ADDRESS THE DENIAL OF CISNEROS' REQUESTED INSTRUCTION ON THE STATUTE OF LIMITATIONS**

Because these five claims are so tightly interwoven, they are being presented in conjunction with one another so that the full extent of their interrelationship can be appreciated (hopefully).

Cisneros raised in her appellate brief each of the five **CLAIMS FOR RELIEF** asserted herein as issues constituting reversible error. The substance of what is **CLAIM FOR RELIEF NOS. 1 and 2** in this

motion was raised as **ISSUE NO. 1** in Cisneros' appellate brief. The substance of what is **CLAIM FOR RELIEF NOS. 3, 4 and 5** in this motion was raised as separate sections of **ISSUE NO. 3** in Cisneros' appellate brief.

Both vacated panel opinions addressed these issues in part, but due to their vacatur, no appellate opinion actually decided these issues on the merits. Instead, the en banc Court addressed only the conflict between *Marek* and the second, vacated panel opinion in *Cisneros*, and held only that even intrastate use of a facility of interstate commerce will permit a court to exercise jurisdiction.[25] The en banc Court did not reinstate either of the two, vacated panel opinions previously issued as to Cisneros.[26]

---

[25] The en banc Fifth Circuit's treatment of Cisneros' case is an aberration for the Circuit, which regularly, on en banc review, retains those parts of the underlying panel opinion with which it agrees. *See United States v. Brace*, 145 F.3d 247, 250 (5th Cir. 1998) (en banc); *United States v. Knox*, 120 F.3d 42, 43 (5th Cir. 1997); *Edwards v. City of Houston*, 78 F.3d 983, 989 n.5 (5th Cir. 1996) (en banc); *United States v. Greer*, 968 F.2d 433, 434 (5th Cir. 1992) (en banc); *United States v. Zuniga-Salinas*, 952 F.2d 876, 879 (5th Cir. 1992) (en banc); *In re Air Crash Disaster*, 821 F.2d 1147, 1169 (5th Cir. 1987) (en banc); *id.* at 1179 (Garza, J., concurring and dissenting); *Equilease Corp. v. Sampson*, 793 F.2d 598, 600 n.1 (5th Cir. 1986) (en banc); *Gibbons v. Crawford Fitting Co.*, 790 F.2d 1193, 1194 (5th Cir. 1986) (en banc); *Jenkins v. McDermott*, 742 F.2d 191, 192-93 (5th Cir. 1984) (panel); *Costello v. Wainwright*, 553 F.2d 506, 507 (5th Cir. 1977) (en banc).

[26] The en banc Court concluded its opinion with the following:

> "For the foregoing reasons, we hold that both Cisneros' and Marek's murder-for-hire transactions violated 18 U.S.C. § 1958. Cisneros did so by causing her agent to make qualifying telephone calls between the United States and Mexico, thereby using a facility in foreign commerce to facilitate a murder-for-hire....."

However, the en banc Court's conclusion, reflected above, was premised on the following earlier statement in the en banc opinion,

Accordingly, Cisneros asserts that she has not received appellate review of the issues she raised on direct appeal and thus her right to a meaningful appeal was denied. Cisneros thus asserts that this Court is fully empowered and actually must allow her to raise the substance of the issues contained in these five **CLAIMS FOR RELIEF**.[27]

---

to wit:

> The relevant facts in Cisneros are also undisputed at this juncture. **Doris** (sic) Cisneros wanted to have her daughter's erstwhile boyfriend killed. Cisneros told this to her fortune teller and asked if the seer would find someone to commit the murder for a price. Acting as Cisneros's agent, the clairvoyant -- through another client -- ultimately located and employed two hit-men for Cisneros. In doing so the oracle **placed and received** international phone calls between Texas and Mexico. **The hit-men traveled from Mexico to Brownsville**, Texas, where they shot and killed Cisneros's intended victim. (footnote 10)
>
> Footnote 10: The facts are set forth more fully in the panel opinion. Cisneros, 203 F.3d at 337-39.

*Cisneros*, *supra* at 238 F.3d at 323.

[27] The en banc Court's alteration of facts and refusal to reinstate parts of the vacated second panel opinion violated due process by denying Cisneros her rights to appeal (28 U.S.C. § 1291) and, possibly, to seek certiorari (28 U.S.C. § 1254(a)) on issues adversely decided against her. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985). Due process requires that, once a statutory right of appeal has been created, each defendant must be afforded "a fair opportunity to obtain an adjudication on the merits of his appeal." *Id.* at 405. Vacatur "render[s] an act void; as, to vacate . . . a judgment." BLACK'S LAW DICTIONARY. Vacatur of an issue on appeal may deny an appellant due process by stripping her of the initial appellate review and any further review of an adverse ruling on that issue. In the instant case, the en banc Court may have made Cisneros' appealable issues, including legal sufficiency, disappear, denying her the second vacated panel's adjudication of those issues as well as any potential for certiorari on those issues. "Fair opportunity" for appeal is violated when the courts deny an appellant the "means to effectively press [her] appellate

Alternatively, if Cisneros is incorrect in this regard, this Court still has the discretion to address the issues. *Kaufman v. United States*, 394 U.S. 217, 227 n.8 (1969)(holding that res judicata does not bar section 2255 relief of constitutional issues, although a district court has discretion to refuse to reach the merits of a constitutional claim that had already been raised and resolved on direct appeal).[28]

---

arguments." *Texaco v. Pennzoil*, 784 F.2d 1133, 1154 (2d Cir. 1986), *rev'd* on other grounds, 481 U.S. 1 (1987) (citing *Evitts* and *Douglas v. California*, 372 U.S. 353, 358 (1963)). Furthermore "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (1994).

[28] In the event that the government attempts to invoke the discretionary applicable of the law of the case doctrine, Cisneros would point out that it should not apply to a Section 2255 motion, in light of *Kaufman*, *supra*. But see Conley v. United Stats, 2002 WL 1477843 (1st Cir. 2002); *United States v. Nichols*, 2002 WL 511731 (10th Cir. 2002)(unpublished opinion). However, even if the government can successfully argue, contrary to *Kaufman*, *supra*, that the law of the case doctrine should apply in the context of a motion filed pursuant to 28 U.S.S. Section 2255, that discretionary doctrine does not apply to Cisneros because there has been no adjudication on the merits of the issues she raised on direct appeal (except as indicated by the en banc Court since both panel opinions were vacated). Alternatively, even if the law of the case doctrine can be applied to this 2255 motion and this Court does in fact exercise its discretion to apply it, Cisneros asserts that the *third exception* to the law of the case doctrine (which provides that the doctrine will not apply when the prior decision was clearly erroneous and would work a manifest injustice) should be invoked to permit her to raise the three **CLAIMS FOR RELIEF** she has raised in this motion. *See United States v. Gochicoa*, 238 F.3d 278, 290-292 (5th Cir. 2001)(Dennis, J., concurring in part and dissenting in part); *Hopwood v. State of Texas*, 236 F.3d 256, 272-275 (5th Cir. 2000); *United States v. O'Keefe*, 169 F.3d 281, 282-284 (5th Cir. 1999)(Dennis, J., dissenting); *United States v. Becerra*, 155 F.3d 740, 752-756 (5th Cir. 1998). Under the foregoing cases, the third exception to the law of the case doctrine clearly should be declared available to Cisneros as, more full explained in regard to each of the three **CLAIMS FOR RELIEF** addressed below (i.e., the panel opinions were clearly erroneous and would work a

Regarding **CLAIMS FOR RELIEF NOS. 1 to 5**, Cisneros adopts for purposes of brevity the facts reflected above in **THE STATEMENT OF THE CASE**.

**1. THE JURISDICTIONAL NEXUS, SUFFICIENCY, AND CAUSATION.**

Section 1958 must be interpreted as requiring, if not intent, something more than "but-for causation" **and** "foreseeability." This interpretation also must be embodied within the jury instructions and sufficiency review (on motion for judgment of acquittal and on appeal) so that the due process mandates of *In Re Winship*, 397 U.S. 358 (1970), and *United States v. Gaudin*, 515 U.S. 506 (1995) are not violated. The district court's jury instructions allowed the jury to convict Cisneros if "somebody...involved" traveled in or used a facility of foreign commerce **regardless of whether Cisneros caused** the travel in or use of a facility of foreign commerce. 1R93; 11R1516; 12R1593-1594. This instruction diluted the government's burden of proof and constituted a constructive amendment of the indictment/bill of particulars by failing to limit the travel and/or use of a facility of foreign commerce, as well as not requiring that the travel or use of a facility of foreign commerce be in furtherance of or facilitated the alleged murder-for-hire scheme and not merely be the product of happenstance. *See*

---

manifest injustice, just as the en banc opinion was clearly erroneous in its factual rendition that the facts were "undisputed at this juncture" and that they reflected that Martinez placed and accepted calls from Mexico and that the hit men came from Mexico). Thus, when a prior opinion is "**dead wrong**" -- clearly erroneous and application of the doctrine would work a manifest injustice, it should not be applied. Elsewhere in this motion, the term "dead wrong" has been used as a short hand rendition of "clearly erroneous".

**CLAIM FOR RELIEF NO. 6** (adopted herein for purposes of brevity).

**a. The Second Vacated Panel Opinion decided an important federal question in a way that not only was "dead wrong", but which clearly conflicted with relevant decisions of the Supreme Court by reducing the interstate commerce nexus to a but-for causation requirement.**

The second panel opinion concluded that *United States v. Edelman*, 873 F.2d 791 (5th Cir. 1989), governed and only required the government to prove "simple 'but for' causation rather than foreseeability" in order to establish the causation aspect of the foreign commerce requirement in § 1958 (a). This interpretation of *Edelman* misapplies a conspiracy case to a straightforward murder-for-hire case and is prohibited by *Rewis v. United States*, 401 U.S. 808 (1971).

Reviewing 18 U.S.C. § 1958 in light of 18 U.S.C. § 1952 (the Travel Act) is appropriate. *Edelman*, 873 F.2d at 794. The Supreme Court's decision in *Rewis* defines the parameters of the nexus between the interstate/foreign commerce and the underlying offense for purposes of the Travel Act and, by extension, the murder-for-hire statute, by interpreting Congressional intent through the rule of lenity. 401 U.S. at 811-12. The Supreme Court held in *Rewis* that reading "foreseeability" into the statute violated Congressional intent by making it too easy for the government to establish a nexus. *Id.* at 813. "Congress" provided "little, if any, evidence that [it] intended that foreseeability should govern criminal liability under § 1952." *Id.* at 813. For the sake of comity, Congress intended that the proof demonstrate, if not intent, something more than "but-for causation" **and**

"foreseeability" in order to prevent expansive interpretation of the interstate/foreign nexus that would swallow up state law offenses and state jurisdiction.

The second vacated panel's "but-for causation" rule violates the principle oft-repeated throughout the Supreme Court's commerce clause jurisprudence, in addition to *Rewis*, that Congress may not create a jurisdictional "element," such as the interstate/foreign commerce nexus in §§ 1952 and 1958, that does not meaningfully limit federal power, **especially** "in areas such as criminal law enforcement . . . where States historically have been sovereign." *United States v. Lopez*, 514 U.S. 549, 561, 564 (1995). By creating its "but-for causation" model, the second vacated panel, in the words of Judge Learned Hand, formed "a view of causation that would obliterate the distinction between what is national and what is local in the activities of commerce." *Lopez*, 514 U.S. at 567 (quoting cases). This is particularly egregious in light of the fact that this was an intrastate offense that the government attempted to transform into a federal offense (as demonstrated by the fact that Cisneros was previously acquitted in state court for the substantive offense of the murder of Fischer).

**b. The Second Vacated Panel Opinion clearly conflicts with the decisions of other United States courts of appeals by rejecting the need to find whether the defendant intentionally or knowingly caused the travel or use of an interstate facility.**

Every Section 1952, 1952A, and 1958 case of which counsel is aware in which the defendant was directly charged, as opposed to

charged as a coconspirator or aider and abettor,[29] makes explicit or implicit findings regarding whether the ***defendant intentionally or knowingly***[30] ***caused*** the travel or use of interstate facility. This involves the defendant herself travelling, using the facility, or an agent travelling or using the facility under the defendant's direction, and at least with her knowledge that the interstate facility is being used to further the offense. *See, e.g.*, *United States v. Finley*, 175 F.3d 645, 646 (8th Cir. 1999) (defendant personally put stamps on letters that were mailed)); *United States v. Weathers*, 169 F.3d 336, 344 (6th Cir. 1999) (defendant's numerous cell-phone conversations); *United States v. Garrett*, 716 F.2d 257, 265 (5th Cir. 1983) (defendant instructed codefendant to make an interstate phone call); *United States v. Pecora*, 693 F.2d

---

[29] *Edelman's* treatment of causation would apply to Cisneros' case only if she had been charged with conspiracy. Like *Edelman*, *United States v. Perrin*, 580 F.2d 730 (5th Cir. 1978), and *United States v. Razo-Leora*, 961 F.2d 1140 (5th Cir. 1992) are inapplicable to Cisneros' case to the extent that they also are based upon conspiracy charges and convictions. Because the *Edelman* jury was charged with conspiracy, it could automatically find Edelman **vicariously liable** for the act of coconspirator Young sending a letter through the mail to Zabitosky. *Edelman*, 873 F.2d at 792. This cannot be said of Garza and Martinez, because the jury was not charged with finding that they were coconspirators with Appellant. Without the conspiracy charge, their actions had to be more substantially tied to Appellant than through her possible foresight of those actions.

[30] The cases rely upon "intent" or "knowledge" to establish the jurisdictional nexus. The point, however, is that something more than foreseeability is required and the jury must be charged with finding something more than foreseeability. Otherwise, a conviction can be obtained without any jury finding that the defendant actually caused the foreign commerce, which would run afoul of the Supreme Court's pronouncement in *United States v. Gaudin*, *supra*, that the jury must find every element of the offense beyond a reasonable doubt. *See* **CLAIM FOR RELIEF NO. 6**, *infra*.

421, 424 (5th Cir. 1982) (phone call by defendant in Georgia to sheriff in Louisiana); *United States v. Jones*, 642 F.2d 909 (5th Cir. 1981) (defendant travelled between states to cash wagering checks); *United States v. Perrin*, 580 F.2d 730; 735 (5th Cir. 1978) (defendant, on instructions from co-defendants, made interstate telephone calls); *United States v. Archer*, 486 F.2d 670, 683 (2d Cir. 1973) (defendant's *receipt* of a phone call from Paris, France, in no way initiated by the defendant, although expected by him, was insufficient to establish nexus); *United States v. Kahn*, 472 F.2d 272, 285 (2d Cir. 1973) (finding nexus based upon extensive interstate travel and use of mails, distinguishing *Rewis* on basis that defendants there did not engage in interstate activities themselves and interstate travel was marginal or unforeseen). In *Marek*, for example, Marek personally delivered $500 to Western Union in Houston for transfer to the undercover agent in Harlingen. *Marek*, 198 F.3d 532 (5th Cir. 1999).

**2. THE JURISDICTIONAL NEXUS, SUFFICIENCY, AND "FURTHERANCE."**

A discussion about a murder-for-hire scheme does not necessarily "make easier" the carrying out of that scheme. The government did not prove that Martinez's references, in the alleged international calls placed by Garza, to Garza's alleged past promise to find a "hit man" and Garza's lies to Martinez about finding a "hit man" in any way advanced, facilitated, or otherwise furthered the criminal scheme. To the contrary, Garza testified that he lied about finding hit men. 11R1365, 1368. Garza testified that the very few alleged international calls to Martinez

were among numerous calls he made to her from within the United States (Dallas, Brownsville and San Antonio), charged on credit and to Garza's home number. 11R1364, 1399-1400. Garza testified that he called "daily" from roughly October 1992 to March 1993 and that he was in the "habit" of going to see Martinez once or twice a month. 11R1363, 11R1399.

The four alleged calls from Mexico are rendered virtually insignificant in light of the large number of other engagements Martinez had with Garza in person and over the phone while Garza was in Dallas, Brownsville or San Antonio. And, given the fact that the only evidence about dates of these four international calls is that they occurred prior to February 14, 1993, there is a dearth of evidence to support the conclusion that a rational trier of fact could have concluded by beyond a reasonable doubt that they furthered or facilitated the murder-for-hire scheme, particularly because Garza testified that the original scheme was merely to beat Fischer and that it was not until late January or early February 1993 that Martinez first mentioned that the client wanted Fischer killed. 11R1360-1363.[31]

Absent the jury instructions requested by Cisneros (Requested Instructions Nos. 12 and 14), the jury was not allowed to determine whether the foreign telephone calls, if any, furthered, facilitated or made easier the alleged murder for hire scheme. As such,

[31] As noted above in footnote 14, *supra*, **CLAIM FOR RELIEF NO. 7** delineates Garza's rendition of alleged telephone calls in rich detail: from his first statement in 1993 to and including his last documented statements to the FBI in February 1998, along with his massive modification thereof at Cisneros' trial in May 1998.

Cisneros was convicted without a jury finding on this essential element of the offense, a due process violation. *See e.g.*, *In Re Winship*, *supra* and *United States v. Gaudin*, *supra*. *See* **CLAIM FOR RELIEF NO. 6**, subpart **B** (adopted herein for purposes of brevity). In fact, the second vacated panel opinion specifically noted that the jury was not instructed on the nexus requirement, 203 F.3d at 346 n. 9, which the panel nevertheless used to review the sufficiency of the foreign commerce.

**a. The Second Vacated Panel Opinion decided an important federal question in a way that conflicts with relevant decisions of the Supreme Court by making a distinction between "facilitation" and "furtherance."**

While the second vacated panel opinion agreed that the statute required the foreign commerce to "facilitate" the underlying offense or "make it easier", that vacated panel opinion rejected Cisneros' evidentiary insufficiency challenge and found that her requested instructions on causation (i.e., Requested Instruction Nos. 15A as supplemented by her theory of the defense instruction, No. 14) was incorrect because it used the term "in furtherance" of the murder-for-hire scheme (as opposed to "facilitated"). 203 F.3d at 346.

The second vacated panel opinion clearly erred -- it was "dead wrong" -- in suggesting the existence of a meaningful legal difference between the terms "facilitate" and "furtherance" for interpretation of the Travel Act and murder-for-hire statutes. The Supreme Court and the Fifth Circuit have used the terms interchangeably in cases dealing with Travel Act prosecutions.

*See, e.g., Erlenbaugh v. United States*, 409 U.S. 239, 247 (1972) ("furtherance"); *Rewis v. United States*, 401 U.S. 808, 813 (1971) ("furtherance"); *Presley, supra* ("furtherance"); *United States v. Roberson*, 6 F.3d 1088, 1094 (5th Cir. 1993) ("facilitate"). The use of the term "facilitate" in the cases cited by the second vacated panel opinion, 203 F.3d at 344 n.7, merely follows the statutory language in 18 U.S.C. § 1952. *See United States v. Perrin*, 580 F.2d 730, 736 (5th Cir. 1978) ("[I]t is enough that the . . . use of interstate facilities makes easier or facilitates the unlawful activity.").

**b. The Second Vacated Panel Opinion expressly conflicts with the decisions of other courts of appeals on the question whether the use of the facility in interstate commerce must be "in furtherance" of the underlying murder scheme.**

The vacated second panel opinion expressly recognized a conflict between Cisneros' case and *United States v. Houlihan*, 92 F.3d 1271, 1292 (1st Cir. 1996), wherein the First Circuit "required the use of the facility in interstate commerce to be 'in furtherance' of the underlying murder scheme." The second vacated panel opinion did not address the fact that Cisneros' trial counsel had specifically modeled their requested instruction (using "in furtherance") from a district court jury instruction given in a murder for hire case by United States District Judge Harry Lee Hudspeth.

The second vacated panel's finding that the Fifth Circuit itself only requires a showing that the use of the facility "facilitated" the underlying crime, i.e., "made it easier," also is

inconsistent with other Fifth Circuit opinions. *United States v. Presley*, 478 F.2d 163, 168 (5th Cir. 1973) (reversing district court's denial of motions to withdraw nolo contendere pleas following *Rewis*, on finding that facts had not been developed regarding the "extent and significance of the crossing of state lines to the furtherance of the operations of [an] illegal gambling casino"); *United States v. Gooding*, 473 F.2d 425, 427-28 (5th Cir. 1973) ("The Travel Act does not proscribe all interstate travel which may incidentally lead to a furthering of unlawful activity.") (citing *United States v. Hawthorne*, 356 F.2d 740 (4th Cir. 1966)).

Indeed, even the en banc opinion in *Cisneros* twice uses the term "in furtherance". *See e.g.*, 238 F.3d at 313 ("The Marek majority acknowledged *Cisneros* but reasoned that it was not binding because, **in furtherance** of her murder-for-hire scheme....) and 238 F.3d at 314 ("A panel of this court concluded that a reasonable jury could have found that (1) the fortune teller had participated in international calls as Cisneros' agent, and (2) those calls were sufficiently connected to the murder to be "**in furtherance**" of that crime."(footnote omitted)) (explanation added).

Thus, the second vacated panel opinion was clearly "dead wrong" on this point.

**3. THE JURISDICTIONAL NEXUS, SUFFICIENCY, AND HAPPENSTANCE.**

In light of the purely intrastate nature of the offense, the incidental calls from Mexico do not meet the government's burden of proof nor the requirement for jurisdiction. The evidence of the four alleged international calls from Garza to Martinez prior to

February 14, 1993, was insufficient and the denial of Cisneros' requested jury instructions 12, 12A, 13 and 14 (and the district court's overruling of Cisneros' objections to the failure to give them) constitute harmful reversible error.[32]

**a. The Second Vacated Panel Opinion decides an important federal question in conflict with relevant decisions of the Supreme Court by holding that alleged use of a foreign facility of commerce by happenstance may establish a nexus for the alleged murder-for-hire scheme.**

The second vacated panel implicitly held that the government met its burden to prove a connection between the use of foreign facilities of commerce and the offense with evidence of only "fortuitous and incidental" foreign contacts. 203 F.3d at 344 n. 7 (citing *United States v. Pecora*, 693 F.2d 421, 424 (5th Cir. 1982).[33] *See also* 203 F.3d at 346 ("...Garza's calls need not have been made for the purpose of furthering the murder-for-hire. It is enough that those calls facilitated the scheme *incidentally, or by mere happenstance*" (citation omitted).

This holding, based on a no more than four "incidental" foreign contacts (only one of which actually related to the alleged murder-for-hire scheme, even assuming that the calls were in the

---

[32] Under *In Re Winship*, *supra* and *United States v. Gaudin*, *supra*, Cisneros has been convicted without a jury finding on this essential element of the offense, which constitutes a due process violation. *SEE* **CLAIM FOR RELIEF NO. 6**, which raises this very issue.

[33] If it were otherwise, the second vacated panel opinion could not have found, as it did, that the "use of the telephone across national boundaries was purely incidental", 203 F.3d at 346, without also granting Cisneros relief on her sufficiency and instructional error claims pointing out the government's duty to prove that the calls were "in furtherance" of the offense.