time frame after Martinez modified the scheme from a beating to a killing) among a vast number of domestic contacts, is not sustainable in light of *Rewis*. This Court held in *Rewis*, 401 U.S. at 812, that jurisdiction could not be created under the Travel Act by geographical events which occurred through "happenstance." *Rewis*, thus, conflicts with the second vacated panel's holding and the *Pecora* panel's holding.[34]

Again, the second vacated panel opinion was "dead wrong".

> **b. The Second Vacated Panel Opinion conflicts with decisions of other courts of appeals by holding that alleged use of a foreign facility of commerce through happenstance may establish a nexus for the alleged murder-for-hire scheme.**

By holding that incidental contact can satisfy the nexus, the second vacated panel's opinion and *Pecora* are inconsistent with *Presley* and *Gooding*, *supra*, the Fifth Circuit's own precedent. No matter whether the alleged foreign phone calls "made easier" the unlawful activity in this case, the Commerce Clause required more of a nexus than phone calls which "served no purpose that" was not in fact "equally served by" a large number of in-state calls. *United States v. Archer*, 486 F.2d 670, 683 (2d Cir. 1973); *see also Rewis*, 401 U.S. at 812; *United States v. O'Dell*, 671 F.2d 191 (6th Cir. 1982); *United States v. McCormick*, 442 F.2d 316 (7th Cir. 1971); *United States v. Judkins*, 428 F.2d 333 (6th Cir. 1970).

---

[34] Another panel of the Fifth Circuit held in *Pecora*: "[W]e discern in the Travel Act no exception for casual and incidental occurrences or for 'happenstance' ones." 693 F.2d at 424.

### 4. THE JURISDICTIONAL NEXUS, SUFFICIENCY, AND PROOF OF ELEMENTS WITHIN THE STATUTE OF LIMITATIONS PERIOD.

The statute of limitations in 18 U.S.C. § 3282 required the government to secure an indictment within five years of the commission of the alleged murder-for-hire offense. *United States v. Edwards*, 968 F.2d 1148, 1153 (11th Cir. 1992). The government failed to prove that the offense occurred within the limitations period. Once conflicting evidence has been presented relevant to whether the government has complied with the limitations period, the question of whether the government instituted the prosecution in a timely manner becomes an issue for the jury to determine. *Id*. It was reversible error for the district court "to refuse to charge on a defense theory for which there [was] an evidentiary foundation and which, if believed by the jury, would [have been] legally sufficient to render [Cisneros] innocent." *Id*. (quoting *United States v. Lewis*, 592 F.2d 1282, 1285 (5th Cir. 1979)). Stated otherwise, the second vacated panel was "dead wrong" when it held that Cisneros' Requested Instruction No. 15 on the statute of limitations was without merit).

> **a. The Second Vacated Panel Opinion was "dead wrong" when it found murder-for-hire to be a continuing offense in order to avoid the government's failure to prove all of the elements of the offense within the statute of limitations period.**

As the second vacated panel opinion recognized, the time period for prosecution begins to run when the crime is complete. 203 F.3d at 347 (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)). "Virtually all jurisdictions provide that the period of

limitation begins to run with the commission of the crime, that is, when every element in the statutory definition of the offense has occurred." 4 WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 18.5(a) (1999).  The elements of murder-for-hire in 18 U.S.C. § 1958 are:

> (a) traveling or causing another to travel in interstate or foreign commerce, or using or causing another to use the mail or other facility of interstate or foreign commerce that facilitates the murder-for-hire scheme; (2) with intent that a murder be committed in violation of the laws of any State or the United States; and (3) as consideration for the receipt of pecuniary value.

*United States v. Sharpe*, 193 F.3d 852, 863 n.6 (5th Cir. 1999) (as modified for the second vacated panel's opinion that the foreign commerce must "facilitate" the murder-for-hire).  "On its face, [§ 1958] allows a conviction if the government proves that a defendant traveled in interstate commerce with the intent that a contract murder be committed." *United States v. Ransbottom*, 914 F.2d 743, 746 (6th Cir. 1990).  On its face, § 1958 also allows conviction if the government proves a defendant caused another to use a facility of foreign commerce in order to facilitate or further a murder solicited by her promise of remuneration.   *United States v. Sanchez*, 3 F.3d 366, 367 (11th Cir. 1993).

If the other elements are satisfied, the crime occurs at the moment of foreign or interstate movement or use of interstate or foreign facilities.   Neither actual murder nor remuneration are necessary to prove all of the elements of the offense.[35]

---

[35] Thus, actual "receipt of pecuniary value" only completes the crime when it occurs simultaneously with satisfaction of the interstate nexus. 203 F.3d at 348 n. 12.  Of course, the panel's

Therefore, there is neither express indication in the statutory language nor a conclusion necessarily arising from the nature of the substantive offense, that § 1958 was intended to be a continuing offense. *Toussie v. United States*, 397 U.S. 112, 115 (1970) (requiring one or the other for an offense to be "continuing").

> **b. The Second Vacated Panel Opinion conflicts with decisions by other United States Courts of Appeals by finding murder-for-hire to be a continuing offense in order to avoid the government's failure to prove all of the elements of the offense within the statute of limitations period.**

The second vacated panel opinion conflicts with other circuit court decisions that find the crime to be complete with the use of interstate commerce facilities. *United States v. Finley*, 175 F.3d 645, 647 (8th Cir. 1999) (holding the murder-for-hire offense complete when letters furthering the offense had been mailed, including one promising earnest money); *United States v. Delpit*, 94 F.3d 1134 (8th Cir. 1996) (holding that once the interstate facility is used with the required intent, the crime of interstate murder-for-hire is complete); *United States v. Davidson*, 122 F.3d 531, 535 (8th Cir. 1997) ("Section 1958 . . . outlaws causing travel or the use of interstate commerce facilities with the intent

---

holding would be "consistent" with *United States v. Thompson*, 130 F.3d 676 (5th Cir.), *cert. denied* 118 S. Ct. 2307 (1998), where "payment occurred simultaneously with use of the facility in interstate commerce." *Id*. That is the **only** circumstance with which the second vacated panel's holding would be consistent. The problem is that the second vacated panel's holding is erroneous because, according to the government's proof, a promise to pay had been made prior to Garza's alleged, first call from Mexico to Martinez in Texas.

that murder-for-hire be committed."); *United States v. Brockdorff*, 992 F. Supp. 22, 24 (D. D.C. 1997) (applying *Delpit*); and *United States v. Superson*, 1997 WL 223072, at *1 (N.D. Ill. 1997) (unpublished Memorandum Opinion and Order).

Congressional intent undergirds the other circuits' opinions. "The **gist of the offense is the travel in interstate commerce or the use of the facilities of interstate commerce or of the mails with the requisite intent** and the offense is complete whether or not the murder is carried out or even attempted." S. REP. No. 225, 98TH CONG., 1ST SESS. 1983, at 306 (emphasis added). The Senate Record explains the provision that has become § 1958 as follows:

> Section 1952A would reach the travel in interstate or foreign commerce or the use of the mails or a facility in interstate or foreign commerce (such as a telephone if used for an interstate call) with the intent that a murder be committed in violation of state or Federal law. The murder must be planned or carried out as consideration for the receipt of something of pecuniary value or a promise or agreement to pay something of pecuniary value.

129 CONG. REC. 5600 (March 16, 1983). The Senate Record demonstrates that the focus of Congress' effort was to criminalize the travel in or use of foreign facilities in furtherance of a murder-for-hire scheme. The jurisdictional nexus, with mens rea, **is** the substantive federal offense, assuming the foreign commerce is sufficiently related to the murder for hire (i.e., it either "facilitated", made easier, or was "in furtherance" of the murder for hire). The description of murder-for-hire in the Congressional Record, focussing on the moment of travel or use, should dispel any notions that it is only complete upon actual receipt of payment or

that it is some kind of "continuing offense."[36]

The conjunctive wording of Cisneros' indictment ("**and** the receipt of") does not obviate the fact that the offense would have been complete whenever Garza made his first phone call from Mexico during which Martinez asked about a hit man (assuming, for purposes of argument only, that the call was in furtherance of or facilitated the murder for hire scheme and recognizing that Garza actually stated that in **one** of his calls from Mexico (not all of them), Martinez asked about whether he had found a "hit man"). All of Garza's alleged calls from Mexico occurred prior to February 14, 1993, which the government conceded to be accurate in its post oral argument submission at page 3, yet the indictment was not returned until February 23, 1998. The government does not have the option to "charge and try" a case in any way it desires if the offense, in

---

[36] Congress obviously intended murder-for-hire to boil down to travel or use of interstate or foreign commerce facilities with intent. The offense does not correspond to "continuing offenses" for which the limitations period "begins to run only when [a] course of conduct . . . terminates." LaFave, Israel, & King, *supra*, at §18.5(a) (finding as "continuing offenses" concealment of assets, possession-of-contraband crimes, falsification schemes which continue to produce fruits, and conspiracy (for which counting begins with the last overt act in furtherance of the conspiracy)). Cisneros was not charged with conspiracy to commit a murder for hire, but rather the substantive offense.

In *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975), there was no statute of limitations problem, as noted by the second vacated panel opinion, 203 F.3d at 348 n. 13, where the mailings in furtherance of a mail fraud scheme occurred within the limitations period. The government in *Ashdown* proved a crime that was not complete until the mails were used. The problem for the government in Cisneros' case is that precisely the opposite occurred. The government **failed to prove** that the use of the foreign facilities, required to complete the crime, occurred within five years prior to the indictment.

fact, *cannot be charged* because the statute of limitations has already run.

Had the jury been properly instructed in Cisneros' case regarding the statute of limitations, it would have found that the government failed to prove that the alleged foreign phone calls made by Daniel Garza to Maria Martinez occurred on or after February 23, 1993, and thus inside the limitations period. *Id.* The District Court committed reversible, harmful error by failing to submit Cisneros' Requested Instruction 15. The second vacated panel opinion thus clearly erred by holding that the instruction was not necessary and also erred by not finding that the evidence was insufficient as a matter of law because the alleged foreign calls from Garza to Martinez all occurred more than five years prior to the return of Cisneros' indictment.

**CONCLUSION**

The evidence of foreign commerce, either Garza's alleged calls to Martinez from Mexico or the car crossing, was legally insufficient because neither Garza's alleged calls nor the car crossing was sufficiently related to the alleged murder for hire scheme. Even without an instruction to the jury as to the proper jurisdictional nexus or relationship they had to find before they could find that the foreign commerce was related to the murder for hire scheme, no rational trier of fact could have found that the foreign calls or the car crossing was sufficiently related to the murder for hire scheme.

As to the alleged calls, the time frame in which they occurred

was not necessarily *after* Martinez told Garza that the beating
scheme had been modified to a murder scheme. Absent a specification
of when the calls were made, if they really were, and which call or
calls Martinez inquired of Garza, it requires pure speculation for
a jury to conclude that they were made during the course of and in
furtherance (or even to facilitate or make easier) the alleged
murder for hire scheme. And, even if the calls were in a time frame
consistent with the murder for hire scheme, they certainly were not
in furtherance of the murder for hire, did not facilitate the
murder for hire, and did not make easier the murder for hire.
Rather, they were isolated, incidental foreign contacts that did
not assist in the murder for hire. The failure of the Fifth Circuit
to address these issues on appeal (by virtue of the vacatur of the
two panel opinions) constitutes a due process violation entitling
her to litigate them herein. The vacated panel opinions were "dead
wrong" and a manifest injustice would occur if these serious
challenges to the sufficiency of the evidence were not considered
in this motion because it could mean a lifetime of incarceration
without a jury finding on every element of the offense and without
full and fair appellate review utilizing accurate facts and
appropriate law.

Additionally, even without considering the absence of an
appropriate jury instruction on causation, the evidence of
causation as to Cisneros was far too tenuous for a rational trier
of fact to have found the first element beyond a reasonable doubt.
The vacated panel opinions leave this issue totally unaddressed,

41

which constitutes a due process violation. Moreover, the vacated second panel opinion was "dead wrong" when it addressed causation and held, in essence, that "incidental" and "fortuitous" foreign contacts, even by "happenstance", are sufficient to satisfy the causation issue. As it currently stands, Cisneros' conviction was obtained in violation of the Commerce Clause and due process because the finder of fact was not required to restrict a finding as to the first element of the offense to conduct within the scope of the Commerce Clause and was in fact allowed convict based upon conduct that was clearly outside that which is required to avoid an unconstitutional application of the murder for hire statute.

Furthermore, the vacated second panel opinion was also "dead wrong" in its disposition of the three charge issues, the first two of which were components of the first element submitted to the jury. Again, a manifest injustice would occur if Cisneros was not permitted to litigate those issues in this motion, because that would mean that she had never been afforded appellate review of issues she preserved and pressed on appeal, the essence of a due process violation, and because the jury was never instructed/properly instructed on two components of the first element of the offense as well as a defensive that reflects that she could not legally have been convicted due to the running of the statute of limitations.

Under these five **CLAIMS FOR RELIEF**, this Court should either hold the evidence legally insufficient or at a minimum, grant a new trial.

## CLAIM FOR RELIEF NO. 6

**CISNEROS WAS DENIED HER FIFTH AND SIXTH AMENDMENT RIGHTS TO DUE PROCESS, TO A JURY TRIAL AND TO A RELIABLE JURY VERDICT BECAUSE THE JURY WAS NOT INSTRUCTED (OR, IF INSTRUCTED IN THE LEGAL SENSE, NOT ADEQUATELY INSTRUCTED) ON "CAUSATION" *AND* WHETHER THE FOREIGN COMMERCE HAD TO "FACILITATE" OR "BE IN FURTHERANCE" OF THE ALLEGED MURDER FOR HIRE SCHEME, TWO ESSENTIAL COMPONENTS OF THE FIRST ELEMENT OF THE OFFENSE**

### ASSERTION

Cisneros asserts that she was denied her rights under the Fifth and Sixth Amendments rights to a jury trial, to a reliable jury verdict, and to due process because, as to the first element submitted to the jury, the jury was not instructed (or if instructed, not adequately instructed) on "causation" and the "required relationship" between the alleged foreign commerce (both prongs: Garza's alleged calls from Mexico and/or the car crossing) and the murder for hire scheme. Cisneros asserts that a new trial should be granted so that an appropriately instructed jury can ascertain whether either or both of the foreign commerce prongs (i.e., Garza's alleged calls from Mexico and/or the car crossing) were: (1) "caused" by Cisneros; and if so (2) whether they were "sufficiently related to the alleged murder for hire scheme" to justify a finding of guilt. Otherwise, Cisneros will have been convicted without a jury finding and a reliable jury verdict on the first element of the offense of murder for hire, which constitutes a due process violation.

### LAW

When a jury is allowed to convict a citizen without an instruction on every element of the offense, a denial of the Fifth

43

and Sixth Amendments exist. *See United States v. Gaudin*, 515 U.S.
506, 509-511, 115 S.Ct. 2310, 2313-2314, 132 L.Ed. 2d 444 (1995):

> The Fifth Amendment to the United States Constitution
> guarantees that no one will be deprived of liberty
> without "due process of law"; and the Sixth, that "[i]n
> all criminal prosecutions, the accused shall enjoy the
> right to a speedy and public trial, by an impartial
> jury."  We have held that these provisions require
> criminal convictions to rest upon a jury determination
> that the defendant is guilty of every element of the
> crime with which he is charged, beyond a reasonable
> doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 277-278, 113
> S.Ct. 2078, 2080-2081, 124 L.Ed.2d 182 (1993). (footnote
> omitted).

Where there has been a deficiency regarding the submission of
an element of the offense to the jury, a harm analysis is employed.
*Neder v. United States*, 527 U.S. 1 (1999).

**FACTS**

The issues of whether Cisneros "caused" the foreign commerce
and if so, whether the foreign commerce (either prong; foreign
calls or the car crossing) was sufficiently related to the alleged
murder for hire scheme (i.e., the nexus or jurisdictional issue)
are interrelated since they are both components of the first
element of the offense submitted to the jury in this case.

However, due to the complexity of these issues, the facts will
be outlined separately as to causation and as to the required nexus
between the alleged foreign commerce and the alleged murder for
hire scheme.

**A. Facts Relating To Causation**

As to "causation", Cisneros' trial counsel submitted Requested
Instruction No. 15A, seeking to instruct the jury on causation, as
follows:

> A person "causes" another to travel in foreign commerce
> or to use facilities in foreign commerce if he does an
> act with knowledge that the foreign travel or use of
> facilities in foreign commerce will follow in the
> ordinary course of business, or where such foreign travel
> or use of facilities in foreign commerce can reasonably
> be foreseen, even though not actually intended.

2R140.[37]

Trial counsel also submitted Requested Instruction No. 14,

seeking to instruct the jury her theory of the defense as it

related to causation and the relationship between the foreign

commerce and the murder for hire scheme.[38]

-----

[37] The requested instruction was taken from *United States v.
Sneed*, 63 F.3d at 385 n.4 (5th Cir. 1995), quoting *Pereira v.
United States*, 347 U.S. 1, 8-9 (1954), and applies the type of
language the Supreme Court has mandated in regard to whether a
person "causes" the mails to be used within the meaning of the mail
fraud statute, 18 U.S.C. Section 1341. In another murder for hire
case, *United States v. Sullivan*, 809 F.Supp. 934,936-37 (N.D. Ga.
1992), the District Court, in granting a judgment of acquittal, was
urged by the defendant to consider the standards relating to the
other statutes, including the mail fraud statute, in ascertaining
what standard to employ in addressing the jurisdictional nexus. The
government argued that the District Court only had to conclude that
the telephone call "relate to" the murder for hire scheme. The
District Court there held that the evidence was insufficient to
show that the use of the telephone in that case "related to" the
murder, let alone that they "facilitated" the murder. *Id.* at 937-
938.

[38] Only the second and third paragraphs of this instruction are
quoted below, as they are applicable paragraphs:

> It is also her position that the government has not
> proven beyond a reasonable doubt either (A) that she
> caused Heriberto Pizana to travel from Mexico to
> Brownsville on March 2, 1993, in furtherance of the
> alleged murder-for-hire; and/or (B) that she caused
> Daniel Garza to use a facility in foreign commerce to
> call Maria Martinez in Brownsville from San Fernando and
> Matamoros, Tamaulipas, Mexico between November 1992 and
> February 1993, in furtherance of the alleged murder-for-
> hire.

> Her position is that if Heriberto Pizana traveled in

The District Court did not inquire of the government's position regarding either requested charge. Rather, the District Court just denied them, to which Cisneros objected. 11R1520-1522,

---

foreign commerce on March 2, 1993, it was not related to any scheme to murder Albert Joseph "Joey" Fischer, Jr., but rather related to his alleged criminal activities of stealing and transporting stolen vehicles and/or distributing drugs. Her position is further that if Daniel Garza called Maria Martinez in Brownsville from San Fernando and Matamoros, Tamaulipas, Mexico between November 1992 and February 1993, any such calls were made by Daniel Garza to consult with Maria Martinez about whether his marital situation with his wife/ex-wife and family was changing and improving.

This instruction was denied by the District Court. That denial was raised on appeal, but rejected by both vacated panel opinions. It was not addressed in the en banc opinion.

The failure to submit a theory of defense instruction can violate due process. See Zemina v. Solem, 438 F.Supp. 455 (D.C. S.D. 1977), affirmed 573 F.2d 1027 (8th Cir. 1978)(holding failure to submit defendant's requested instructions on excusable and justifiable homicide, self-defense and defense of third persons deprived defendant of fundamental rights of trial by jury and due process of law); United States v. Zuniga, 6 F.3d 569, 571 (9th Cir. 1993)("failure to instruct the jury on the defendant's theory of the case, where there is evidence to support such instruction, is reversible per se and can never be considered harmless error."); United States v. Correa-Ventura, 6 F.3d 1070, 1076 (5th Cir. 1993), where the Court stated:

"The starting point in our analysis is that a trial court is afforded great latitude in determining what instructions are merited by the evidence presented. (citation omitted)   Counterbalancing this presumption, however, is the defendant's need to have the jury instructed as to potentially exculpating particulars of his defense which could ultimately affect its verdict. (citation omitted). Accordingly, where the district court "refuse[s] a charge on a defense theory for which there is an evidentiary foundation and which, if believed by the jury, would be legally sufficient to render the accused innocent," this court presumes that the lower court has abused its discretion." (citations omitted)

12R1599.[39]  As such, the court gave the jury no guidance on the first element of the offense,[40]as contained in the court's instructions, to wit:

> First: That the defendant **caused** another to travel in foreign commerce or **caused** another to use a facility in foreign commerce; 11R1502 at 1516; 2R93.

As noted by the District Court, Cisneros objected to everything that was inconsistent with her requested jury instructions. 11R1499-1500, 1520-1521.[41]  From Cisneros' requested instructions

---

[39] *See also* 11R1495-1502 where the topic of the charge and objections to it were first broached immediately before the District Court read the charge (over Cisneros' objections that there had only been insufficient time to review the charge). The District Court noted Cisneros' objections to everything he would submit that was different from that requested by Cisneros.

[40] The District Court actually instructed the jury as follows regarding the first element:

> For you to find the defendant, Dora Garcia Cisneros, guilty, you must be satisfied of all the following matters, that all of the following matters have been proven to your satisfaction by proof beyond a reasonable doubt.I'm making reference to all of them. Number one, that she caused another to travel in foreign commerce or caused another to use a facility in foreign commerce.

> Now, "facility in foreign commerce" includes means of transportation and communication. Now, as part of the burden of proof, the Government does not have to prove that the defendant intended that foreign travel occur, or that foreign commerce facilities be used in connection with the murder, or even that the defendant knew that foreign travel occurred or would occur, or that foreign commerce facilities were or would be used. But the Government must prove that somebody, you know, involved in the venture, itself, traveled in foreign commerce or caused another to use a facility in foreign commerce.

11R1516.

[41] In Cisneros' brief, the issue of the denial of her Requested Instruction No. 15A was raised as part **E** of **ISSUE NO. 3**. Although Cisneros' appellate counsel did not separately raise her objection

47

to the District Court's language on foreign commerce, appellate counsel did include the following in part **E** of **ISSUE NO. 3**:

> "Essentially, the failure to give the requested instruction allowed the jury to convict without a unanimous verdict as to what the term "caused" meant. This is the essence of a due process violation. A new trial should be ordered."

The failure to submit any instruction on causation was also raised in Cisneros' motions for rehearing from both vacated panel opinions, as well as in her en banc supplemental brief, but the utter failure to have the jury instructed on causation was not addressed by either panel opinion or the en banc Court. It was also raised on certiorari.

Cisneros asserts that this issue is sufficiently preserved by the actions of trial counsel and appellate counsel. *See also* discussion of *Osborne v. Ohio*, 495 U.S. 103 (1990), *infra* in the text near the conclusion of this **CLAIM FOR RELIEF**. Moreover, it should be deemed preserved for review herein because the due process violation was created and compounded, in essence, by the failure of the Fifth Circuit to fully and fairly address the issues raised in Cisneros' appellate brief and filings with said Court. In the unlikely event that the government attempts to allege that the issue is not preserved, Cisneros asserts that "cause" and actual "prejudice" have been shown for any procedural default (as reflected elsewhere in this motion in claims relating to ineffective assistance of trial and appellate counsel), *see e.g.*, *Murray v. Carrier*, 477 U.S. 478, 485-488 (1986); *Coleman v. Thompson*, 501 U.S. 722 at 753-754 (1991), *Bousley v. United States*, 523 U.S. 614 (1998), *United States v. Logan*, 135 F.3d 353, 355 (5th Cir. 1998) **or** that denial of review of this claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, *supra* at 750; *Murray v. Carrier*, *supra* at 495; *Bousley v. United States*, *supra*; *United States v. Logan*, *supra*. *See also Lawson v. Warden, Mansfield Correctional Institution*, 197 F.Supp. 1072, 1084-1090 (S.D. Ohio 2002) (finding it "inconceivable that a competent attorney would, for strategic reasons, fail to request a jury instruction on defendant's mental health, the crux of defendant's defense, *Id.* at 1085, and that the omission of an appropriate instruction was "tantamount to failing to instruct a jury on the critical issue in the case, for instance telling a jury that it can find the defendant guilty of an offense charged in the indictment without explaining the essential elements of that offense", *Id.* at 1087). The *Lawson* court went on to state at 1087:

> " There is a familiar adage that a jury is presumed to follow the instructions of law given by the court. However, there is no maxim that, if there are no

48

and objections, the District Court was clearly on notice that Cisneros desired an instruction on causation. However, the record reflects that the District Court basically refused to give any instructions that were essentially not contained in the Fifth Circuit Pattern Jury Instructions or the "Proposed Amended Government's Jury Instruction #1" (which the District Court gave as requested). *Compare* 1R193-195 with 11R1516 (quoted above in footnote).[42]

As noted above, the District Court's failure to submit an instruction on causation, as requested by Requested Instruction No. 15A, as well as her Requested Instruction No. 14, were raised on direct appeal.

Both vacated panel opinions reflect that the requested instruction was not substantially accurate and therefore, properly denied by the District Court. Neither of the vacated panel opinions nor the en banc opinion addressed the District Court's failure to charge the jury on the law relative to "causation" (i.e, that

---

instructions on point, the jury will be presumed to have found its way to the correct decision or applied the correct legal standards, on which it had not been instructed, to reach a factually and legally sustainable verdict."

[42] Notably, the Fifth Circuit Pattern Jury Instructions do not contain instructions relating to the indictment offense, to wit: 18 U.S.C. Section 1958. However, the language contained in Cisneros' Requested Instruction No. 15A (from the mail fraud statute) is contained in Fifth Circuit Pattern Jury Instruction, Substantive Offense Instruction No. 2.60.

Cisneros was the cause in fact and the proximate cause[43]), a portion of the first element submitted to the jury. And both vacated panel opinions reflect that Cisneros Requested Instruction No. 14 (a portion of the theory of defense instructions) was unnecessary.

The absence of an appropriate instruction on "causation" (and/or the theory of defense instruction) deprived trial counsel of the legal platform necessary to argue to the jury that Cisneros had not "caused" the alleged foreign commerce to have occurred so as to mandate a finding of "not guilty".

The jury was not instructed on the legal requirements of causation or Cisneros' theory of defense. Thus, the jury had no guidance on causation, a key component of the first issue the jury had to consider in ascertaining whether Cisneros had committed a crime. Essentially, the failure to give the requested instruction or otherwise submit an explanation of causation allowed the jury to convict without a unanimous verdict as to what the term "caused" (as contained in the first element of Section 1958) meant.

The absence of an instruction on causation was prejudicial to both jurisdictional bases or prongs (Garza's alleged telephone calls from Mexico and the car crossing on March 2, 1993), as it is entirely unclear that either of them were "caused" by Cisneros, in

---

[43] "Causation in criminal law has two requirements: cause in fact and proximate cause." *United States v. Spinney*, 795 F.2d 1410, 1415 (9th Cir. 1986) (citations omitted). *See also United States v. Hanousek*, 176 F.3d 1116, 1123-1124 (9th Cir. 1999); *United States v. Pitt-DesMoines, Inc.*, 970 F. Supp. 1359 (N.D. Ill. 1997).

the legal sense. As reflected in Cisneros' motions for rehearing from both vacated panel opinions as well as her supplemental en banc brief and petition for writ of certiorari, something more than "but for" causation or "foreseeability" is legally required.

The second vacated panel concluded that *United States v. Edelman*, 873 F.2d 791 (5th Cir. 1989), governed and only required the government to prove "simple 'but for' causation rather than foreseeability" in order to establish the causation aspect of the foreign commerce requirement in Section 1958(a). This interpretation of *Edelman* misapplied a conspiracy case to a straightforward murder-for-hire case and is prohibited by *Rewis v. United States*, 401 U.S. 808 (1971).

Reviewing 18 U.S.C. Section 1958 in light of 18 U.S.C. Section 1952 (the Travel Act) is appropriate. *Edelman*, 873 F.2d at 794. The Supreme Court's decision in *Rewis* defines the parameters of the nexus between the interstate/foreign commerce and the underlying offense for purposes of the Travel Act and, by extension, the murder-for-hire statute, by interpreting Congressional intent through the rule of lenity. 401 U.S. at 811-12. The Supreme Court held in *Rewis* that reading "foreseeability" into the statute violated Congressional intent by making it too easy for the government to establish a nexus. *Id*. at 813. "Congress" provided "little, if any, evidence that [it] intended that foreseeability should govern criminal liability under § 1952." *Id*. at 813. For the sake of comity, Congress intended that the proof demonstrate, if not intent, something more than "but-for causation" **and**

"foreseeability" in order to prevent expansive interpretation of the interstate/foreign nexus that would swallow up state law offenses and state jurisdiction.

The second vacated panel's "but-for causation" rule violates the principle oft-repeated throughout the Supreme Court's commerce clause jurisprudence, in addition to *Rewis*, that Congress may not create a jurisdictional "element," such as the interstate/foreign commerce nexus in §§ 1952 and 1958, that does not meaningfully limit federal power, **especially** "in areas such as criminal law enforcement . . . where States historically have been sovereign." *United States v. Lopez*, 514 U.S. 549, 561, 564 (1995). By creating its "but-for causation" model, the second vacated panel, in the words of Judge Learned Hand, formed "a view of causation that would obliterate the distinction between what is national and what is local in the activities of commerce." *Lopez*, 514 U.S. at 567 (quoting cases). This is particularly egregious in light of the fact that this was an intrastate offense that the government attempted to transform into a federal offense (as demonstrated by the fact that Cisneros was previously acquitted in state court for the substantive offense of the murder of Fischer).

Moreover, every Section 1952, 1952A, and 1958 case of which counsel is aware in which the defendant was directly charged, as opposed to charged as a coconspirator or aider and abettor,[44] makes

----

[44] *Edelman*'s treatment of causation would apply to Cisneros' case only if she had been charged with conspiracy. Like *Edelman*, *United States v. Perrin*, 580 F.2d 730 (5th Cir. 1978), and *United States v. Razo-Leora*, 961 F.2d 1140 (5th Cir. 1992) are inapplicable to Cisneros' case to the extent that they also are

explicit or implicit findings regarding whether the **defendant intentionally or knowingly**[45] **caused** the travel or use of interstate facility. This involves the defendant herself travelling, using the facility, or an agent travelling or using the facility under the defendant's direction, and at least with her knowledge that the interstate facility is being used to further the offense. *See, e.g., United States v. Finley*, 175 F.3d 645, 646 (8th Cir. 1999) (defendant personally put stamps on letters that were mailed)); *United States v. Weathers*, 169 F.3d 336, 344 (6th Cir. 1999) (defendant's numerous cell-phone conversations); *United States v. Garrett*, 716 F.2d 257, 265 (5th Cir. 1983) (defendant instructed codefendant to make an interstate phone call); *United States v. Pecora*, 693 F.2d 421, 424 (5th Cir. 1982) (phone call by defendant in Georgia to sheriff in Louisiana); *United States v. Jones*, 642 F.2d 909 (5th Cir. 1981) (defendant travelled between states to cash wagering checks); *United States v. Perrin*, 580 F.2d 730; 735

---

based upon conspiracy charges and convictions. Because the *Edelman* jury was charged with conspiracy, it could automatically find Edelman **vicariously liable** for the act of coconspirator Young sending a letter through the mail to Zabitosky. *Edelman*, 873 F.2d at 792. This cannot be said of Garza and Martinez, because the jury was not charged with finding that they were co-conspirators with Appellant. Without the conspiracy charge, their actions had to be more substantially tied to Cisneros than through her possible foresight of those actions.

[45] The cases rely upon "intent" or "knowledge" to establish the jurisdictional nexus. The point, however, is that something more than foreseeability is required and the jury must be charged with finding something more than foreseeability. Otherwise, a conviction can be obtained without any jury finding that the defendant actually caused the foreign commerce, which would run afoul of the Supreme Court's pronouncement in *United States v. Gaudin*, *supra*, that the jury must find every element of the offense beyond a reasonable doubt.

(5th Cir. 1978) (defendant, on instructions from co-defendants, made interstate telephone calls); *United States v. Archer*, 486 F.2d 670, 683 (2d Cir. 1973) (defendant's *receipt* of a phone call from Paris, France, in no way initiated by the defendant, although expected by him, was insufficient to establish nexus); *United States v. Kahn*, 472 F.2d 272, 285 (2d Cir. 1973) (finding nexus based upon extensive interstate travel and use of mails, distinguishing *Rewis* on basis that defendants there did not engage in interstate activities themselves and interstate travel was marginal or unforeseen). In *United States v. Marek*, *supra*, for example, Marek personally delivered $500 to Western Union in Houston for transfer to the undercover agent in Harlingen. *Marek*, 198 F.3d 532 (5th Cir. 1999).

Given this backdrop, and considered in conjunction with the failure to also instruct the jury on the appropriate relationship between the alleged foreign commerce (both prongs or bases) and the murder for hire scheme (discussed below), the jury was not fully, fairly, or even remotely instructed in a manner necessary to ensure against a Fifth and Sixth Amendment violation.[46]

### B. Facts Relating To The Relationship Between The Foreign Commerce And The Alleged Murder For Hire Scheme

---

[46] Essentially, Cisneros was convicted without the jury having any guidance as to what was required before it could find two key components of the first element of the statute. As such, the jury verdict on the first issue -- causation of foreign commerce -- is entirely unreliable. Moreover, the jury did not determine that either prong of the foreign commerce (telephone calls or the car crossing) was related to the murder for hire scheme, thus posing a Fifth and Sixth Amendment violation as to the nexus between foreign commerce, if any, and the murder for hire scheme.

As to the relationship between the alleged foreign commerce and the alleged murder for hire scheme, Cisneros' trial counsel submitted Requested Instruction No. 12, which stated, in relevant part:

> For you to find the defendant guilty of this crime, you must be convinced that the government had proved each of the following elements beyond a reasonable doubt:
>
>> **FIRST ELEMENT:** That the defendant: (A) caused Heriberto Pizana to travel from Mexico to Brownsville on March 2, 1993, **in furtherance of the alleged murder-for-hire**; and/or (B) caused Daniel Garza to use a facility of foreign commerce to call Maria Martinez in Brownsville from San Fernando and Matamoros, Tamaulipas, Mexico between November 1992 and February 1993, **in furtherance of the alleged murder-for-hire....**

2R115 at 130-133 (emphasis in original).[47] This instruction, of course, was supplemented by Requested Instruction No. 14, Cisneros' theory of defense instruction quoted above in subsection **A** of this **CLAIM FOR RELIEF**.

The District Court did not inquire of the government's position regarding this requested charge. Rather, the District Court just denied it, to which Cisneros objected. 11R1520-1522, 12R1599. *See also* 11R1495-1502 (objections and statement of

---

[47] As reflected at the bottom of Requested Instruction No. 12, this requested instruction was based on a charge submitted by United States District Judge Harry Lee Hudspeth in United States v. Aguilar, No. EP-97-CR-938, as modified for the facts of this case in light of the government's Bill of Particulars. 2R133, 1R320. Trial and appellate counsel believed that the proposed instruction's requirement that the phone call or travel be "in furtherance of" the murder scheme mirrored the Fifth Circuit's threshold for satisfying the jurisdictional element. *See United States v. Edelman*, 873 F.2d 791, 795 (5th Cir. 1989). Trial counsel and appellate counsel also believed it mirrored the language of the indictment. 1R577.

insufficient time being afforded by District Court to object).

Instead, the District Court instructed the jury regarding the foreign nexus in a manner grossly different from Cisneros' Requested Instruction No. 12. The District Court instructed the jury that:

> The Government must prove that somebody, you know, involved in the venture, itself, traveled in foreign commerce or caused another to use a facility in foreign commerce.
>
> * * *
>
> Now, "facility in foreign commerce" includes means of transportation and communication. Now, as part of the burden of proof, the Government does not have to prove that the defendant intended that foreign travel occur, or that foreign commerce facilities be used in connection with the murder, or even that the defendant knew that foreign travel occurred or would occur, or that foreign commerce facilities were or would be used. But the Government must prove that somebody, you know, involved in the venture, itself, traveled in foreign commerce or caused another to use a facility in foreign commerce.

11R1516 (orally read to jury); 1R93 (written instruction which judge was using as model to read from and which were supplied to the jury at 12R1593-1594).[48]  As noted by the District Court, Cisneros objected to everything that was inconsistent with her

---

[48] While this instruction may have been consistent with the discussion of the jurisdictional requirements of Section 1958, it was sufficiently misleading to have separately constituted reversible error in light of the failure to inform the jury that, at a minimum, there had to be some relationship between the alleged foreign commerce and the murder for hire scheme. *Cf. United States v. Rossomando*, 144 F.3d 197 (2nd Cir. 1998)(holding that jury instruction on "good faith" defense was sufficiently misleading to constitute plain error); *United States v. Ahmad*, 101 F.3d 386 (5th Cir. 1996)(holding that there was at least a reasonable likelihood that the jury applied the instructions in an impermissible fashion); *Brecht v. Abrahamson*, 507 U.S. 613, 638 (1993)(setting forth "substantial and injurious effect" test); *United States v. Shaid*, 937 F.2d 228, 231-232 (5th Cir. 1991)(en banc).

requested jury instructions. 11R1499-1500, 1520-1521.[49] As was the case above regarding "causation" (and theory of the case), the District Court was clearly on notice that Cisneros desired an instruction on the relationship between the alleged foreign travel (both prongs) and the alleged murder for hire scheme, but refused to do so (presumably since type of charge was not contained in the Fifth Circuit Pattern Jury Instructions, which contain no guidance on Section 1958). Cisneros' Requested Instruction No. 14 on the theory of her defense reiterated the request for an appropriate instruction on the proper relationship between the alleged foreign commerce and the alleged murder for hire scheme.

The language of the District Court's actual instruction to the jury allowed the jury to convict Cisneros if "somebody...involved" traveled in or used a facility of foreign commerce *regardless of the activity's connection, if any, to the alleged murder for hire scheme*. **In fact, it affirmatively allowed the jury to convict even**

---

[49] In Cisneros' brief, the issue of the denial of her Requested Instruction No. 12 was raised as part **B** of **ISSUE NO. 3**. Although Cisneros' appellate counsel did not separately raise her objection to the District Court's language on foreign commerce as an issue on appeal, appellate counsel did include the following in part **B** of **ISSUE NO. 3**:

These errors were compounded by the court's responses to various notes from the jury defining (over Appellant's objection) "foreign commerce" without including a requirement that the foreign commerce be related to and in furtherance of the alleged murder-for-hire scheme. 2R71 ("you are instructed that foreign commerce means from one country to another country. Further, if words are not legally defined for you, you are to given them their common meaning." 12R1601-1602). *See also* 12R1502-1608. The last question from the jury came in at 1:45 p.m. and an objectionable answer was submitted by the court at 2:12 p.m.. 12R1602-1608. Thereafter, the jury returned a verdict at 2:40 p.m. 12R1609.

**if the foreign commerce facilities were not used in connection with the murder for hire scheme.** Again, as noted by the District Court, Cisneros was deemed to have objected to this jury instruction because it was inconsistent with what Cisneros had requested in her proposed jury instructions.

During jury deliberations, jury note number 1 from the jury sought a definition of foreign commerce: ""Jury aid stating law concerning foreign commerce of communication and travel." 12R1600-1602. The District Court, over Cisneros' objection (and reurging of her previously Requested Instruction No. 12), instructed the jury that:

> "You are instructed that foreign commerce means from one country to another country.  Further, if words are not legally defined for you, you are to give them their common meaning."

*See* 12R1602-1607.

Accordingly, the jury was not instructed on whether either prong or basis of the alleged foreign commerce (Garza's alleged telephone calls to Martinez from Mexico and/or the car crossing on March 2, 1993) was sufficiently related to the murder for hire scheme to justify a unanimous verdict as to this critical component of the first element of the statute under which she was prosecuted.

The District Court's failure to submit an instruction on whether the foreign commerce was sufficiently related to the murder for hire scheme, as requested by Instruction No. 12 (and reurged by

counsel in response to the jury's note), was raised on appeal.[50]

Both vacated panel opinions reflect that the requested instruction was **not** substantially accurate and therefore, properly denied by the District Court. According to the vacated panel opinions, the proper language should have been whether the foreign commerce **"facilitated"** the murder for hire scheme, not whether the foreign commerce was **"in furtherance of"** the murder for hire scheme. Thus, both vacated panel opinions, but not he en banc Court, decided that the telephone calls from Garza "facilitated" the murder for hire scheme, a finding not made by the jury.

Contrary to the holding of the two vacated panel opinions that the proper standard is **"facilitated"**, the en banc opinion used the term **"in furtherance"** of the murder for hire scheme at two

---

[50] The failure to submit any instruction on what the jury had to find before it could find that the foreign commerce was sufficiently related to the murder for hire scheme was raised in Cisneros' motions for rehearing from both vacated panel opinions, as well as in her en banc supplemental brief, but the utter failure to have the jury instructed on this jurisdictional element of the offense was not addressed by either panel or the en banc Court. It was also raised on certiorari.

As noted above in connection with subsection **A** of this **CLAIM FOR RELIEF** (i.e., the "causation" argument above), Cisneros asserts that this issue is sufficiently preserved, but that if the government takes a contrary position, Cisneros asserts that "cause" and actual "prejudice" have been shown for any procedural default (as reflected elsewhere in this motion), *see e.g., Murray v. Carrier*, 477 U.S. 478, 485-488 (1986); *Coleman v. Thompson*, 501 U.S. 722 at 753-754 (1991), **or** that denial of review would result in a fundamental miscarriage of justice. *Coleman v. Thompson, supra* at 750; *Murray v. Carrier, supra* at 495. *See also Lawson v. Warden, Mansfield Correctional Institution*, 197 F.Supp. 1072, 1084-1090 (S.D. Ohio 2002) (quoted above in connection with subsection **A** of this **CLAIM FOR RELIEF**).

locations,[51] even though the en banc opinion did n address the
sufficiency of the evidence other than to note that the evidence
was uncontested that the hit men traveled from Mexico to Texas (a
"**dead wrong**" factual finding directly contrary to the two vacated
panel opinions as well as the government's opening statement and
proof). Cisneros continues to maintain that the distinction made by
the two vacated panel opinions is a distinction that is "dead
wrong" and subject to review in this motion to vacate.[52]

_____

[51] The en banc opinion states the following:

"The *Marek* majority acknowledged *Cisneros* but reasoned
that it was not binding because, **in furtherance** of her
murder-for-hire scheme, Cisneros had caused international
telephone calls to be made, an activity that indisputably
satisfied the jurisdictional element even if Marek's
wholly *intra* state communication might not."

\* \* \*

"A panel of this court concluded that a reasonable jury
could have found that (1) the fortune teller had
participated in international telephone calls as
Cisneros's agent, and (2) those calls were sufficiently
connected to the murder to be "**in furtherance**" of that
crime.[FN11] The panel therefore affirmed Cisneros's
conviction.

    FN11. *Id.* at 343-45."

(emphasis added).

[52] As reflected in the text associated with **CLAIM FOR RELIEF
NOS. 1 to 5,** *supra*, the vacated panel opinions erred in suggesting
the existence of a meaningful legal difference between the terms
"facilitate" and "furtherance" for interpretation of the Travel Act
and murder-for-hire statutes.  The Supreme Court and the Fifth
Circuit have used the terms interchangeably in cases dealing with
Travel Act prosecutions. *See, e.g., Erlenbaugh v. United States,*
409 U.S. 239, 247 (1972) ("furtherance"); *Rewis v. United States,*
401 U.S. 808, 813 (1971) ("furtherance"); *Presley, supra*
("furtherance"); *United States v. Roberson,* 6 F.3d 1088, 1094 (5th
Cir. 1993) ("facilitate").  The use of the term "facilitate" in the
cases cited by the panels is merely tracking the statutory language

Clearly, the absence of an appropriate instruction on this critical component of the first element of the offense -- even considered without reference to the failure to charge on "causation" and the "theory of defense" instruction -- was critical to obtaining a reliable jury verdict on the first element of the offense. The jury was not instructed that before it could find either prong of the foreign commerce (i.e., Garza's alleged calls

---

in 18 U.S.C. § 1952. *See United States v. Perrin*, 580 F.2d 730, 736 (5th Cir. 1978) ("[I]t is enough that the . . . use of interstate facilities makes easier or facilitates the unlawful activity.").

Furthermore, the vacated panel opinions expressly recognized a conflict between Cisneros' case and *United States v. Houlihan*, 92 F.3d 1271, 1292 (1st Cir. 1996), wherein the First Circuit "required the use of the facility in interstate commerce to be 'in furtherance' of the underlying murder scheme."

The panels' findings that the Fifth Circuit itself only requires a showing that the use of the facility "facilitated" the underlying crime, i.e., "made it easier," also is inconsistent with other Fifth Circuit opinions. *United States v. Presley*, 478 F.2d 163, 168 (5th Cir. 1973) (reversing district court's denial of motions to withdraw nolo contendere pleas following *Rewis*, on finding that facts had not been developed regarding the "extent and significance of the crossing of state lines to the furtherance of the operations of [an] illegal gambling casino"); *United States v. Gooding*, 473 F.2d 425, 427-28 (5th Cir. 1973) ("The Travel Act does not proscribe all interstate travel which may incidentally lead to a furthering of unlawful activity.") (citing *United States v. Hawthorne*, 356 F.2d 740 (4th Cir. 1966)).

Absent an appropriate jury instruction, the jury was not allowed to determine whether the foreign telephone calls, if any, or the car crossing, furthered, facilitated or made easier the alleged murder for hire scheme or, actually, related in any manner to the alleged murder for hire scheme. As such, Cisneros was convicted without a jury finding on this essential element of the offense, a due process violation. *See e.g.*, *In Re Winship*, *supra* and *United States v. Gaudin*, *supra*. It also effectively allows the Commerce Clause to be stretched past the point of constitutionality because there was no requirement for the jury to find that foreign commerce related, in any manner, to the alleged murder for hire scheme.

to Martinez from Mexico or the car crossing) had been "caused" by Cisneros', it also had to find that the foreign commerce related to the murder for hire scheme in some manner. In other words, the foreign calls or car crossing did not have to be found by the jury to have "facilitated" or to have been "in furtherance of" the murder for hire scheme. Only someone involved in the scheme had to have used phone or traveled; not that the use of the phone or the travel was related to the murder for hire scheme, facilitated the murder for hire scheme, or was in furtherance of the murder for hire scheme. Absent a jury finding that either Garza's alleged phone calls or the car crossing did "facilitate" or was "in furtherance of" the murder for hire scheme, a guilty verdict is not a jury finding of the first element of the offense, let alone a reliable jury finding as to the first element of the offense.[53]

As reflected by trial counsel's final argument at 12R1561-1574, the penultimate issue for the jury's consideration in this case was whether the alleged calls from Garza to Martinez from Mexico or the car crossing was sufficiently related to the murder for hire scheme to justify a finding of guilt.

The prejudice from the denial of an appropriate instruction on the required relationship includes the fact that trial counsel's

---

[53] Cisneros also asserts that the failure to require a jury finding on the "nexus" between the foreign commerce and the murder for hire scheme results in an unconstitutional application of 18 U.S.C. Section 1958 to her because, absent such a jury finding, there is no jury determination of the jurisdictional element. Absent a jury finding on the jurisdictional element, application of 18 U.S.C. Section 1958 to her is in violation of the Commerce Clause (as exceeding the limits of Congressional power). *See United States v. Lopez*, 514 U.S. 549 (1995).

attempt to argue that the foreign commerce was not sufficiently related to the murder for hire scheme was not supported by any legal instruction trial counsel could identify for the jury. Absent such a legal instruction, they were unable to give the jury a legal mandate for a finding of "not guilty", and had to argue simply that the government had not proved its case, but without any legal requirement contained in the jury instructions. In fact, the jury instructions told the jury that such foreign commerce did not have to intended by her or even known to her, and did not impose any requirement of relationship. As such, trial counsel were handicapped and unable to direct the jury to the court's instructions for a legal reason why the deficiencies in the government's proof relating to foreign commerce mandated a finding of not guilty. Similarly, the absence of such an instruction allowed the government to actually argue to the jury that the foreign commerce did not have to be related to the murder for hire scheme. *See* 12R1529, 1575.[54]

Considering the failure to instruct on: (1) "causation"; and

---

[54] The District Court's instruction on foreign commerce was clearly deficient. Although the evidence was insufficient to show that any foreign phone calls or travel furthered or facilitated the murder, the jury was permitted to ignore this insufficiency and convict Cisneros on the basis of phone calls and travel **not connected to the murder**. Moreover, the District Court's instruction on foreign commerce also allowed the jury to convict on facts broader than the indictment (i.e., the indictment, as amplified by the government's bill of particulars, alleged that Heriberto Pizana travelled in foreign commerce and that Daniel Garza used telephone facilities to call from Mexico to Brownsville). This in essence constituted a constructive amendment of the indictment.

(2) "the required relationship between the foreign commerce and the alleged murder for hire scheme" (both of which were amplified by a theory of defense instruction, which was also denied),[55] the jury was not called upon to focus upon what the law requires: whether Cisneros legally "caused" someone to use foreign commerce that was actually the type of foreign commerce which is within the scope of 18 U.S.C. Section 1958. Clearly, the government could not have relied upon Garza's travel to Mexico to justify a constitutionally permissive conviction, as that travel was for his own personal reasons, unrelated to the murder for hire scheme. Martinez' questions to Garza during such personal calls may or may not be sufficient to withstand constitutional scrutiny, but the jury was not required to make that finding. Absent a jury finding on that critical issue, and the issue of the car crossing, there can be no valid conviction. Indeed, as to the car crossing, the fact that vehicles bearing the same license plate had crossed the border eighteen times prior to the date in question demonstrates the necessity of adequate instructions before a jury could rationally conclude that Cisneros "caused" the crossing and that the crossing "facilitated" or was "in furtherance of" the murder for hire scheme. Otherwise, pure speculation is necessary to conclude that the jury made a finding, let alone a reliable finding, that

---

[55] The District Court should have inquired of the government regarding its position on Cisneros' requested instructions. Had it done so, the government might not have even objected, or, if it had, it might have at least alerted the District Court to the proposition that some relationship between the murder for hire and the foreign commerce prongs was necessary.

Cisneros "caused" either: (1) Garza's alleged calls from Mexico to Martinez in Brownsville and that the alleged calls facilitated or were in furtherance of the alleged murder for hire scheme; or (2) the car crossing and that the car crossing facilitated or was in furtherance of the alleged murder for hire scheme.

In this regard, this Court should be aware that the jury obviously had some problems with the jurisdictional issue, because it inquired of the District Court. The District Court then informed the jury that it had to merely find one of the two jurisdictional basis: either foreign telephone calls or foreign travel.[56] However, the jury was not required to find that either or both of the jurisdictional bases or prongs were related to the murder for hire scheme, thus depriving Cisneros of a jury verdict that included the penultimate element of the offense of murder for hire.

There are a dearth of cases under 18 U.S.C. Section 1958, and none remotely on point. The closest case counsel can locate on "causation" is the Second Circuit's opinion in *Henderson v. Kibbe*, 534 F.2d 493 (2nd Cir. 1976), *reversed* 431 U.S. 145 (1977). In *Henderson*, the Second Circuit held that since the Constitution requires proof beyond a reasonable doubt of every fact necessary to constitute the crime [citing *In Re Winship*, 397 U.S. 358 (1970)],

---

[56] This was the critical issue and, unlike those cases where the failure to submit materiality to the jury was deemed harmless error, the issue of whether the foreign commerce was related to the murder for hire scheme was hotly contested and there was not overwhelming evidence that either jurisdictional basis was established. The failure to require the jury to thus find that either or both jurisdictional bases or prongs were related to the murder for hire scheme was thus harmful to Cisneros.

the failure of the state court to instruct the jury on an essential element as complex as the causation issue (in a second degree murder case) created an impermissible risk that the jury had not made a finding that the Constitution required. *Id* at 498-499.[57] The Second Circuit also found that the absence of a requested instruction by trial counsel or an objection to the charge by trial counsel was not a deliberate bypass precluding federal habeas review. *Id*. at 497.

On certiorari, the Supreme Court noted that petitioner argued that the Second Circuit's decision should be affirmed on either of two independent grounds: (1) that the omission of an instruction on causation created the danger that the jurors failed to make an essential factual determination as required by *Winship*; or (2) assuming that they did reach the causation question, they did so without adequate guidance and might have rendered a different verdict under proper instructions." 431 U.S. at 152. In addressing these arguments, the Supreme Court noted that "a fair evaluation of the omission in the context of the entire record requires rejection

_____

[57] According to the Second Circuit:

"The omission of any definition of causation, however, permitted the jury to conclude that the issue was not before them or that causation could be inferred merely from the fact that Stafford's death succeeded his abandonment by Kibbe and Krall.

"...The possibility that jurors, as laymen, may misconstrue the evidence before them makes mandatory in every case instruction as to the legal standards that they apply....Error in the omission of an instruction is compounded where the legal standard is complex and requires that fine distinctions be made...."

of both arguments." *Id.*

As to the first argument, the Supreme Court summarily rejected it by noting that the jurors were informed that the case included a causation issue that they had to decide, the element of causation was stressed in arguments of both counsel, the statutory language was read to the jury, the statutory language tracked the indictment, which was given to the jury, and the judge instructed the jury that it must find all elements beyond a reasonable doubt. *Id.* at 153-154.

As to the second issue, the Supreme Court rejected it because: (1) the omission of an appropriate instruction on causation, other than the statutory language itself, was not even noticed until a judge on the state appellate court noted it in his dissenting opinion, thus indicating a remote probability that the omission substantially affected the jury deliberations; *id.* at 155; and (2) an appropriate instruction on causation would have informed the jury that if the ultimate harm should have been foreseen as being reasonably related to the defendants' conduct, that conduct should be regarding as having caused the deceased death, which was substantially covered by the jury instructions that required a finding that the defendants had acted "recklessly". *Id.* at 156.

Cisneros' case, however, is entirely distinguishable. First, unlike *Henderson*, *supra*, two different components of one element of the offense are involved: (a) "causation" and (b) the "nexus" or relationship between the foreign commerce and the murder for hire. Second, unlike *Henderson*, *supra*, the jury instructions did not

67

include any language on the relationship between the foreign commerce and the murder for hire (other than that Cisneros did not have to intend or even know that foreign commerce was involved). Third, unlike *Henderson*, *supra,* no other instruction substantially covered the omission of an instruction on "causation". Fourth, unlike *Henderson*, *supra*, Cisneros requested instructions on "causation" and "the relationship between the foreign commerce and the murder for hire" (coupled with her theory of defense instruction), which were preserved at trial and raised on appeal.

An additional line of cases provides support. 18 U.S.C. Section 924(c)(1) provides that:

> Whoever, during and in relation to any crime of violence or drug trafficking crime...uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...."

Both the "use" prong and the "carry" prong have been interpreted to require more than the mere possession of a firearm by a person who commits a drug offense. *See Bailey v. United States*, 516 U.S. 137, 143-144(1995)(interpreting the use prong); *United States v. Hernandez*, 80 F.3d 1253, 1257-58 (9th Cir. 1996) (interpreting the carry prong).

In *Smith v. United States*, 508 U.S. 223 (1993), the Supreme Court considered the significance of the "in relation to" language of 18 U.S.C. Section 924(c)(1). The Court stated:

> "The phrase 'in relation to' thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvment cannot be the result of accident or coincidence. As one court has observed, the 'in relation to' language allays explicitly the concern that

68

> a person could be punished under Section 924(c)(1) for
> committing a drug trafficking offense while in possession
> of a firearm even though the firearm's presence is
> coincidental or entirely unrelated to the crime. *Smith*,
> *supra* 508 U.S. at 238 (quotations and citation omitted).

Accordingly, where a district court fails to include language in its jury instructions requiring the jury to find the proper relationship between the gun and drug trafficking offense (i.e., submission of the "in relation to" language), a due process denial occurs that, depending upon the record, can constitute harmful error. *See e.g., United States v. Mendoza*, 11 F.3d 126 (9th Cir. 1993); *United States v. Gallegos-Corrales*, 37 F.3d 548 (9th Cir. 1994). *Cf. United States v. Gobert*, 139 F.3d 436 (5th Cir. 1998)(upholding as cognizable under Section 2255 a challenge to conviction based upon *Bailey v. United States, supra); United States v. Broussard*, 987 F.2d 215 (5th Cir. 1993), *overruled on other grounds, J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127 (1994). In the context of 18 U.S.C. Section 1958, the relationship between the alleged foreign commerce and the alleged murder for hire scheme must similarly be submitted to the jury, whether that relationship is governed by a "facilitate" standard, as the vacated panel opinions concluded, or by a "in furtherance" standard, as requested by Cisneros.

An additional analogy can be found in the Supreme Court's opinion in *Osborne v. Ohio*, 495 U.S. 103 (1990). There, the defendant was charged with possession of child pornography in state court. Before trial, he contended the statute was overbroad under the First Amendment. On appeal, he pressed that challenge, and the

69

Ohio Supreme Court affirmed the conviction, but interpreted the statute in a manner as only applying to depictions of nudity involving a lewd exhibition or graphic focus of a minor's genitals. It also found that scienter was an essential element of the offense. Osborne objected to the Ohio Supreme Court's opinion on the ground that the trial judge had not insisted that the government prove lewd exhibition and scienter as elements of the crime. The Ohio Supreme Court rejected these contentions because Osborne had failed to object to the jury instructions at his trial and the Court did not believe that the failures of proof amounted to plain error.

The Supreme Court granted certiorari and in the third portion of its opinion, addressed Osborne's contention that he was denied due process because it is unclear that his conviction was based on a finding that each of the elements of the statute was present. *Id*. at 122-123. According to the Supreme Court, the Ohio Supreme Court had held that the state had to prove both scienter and that the defendant had possessed materials depicting a lewd exhibit or graphic focus on genitals, but the jury had not been instructed that it could convict Osborne only for conduct that satisfied those requirements. Because Osborne had not objected at trial, as mandated by Ohio state law, the Supreme Court held that he had procedurally defaulted his due process challenge to the scienter requirement. However, as to the lewdness issue, the Supreme Court found no procedural default (because he had filed a motion to dismiss) and pressed the issue of the State's failure of proof on

70

lewdness before the trial judge, thereby negating any meaningful gain had he objected to the jury instructions. *Id.* at 124-125. Accordingly, the Supreme Court addressed the merits and found that since the jury was not instructed on lewdness, the conviction offended due process. *Id.* at 125.

Under *Osborne*, Cisneros' actions in requesting instructions on causation and the required nexus (both of which were supplemented by her theory of the case instruction), are sufficient to preserve the issue. Furthermore, the District Court specifically noted, on a number of occasions, that Cisneros was objecting to anything that the District Court submitted that was inconsistent with her requested instructions. Additionally, as in *Osborne*, Cisneros raised the issue of the required nexus as to the foreign commerce in her pretrial motion for bill of particulars, 2R426-430, as well as in her motion for judgment of acquittal filed during trial. 1R103 *et seq*. No procedural default occurred as to these due process claims.

## CONCLUSION

When a jury returns a conviction for conduct that is not criminal, a due process violation occurs. Absent appropriate instructions on "causation" and "the required relationship between the foreign commerce and the murder for hire scheme", the verdict of guilty in this case does not include every element of the offense, let alone a reliable verdict on every element of the offense. It is entirely probable that the jury convicted Cisneros without any finding that she legally "caused" the foreign commerce,

71

and entirely clear that the jury convicted her without finding that either prong of the foreign commerce "facilitated" or was "in furtherance" of the murder for hire statute. It would be a denial of due process to allow Cisneros to be incarcerated for life when the jury was not required to find that Cisneros "caused" either or both of the jurisdictional bases to have occurred in a manner that were related to the murder for hire scheme, thus depriving Cisneros of a jury verdict that included the penultimate element of the offense of murder for hire.[58]   The Fifth and Sixth Amendments require more than what Cisneros received and a new trial should be granted.

---

[58] As stated in connection with **CLAIM FOR RELIEF NOS. 1 to 5**, *supra*, the elements of murder-for-hire in 18 U.S.C. § 1958 are:

> (a) traveling or causing another to travel in interstate or foreign commerce, or using or causing another to use the mail or other facility of interstate or foreign commerce that facilitates the murder-for-hire scheme; (2) with intent that a murder be committed in violation of the laws of any State or the United States; and (3) as consideration for the receipt of pecuniary value.

*United States v. Sharpe*, 193 F.3d 852, 863 n.6 (5th Cir. 1999) (as modified for the second vacated panel's opinion that the foreign commerce must "facilitate" the murder-for-hire).

CLAIM FOR RELIEF NO. 7

**CISNEROS WAS DENIED HER RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, BY VIRTUE OF THE PROSECUTION'S NON-DISCLOSURE OF THE SEQUENCE OF EVENTS SURROUNDING DANIEL GARZA'S GROSS MODIFICATION OF HIS STORY (AS REFLECTED BY COMPARING HIS STATEMENTS TO THE FBI ON FEBRUARY 5 AND 18, 1998, TO HIS TESTIMONY ON MAY 11, 1998, AT CISNEROS' TRIAL)**

**ASSERTION**

Cisneros asserts that she was denied her Fifth Amendment right to due process of law by virtue of the non-disclosure of the sequence of events surrounding Daniel Garza's gross modification of his story, as reflected by comparing the substance of his statements to FBI Agents David Church and Freddy Vela on February 5 and 18, 1998, to the substance of his testimony at Cisneros' trial on May 11, 1998.

**LAW**

As established by *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Bagley*, 473 U.S. 667 (1985), and *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court has made it clear that, regardless of the good faith or bad faith of the prosecutors, the suppression of evidence favorable to the accused violates due process where the evidence is material to either guilt or punishment. Thus, the government is under an affirmative obligation to disclose exculpatory and impeaching evidence to the defense. The failure to do so results in a constitutional violation where there is a "reasonable probability" that had the non-disclosed information been produced, the result of the trial would have been different. A reasonable probability exists where the non-disclosed

73