examine Garza and impeach his trial testimony (as summarized in the

**SECOND ACT/OMISSION**), to wit:

**1.** On March 31, 1993, Garza signed a five (5) page handwritten statement which had been written for him by Deputy Abel Perez, which was reduced to a three (3) page typewritten statement (which he also signed). *See* **Exhibit 6.** No calls from Mexico were mentioned, although Garza did state that he had called Martinez from San Antonio (pages 1 and 3 of typewritten) and Brownsville (page 1 of typewritten).

**2.** On March 9, 1994, during his state court trial, Garza testified. *See* **Exhibit 7** at pages 39-96. Garza did not claim that he had called Martinez from Mexico, although Garza testified that he had called Martinez from San Antonio. **Exhibit 7** at page 48.

**3.** On June 28, 1996, Garza was interviewed by FBI Agents Barry Ross and Jorge Cisneros. *See* **Exhibit 8.** No calls from Mexico (or any other location) were mentioned by Garza.

**4.** On September 30, 1996, FBI Agent Ross received a letter from Garza, dated September 2, 1996. No calls from Mexico (or anywhere else) were mentioned, although Garza indicated his willingness to assist if certain conditions of cooperation could be met. *See* **Exhibit 9.**

**5.** On November 22, 1996, Garza was interviewed by FBI Agents Barry Ross and Jorge Cisneros. No calls from Mexico (or any other location) were mentioned by Garza. *See* **Exhibit 10.**

**6.** On December 9, 1996, Special Agent Ross received a letter from Garza, dated December 3, 1996. No calls from Mexico (or anywhere else) were mentioned, although Garza indicated his willingness to assist if certain conditions of cooperation could be met. *See* **Exhibit 11.**

**7.** On February 5, 1998, Garza was interviewed by FBI Agents David Church and Freddy Vela. This memorandum of interview reflects the following:

> "Garza advised, before Fischer was murdered, he would call Martinez quite often regarding his martial problems. According to Garza, during every phone conversation, Martinez would ask about the job to kill Fischer. Garza stated Martinez would refer to the job as a "roof job". **Garza recalled making several**

114

> calls to Martinez from public telephones in
> Matamoros, Mexico, and each time Martinez
> referred to the "roof job" by asking when
> Garza would find someone to do the job. Garza
> also advised he would *always call Martinez
> collect*." (emphasis added) *See* Exhibit 12.

**8.** On February 18, 1998, Garza was interviewed by FBI
Agents David Church and Freddy Vela. This memorandum of
interview reflects the following:

> " Garza advised he made telephone calls from
> *Matamoros, Mexico*, using public telephones
> between *September and November 1992*, to call
> Maria Martinez. According to Garza, these
> calls were *all collect calls*. Garza could not
> recall where the public telephones he used in
> *Matamoros* were located." (emphasis added) *See*
> Exhibit 13.

No FBI 302's of any interview with Garza after the interview of

February 18, 1998, were produced to Cisneros' trial counsel after

April 29, 1998. Presumably the absence of any FBI 302's after item

# 8 above (i.e., the February 18, 1998, FBI 302) was because Garza

was not interviewed *after* **February 18, 1998,** and *before* he

**testified at Cisneros federal trial in May 1998.** Otherwise, the

government presumably would have produced any FBI 302 of any such

interview since the government produced FBI 302's relating to items

# 3 to 8 above as well as copies of both statements identified in

item # 1 above.

Thus, as of the last known interview with Garza on February

18, 1998, Garza had only mentioned calling Martinez from Matamoros,

Mexico, **on two of eight occasions he had communicated with law**

**enforcement and/or had testified in open court**, and then, the time

frame was identified as between *September and November 1992*.[80]

However, on April 20, 1998, the government's bill of particulars was filed and that bill of particulars included the allegation that Garza had called Martinez not just from Matamoros, **but also from San Fernando, Mexico**. Where, exactly, this information came from is a mystery, as was Garza's testimony during Cisneros' trial that he did not call collect, but rather from casetas. A logical, necessary conclusion (due to Garza's trial testimony) is that after February 18, 1998, Garza was confronted with the fact that the government's examination of Martinez' telephone records reflected a total absence of collect telephone calls from Mexico. This documentary impeachment of Garza's claims (on February 5 and February 18, 1998) that he had called Martinez collect would logically have a devastating impact upon Garza's credibility before any rational trier of fact. Someone associated with the government must have confronted Garza with this impeachment information and Garza must have admitted that he had been mistaken (or lied) when he had spoken with the FBI on February 5 and 18, 1998 [and possibly when he gave March 31, 1993 statement and testified in his state trial on March 9, 1994). Such an admission should have been turned over to Cisneros defense counsel,

---

[80] Garza's statement in (item # **8**) that the calls were between September and November 1992 thus reflects that the calls from Mexico all occurred **prior** to the date that he learned, for the first time, that Fischer was to be killed. This necessarily follows because Garza testified that it was late January 1993 or early February 1993 when Martinez told him for the first time that the client wanted Fischer killed (as opposed to hurt or beaten, as was the alleged, original request). 11R1360-1363.

116

but no admission such as this was ever produced by the government.[82]

Cisneros' trial counsel failed to effectively cross-examine Daniel Garza on his previous statements and develop the following:

> **A.** The chronology and content of his previous statements/testimony (as set forth above in items # 1 to # 8) and demonstrate, in clear simple demonstrative form, that Garza had previously made inconsistent statements that: (**i**) he had not called Martinez from Mexico; (**ii**) he had called Martinez from locations within Texas, not Mexico;

> **B.** Develop the sequence of events that surrounded Garza's change of testimony from items # 1 to 6 (i.e., no calls and/or no calls from anywhere but Texas to Martinez) to items # 7 and 8 (i.e., calls to Martinez from **Matamoros**, Mexico, **which were all collect calls**);

> **C.** Develop the sequence of events that surrounded Garza's change from items # 7 and 8 (i.e., calls to Martinez from Matamoros, Mexico, which were all collect calls) to his trial testimony (i.e., calls to Martinez from Matamoros **and San Fernando, made from casetas**, not collect calls); and

> **D.** Develop the fact that Garza's alleged calls from Mexico, as related to the FBI on February 18, 1998, which occurred between *September and November 1992*, all predated the point in time that Martinez told him that the client wanted Fischer killed, as reflected in the first footnote of this **THIRD ACT/OMISSION**.

Cisneros asserts that the failure to do any of the things outlined in the above four paragraphs (**A** through **D**) was unreasonable under prevailing professional norms and prejudicial to her defense.

---

[82] As noted elsewhere in this motion, a motion for discovery will be filed in the near future regarding this matter. Trial counsels' failure to explore this on direct examination of FBI Agent Church is also raised below as ineffective assistance of trial counsel in the **FOURTH ACT/OMISSION**, *infra*, in this **CLAIM FOR RELIEF**.

Clearly, there was fertile information available and known to trial counsel that could have effectively been used to paint a picture for the jury that Garza had fabricated his trial testimony, as reflected above in the sequence of events contained in paragraph # 1 to 8, which should have been developed as outlined in paragraphs **A** to **D**. Trial counsel did vigorously cross-examine Garza on the fact that he had changed his story from February 5 and 18, 1998, to the time of trial (i.e., collect telephone calls, for which Martinez' telephone records did not support his testimony, to calls from casetas, which eliminated any possibility of physical corroboration).[83] However, trial counsel did not otherwise cross-examine Garza on the items contained in paragraphs **A** to **D** above, **which were clearly significant fodder to seriously destroy Garza's claim of calls from Mexico in a time frame of the murder for hire.** The failure to cross-examine Garza on the items contained in paragraphs **A** to **D** above was not the result of trial strategy, but simply an oversight by trial counsel (i.e., a lack of preparation) and was unreasonable under prevailing professional norms, as counsel had the duty to use prior inconsistent statements and the absence of prior consistent statements to impeach Garza (along with confronting him with Martinez' testimony and statements to the effect that Garza had told her that he was calling from San Antonio, Dallas and/or Brownsville, which was consistent with

---

[83] Trial counsel supported this aspect of his cross-examination by calling FBI Agent David Church to testify that Garza had claimed that all calls from Mexico to Martinez had been made collect and that Church's examination of Martinez' telephone records reflected no collect calls from Mexico.

118

Garza's original statement of March 31, 1993, and his state court testimony from March 1994).

The failure to fully and adequately cross-examine Garza on what had prompted his change of testimony between February 18, 1998, and the date he testified in Cisneros' trial (May 11, 1998) (i.e., collect calls from Matamoros prior to a date when Martinez first broached the topic of murder were transformed into non-collect calls from casetas in Matamoros and San Fernando in a time frame consistent with the murder for hire) was clearly prejudicial.

As noted above, if that change had been prompted by the fact that he was confronted with the absence of collect telephone call records by a government prosecutor or agent, and Garza admitted that he had been mistaken, previously confused, or had been less than candid, that information should have been revealed (and it was not). Regardless of what gave rise to Garza's modification from his prior statements, the topic should have been explored in rich detail on cross-examination of Garza, and a chart depicting his change of testimony from his March 31, 1993 statement to and including his February 18, 1998, statement (i.e., paragraphs # **1** to **8** above) should have been constructed for the jury to see (including his testimony on direct examination).[84] Construction of

---

[84] Trial counsel should have explored this topic on the record with the District Court immediately after Garza testified, as it was then (for the first time) that trial counsel realized that Garza was greatly modifying his story. Had counsel been effective, they would have inquired as to: (1) why the government's bill of particulars contained San Fernando; and (2) why Garza so significantly modified his story at trial. Explanations of these were properly subject to production under the standards mandated by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963), *United*

such a demonstrative aid and cross-examination depicting his ever shifting position (and his failures to make prior consistent statements as well as his prior inconsistent statements) was necessary for the jury to fully understand and appreciate Garza for what he was: an opportunistic liar who was modifying his testify to get Cisneros' convicted because he had been convicted in state court (whereas she was acquitted in her state direct appeal) and he "want[ed] everyone involved in this to be punished." 11R1355.

Trial counsels' cross-examination about Garza's efforts to obtain benefits from the government, which the government preempted, 11R1352-1360 (no deal with Garza other than for non-prosecution and no government assistance even possible because of

---

States v. Bagley, 473 U.S. 667 (1985), and Kyles v. Whitley, 514 U.S. 419 (1995). The failure to do was ineffective assistance of counsel in and of itself and, depending upon the explanation to be provided by the government (assuming that the Court orders discovery in this regard), undoubtedly prejudicial as depriving trial counsel of significant, additional cross-examination fodder to undermine Garza's testimony on the jurisdictional basis of the first element submitted to the jury. Of course, trial counsels' ineffectiveness in this regard does not negate the government's constitutional obligation to produce this same information. See **CLAIM FOR RELIEF NO. 7** (relating to non-disclosure of impeachment evidence).

Similarly, trial counsel should have also explored with Agent Church whether he was aware of whether Garza had been confronted with Martinez' telephone bills reflecting a lack of corroborating evidence for his claim that he had called her collect, and if so, when Garza had been confronted, and what he had then stated. The failure to inquire of Agent Church in this regard was also ineffective assistance of counsel in and of itself and, depending upon the explanation to be provided by the government (assuming that the Court orders discovery in this regard), undoubtedly prejudicial as depriving trial counsel of significant, additional cross-examination fodder to undermine Garza's testimony on the jurisdictional basis of the first element submitted to the jury. See **FOURTH ACT/OMISSION** contained in this **CLAIM FOR RELIEF**, infra.

120

a life sentence)[85], was ineffectual. While trial counsels' cross-examination of Garza regarding the modification from collect telephone calls to telephone calls from casetas was prominent in the cross-examination, the absence of any cross-examination relating to items **A** to **D** above reveals that the cross-examination of Garza was but a  small portion of what it should otherwise have been. Had trial counsel utilized the information contained within items **A** to **D** and also cross-examined Garza on Martinez' prior statements and sworn testimony (that he, Garza, had told her that he was calling from specific locations inside Texas, not Mexico), Garza's credibility in the eyes of any rational trier of fact would have been destroyed. Considered collectively, the absence of cross-examination on items **A** to **D**, coupled with the absence of cross-examination of Garza on Martinez' prior statements and sworn testimony (that he, Garza had told her that he was calling from specific locations inside Texas), undermines confidence in the truth seeking function as it regards Garza and the jurisdictional

---

[85] The government could have assisted Garza by requesting (formally or informally) the state trial officials (i.e., the Cameron County District Attorney, the Cameron County Sheriff, and the District Judge) to either recommend a commutation of sentence (i.e., "time cut") or parole (once Garza became eligible for parole) to the Texas Board of Pardons and Paroles. Because of the content of Garza's two letters to FBI Agent Ross (reflected above in items # **3** and **5**) -- seeking concessions from the government -- and the fact that any such written or oral requests are not available to Cisneros under Texas state law, the discovery request identified elsewhere in this motion will include a request for a subpoena for information relating to whether any such formal or informal requests have been made by the government. Cisneros attempted to obtain such information via the Freedom of Information Act, but requests tendered to the United States Attorney for the Southern District of Texas and the Federal Bureau of Investigation were rebuffed.

121

basis of the first element of the offense of murder for hire submitted to the jury. While it is impossible to state that the jury would have acquitted Cisneros, clearly the impact of Garza's testimony vis a via the "foreign telephone calls" prong of the first element would have been drastically reduced if not totally eliminated by utilization of the cross-examination material that trial counsel had available. The failure to utilize the additional cross-examination materials available, and the failure to cross-examine Garza as outlined in paragraphs # **A** to **D** above, was prejudicial and a new trial should be granted (particularly when considered in conjunction with the **SECOND ACT/OMISSION** contained in this **CLAIM FOR RELIEF**).

**FOURTH ACT/OMISSION**: Trial counsel failed to discover and utilize (either on cross-examination of Garza and/or on direct examination of FBI Agent David Church, or as otherwise appropriate) the sequence of events that led to the inclusion in the government's bill of particulars the allegation that Garza had allegedly called Martinez from San Fernando, Mexico, as well as the sequence of events that led to Garza's dramatic change in story from February 18, 1998, to his trial testimony on May 11, 1998 (i.e., change from collect telephone calls from Matamoros in time frame prior to murder for hire to telephone calls from casetas from San Fernando and Matamoros in a time frame arguably within the murder for hire time frame).

Cisneros adopts by reference the contents of the **THIRD ACT/OMISSION** set forth immediately above.

As reflected in the **THIRD ACT/OMISSION** (and in an effort to be as brief as possible), trial counsel should have explored the topics of: **(1)** why the government's bill of particulars contained reference to Garza's alleged calls from San Fernando, as opposed to merely Matamoros; and **(2)** why Garza so significantly modified his story at trial (from collect calls from Matamoros in a time frame predating the murder for hire scheme to calls from casetas from San Fernando and Matamoros in a time frame arguably consistent with the murder for hire).[85]

The government's bill of particulars, in and of itself, did not prompt trial counsel to make any inquiry of the District Court regarding topic **(1)** above. Rather, trial counsel logically inquired of the government regarding record relating to collect telephone calls both before and after the government filed its bill of

---

[85] *See* paragraph # **1** to **8** in the immediately preceding **THIRD ACT/OMISSION**.

particulars on April 20, 1998.[86] Trial counsel also interviewed Daniel Garza, who essentially lied to trial counsel when he told trial counsel that he either had not called Martinez from Mexico or could not remember calling her from Mexico. 11R1395-1397.

However, immediately after the conclusion of Daniel Garza's direct examination by the government -- which reflected gross modifications of Garza's story regarding foreign telephone calls from what was provided during discovery (i.e., gross modification from what is reflected in paragraph # **1** to **8**  in the immediately preceding **THIRD ACT/OMISSION**) -- trial counsel should have insisted on an explanation (from the government and the District Court) as to what had prompted that gross modification [i.e., topic **(2)** above].[87]

As reflected in the preceding **THIRD ACT/OMISSION**, an

---

[86] Mr. Mosbacker represented to Mr. Canales and Mr. Botsford on March 26, 1998, and again on April 27, 1998, that the government had no foreign records reflecting any telephone calls from Mexico to Maria Martinez, although the government was still looking for such records.

[87] As reflected in **CLAIM FOR RELIEF NO. 7** (adopted herein by reference for purposes of brevity), Cisneros asserts that the government was under an obligation to disclose this information to the defense. As such, the government's non-disclosure of material exculpatory impeachment evidence at Cisneros' trial rendered trial counsels' performance ineffective. The failure of the government to turn over to defense counsel information important to the defense can result in *Cronic*-type ineffective assistance of counsel. *See Blake v. Kemp*, 758 F.2d 523, 527 (11th Cir.), *cert. denied*, 474 U.S. 998 (1985) (holding that government conduct in failing to turn over psychiatric report on defendant rendered trial counsel constitutionally ineffective under *Cronic*). Here the government's failure to inform trial counsel of the sequence of events surrounding Garza's gross modification of his story rendered trial counsel ineffective. Cisneros was therefore presumptively prejudiced. A new trial is required.

explanation regarding whether Garza had modified his story due to being confronted with the absence of any collect telephone calls being reflected Martinez' telephone records (i.e., what prompted his modification of his story) was properly subject to production under the standards mandated by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Bagley*, 473 U.S. 667 (1985), and *Kyles v. Whitley*, 514 U.S. 419 (1995).[88]  The failure to inquire and develop the facts and circumstances that led to the inclusion of San Fernando, Mexico, in the April 20, 1998, bill of particulars [topic **(1)**] and the facts and circumstances surrounding Garza's gross modification of his story on direct examination from the materials provided by the government in discovery [topic **(2)**] was a serious oversight by trial counsel. Once Garza testified on May 11, 1998, and modified his story to escape the planned

---

[88] Had Garza maintained that all calls to Martinez from Mexico had been made collect, as reflected in his February 5 and 18, 1998, interviews with the government, not only would he had been destroyed on cross-examination, but if Cisneros had still been convicted, would have seriously hurt the government's chances of success on appeal. This conclusion stems from the fact that Garza, as a self-professed accomplice, would have been subject to the rule that an accomplice witness' testimony that is incredible and "entirely unsubstantial" can result in a judgment of acquittal on appeal. *See e.g.*, *United States v. Smith*, 203 F.3d 884, 887 (5th Cir. 2000), citing *United States v. Garner*, 581 F.2d 481 (5th Cir. 1978). Under *United States v. Berma*, 30 F.3d 1539, 1552 (5th Cir. 1994), "[t]estimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature." Clearly, claiming to have made only collect telephone calls from Mexico to Martinez at her office or home, in the face of records proving no such calls had been made, would have probably resulted in an acquittal at trial (unless, of course, the jury believed the car crossing was related to the murder for hire scheme) and certainly would have subjected the government to a massive problem under this doctrine on appeal.

impeachment with the absence of collect telephone calls on Martinez' home and office telephone records, trial counsel should have snapped to the fact that this modification had to have occurred between February 18, 1998 (the date of Garza's last, documented interview with the government, as reflected in paragraph # 8 contained in the **THIRD ACT/OMISSION**, immediately *supra*), and April 20, 1998 (i.e., the date of the government's bill of particulars). Trial counsel's failure to diligently purse these two interrelated topics was ineffective assistance of counsel in and of itself and, depending upon the explanation to be provided by the government (assuming that the Court orders discovery in this regard), undoubtedly prejudicial as depriving trial counsel of significant, additional cross-examination fodder to undermine Garza's testimony on the jurisdictional basis of the first element submitted to the jury.[89]

Trial counsels' deficiencies, outlined above, were compounded by an additional deficiency: trial counsel should have questioned Agent Church (who trial counsel did in fact call to impeach Garza) regarding his knowledge of whether Garza had been confronted with Martinez' telephone bills reflecting a lack of corroborating evidence for his claim that he had called her collect, and if so, when Garza had been confronted, and what Garza had then stated. The failure to inquire of Agent Church in this regard was also

---

[89] Of course, trial counsels' ineffectiveness in this regard does not negate the government's constitutional obligation to have produced this same information, even without a specific request at the time. *See* **CLAIM FOR RELIEF NO. 7** (relating to non-disclosure of impeachment evidence).

126

ineffective assistance of counsel in and of itself and, depending upon the explanation to be provided by the government (assuming that the Court orders discovery in this regard), undoubtedly prejudicial as depriving trial counsel of significant, additional cross-examination fodder to undermine Garza's testimony on the jurisdictional basis of the first element submitted to the jury.

**FIFTH ACT/OMISSION:** Trial counsel failed to adequately request a jury instruction that would have required the jury to find that the foreign commerce (i.e., Garza's alleged calls from Mexico to Martinez and the crossing of the vehicle) was sufficiently related to the murder for hire scheme before the jury could find the first element of the offense beyond a reasonable doubt.

This **CLAIM FOR RELIEF** also relates to **CLAIM FOR RELIEF NO. 6,** adopted herein for purposes of brevity, as well as **CLAIM FOR RELIEF NOS. 1 TO 5,** *supra*.

The issue of whether the foreign commerce was sufficiently related to the alleged murder for hire scheme (i.e., the nexus or jurisdictional issue) was recognized by trial counsel prior to trial.

Accordingly, Cisneros' trial counsel submitted Requested Instruction No. 12, which stated, in relevant part:

> For you to find the defendant guilty of this crime, you must be convinced that the government had proved each of the following elements beyond a reasonable doubt:
>
> > **FIRST ELEMENT:** That the defendant: (A) caused Heriberto Pizana to travel from Mexico to Brownsville on March 2, 1993, **in furtherance of the alleged murder-for-hire;** and/or (B) caused Daniel Garza to use a facility of foreign commerce to call Maria Martinez in Brownsville from San Fernando and Matamoros, Tamaulipas, Mexico between November 1992 and February 1993, **in furtherance of the alleged murder-for-hire....**

2R115 at 130-133 (emphasis in original). As reflected at the bottom of Requested Instruction No. 12, this requested instruction was based on a charge submitted by United States District Judge Harry Lee Hudspeth in United States v. Aguilar, No. EP-97-CR-938, as modified for the facts of this case in light of the government's Bill of Particulars. 2R133, 1R320. The proposed instruction's

128

requirement that the phone call or travel be "in furtherance of" the murder scheme mirrored the Fifth Circuit's threshold for satisfying the jurisdictional element. *See United States v. Edelman*, 873 F.2d 791, 795 (5th Cir. 1989). It also mirrored the language of the indictment. 1R577.

The District Court did not inquire of the government's position regarding this requested charge. Rather, the District Court just denied it, to which Cisneros objected. 11R1520-1522, 12R1599.

Instead, the District Court instructed the jury regarding the foreign nexus in a manner grossly different from Cisneros' Requested Instruction No. 12. The District Court instructed the jury that:

> The Government must prove that somebody, you know, involved in the venture, itself, traveled in foreign commerce or caused another to use a facility in foreign commerce.
>
> * * *
>
> Now, "facility in foreign commerce" includes means of transportation and communication. Now, as part of the burden of proof, the Government does not have to prove that the defendant intended that foreign travel occur, or that foreign commerce facilities be used in connection with the murder, or even that the defendant knew that foreign travel occurred or would occur, or that foreign commerce facilities were or would be used. But the Government must prove that somebody, you know, involved in the venture, itself, traveled in foreign commerce or caused another to use a facility in foreign commerce.

11R1516 (orally read to jury); 1R93 (written instruction which judge was using as model to read from and which were supplied to the jury at 12R1593-1594). As noted by the District Court, Cisneros objected to everything that was inconsistent with her requested

129

jury instructions. 11R1499-1500, 1520-1521.[90]

The above-quoted language allowed the jury to convict Cisneros if "somebody...involved" traveled in or used a facility of foreign commerce *regardless of the activity's connection, if any, to the alleged murder for hire scheme*. **In fact, it affirmatively allowed the jury to convict even if the foreign commerce facilities were not used in connection with the murder for hire scheme.**

During jury deliberations, jury note number 1 from the jury sought a definition of foreign commerce: ""Jury aid stating law concerning foreign commerce of communication and travel." 12R1600-1602. The District Court, over Cisneros' objection (and reurging of her previously Requested Instruction No. 12), instructed the jury that:

> "You are instructed that foreign commerce means from one country to another country.  Further, if words are not legally defined for you, you are to give them their common meaning."

*See* 12R1602-1607.

---

[90] In Cisneros' brief, the issue of the denial of her Requested Instruction No. 12 was raised as part **B** of **ISSUE NO. 3**. Although Cisneros' appellate counsel did not separately raise her objection to the District Court's language on foreign commerce, appellate counsel did include the following in part **B** of **ISSUE NO. 3**:

> These errors were compounded by the court's responses to various notes from the jury defining (over Appellant's objection) "foreign commerce" without including a requirement that the foreign commerce be related to and in furtherance of the alleged murder-for-hire scheme. 2R71 ("you are instructed that foreign commerce means from one country to another country. Further, if words are not legally defined for you, you are to given them their common meaning." 12R1601-1602). *See also* 12R1502-1608. The last question from the jury came in at 1:45 p.m. and an objectionable answer was submitted by the court at 2:12 p.m.. 12R1602-1608.  Thereafter, the jury returned a verdict at 2:40 p.m. 12R1609.

Accordingly, the jury was not instructed on whether the foreign commerce (Garza's telephone calls to Martinez from Mexico and/or the car crossing on March 2, 1993) was sufficiently related to the murder for hire scheme to justify a unanimous verdict as to this critical element of the offense.

The District Court's failure to submit an instruction on whether the foreign commerce was sufficiently related to the murder for hire scheme, as requested by Instruction No. 12, was raised on appeal.[91]

Both vacated panel opinions reflect that the requested instruction was **not** substantially accurate and therefore, properly denied by the District Court. According to the vacated panel opinions, the proper language should have been whether the foreign commerce **"facilitated"** the murder for hire scheme, not whether the foreign commerce was **"in furtherance of"** the murder for hire scheme. Contrary to the two vacated panel opinions, the en banc opinion uses the term "in furtherance" of the murder for hire scheme on two occasions.[92]

---

[91] The failure to submit any instruction on what the jury had to find before it could find that the foreign commerce was sufficiently related to the murder for hire scheme was raised in Cisneros' motions for rehearing from both vacated panel opinions, as well as in her en banc supplemental brief, but the utter failure to have the jury instructed on this jurisdictional element of the offense was not addressed by the Fifth Circuit. It was also raised on certiorari. *See also* immediately preceding footnote, *supra*.

[92] The en banc opinion states the following:

"The *Marek* majority acknowledged *Cisneros* but reasoned that it was not binding because, **in furtherance** of her murder-for-hire scheme, Cisneros had caused international

131

The failure to request an appropriate instruction on the requirement that the foreign commerce be sufficiently related to the murder for hire scheme before the jury could find foreign commerce within the meaning of Section 1958 fell below prevailing professional norms and was prejudicial to Cisneros.[93]

The failure of trial counsel to request an appropriate jury instruction on what the jury had to first find and believe beyond a reasonable doubt as to this jurisdictional element clearly fell below prevailing professional norms. Trial counsel had a duty to

---

telephone calls to be made, an activity that indisputably satisfied the jurisdictional element even if Marek's wholly *intra* state communication might not."

"A panel of this court concluded that a reasonable jury could have found that (1) the fortune teller had participated in international telephone calls as Cisneros's agent, and (2) those calls were sufficiently connected to the murder to be **"in furtherance"** of that crime.[FN11] The panel therefore affirmed Cisneros's conviction.

      FN11. *Id.* at 343-45.'"

Obviously, the failure to request an appropriate instruction also operated to prejudice Cisneros on appeal, because had a proper instruction been submitted and denied, a new trial would have been granted on appeal.

[93] As reflected in **CLAIM FOR RELIEF NOS. 1-5 (and specifically, CLAIM FOR RELIEF NO. 3)**, adopted herein by reference, Cisneros continues to maintain that there is no distinction between the terms "in furtherance" and "facilitated" and that the two vacated panel opinions were **"dead wrong"** in creating a distinction. Clearly, United States District Judge Hudspeth saw no distinction between the terms and, in United States v. Blackthorne, SA-00-CR-003-EP (No. 00-51256 in the United States Court of Appeals for the Fifth Circuit), United States District Judge Ed Prado submitted both terms ("in furtherance of" and "facilitated") to the jury in a murder for hire case.

request an appropriate jury instruction on this critical element of the offense. As reflected by trial counsel's final argument at 12R1561-1574, this was in fact the penultimate issue for the jury's consideration: whether the alleged calls from Garza to Martinez from Mexico or the car crossing was sufficiently related to the murder for hire scheme to justify a finding of guilt. There was no strategic reason for trial counsels' failure to request an appropriate instruction. *See e.g., Lawson v. Warden, Mansfield Correctional Institution*, 197 F.Supp. 1072, 1084-1090 (S.D. Ohio 2002) (finding it "inconceivable that a competent attorney would, for strategic reasons, fail to request a jury instruction on defendant's mental health, the crux of defendant's defense, *Id.* at 1085, and the omission of an appropriate instruction "tantamount to failing to instruct a jury on the critical issue in the case, for instance telling a jury that it can find the defendant guilty of an offense charged in the indictment without explaining the essential elements of that offense", *Id.* at 1087).[94]

The failure to obtain an appropriate instruction in the jury instructions clearly prejudiced Cisneros. Trial counsel were not able to argue that the foreign commerce was not sufficiently

---

[94] *Lawson, supra* at 1087, noted the following:

" There is a familiar adage that a jury is presumed to follow the instructions  of law given by the court. However, there is no maxim that, if there are no instructions on point, the jury will be presumed to have found its way to the correct decision or applied the correct legal standards, on which it had not been instructed, to reach a factually and legally sustainable verdict."

related to the murder for hire scheme, as reflected by the legal standard which should have been included in the jury instructions, so as to mandate a finding of "not guilty". They were thus handicapped and were unable to direct the jury's attention to the jury instructions for a legal reason why the deficiencies in the government's proof relating to foreign commerce mandated a finding of not guilty. In fact, the absence of such an instruction, coupled with the District Court's instruction as to what the government did not have to prove, allowed the government to actually argue to the jury that the foreign commerce did not have to be related to the murder for hire scheme at two locations, see 12R1529, 1575,[95] although the government also suggested that Garza's calls and the car crossing were both related to the murder for hire.

When a jury is allowed to convict a citizen without an instruction on every element of the offense, a denial of the Fifth and Sixth Amendments exist. *See United States v. Gaudin*, 515 U.S. 506, 509-511 (1995):

> The Fifth Amendment to the United States Constitution guarantees that no one will be deprived of liberty without "due process of law"; and the Sixth, that "[i]n all criminal prosecutions, the accused shall enjoy the

---

[95] The District Court's instruction on foreign commerce was clearly deficient. Although the evidence was insufficient to show that any foreign phone calls or travel furthered or facilitated the murder, the jury was permitted to ignore this insufficiency and convict Cisneros on the basis of phone calls and travel **not connected to the murder**. Moreover, the District Court's instruction on foreign commerce also allowed the jury to convict on facts broader than the indictment (i.e., the indictment, as amplified by the government's bill of particulars, alleged that Heriberto Pizana travelled in foreign commerce and that Daniel Garza used telephone facilities to call from Mexico to Brownsville). Stated otherwise, this instruction was clearly injurious to Cisneros' defense.

> right to a speedy and public trial, by an impartial
> jury." We have held that these provisions require
> criminal convictions to rest upon a jury determination
> that the defendant is guilty of every element of the
> crime with which he is charged, beyond a reasonable
> doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 277-278, 113
> S.Ct. 2078, 2080-2081, 124 L.Ed.2d 182 (1993). (footnote
> omitted).

Here, that is exactly what occurred. The jury obviously had some
problems with the jurisdictional issue, because it inquired of the
District Court. The District Court then informed the jury that it
had to merely find one of the two jurisdictional basis: either
foreign telephone calls or foreign travel.[96] However, the jury was
not required to find that either or both of the jurisdictional
bases were related to the murder for hire scheme, thus depriving
Cisneros of a jury verdict that included the penultimate element of
the offense of murder for hire.[97]

A new trial should be granted so that an appropriately

---

[96] This was the critical issue and, unlike those cases where
the failure to submit materiality to the jury was deemed harmless
error, the issue of whether the foreign commerce was related to the
murder for hire scheme was hotly contested and there was not
overwhelming evidence that either jurisdictional basis was
established. The failure to require the jury to thus find that
either or both jurisdictional bases were related to the murder for
hire scheme was thus harmful to Cisneros.

[97] The failure to request an appropriate instruction, coupled
with the District Court's erroneous instruction on foreign commerce
quoted above, were compounded by the District Court's responses to
various notes from the jury defining (over Cisneros' objection)
"foreign commerce" without including a requirement that the foreign
commerce be related to and in furtherance of the alleged murder-
for-hire scheme. 2R71 ("you are instructed that foreign commerce
means from one country to another country. Further, if words are
not legally defined for you, you are to given them their common
meaning." 12R1601-1602). *See also* 12R1502-1608. The last question
from the jury came in at 1:45 p.m. and an objectionable answer was
submitted by the court at 2:12 p.m.. 12R1602-1608. Thereafter, the
jury returned a verdict at 2:40 p.m. 12R1609.

135

instructed jury can ascertain whether either or both of the foreign commerce aspects (i.e., Garza's calls and/or the car crossing) was sufficiently related to the murder for hire scheme to justify a finding of guilt. Otherwise, trial counsel's deficient performance in this regard will have sanctioned a due process violation.[98]

---

[98] As stated in *Lawson*, *supra* at 1089:

> "In short, there is no qualitative difference, in this context, between a blatantly erroneous instruction, on the one hand, and the omission of a critical instruction focused on the central issue in the criminal proceeding, on the other. In either scenario, the defendant has been deprived of a fair trial."

This is exactly what occurred to Cisneros.

   **SIXTH ACT/OMISSION**: Trial counsel failed to adequately
   request a jury instruction that would have required the
   jury to find that the foreign commerce (i.e., Garza's
   alleged calls from Mexico to Martinez and the crossing of
   the vehicle) were actually caused by Cisneros and were
   more than "but for" or "foreseeable" causation before the
•  jury could find the first element of the offense beyond
   a reasonable doubt.

This **CLAIM FOR RELIEF** also relates to **CLAIM FOR RELIEF NO. 6**,

adopted herein for purposes of brevity, as well as **CLAIM FOR RELIEF**

**NOS. 1 to 5**, *supra*.

   The issue of causation was recognized by trial counsel. Trial

counsel thus requested an instruction, Requested Instruction No.

15A, seeking to instruct the jury on causation, as follows:

   A person "causes" another to travel in foreign commerce
   or to use facilities in foreign commerce if he does an
   act with knowledge that the foreign travel or use of
   facilities in foreign commerce will follow in the
   ordinary course of business, or where such foreign travel
   or use of facilities in foreign commerce can reasonably
   be foreseen, even though not actually intended.

2R140. The District Court did not inquire of the government's

position regarding this requested charge. Rather, the District

Court just denied it, to which Cisneros objected. 11R1520-1522,

12R1599. As such, the court gave the jury no guidance on the first

element of the offense, as contained in the court's instructions,

to wit:

   First: That the defendant caused another to travel in foreign
   commerce or caused another to use a facility in foreign
   commerce; 11R1502 at 1516; 2R93.

As noted by the District Court, Cisneros objected to everything

that was inconsistent with her requested jury instructions.

11R1499-1500, 1520-1521.[99]

The District Court's failure to submit an instruction on causation, as requested by Requested Instruction No. 15A, was raised on appeal.[100]

Both vacated panel opinions reflect that the requested instruction was not substantially accurate and therefore, properly denied by the District Court.[101]

The failure to request an appropriate instruction on causation fell below prevailing professional norms and was prejudicial to Cisneros. Trial counsel had a duty to request an appropriate instruction and the failure to do so was clearly below prevailing professional norms.

The failure to give the requested charge, which was not otherwise covered by the District Court's instructions, was prejudicial and harmful in that the jury had no guidance on

---

[99] In Cisneros' brief, the issue of the denial of her Requested Instruction No. 15A was raised as part **E** of **ISSUE NO. 3**. Although Cisneros' appellate counsel did not separately raise her objection to the District Court's language on foreign commerce, appellate counsel did include the following in part **E** of **ISSUE NO. 3**:

> "Essentially, the failure to give the requested instruction allowed the jury to convict without a unanimous verdict as to what the term "caused" meant. This is the essence of a due process violation. A new trial should be ordered."

[100] The failure to submit any instruction on causation was also raised in Cisneros' motions for rehearing from both vacated panel opinions, as well as in her en banc supplemental brief, but the utter failure to have the jury instructed on causation was not addressed by the Fifth Circuit. It was also raised on certiorari.

[101] The requested instruction was taken from *United States v. Sneed*, 63 F.3d 381 at 385 n.4 (5th Cir. 1995), quoting *Pereira v. United States*, 347 U.S. 1, 8-9 (1954).

138

causation, a key component of the first issue the jury had to consider in ascertaining whether Cisneros had committed a crime. Essentially, the failure to give the requested instruction allowed the jury to convict without a unanimous verdict as to what the term "caused" (as contained in the first element of Section 1958) meant. This is the essence of a due process violation. *United States v. Gaudin, supra.*

The failure to have the District Court instruct the jury on causation was prejudicial to Cisneros' defense. As to both jurisdictional basis (Garza's telephone calls from Mexico and the car crossing on March 2, 1993), it is entirely unclear that either of them were "caused" by Cisneros, in the legal sense. As reflected in Cisneros' motions for rehearing from both vacated panel opinions as well as her supplemental en banc brief and petition for writ of certiorari, something more than "but for" causation or "foreseeability" is legally required.

The second vacated panel concluded that *United States v. Edelman*, 873 F.2d 791 (5th Cir. 1989), governed and only required the government to prove "simple 'but for' causation rather than foreseeability" in order to establish the causation aspect of the foreign commerce requirement in § 1958 (a). This interpretation of *Edelman* misapplied a conspiracy case to a straightforward murder-for-hire case and is prohibited by *Rewis v. United States*, 401 U.S. 808 (1971).

Reviewing 18 U.S.C. § 1958 in light of 18 U.S.C. § 1952 (the Travel Act) is appropriate. *Edelman*, 873 F.2d at 794. The Supreme

139

Court's decision in *Rewis* defines the parameters of the nexus between the interstate/foreign commerce and the underlying offense for purposes of the Travel Act and, by extension, the murder-for-hire statute, by interpreting Congressional intent through the rule of lenity.  401 U.S. at 811-12.  The Supreme Court held in *Rewis* that reading "foreseeability" into the statute violated Congressional intent by making it too easy for the government to establish a nexus.  *Id.* at 813.  "Congress" provided "little, if any, evidence that [it] intended that foreseeability should govern criminal liability under § 1952."  *Id.* at 813.  For the sake of comity, Congress intended that the proof demonstrate, if not intent, something more than "but-for causation" **and** "foreseeability" in order to prevent expansive interpretation of the interstate/foreign nexus that would swallow up state law offenses and state jurisdiction.

The second vacated panel's "but-for causation" rule violates the principle oft-repeated throughout the Supreme Court's commerce clause jurisprudence, in addition to *Rewis*, that Congress may not create a jurisdictional "element," such as the interstate/foreign commerce nexus in §§ 1952 and 1958, that does not meaningfully limit federal power, **especially** "in areas such as criminal law enforcement . . . where States historically have been sovereign." *United States v. Lopez*, 514 U.S. 549, 561, 564 (1995).  By creating its "but-for causation" model, the second vacated panel, in the words of Judge Learned Hand, formed "a view of causation that would obliterate the distinction between what is national and what is

140

local in the activities of commerce." *Lopez*, 514 U.S. at 567 (quoting cases). This is particularly egregious in light of the fact that this was an intrastate offense that the government attempted to transform into a federal offense (as demonstrated by the fact that Cisneros was previously acquitted in state court for the substantive offense of the murder of Fischer).

Moreover, every Section 1952, 1952A, and 1958 case of which counsel is aware in which the defendant was directly charged, as opposed to charged as a coconspirator or aider and abettor,[102] makes explicit or implicit findings regarding whether the **defendant intentionally or knowingly**[103] **caused** the travel or use of interstate facility. This involves the defendant herself travelling, using the facility, or an agent travelling or using the

---

[102] *Edelman*'s treatment of causation would apply to Cisneros' case only if she had been charged with conspiracy. Like *Edelman*, *United States v. Perrin*, 580 F.2d 730 (5th Cir. 1978), and *United States v. Razo-Leora*, 961 F.2d 1140 (5th Cir. 1992) are inapplicable to Cisneros' case to the extent that they also are based upon conspiracy charges and convictions. Because the *Edelman* jury was charged with conspiracy, it could automatically find Edelman **vicariously liable** for the act of coconspirator Young sending a letter through the mail to Zabitosky. *Edelman*, 873 F.2d at 792. This cannot be said of Garza and Martinez, because the jury was not charged with finding that they were co-conspirators with Appellant. Without the conspiracy charge, their actions had to be more substantially tied to Cisneros than through her possible foresight of those actions.

[103] The cases rely upon "intent" or "knowledge" to establish the jurisdictional nexus. The point, however, is that something more than foreseeability is required and the jury must be charged with finding something more than foreseeability. Otherwise, a conviction can be obtained without any jury finding that the defendant actually caused the foreign commerce, which would run afoul of the Supreme Court's pronouncement in *United States v. Gaudlin*, 115 S.Ct. 2310 (1995), that the jury must find every element of the offense beyond a reasonable doubt.

facility under the defendant's direction, and at least with her knowledge that the interstate facility is being used to further the offense. *See, e.g.*, *United States v. Finley*, 175 F.3d 645, 646 (8th Cir. 1999) (defendant personally put stamps on letters that were mailed)); *United States v. Weathers*, 169 F.3d 336, 344 (6th Cir. 1999) (defendant's numerous cell-phone conversations); *United States v. Garrett*, 716 F.2d 257, 265 (5th Cir. 1983) (defendant instructed codefendant to make an interstate phone call); *United States v. Pecora*, 693 F.2d 421, 424 (5th Cir. 1982) (phone call by defendant in Georgia to sheriff in Louisiana); *United States v. Jones*, 642 F.2d 909 (5th Cir. 1981) (defendant travelled between states to cash wagering checks); *United States v. Perrin*, 580 F.2d 730; 735 (5th Cir. 1978) (defendant, on instructions from co-defendants, made interstate telephone calls); *United States v. Archer*, 486 F.2d 670, 683 (2d Cir. 1973) (defendant's *receipt* of a phone call from Paris, France, in no way initiated by the defendant, although expected by him, was insufficient to establish nexus); *United States v. Kahn*, 472 F.2d 272, 285 (2d Cir. 1973) (finding nexus based upon extensive interstate travel and use of mails, distinguishing *Rewis* on basis that defendants there did not engage in interstate activities themselves and interstate travel was marginal or unforeseen). In *Marek*, for example, Marek personally delivered $500 to Western Union in Houston for transfer to the undercover agent in Harlingen. *Marek*, 198 F.3d 532 (5th Cir. 1999).

Cisneros' trial counsels' failure to request an appropriate

142

instruction on causation was unreasonable under prevailing professional norms. The failure to do so allowed the jury to determine of the essential elements of the offense contained in the indictment (and Section 1958) without any guidance. As such, the jury verdict on the first issue -- causation of foreign commerce -- is not reliable and prejudice is apparent.

**CONCLUSION**

Considered separately, each of the six acts/omissions were unreasonable and prejudicial. Considered collectively, there can be no serious question that the combined force and effect of the six acts/omissions was prejudicial: the jury was not given guidance on "causation" and the "necessary relationship" between foreign commerce and the murder for hire statute, so the jury verdict on the first element of the offense is not only unreliable, but violative of due process. Moreover, the jury was allowed to consider massive amounts of unreliable hearsay and Garza's claims of "foreign calls" were not sufficiently attacked via utilization of Martinez' state court testimony and her statements to the FBI. Additionally, Garza's cross-examination was less than penetrating and trial counsel failed to utilize everything that was available to demonstrate his lack of consistency and honesty regarding foreign telephone calls. Trial counsel also failed to inquire of the government, the District Court and/or FBI Agent Church (on direct examination) regarding Garza's massive modification of his story between his last statement to the FBI on February 18, 1998, and the filing of the government's bill of particulars on April 20,

143

1998 (which was made evident by Garza's testimony on May 11, 1998, at Cisneros' trial). All in all, the jury verdict is unreliable and confidence in the outcome of the jury verdict is totally undermined as to the foreign phone call prong of the first element submitted to the jury. A new trial should be granted, and if the Court has any doubt thereof, an evidentiary hearing should be held to develop the sequence of events surrounding Garza's departure from his version of events contained in his February 5 and 18, 1998, statements to the government, as reflected by the FBI 302's prepared by FBI Agent Church.

CLAIM FOR RELIEF NO. 10

**CISNEROS WAS DENIED HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, BY VIRTUE OF HER APPELLATE COUNSELS' ACTS AND OMISSIONS**

**ASSERTION**

Cisneros asserts that she was denied her Sixth Amendment right to effective assistance of counsel on appeal by virtue of her appellate counsels' deficient and prejudicial performance, all of which operated to deprive her of a reliable and meaningful appellate review, as guaranteed by the Sixth Amendment to the Constitution of the United States.[104]

**LAW**

The Sixth Amendment to the United States Constitution guarantees the right to the effective assistance of counsel. *See e.g.*, *Strickland v. Washington*, 466 U.S. 668 (1984). The right to effective assistance of counsel extends to one's first appeal of right. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998); *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). The same two prong test of *Strickland* is utilized. *United States v. Green, supra; United States v. Williamson, supra*. Thus, to prevail under *Strickland*, Cisneros must establish:

---

[104] This **CLAIM FOR RELIEF** is without prejudice to Cisneros' position, reflected in connection with **CLAIM FOR RELIEF NOS. 1 to 5**, that there has been no meaningful appellate review, but that if there has been, she is still entitled to litigate **CLAIMS FOR RELIEF NOS. 1 to 5** herein due to the "**dead wrong**" and "**manifestly unjust**" vacated opinions that resulted therefrom.

145

> First, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose
> result is reliable.

*Strickland*, 466 U.S. at 687. A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. *Strickland*, *supra*.

While appellate counsel need not raise every nonfrivolous ground of appeal available, *Green*, *supra* at 1043, a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. *Williamson*, *supra* at 462-463. "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id*. at 463. This appears to require a court to determine the probable outcome on appeal had counsel raised the argument on appeal.

The errors described below meet the standards articulated by *Strickland*. Cisneros' appellate counsel committed a number of omissions, all of which undermine confidence in the outcome of her direct appeal as a matter of right. Cisneros is entitled to a new appeal because appellate counsels' acts and omissions were below prevailing professional norms (i.e., deficient performance) and deprived her of a fair, reliable and meaningful appeal, as guaranteed by the Sixth Amendment to the Constitution of the United

146

States.

**FACTS**

Cisneros asserts that there are three acts or omissions of appellate counsel that rendered her appeal unfair and not reliable;[105] that these acts and omissions were deficient under prevailing professional norms; and that this deficient performance undermined confidence in the reliability of the appellate decision, in violation of the Sixth Amendment. Each of these three acts or omissions will be discussed below:

> **FIRST ACT/OMISSION:** Appellate counsel failed to raise and/or adequately raise as an issue on appeal the District Court's improper overruling of Cisneros' objections to (a) the failure to instruct the jury that it had to find that the foreign commerce (i.e., Garza's alleged calls from Mexico to Martinez and the crossing of the vehicle) was sufficiently related to the murder for hire scheme before it could find the first element of the crime beyond a reasonable doubt **and** (b) the language of the foreign commerce definition that the District Court actually submitted to the jury.

This portion of this **CLAIM FOR RELIEF** also relates to **CLAIM FOR RELIEF NO. 6** as well as **CLAIM FOR RELIEF NO. 9 (Fifth Act/Omission** therein), both of which are adopted herein for purposes of brevity. Additionally, **CLAIM FOR RELIEF NOS. 1 to 5** also relate to this **CLAIM FOR RELIEF** and this **CLAIM FOR RELIEF** should be considered in light thereof.

---

[105] As to two of these acts/omissions, trial counsel failed to ensure that the jury actually returned a verdict on elements of the offense of murder for hire, to wit: (1) whether Cisneros caused (in the legal sense) either: (a) Garza to call Martinez from Mexico; and (b) the car crossing on March 2, 1993; and (2) if Cisneros caused either (a) or (b) above, whether they were sufficiently related to the murder for hire scheme to justify a finding of guilty on the jurisdictional facts (i.e., whether they "facilitated" the murder for hire scheme).

The issue of whether the foreign commerce was sufficiently related to the alleged murder for hire scheme (i.e., the nexus or jurisdictional issue) was recognized by trial counsel prior to trial.

Accordingly, Cisneros' trial counsel submitted Requested Instruction No. 12, which stated, in relevant part:

> For you to find the defendant guilty of this crime, you must be convinced that the government had proved each of the following elements beyond a reasonable doubt:
>
> > **FIRST ELEMENT:** That the defendant: (A) caused Heriberto Pizana to travel from Mexico to Brownsville on March 2, 1993, **in furtherance of the alleged murder-for-hire**; and/or (B) caused Daniel Garza to use a facility of foreign commerce to call Maria Martinez in Brownsville from San Fernando and Matamoros, Tamaulipas, Mexico between November 1992 and February 1993, **in furtherance of the alleged murder-for-hire**....

2R115 at 130-133 (emphasis in original). As reflected at the bottom of Requested Instruction No. 12, this requested instruction was based on a charge submitted by United States District Judge Harry Lee Hudspeth in United States v. Aguilar, No. EP-97-CR-938, as modified for the facts of this case in light of the government's Bill of Particulars. 2R133, 1R320. Trial and appellate counsel believed that the proposed instruction's requirement that the phone call or travel be "in furtherance of" the murder scheme mirrored the Fifth Circuit's threshold for satisfying the jurisdictional element. *See United States v. Edelman*, 873 F.2d 791, 795 (5th Cir. 1989). Trial counsel and appellate counsel also believed it mirrored the language of the indictment. 1R577.

The District Court did not inquire of the government's

148

position regarding this requested charge. Rather, the District Court just denied it, to which Cisneros objected. 11R1520-1522, 12R1599. See also 11R1495-1502 (objections and statement of insufficient time being afforded by District Court to review court's jury charge and formulate objections).

Instead, the District Court instructed the jury regarding the foreign nexus in a manner grossly different from Cisneros' Requested Instruction No. 12. The District Court instructed the jury that:

> The Government must prove that somebody, you know, involved in the venture, itself, traveled in foreign commerce or caused another to use a facility in foreign commerce.
>
> * * *
>
> Now, "facility in foreign commerce" includes means of transportation and communication. Now, as part of the burden of proof, the Government does not have to prove that the defendant intended that foreign travel occur, or that foreign commerce facilities be used in connection with the murder, or even that the defendant knew that foreign travel occurred or would occur, or that foreign commerce facilities were or would be used. But the Government must prove that somebody, you know, involved in the venture, itself, traveled in foreign commerce or caused another to use a facility in foreign commerce.

11R1516 (orally read to jury); 1R93 (written instruction which judge was using as model to read from and which were supplied to the jury at 12R1593-1594).[106] As noted by the District Court,

---

[106] While this instruction may have been consistent with the discussion of the jurisdictional requirements of Section 1958, it was sufficiently misleading to have separately constituted reversible error in light of the failure to inform the jury that, at a minimum, there had to be some relationship between the alleged foreign commerce and the murder for hire scheme. *Cf. United States v. Rossomando*, 144 F.3d 197 (2nd Cir. 1998)(holding that jury instruction on "good faith" defense was sufficiently misleading to constitute plain error); *United States v. Ahmad*, 101 F.3d 386 (5th

149

Cisneros objected to everything that was inconsistent with her requested jury instructions. 11R1499-1500, 1520-1521.[107]

The above-quoted language allowed the jury to convict Cisneros if "somebody...involved" traveled in or used a facility of foreign commerce *regardless of the activity's connection, if any, to the alleged murder for hire scheme*. **In fact, it affirmatively allowed the jury to convict even if the foreign commerce facilities were not used in connection with the murder for hire scheme**. Again, as noted by the District Court, Cisneros was deemed to have objected to this jury instruction because it was inconsistent with what Cisneros had requested in her proposed jury instructions.

During jury deliberations, jury note number 1 from the jury sought a definition of foreign commerce: ""Jury aid stating law concerning foreign commerce of communication and travel." 12R1600-

---

Cir. 1996)(holding that there was at least a reasonable likelihood that the jury applied the instructions in an impermissible fashion).

[107] In Cisneros' brief, the issue of the denial of her Requested Instruction No. 12 was raised as part **B** of **ISSUE NO. 3**. Although Cisneros' appellate counsel did not separately raise her objection to the District Court's language on foreign commerce as an issue on appeal, appellate counsel did include the following in part **B** of **ISSUE NO. 3**:

> These errors were compounded by the court's responses to various notes from the jury defining (over Appellant's objection) "foreign commerce" without including a requirement that the foreign commerce be related to and in furtherance of the alleged murder-for-hire scheme. 2R71 ("you are instructed that foreign commerce means from one country to another country. Further, if words are not legally defined for you, you are to given them their common meaning." 12R1601-1602). *See also* 12R1502-1608. The last question from the jury came in at 1:45 p.m. and an objectionable answer was submitted by the court at 2:12 p.m.. 12R1602-1608. Thereafter, the jury returned a verdict at 2:40 p.m. 12R1609.

1602. The District Court, over Cisneros' objection (and reurging of her previously Requested Instruction No. 12), instructed the jury that:

> "You are instructed that foreign commerce means from one country to another country.  Further, if words are not legally defined for you, you are to give them their common meaning."

See 12R1602-1607.

Accordingly, the jury was not instructed on whether the foreign commerce (Garza's alleged telephone calls to Martinez from Mexico and/or the car crossing on March 2, 1993) was sufficiently related to the murder for hire scheme to justify a unanimous verdict as to this critical element of the offense.

The District Court's failure to submit an instruction on whether the foreign commerce was sufficiently related to the murder for hire scheme, as requested by Instruction No. 12, was raised on appeal.[108]  However, the District Court's action overruling Cisneros objections to the failure to submit an adequate instruction (and objection to the instruction actually given, quoted above) were not raised as an issue on appeal and thus, was not addressed by the Fifth Circuit in either vacated panel opinions or the en banc opinion.

It should be noted that both vacated panel opinions reflect

---

[108] The failure to submit any instruction on what the jury had to find before it could find that the foreign commerce was sufficiently related to the murder for hire scheme was raised in Cisneros' motions for rehearing from both vacated panel opinions, as well as in her en banc supplemental brief, but the utter failure to have the jury instructed on this jurisdictional element of the offense was not addressed by the Fifth Circuit. It was also raised on certiorari. See also immediately preceding footnote, supra.

151

that the requested instruction was **not** substantially accurate and therefore, properly denied by the District Court. According to the vacated panel opinions, the proper language should have been whether the foreign commerce **"facilitated"** the murder for hire scheme, not whether the foreign commerce was **"in furtherance of"** the murder for hire scheme.

Contrary to the holding of the two vacated panel opinions that the proper standard is "facilitated", the en banc opinion uses the term "in furtherance" of the murder for hire scheme on two occasions.[109] Cisneros continues to maintain that the distinction made by the vacated panel opinions is a distinction that is **"dead wrong"** and subject to review in this motion to vacate.[110]

---

[109] The en banc opinion states the following:

"The *Marek* majority acknowledged *Cisneros* but reasoned that it was not binding because, **in furtherance** of her murder-for-hire scheme, Cisneros had caused international telephone calls to be made, an activity that indisputably satisfied the jurisdictional element even if Marek's wholly *intra* state communication might not."

\* \* \*

"A panel of this court concluded that a reasonable jury could have found that (1) the fortune teller had participated in international telephone calls as Cisneros's agent, and (2) those calls were sufficiently connected to the murder to be **"in furtherance"** of that crime.[FN11] The panel therefore affirmed Cisneros's conviction.

     FN11. *Id.* at 343-45."

(emphasis added).

[110] The panels erred in suggesting the existence of a meaningful legal difference between the terms "facilitate" and "furtherance" for interpretation of the Travel Act and murder-for-hire statutes.  The Supreme Court and the Fifth Circuit have used

152

In any event, the failure to raise on appeal the absence of an instruction on the requirement that the foreign commerce be sufficiently related to the murder for hire scheme before the jury could find foreign commerce within the meaning of Section 1958 (and

---

the terms interchangeably in cases dealing with Travel Act prosecutions. *See, e.g., Erlenbaugh v. United States*, 409 U.S. 239, 247 (1972) ("furtherance"); *Rewis v. United States*, 401 U.S. 808, 813 (1971) ("furtherance"); *Presley, supra* ("furtherance"); *United States v. Roberson*, 6 F.3d 1088, 1094 (5th Cir. 1993) ("facilitate"). The use of the term "facilitate" in the cases cited by the panels is merely tracking the statutory language in 18 U.S.C. § 1952. *See United States v. Perrin*, 580 F.2d 730, 736 (5th Cir. 1978) ("[I]t is enough that the . . . use of interstate facilities makes easier or facilitates the unlawful activity.").

Furthermore, the vacated panel opinions expressly recognized a conflict between Cisneros' case and *United States v. Houlihan*, 92 F.3d 1271, 1292 (1st Cir. 1996), wherein the First Circuit "required the use of the facility in interstate commerce to be 'in furtherance' of the underlying murder scheme."

The panels' findings that the Fifth Circuit itself only requires a showing that the use of the facility "facilitated" the underlying crime, i.e., "made it easier," also is inconsistent with other Fifth Circuit opinions. *United States v. Presley*, 478 F.2d 163, 168 (5th Cir. 1973) (reversing district court's denial of motions to withdraw nolo contendere pleas following *Rewis*, on finding that facts had not been developed regarding the "extent and significance of the crossing of state lines to the furtherance of the operations of [an] illegal gambling casino"); *United States v. Gooding*, 473 F.2d 425, 427-28 (5th Cir. 1973) ("The Travel Act does not proscribe all interstate travel which may incidentally lead to a furthering of unlawful activity.") (citing *United States v. Hawthorne*, 356 F.2d 740 (4th Cir. 1966)).

Absent an appropriate jury instruction, the jury was not allowed to determine whether the foreign telephone calls, if any, or the car crossing, furthered, facilitated or made easier the alleged murder for hire scheme or, actually, related in any manner to the alleged murder for hire scheme. As such, Cisneros was convicted without a jury finding on this essential element of the offense, a due process violation. *See e.g., In Re Winship, supra* and *United States v. Gaudin, supra*. It also effectively allows the Commerce Clause to be stretched past the point of constitutionality because there was no requirement for the jury to find that foreign commerce related, in any manner, to the alleged murder for hire scheme.