United States District Court
Southern District of Texas
FILED

MAR 2 5 2003

Michael N. Milby
Clerk of Court

8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CA B-02-191 |
| V. | § | Criminal No. B-98-124-01 |
| | § | |
| DORA CISNEROS | § | |

**CISNEROS' REPLY TO "RESPONDENT'S ANSWER TO SECTION 2255 MOTION,
AND MOTION TO DISMISS"**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DORA CISNEROS (hereinafter referred to as Cisneros), by and through

her counsel of record, David L. Botsford and A. J. "Tony" Canales, and presents this her Reply

to "Respondent's Answer to Section 2255 Motion, and Motion to Dismiss," and would

respectfully show this Court the following:

**I.**

**CLAIMS FOR RELIEF 1 THROUGH 5**

**The Government mistakenly asserts, in regard to Claims for Relief 1 through
5, that (1) Cisneros' rights to due process and a meaningful appeal were met
and (2) relief is precluded by "law of the case." The *Marek* en banc opinion
is much more than a silent affirmance of Cisneros' conviction and sentence
and, thus, is not comparable to a Rule 47.6 order. Yet, it also is silent as to
the resolution of the specific jurisdictional issues raised by Cisneros (other
than very general treatment of the jurisdictional nexus). It contains
absolutely nothing that could be read to impliedly resolve the limitations
jurisdictional issue. The *Marek* en banc decision, therefore, left the issues
open for review again by this Court. "Law of the case" does not apply. The
Government, in the alternative, has waived any answer to Cisneros' argument
that the "clear error" exception to "law of the case" applies.**

Cisneros has asserted that both of the vacated Fifth Circuit panel opinions addressed the

issues, at least in part, in her present Claims for Relief 1 through 5 (Issues 1 and 3 of her

appellate brief), and that, once those opinions were vacated, the **sole issue** meaningfully addressed

by the *en banc* Court of Appeals   was relevant only to the companion case taken up
simultaneously for *en banc* review.[1]   Cisneros' case is not one in which an appellate court
merely affirmed the district court without specifying the issues or grounds for affirmance.
Indeed, the panel found the issues to be of such weight that it produced two *published* opinions
specifying them and the grounds for denial of relief.   The problem is that these opinions were
voided in their *entirety*, because the second panel opinion vacated the first, and the *en banc* Court
(which vacated the second panel opinion) retained none of the parts of the second panel opinion.
This was a departure from the *en banc* Court's usual procedure of identifying, without discussion,
those parts of the panel opinion it adopts.[2]

---

[1] The closest the Court comes to a disposition of Cisneros' issues is its finding that Cisneros
violated 18 U.S.C. § 1958 by "causing her agent to make qualifying telephone calls between the
United States and Mexico, thereby using a facility in foreign commerce to facilitate a murder-for-
hire." *Marek*, 238 F.3d at 323.   This finding does not adopt the underlying reasoning in either
of the vacated panel opinions.   Furthermore, it does not even hint at the statute of limitations
issue (current Claim for Relief No. 5).   In order to reach its ultimate finding, moreover, the Court
relies upon facts purely of its own construction: (1) that the curandera initiated international calls
from within the United States to facilitate the murder-for-hire scheme; and (2) that the hit men
traveled from Mexico to the United States prior to committing the murder.   *Id.* at 314, 316 n.20
("the oracle *placed* . . . international phone calls"; "[t]he hitmen traveled from Mexico to
Brownsville . . ."; "The record in *Cisneros* reveals that the hit-men traveled from Mexico to
Texas to perform the murder-for-hire.").   The Record reflects *zero* evidence of either and is
contrary to the Government's opening statement and proof during the trial (i.e., the hit men
traveled from Dallas to Brownsville, and somehow, someone crossed the border in a vehicle that
was allegedly linked, somehow, to the murder for hire scheme).

[2] A clear example: "The original panel of this Court properly affirmed the District Court with
respect to the other arguments made by Williams on appeal.   This *en banc* rehearing is confined
solely to the issue of the admissibility of Jeffrey's testimony." 447 F.2d 1285, 1286 n.3 (5th Cir.
1971) (en banc); *see also* cases at page 21 n.25 of Cisneros' § 2255 Motion.

Generally, the Fifth Circuit "almost invariably gives reasons for affirming criminal
convictions. . . .   Even in non-orally argued summary calendar dispositions, the defendants
invariably receive *some* explanation in response to their appeals." *United States v. McFarland*,
311 F.3d 376, 416, 420 (5th Cir. 2002) (en banc) (Jones, J., joined by Jolly, Smith, DeMoss, and

"Litigants are entitled to have all issues fully considered and ruled on by a panel of the Court of Appeals." *United States v. Pajooh*, 143 F.3d 203, 204 (5th Cir. 1998).[3] The *en banc* Court's "silence" in the instant case – especially in regard to the statute of limitations issue – "exhibits a unique unconcern for appellant [Cisneros . . . who was] entitled to know how the power of the federal government constitutionally bore down on [her]." *United States v. McFarland*, 311 F.3d 376, 416, 420 (5th Cir. 2002) (en banc) (Jones, J., joined by Jolly, Smith, DeMoss, and Clement, dissenting). Fundamentally, the Court's "silence" on resolution of the issues undermines Cisneros' and the public's sense that she was heard and, certainly, an

_____

Clement, dissenting).

[3] This entitlement carries a corresponding duty:

> Federal appellate courts' twin duties are to decide appeals and to articulate the law. Writing reasoned opinions, especially in important cases, is critical to the responsible performance of these duties. One of the most prominent studies of the federal appellate courts exhorts []:
>
>> The obligation to give reasons is vital to both functions. When reasons are announced and can be weighed, the public can have assurance that the correcting process is working. *Announcing reasons can also provide public understanding* of how the numerous decisions of the system are integrated. In a busy court, the reasons are an essential demonstration that the court did in fact fix its mind on the case at hand. *An unreasoned decision has very little claim to acceptance* by the defeated party, and is difficult or impossible to accept as an act reflecting systemic application of legal principles. *Moreover, the necessity of stating reasons not infrequently changes the results by forcing the judges to come to grips with nettlesome facts or issues which their normal instincts would otherwise cause them to avoid.*

*United States v. McFarland*, 311 F.3d 376, 416, 417 (5th Cir. 2002) (en banc) (Jones, J., joined by Jolly, Smith, DeMoss, and Clement, dissenting) (quoting Paul D. Carrington, Daniel J. Meador, and Maurice Rosenberg, *Justice on Appeal* 10 (West 1976)) (emphasis added by the dissenting Judge).

opportunity to be heard is large component of due process. *See id.* at 420 n.2 (citing Richard S. Arnold, *The Future of the Federal Courts*, 60 Mo. L. Rev. 533, 536 (1995)). The relative silence also signals an indifference to "the predictability required of a fair-minded criminal justice system." *Id.* at 420. When a court is silent in regard to its disposition of such unresolved issues of importance[4] -- as, for example, whether jurisdiction was defeated by the Government's failure to prove, beyond a reasonable doubt, that necessary events occurred within the limitations period -- its decision is arbitrary. Cisneros' entitlement to some evidence that her direct appeal issues were "fully considered and ruled on" by the Fifth Circuit is reinforced by the fact that her issues are not the sort that may be decided under Local Rule 47.6 ("Affirmance without Opinion"), Rules and Internal Operating Procedures of the United States Court of Appeals for the Fifth Circuit. *Pajooh*, 143 F.3d at 204. The issues are novel, complex and, where they relate to sufficiency of the evidence, they require defining, in the first instance, the jurisdictional *element* of the offense. The issues, therefore, *would have precedential value*. *See* Rule 47.6 (requiring the Court to determine that an opinion would have no precedential value). Suspicion exists that the *en banc* majority simply wanted to avoid retaining the panel opinions' flawed reasons for affirmance over Cisneros' objections.

*Pajooh* is binding upon this Court, requiring this Court to recognize that Cisneros' statutorily-based entitlement to review of the issues in Claims for Relief 1 through 5 was denied her during her initial round of appeals. Local Rule 47.6 allows an unexplained, "silent"

---

[4] In their *McFarland* dissent, the five Judges were reacting to an unexplained *en banc* affirmance. The due process right to meaningful review was not at issue. However, the Judges' comments certainly support it. Cisneros' challenges to application of the murder-for-hire statute were no less "sharp and timely" than the issue which divided the Court in *McFarland*: the constitutionality of the Hobbs Act, post-*Lopez* and *Morrison*. *McFarland*, 311 F.3d at 420.

4

affirmance under the broadest of circumstances – no findings of fact are clearly erroneous and no reversible error of law appears – *except* where an opinion (affirming or reversing) would have some precedential value.[5] *See* Rule 47.6. By implication in Rule 47.6, the appellate court *does not have discretion* to release an unexplained, virtually silent affirmance when a dispositive opinion would set a precedent. When a decision has precedential value, the appellate court should render reasons for its disposition of the issues and, when it does not, due process is violated. *Pajooh* compels the conclusion that Cisneros' right to meaningful appellate review was abridged. This Court should deny the Government's motion to dismiss these claims, grant review of Claims for Relief 1 through 5, and grant relief on the grounds asserted therein (the merits of which the Government has completely failed to address).

Since *Marek* leaves unresolved the issues in Claims for Relief 1 through 5 (the issues regarding the limitations period being totally unaddressed and unimplied), "law of the case" doctrine does not apply to them. If this Court, nevertheless, were to find "law of the case"relevant, it would abuse its discretion if it denied review on that basis. Both of the *Cisneros* panel opinions are "vacated, . . . officially gone. They have no legal effect whatever. They are void. None of the statements made in either of them has any remaining force and cannot be considered to express the view of [the Fifth Circuit Court of Appeals]." *United States v. Sigma Int'l*, 300 F.3d 1278, 1280 (11th Cir. 2002) (en banc).[6] This Court must look through them and

---

[5] The *Pajooh* Court reasonably applies Rule 47.6 to a panel's brief per curiam opinion which did not cite the rule, because of the Rule's breadth. *Pajooh*, 143 F.3d at 204. It would apply to any appellate decision without precedential value.

[6] The panel explicitly vacated the first panel decision. *United States v. Cisneros*, 203 F.3d 333, 337 (5th Cir. 2000). The *en banc* court explicitly vacated the second panel decision.

ask whether "law of the case" doctrine could fairly be applied to the *Marek* decision.  "Law of

the case" should not be sustained for issues not designated and disposed of in an affirmance *with*

an opinion (as in Cisneros' case and contra Rule 47.6).  *McNabb v. Riley*, 29 F.3d 1303, 1305

(8th Cir. 1994) (maintaining that "law of the case" must be found within the four corners of the

relevant opinion disposing of the issues in the case – in this instance, *Marek* – and that, when

there is a written opinion, an issue upon which that opinion is "silent" is not a part of the "law

of the case"; again, this most pointedly applies to Claim for Relief 5, which the en banc opinion

does not even hint exists).

Cisneros agrees with the Government that "law of the case" is a fully discretionary

practice and is not jurisdictional in nature.  *See* Respondent's Answer at 32.  This Court's

discretion is not limited, as suggested by the Government, to only three exceptions to application

of the doctrine.  *Id.* at 32-33.  Cisneros would especially note that the Government has waived

answering the merits of her Claims for Relief 1 through 5, opting instead to rely only on

procedural defenses.  Most pointedly, the Government does not respond to Cisneros' specific

arguments that clear error is presented in Claims for Relief 1 through 5.

## II.

### CLAIM FOR RELIEF 6

**The Government fails to respond to the specific issues raised by Cisneros about the absence of sufficient instruction to the jury on the jurisdictional nexus.**

The Government describes this Court's charge as adequate to meet Cisneros' instructional

needs (Respondent's Answer at 34), although that is what Cisneros challenges in Claim for Relief

6 and the Government does not address her points.  The Government merely describes "but for"

6

causation tied to Cisneros' alleged actions, whereas Cisneros' point is that "but for" causation does not adequately convey the necessary jurisdictional nexus between the murder-for-hire scheme and foreign commerce. If indeed it is the case, as alleged by the Government, that Cisneros' defense focused on the fact that she had "no way of knowing that the events she set in motion would cause her agents to use a foreign facility to advance her (alleged) murder-for-hire scheme," then the failure of this Court to adequately instruct the jury on the jurisdictional nexus would have been all the more harmful, preventing the jury from being given a necessary instructional vehicle to apply the defense theory.

### III.

### CLAIMS FOR RELIEF 7 AND 8

**The Government commits an error of law by asserting that Cisneros should have raised her suppression and false testimony issues earlier. The Government has an ongoing duty to disclose material, exculpatory evidence. The appropriate questions are whether there was suppression at trial and whether that suppression is ongoing. Additionally, even if Cisneros should have raised these issues earlier, "cause" for her failure to do so would be found in the Government's ongoing violation of its duty to reveal *Brady* and *Giglio* material and/or in trial counsel's deficient performance. Prejudice is demonstrated by the materiality of the suppressed evidence.**

Cisneros asserts in Claims for Relief 7 and 8 that the Government suppressed material, exculpatory evidence within its sole custody and control, constituting the facts revealing when and why Daniel Garza grossly modified his story from that reflected in his February 5 and 18, 1998, statements to the FBI. The existence of these facts is convincingly demonstrated by the known circumstances of the Government's development of Garza's statements and testimony. The facts themselves remain suppressed, however, and "good cause" is shown for discovery to release them.

7

The Government has an ongoing duty to release such facts, even when no request is made by the defense. *E.g., United States v. Jackson*, 780 F.2d 1305, 1308 (7th Cir. 1986) ("Under *Brady* and its progeny, the prosecution's suppression of material evidence favorable to the defendant, even if such evidence is not requested by the accused, is a violation of due process."). Trial counsel, in any event, was very diligent in making requests that should have led to the release of these facts. Trial counsel thoroughly sought the very information Cisneros alleges has remained suppressed by filing multiple, interrelated, pretrial motions aimed at uncovering (1) any "deals" made between the Government and its witnesses and (2) any information that would tend to undermine the Government's burden to prove, beyond a reasonable doubt, the existence of the jurisdictional nexus:

> (Reveal the Deal) Motion for Discovery Regarding Special Consideration Granted to Government Witness [Trans. 551] (motion under *Giglio v. United States*, 405 U.S. 150 (1972);
>
> Motion for Rule 16 Discovery and Request for Disclosure Under Brady/Agurs/Giglio and Jencks Act [Trans. 537].[7]

---

[7] This motion included at para. 15 a request for "[a]ny and all documents, statements, materials, and any other evidence including, but not limited to, a written summary of all oral evidence and statements, now known to the government or which may become known or which through due diligence may be learned from the investigating agents or witnesses in this case or persons interviewed in connection with the investigation, which is EXCULPATORY in nature or favorable to Defendant, or which tends to negate or mitigate the guilt of Defendant, as to the offenses charged, or which would tend to reduce the punishment therefor." Trans. 541. The motion added, "Also include all written or recorded statements or the substance of oral statements by any person which are in any way conceivably inconsistent with the testimony or expected testimony such person will give at trial and any other evidence which otherwise reflects upon the credibility, competency, bias or motive of any of the government's witnesses. *Id.* (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). The motion embraced almost any inducement or promise made by the Government in return for a witness' testimony, pursuant to *Giglio. Id.* at paras. 18, 19, 20. It requested materially relevant results of polygraphs of Government witnesses. *Id.* at para. 21. Paragraph 27 explicitly requested that the above requests, inter alia, be made a "continuing request and demand," requiring the prosecution to promptly notify the Defendant's

Jencks Motion [Trans. 534]

Motion for Disclosure of Impeaching Information [Trans. 517].[8]

Defendant Cisneros' Motion for a Bill of Particulars and Brief in Support [Trans. 426]. Noting that the allegations in the indictment were inadequate to allow her to prepare a defense, Cisneros specifically asked the Government to stipulate who had used the telephone communication facilities, how their use was allegedly connected to foreign commerce, and when the alleged calls in foreign commerce were made.

Although the Court granted these motions, the Government was not forthcoming at any point with the facts Cisneros asserts it must possess. *United States v. Mejia-Mesa*, 153 F.3d 925, 928-29 (9th Cir. 1998). As noted in the Section 2255 Motion, the Government supplied a bill of particulars nine days before trial commenced [Trans. 320], briefly asserting, "The evidence in the case will show, in regards to the use of telephone communications facilities in foreign commerce, that Daniel Garza used telephone facilities in San Fernando, Tamaulipas, Mexico, and in Matamoros, Tamaulipas, Mexico, to call Maria Martinez in Brownsville, Texas, from in or about

---

attorney of any additional statements or materials subject to the Order of the Court in response to the motion. *Id.* at para. 27.

[8] This motion contains extensive and detailed *Brady* and *Giglio* requests, including "any statements made by the testifying government cooperative witness, oral or written, which in any way conflict with each other" [*id.* at 519-20, para. 10(a)], "any statements made by the testifying government cooperative witness, oral or written which conflict with any other statements, information, or evidence in the possession of the Government or its agents" [*id.* at 519-20, para. 10(b)], "any information regarding the method, circumstances, conditions, time and place of the taking of any and all statements, written and oral, preserved, summarized or otherwise, of the testifying government cooperative witness and the individuals involved in, present at, or aware of such statements and the taking thereof" [*id.* at 519, 521, para. 10(e)], "any information which tends to show or might suggest that any statement or portion thereof given by the testifying government cooperative witness at any time is false or incorrect, whether or not corrected, rectified, or admitted at any later time" [*id.* at 519, 521, para. 10(g)]. Pointedly, Cisneros asserted that "all discovery requested herein is within the custody, control and/or possession of the Government or its agents, and that it cannot reasonably be obtained by Defendant other than by compliance by the Government or by order of this Court." *Id.* at 521.

November, 1992 to in or about February, 1993." This bill reflected a serious change in Garza's account of the events (i.e., a modification of the time frame of Garza's alleged telephone calls), without the explanation essentially requested by Cisneros and required by *Brady* and/or *Giglio*.[9]

Around the time a trial begins, the prosecution's mandatory duty to reveal potential *Brady* material should be more pronounced, because "the prosecution may not assume that the defense is still in the investigatory mode." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001). Nothing was done to prepare the defense for Garza's cross-examination surprise allegation that he made phone calls to Martinez from casetas, which (in contrast to the previously claimed "collect" calls) would not have left any traceable record of the calls. Trial counsel should not be held solely accountable for their disarray over Garza's surprise testimony. *Id.* at 101 ("new . . . developments tend to throw existing strategies and preparation into disarray"). The Government did not merely neglect its duty to make *Brady* disclosures in a passive way. It appears to have sandbagged the defense by having Garza wait to deliver this information (critical to the establishment of the element of jurisdiction) on cross-examination. Now, the Government cynically desires to reap the benefit of this Machiavellian tactic, at least as to the *Giglio* claim, by hiding behind *United States v. O'Keefe*, 128 F.3d 885, 894 (5th Cir. 1997), asserting that "material lies [only] occur as a part of the prosecutor's case." Respondent's Answer at 38.[10]

---

[9] As reflected in her motion to vacate at page 39, "[a]ll of Garza's alleged calls from Mexico occurred prior to February 14, 1993, which the government conceded to be accurate in its post oral argument submission at page 3, yet the indictment was not returned until February 23, 1998."

[10] *O'Keefe*, however, is contrary to prior Fifth Circuit decisions and *Napue* and *Giglio* themselves, which both involved perjury by a prosecution witness **during cross-examination** by defense counsel. *United States v. O'Keefe*, 169 F.3d 281, 293 (Dennis, J., dissenting from grant of temporary stay of release on bond pending appeal) (citing various Fifth Circuit opinions and noting that the *O'Keefe* panel could not have overruled the decisions of the prior panels) (citing

The relevant question is materiality, because the "cause" for Cisneros' conviction on false

testimony is clear. *Strickler v. Greene*, 527 U.S. 263, 282 (1999).[11]  The Government got away

with knowingly advancing false testimony either because (1) it suppressed the information as to

the circumstances and manner in which Garza was made to change his story in order to render

the evidence against Cisneros technically sufficient or (2) defense counsel failed at trial (and

consequently on motion for new trial and direct appeal) to demand that the Government cough

up the suppressed information.[12]  *Scott v. Mullin*, 303 F.3d 1222, 1227-28 (10th Cir. 2002)

_____

*Hogue v. Johnson*, 131 F.3d 466, 491 (5th Cir. 1997); *Barber v. Johnson*, 145 F.3d 234 (5th Cir. 1998).  In *Napue* and *Giglio*, the Supreme Court held that "a conviction obtained through the use of false evidence, known to be such by representatives of the prosecuting government, must fall as a violation of due process; and that '"[t]he same result obtains when the State, *although not soliciting false evidence*, allows it to go uncorrected when it appears.'"" *Id.* (quoting *Giglio*, 405 U.S. at 154 (quoting *Napue*, 360 U.S. at 269)) (emphasis added).

[11] There are three components to a *Brady* violation: (1) the evidence at issue must have been favorable to the accused (either because it is exculpatory, or because it is impeaching); (2) the evidence must have been suppressed by the Government, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler*, 527 U.S. at 281-82.  The "cause and prejudice" tests for excusing procedural default "parallel [the latter] two of the three components of the alleged *Brady* violation itself." *Id.* at 282. *See also Mejia-Mesa*, 153 F.3d at 929 (quoting *United States v. Hernandez*, 94 F.3d 606, 610 (10th Cir. 1996) ("There appears to be little or no difference in the operation of the 'materiality' (*Brady*) and 'prejudice' (*Frady*) tests.")); *Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000) (the prejudice inquiry "mirrors" the materiality prong).

[12] A Rule 33 motion for new trial allows for the kind of expansion of the record needed for Claims for Relief 7 and 8.  However, it is premised upon the "newly discovered evidence" being "unknown or unavailable to the defendant at the time of trial" and the "failure to learn of the evidence" prior to or during trial not being "due to lack of diligence by the defendant." *United States v. Colon-Munoz*, 318 F.3d 348, 358 (1st Cir. 2003) (discussing *Brady* claims in Rule 33 motions).  The evidence supporting Claims for Relief 7 and 8 – which now should be released pursuant to § 2255 discovery – was not made available to Cisneros by the Government at trial. It has been continuously suppressed.  However, if it was rendered unavailable by trial counsel's lack of diligence, both at trial and on motion for new trial (rendering it unavailable on direct appeal, wherein the record cannot be expanded), this was deficient performance with no possible, reasonable strategic basis.  Alternatively, the Government's ongoing suppression rendered trial, motion for new trial, and appellate counsel ineffective.

(citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (noting that cause for a procedural default may be established when "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule")). "In the context of a *Brady* claim, a defendant cannot conduct the 'reasonable and diligent investigation' mandated . . . to preclude a finding of procedural default when the evidence is in the hands of the State." *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 287-88 (1999)). "If [material evidence] was not reasonably discoverable because it was concealed by the [government] officials, and if that concealment, rather than tactical considerations, was the reason for the failure of petitioner's lawyers to raise the . . . challenge in the trial court, then petitioner establishes ample cause to excuse his procedural default under [Supreme Court] precedents." *Id.* (quoting *Amadeo v. Zant*, 486 U.S. 214, 222 (1988)).

In the Government's Answer, there is <u>no denial that the Government knew Garza's</u> <u>testimony was false when he presented it or that the Government suppressed the material,</u> <u>exculpatory evidence sought by Cisneros.</u> The Government notably *does not assert that Cisneros was given full disclosure of all of the information relevant to Claims for Relief 7 and 8.* To the contrary, the Government suspiciously asserts, "it is doubtful that the government had in its possession evidence [of Garza's changes of story, and their circumstances]." Respondent's Answer at 39. Given that the evidence was centrally related to the Government's potential success in meeting its burden of proof, this completely unsupported observation is preposterous. Does this not suggest that the Government presently has been unwilling to *investigate or inquire* as to whether it had this evidence at the time of trial? This in itself is a *Brady* violation. *Jamison*, 291 F.3d at 387 (citing *Strickler* and *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (*Brady*

imposes an affirmative duty on the Government to evaluate evidence and provide exculpatory evidence to the defense). Does this ominously project that such evidence may have existed, but by now would have been destroyed? The Government should be obligated by a discovery order to deliver the *Brady* and *Giglio* material and explain why it apparently has been unwilling to determine whether it continues to suppress it.

Cisneros noted in her § 2255 petition that discovery would be requested on these issues. She has made factual allegations that, if true, would entitle her to relief. Therefore, following discovery, she also should be granted an evidentiary hearing. *Mejia-Mesa*, 153 F.3d at 929 (quoting 28 U.S.C. § 2255 and *Bauman v. United States*, 692 F.2d 565, 571 (9th Cir. 1982)).[13] The Government essentially concedes that, if discovery were to reveal that Garza's testimony about either (1) the dates when he allegedly made calls to Cisneros or (2) the places (casetas) from which he made the calls was *fabricated*, prejudice would be shown, and therefore relief should be granted.[14] Respondent's Answer at 39 ("In sum, absent a showing that the testimony

---

[13] Cisneros' situation is very similar to Mejia-Mesa's in that the withheld information in each case undermines an essential element of the case. Very narrow discovery as to any documentation, personal knowledge, or other information that the Government knew Garza's testimony to be false would undermine the jurisdictional element. Fabricated evidence of the jurisdictional element should be treated the same as no evidence. In *Mejia-Mesa*, an evidentiary hearing was granted where a suppressed page in a deck log from a vessel seized for cocaine indicated that the ship, when taken, was not in customs' waters, an essential element of the offense. *Mejia-Mesa*, 153 F.3d at 929.

[14] The materiality standard required to also meet the prejudice standard (for procedural default) is whether there is a "reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289; *Jamison v. Collins*, 291 F.3d 380 (6th Cir. 2002). Of course, this is the same as the merits standard for a *Brady* claim. The touchstone of this inquiry is whether the evidentiary suppression would undermine this Court's confidence that the fact finder would have reached the same result. *Strickler*, 527 U.S. at 300-01 (Souter, J., joined by Kennedy, J., concurring in part and dissenting in part). "Reasonable probability" pointedly is not as strict of a standard as "more likely than

13

offered by the government was fabricated, any alleged discovery violation did not prejudice Cisneros' defense."). This is precisely what Cisneros seeks: proof through depositions, interrogatories, or paper evidence that the Government knew Garza changed his statements about these things in response to (1) being informed of (or manipulated in relation to) the relevant time frame for the statute of limitations or (2) the complete refutation (by the phone records) of collect calls he alleged he had made to Martinez from Mexico.

Given that Cisneros has shown that she is entitled to relief if her factual allegations are true – and the Government does not dispute that – she undoubtedly has met any standard of "good cause" for discovery.[15] The Government has not asserted that full disclosure was made and has not denied that material, exculpatory evidence exists within its possession. It only has asserted that such evidence should be limited to proof of fabricated testimony by Garza. *See United States v. Chandler*, 950 F. Supp. 1522, 1533 (N.D. Ala. 1996) (granting discovery where defendant alleged that suppressed polygraph results should show that government agents knew witness lied; allowing subpoena of the records of any interviews of witness conducted by the prosecutor and police officers).

---

not." *Id.* at 298, 300. "'Significant possibility' of a different result" accurately describes the "reasonable probability" standard. *Id.* at 300.

[15]   Rule 6 of the Rules Governing 2255 Proceedings states that:

> A party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law, if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Rules Governing 2255 Cases, Rule 6(a), 28 U.S.C.A. foll. 2255.

# IV.

## CLAIMS FOR RELIEF 9 AND 10

Relying upon *Lockhart v. Fretwell*, the Government asks this Court to apply an incorrect and unreasonably high standard for determining prejudice resulting from trial counsels' deficient performance. Respondent's Answer at 39 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). The Government states:

> The "prejudice" prong of the *Strickland* test focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."

*Id.* (quoting *Fretwell*, 506 U.S. at 372, and citing *Gooodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997)).

The Government should be aware that the United States Supreme Court has expressly rejected this idea that *Strickland* analysis generally requires some separate inquiry into fundamental fairness. *Williams v. Taylor*, 529 U.S. 362, 393 (2000). The fundamental fairness concern was added in *Fretwell* where the defendant, unlike Cisneros, "attempt[ed] to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry." *Fretwell*, 506 U.S. at 373 (O'Connor, J., concurring). Specifically, Fretwell had argued that trial counsel was ineffective for failing to make an objection based upon authority that was overruled by the time Fretwell's federal habeas petition made it to the Supreme Court. *Williams*, 529 U.S. at 392-93. The Court determined that fundamental fairness did not require it to grant relief to Fretwell when he ultimately had suffered no prejudice from his counsel's deficient performance. *Id.* at 392 n.16 (citing *Fretwell*, 506 U.S. at 372).

15

Since Cisneros' case presents no special circumstances remotely like those in *Fretwell* – but only straightforward ineffective assistance claims – she must simply demonstrate prejudice according to the standard of *Strickland*.[16] She "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams*, 529 U.S. at 391. Furthermore, it is important to note that, although this standard frequently is described as "outcome based" or "outcome determinative," it is not a strict causation standard, because "but for" is modified by "reasonable probability." *See supra, Strickler*, 527 U.S. at 298-300. "'Significant possibility' of a different result" accurately describes how "reasonable probability" modifies strict "but for" causation. *Id.* at 300.

The Government has unfairly used *Fretwell* in an attempt to falsely portray Cisneros as a petitioner seeking a "windfall" rather than just and fair application of the law in her case. A defendant is not afforded a windfall if, but for counsel's deficient performance, there is a significant possibility she would not have been convicted. In the instant case, counsels' omissions deprived Cisneros of effective use of her rights of confrontation and cross-examination. They also fundamentally deprived her of her due process right to be convicted on sufficient evidence. Counsel's most crucial error, perhaps, was omission to take professionally responsible steps to assist the jury in realizing that the Government had failed to prove, beyond a reasonable doubt,

---

[16] Cisneros asserted in her petition that counsels' serious acts or omissions had rendered her trial fundamentally unfair and the jury verdict unreliable. § 2255 Motion at 97. She believes, in fact, that the evidence does demonstrate a denial of fundamental fairness. However, her point here is that this Court need only find "significant possibility of different result" on the ineffective assistance of counsel claims, without having to go so far as to say fundamental fairness also was affected.

the jurisdictional element of the offense. With respect to the statute of limitations alone: as noted in Cisneros' petition (*see* pages 39-42), murder-for-hire is not a continuing offense; all of Garza's alleged calls to Martinez (used by the Government to meet the jurisdictional element) were made prior to February 14, 1993; and, the indictment was not returned until February 23, 1998. The Government failed, in a number of ways outlined at pages 39-42, to prove beyond a reasonable doubt that the offense for which Cisneros has been convicted occurred within the 5-year statute of limitations period. Cisneros' trial team, however, omitted to take the professionally adequate steps needed to help the jury understand and apply that fact, and thus acquit Cisneros.

The measure of *Strickland* prejudice is no where near as high or exacting as legal sufficiency analysis, again, in part because the prejudice standard is not purely "but for," but rather, is "a reasonable probability [significant possibility] that but for."[17] This Court should note that, whether or not sufficiency is met, the evidentiary proof of jurisdictional nexus is so very slight in this case (either through the alleged international phone calls or the equally baseless international bridge crossings) that even one omission by counsel related to the jurisdictional nexus should undermine confidence in the outcome. Counsel made several very damaging commissions and omissions relevant to the jurisdictional nexus which singularly and cumulatively undermine such confidence.

---

[17] Cisneros adopts by reference her arguments against application of "law of the case" as they may be relevant to various of her ineffective assistance claims. The voided opinions' finding of sufficiency is not relevant, in any event, other than as an illustration of how very slight (if not deficient) the evidence for the finding is. The opinions' holdings on instructional errors also are not relevant where defects found in Cisneros' proffered instructions do not obviate the need for an instruction on the particular matter. This Court's and the appellate panels' rejection of Cisneros' proffered instruction on causation, for example, does not mean that an appropriate instruction on causation – or correction of this Court's instruction referring to causation – was not required.

17

**A. The Government erroneously asserts that Cisneros' complaint about trial counsels' failure to keep out the transcripts of conversations between Garza and Martinez is based only on hindsight.** Respondent's Answer at 41.

There *could have been* no reasonable strategic reason for counsels' lack of objection to the Government's admission of the tape recorded conversations between Garza and Martinez. From an objective viewpoint at the time of trial, the otherwise inadmissible and unadulterated hearsay on the tapes bolstered the testimony of Garza and Martinez for the Government and undermined the reliability of the verdict by allowing conviction based on rank hearsay statements obtained when Garza was trying to elicit incriminating comments as an agent of the Government. The extent of harm caused by the admission of this material may not have been foreseeable, but the fact that it was harmful was so obvious that counsel did initially oppose its admission. No reasonable strategic justification exists for counsels' failure to continue opposing the admission of the transcripts. *The Government does not contest that there was prejudice.*

**B. The Government's suggestion that trial counsel had some strategic reason for not cross-examining Martinez on the location of Garza when he phoned her – that trial counsel's focus was on Martinez as Cisneros' first contact – is frivolous.** Respondent's Answer at 41.

There *could have been* no reasonable strategic reason for counsels' omission to cross-examine Maria Martinez concerning the facts that she was aware Garza called her on the phone from spots within Texas, but that she never claimed that she had been called by Garza even once from Mexico. As laid out in the petition, an FBI 302 recorded that (1) Garza told Martinez he was calling from Dallas or San Antonio, (2) Garza called her collect *every time*, and (3) Martinez was unaware of any calls made to her by Garza that originated outside of Texas or in Mexico. Martinez' state court testimony also referred to calls that only were from within Texas. Counsel's failure to elicit cross-examination testimony from Martinez consistent with everything

18

known from the FBI and her state testimony undermines confidence in the outcome of the trial.

Much more significant doubt about the jurisdictional nexus would have ensued from Martinez' testimony than from FBI agent Church's testimony alone (which demonstrated that, contrary to Garza's initial statements, no collect calls had been made by him to Martinez from Mexico). By all lights present before or at the time Martinez testified (and certainly when she could have been recalled), Martinez would have offered proof that not only were there no collect calls made by Garza to her from Mexico. There were no calls made by Garza to her from Mexico *at all*. Anything can be criticized as hindsight, but the relevant questions are what did counsel know before or at the time of trial, and did counsel make professionally adequate use of what they knew? Obviously, the Government and the defense were very focused on this jurisdictional issue, e.g., with the defense asking for and the Government delivering a bill of particulars. If the Government seriously wants to maintain that trial counsel strategically decided to focus on Martinez as Cisneros' first contact *over considering how Martinez fit into the jurisdictional nexus*, then the Government will have proven counsels' deficient performance, because such an alleged strategy decision would have been professionally unreasonable – deciding not to address the relevance of a witness to the existence of an element of the offense. Unfortunately, the facts are just as egregiously unreasonable as the Government's hypothetical. Trial counsel simply blew it. They were aware of the importance of the jurisdictional element, and just failed to see the relevance of Martinez' 302s and prior testimony to it. This runs counter to any reasonable strategic decision. It was a pure blunder because counsel had secured the information they needed to effectively cross-examine Martinez – exposing Garza's lies – and provided objectively unprofessional performance by simply failing to use it. Hindsight

hypothetically might be a factor for consideration on appeal when it is apparent that trial counsel may have made a strategic decision. Here there was none, and counsel's performance was objectively unreasonable. *The Government does not contest that there was prejudice.*

> **C. The Government's suggestion that trial counsels' omission to cross-examine Garza on the basis of Martinez' and his prior statements is reasonable because trial counsel successfully kept the state trial (including testimony therein) from the jury is frivolous.** Respondent's Answer at 41.

First of all, a variety of the statements that could have been used for impeachment were in FBI 302s (report of interviews). Second, impeachment would not require trial counsel to reveal to the jury that prior inconsistent statements were made before another tribunal in which Cisneros had been convicted. In light of these facts, there *could have been* no reasonable strategic reason for counsels' omission to cross-examine Garza with material from or consistent with *Martinez*' and his 302s, prior statements, and state court testimony. *See* § 2255 Motion at 117. Such cross-examination would have allowed counsel to destroy Garza's claim that he made calls to Martinez from Mexico within the time frame necessary for the statute of limitations. The use of Martinez' statements alone to impeach Garza, as they may have been developed on cross-examination of Martinez, was essential but failed to occur. Indeed, the jury, having not heard at all from Martinez on the subject, was entitled to and probably did lean toward belief that she would have endorsed Garza's testimony about calls having been made from Mexico. From the jury's perspective, why would trial counsel *not* solicit Martinez' account of the phone calls, unless counsel believed she would *support* Garza's account? Indeed, again, *the Government does not contest that there was prejudice* from counsel's abysmal omission to correct this impression.

**D. The Government presents absolutely no substantive answer to Cisneros' assertion that trial counsel was ineffective for failing to investigate, discover, and utilize the information as to how and why Garza's statements radically changed in relation to the jurisdictional element.** Respondent's Answer at 42.

There *could have been* no reasonable strategic reason for counsels' omission to investigate why Garza radically changed his account of the events relevant to jurisdiction between February 18, 1998, and April 20, 1998 (bill of particulars) or May 11, 1998 (federal testimony). The circumstantial evidence known to counsel and this Court at the time of trial very strongly suggested that Garza was manipulated by the Government to change his testimony to meet the jurisdictional requirements. Claims 7 and 8, *supra*, indeed address this same issue under the rubrics of government suppression and knowing presentation of false testimony. No hindsight is needed to perceive these issues. They would have been readily apparent to any trial counsel meeting professional standards of representation. Counsel's unprofessional failure to pursue – indeed demand -- an explanation enabled ongoing suppression of what inevitably must be the case: Garza was made aware, directly or indirectly, of the jurisdictional inadequacy of his initial statements. Unquestionably, trial counsel's failure to unearth this had a strong prejudicial effect on the outcome and fundamental fairness of Cisneros' trial. Notably, once again, *the Government does not contest that counsels' deficient performance was prejudicial.* The Government, in Cisneros' opinion, now bears the evidence of prejudice and needs to share it.

**E. The Government provides no answer to Cisneros' assertion that trial counsel was ineffective for failing to request an instruction that required the jury to find that foreign commerce was sufficiently related to the murder-for-hire scheme before it could find that the first element of the offense beyond a reasonable doubt.** Respondent's Answer at 42.

Respondent ignores Cisneros' Fifth Act/Omission, briefly addressing her Sixth, wherein she alleges ineffective assistance for failure to seek an instruction on causation. Respondent's

21

Answer at 41.

There *could have been* no reasonable strategic reason for counsels' failure to request a charge requiring the jury to find a sufficient relation between the foreign commerce element and the murder-for-hire scheme. The instruction that actually was given enabled the jury to convict Cisneros even if foreign facilities were not used in connection with the murder for hire scheme. The instruction given, therefore, prevented counsel from arguing to the jury that the foreign commerce element was not sufficiently related to the murder for hire scheme. In fact, it allowed the Government to argue that the foreign commerce did not have to be related to the murder for hire. Counsel's error, as noted in the petition, allowed the jury to convict Cisneros without an instruction on every element of the offense, in violation of her Fifth and Sixth Amendment rights.

**F. The Government inadequately cites the Record in opposing Cisneros' assertion that trial counsel was ineffective for failing to secure an appropriate instruction on causation.** Respondent's Answer at 42.

Respondent answers as though all that is needed to clear up Cisneros' charge of ineffective assistance is the obvious fact that this Court gave the jury an instruction that mentioned causation. Respondent's Answer at 42. Cisneros' complaint, however, has to do with whether that instruction was sufficient and/or appropriate, and she has asserted that it was not because, *inter alia*, it did not define causation for the jury. The Government provides no citation to the Record in support of its assertion that, even if the jury lacked an appropriate instruction, trial counsel was able to argue causation to the jury.

Cisneros disagrees with the Government that counsels' performance at trial was "demonstrably reasonable." Respondent's Answer at 42. That must be determined by this Court upon review of the issues in Claims for Relief 9 and 10, singularly and in the aggregate. Even

22

if counsels' overall effort were to appear reasonable, however, any singular error that undermines confidence in the outcome of the trial suffices for this Court to find that counsel was ineffective. *Notably, the Government asserts lack of prejudice only in regard to the last two trial counsel IAC complaints on instructional error (a. sufficient relation between foreign commerce and murder for hire and b. causation).*

### G. The Government misstates the standard for ineffective assistance of appellate counsel.

Respondent asserts without any citation that "[t]o obtain relief [for ineffective assistance of appellate counsel], the petitioner must show that he would likely have obtained relief on [a foregone appellate] issue if it had been raised." Respondent's Answer at 42. This suggests that, in order to show prejudice, Cisneros must demonstrate probability – that, more likely than not, if appellate counsel had raised the issue, the outcome would have been different. The rule, however, does not require so much. Cisneros must demonstrate "'a reasonable probability – a probability sufficient to undermine confidence in the outcome,' but **less than a preponderance of the evidence** – that h[er] appeal would have prevailed had counsel's performance satisfied constitutional requirements." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2001) (bold added); *United States v. Merida*, 985 F.3d 198, 202 (5th Cir. 1993) ("An ineffective appellate-assistance claim is governed by the same standard announced in *Strickland*.").

Respondent mistakenly invokes the "totality of counsel's efforts on appeal" as reason to overlook counsels' omissions of critical appellate issues. Although Respondent makes no direct arguments in response to each of the three ineffective appellate-assistance issues raised, he does suggest through some elaboration on his citations that the state of precedents at the time of counsels' conduct determines its reasonableness. All three issues are well-grounded at the very

23

least in legal principles. It should be noted that, especially in relation to the third issue, the law was well-established. "It [is] clearly an improper use of the District Court's process for the Assistant United States Attorney to issue a grand jury subpoena for the purpose of conducting his own investigation." *Durbin v. United States*, 221 F.2d 520, 522 (D.C. Cir. 1954). It is clear, also, that Government presentation of false testimony to a grand jury requires dismissal. *United States v. Strouse*, 286 F.3d 767 (5th Cir. 2002). The actions of the Government agents in this case provided good grounds for dismissal, under the existing precedents, and appellate counsel therefore provided ineffective assistance by failing to appeal this Court's improper overruling of Cisneros' motion to dismiss the indictment due to the misconduct before the grand jury.

## SUMMARY AND CONCLUSION

Although Respondent does not use the terminology, he essentially asks this Court to grant summary judgment. In his prayer he asks that the instant motion "be denied on the record." Respondent's Answer at 46. Respondent asserts that "summary denial" would be appropriate for Claims for Relief 1-6, and 9 (in regard to each sub-issue). *Id.* at 33, 34, 41-42. Summary judgment, however, is available only if the record clearly indicates that a petitioner's claims are either barred from review or without merit. *Toney v. Gammon*, 79 F.3d 693, 697 (8th Cir. 1996). The record in the instant case clearly does not establish that Cisneros' claims are either barred from review or without merit. *Id.* To the contrary, they are meritorious. Discovery is appropriate and necessary for Cisneros' ability to adequately pursue her Claims for Relief 7 and 8 (misconduct: suppression and false testimony issues). *Rice v. Black*, 112 F.R.D. 620, 626 (D. Neb. 1986) (granting *Brady* discovery); *Harris v. United States*, 1997 WL 806976 (S.D.N.Y. 1997) (unpublished order granting *Brady* discovery while noting, pointedly, that "[i]f the

24

government knew of its witness's perjury at the time of the trial, the consequences are different than if it did not" (citation omitted)).   Moreover, following discovery, a hearing is appropriate and necessary for Claims for Relief 7 through 10.  Cisneros has demonstrated "good cause" for development of Claims 7 through 10, either through discovery or an evidentiary hearing, because they are *material. Id.*; *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("good cause").  Indeed, with respect to those issues that do not need further development through provision of discovery or a hearing, Cisneros asks that this Court deny the Government's request for dismissal and, instead, render summary judgment in favor of Cisneros.  In support of this point, she would add that the Government (as noted above) has failed to respond to some issues in part and others in their entirety.  Additionally, Cisneros renews the prayer for relief in her § 2255 Motion and prays for any other relief to which she may be entitled.

Respectfully submitted,

DAVID L. BOTSFORD
Law Office of David L. Botsford
State Bar No. 02687950
1307 West Ave.
Austin, Texas 78701
512-479-8030: Telephone
512-479-8040: Fax

A.J. "TONY" CANALES
State Bar No. 03737000
P.O. Box 5624
Corpus Christi, Texas 78465-5624
361-883-0601: Telephone
361-884-7023: Fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been sent, via U.S. Mail, postage prepaid, to Mr. James Turner, Assistant United States Attorney, P.O. Box 61129, Houston, Texas, 77208-1129, on this the 24th day of March 2003.

_____
DAVID L. BOTSFORD