IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 26 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § | Criminal No. B-98-124-01 |
| DORA CISNEROS | § § | |

### MOTION FOR DISCOVERY AND MEMORANDUM OF LAW IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DORA CISNEROS (hereinafter referred to as Cisneros), by and through her counsel of record, David L. Botsford and A. J. "Tony" Canales, and, pursuant to Rule 6(a), Rules Governing Section 2255 Proceedings for the United States District Courts, Rules 26, 30, 34, Federal Rules of Civil Procedure, presents this her formal Motion For Discovery And Memorandum Of Law In Support, and as grounds therefor, would respectfully show this Honorable Court the following:

### I.

Under Rule 6(a), of the Federal Rules Governing Section 2255 Proceedings, "[a] party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Rule 6(a) gives this Court wide discretion in determining whether there is good cause to permit discovery. *See* Advisory Committee Notes to Rule 6(a) (stating that the rule "contains very little specificity as to what types and methods of discovery should be made available to the parties in a habeas proceeding" and that "[t]he purpose of th[e] rule is to get some experience in how discovery would work in actual practice by letting District Court judges fashion their own rules in the context of individual cases").

Good cause to permit discovery exists where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 299 (1969). Cisneros asserts that, in her § 2255 Motion and Reply to "Respondent's Answer to Section 2255 Motion," she has demonstrated good cause for discovery related to her seventh, eighth, and ninth claims for relief. All of these claims deal with the radical changes that occurred in Daniel Garza's accounts of phone calls he allegedly made to Maria Martinez from Mexico. These changes that occurred between the date of Garza's last known FBI 302 report, on February 18, 1998, and his May 11, 1998 trial testimony made it possible for the trial to proceed and a conviction to be returned by providing the Government with a basis to allege matters which would give this Court jurisdiction.

There are two ways in which this Court, in fact, was misled by the Government into trying this case without jurisdiction. First, Garza gave surprise testimony that allowed the Government to avoid defense proof that no evidence existed to support the jurisdictional element. Second, Garza gave contradictory and novel testimony that allowed the Government to attempt to place the jurisdictionally significant event (a phone call or phone calls) within the appropriate statute of limitations period (5 years). Both of these areas of testimony were developed through interaction between Garza and the Government that occurred after the last FBI 302 report disclosed to trial counsel (dated February 18, 1998). Cisneros seeks to discover the exculpatory circumstances of these highly material changes, which so far have been suppressed by the Government. As Cisneros noted in her reply to the Government's Answer (and motion to dismiss), filed on March 25, 2003, the Government essentially has admitted in its Answer (because it has made no substantive denials) that these circumstances are material (under either the *Brady* or *Agurs/Napue/Giglio* test of materiality) and remain suppressed.

The Government was required to prove, beyond a reasonable doubt, the jurisdictional element of 18 U.S.C. § 1958, either by demonstrating that Cisneros (1) caused another to travel in foreign commerce or (2) caused another to use a facility of foreign commerce, with intent that a murder be committed. In the first place, the Government knew that it would fail to prove beyond a reasonable doubt that the passage of an automobile from Matamoros, Mexico, to Brownsville, Texas, had anything to do with the offense. The Government knew that the license plate (but not the vehicle) had crossed the border at least 18 times prior to the night in question,[1] but more importantly, in the Government's opening statement to the jury, the Government conceded that the alleged hit men traveled from Dallas down to Brownsville to commit the murder. Therefore, the Government was left with trying to prove use of a facility of foreign commerce through Garza's alleged "collect" phone calls to Martinez from Mexico (so described in February 5 and 18, 1998, FBI 302 reports) as the only other means to demonstrate a jurisdictional nexus. Prior to trial, the Government became aware that the defense would be able to use phone records to prove that Martinez received no collect calls from Mexico. Therefore, the Government knew that, without some alteration in Garza's testimony from his pretrial statements (as so-far disclosed), it would fail to prove beyond a reasonable doubt the *existence of phone calls* that could provide the jurisdictional nexus. It also knew that alteration of Garza's pretrial statements would be needed to prove the existence of those calls *within the appropriate*

---

[1] As reflected by the trial record, the license plate number had "crossed" the border (on unidentified vehicle or vehicles) 18 times between August 1992 and March 1993. See Volume 5 of trial record at page 1256 & Govt. Ex. 49 (i.e., transcript of May 8, 1993, which was volume 10 of the record on appeal). That same license plate might have "crossed" the border an additional 8 times during the same time rame if the Customs official had written down MM as opposed to TA as to the prefix. See Volume 5 at pages 1257-1258; Def. Ex. 72.

3

*statute of limitations time period.*[2]

Between February 18, 1998 (Garza's last FBI 302 report) and May 11, 1998 (when Garza testified), Garza indeed changed his story to reflect that, although he *might* have called Martinez collect from Mexico, he also called her from phone booths in Mexico and retained no records of the calls. Additionally, he changed his story to reflect a time frame that *might* minimally/arguably place the alleged phone calls within the limitations period. These very late changes neatly met the Government's jurisdictional needs. By depriving the defense of a means to disprove his testimony about the *existence* of the phone calls from Mexico, Garza solved one of the Government's jurisdictional problems. By modifying the dates between which he allegedly made calls from Mexico, Garza (initially in the April 20, 1998, bill of particulars, and then in trial testimony), Garza arguably solved the Government's other problem (statute of limitations). The conditions whereby these changes were brought about undoubtedly are exculpatory and materially affect the outcome of Cisneros' conviction (under either the more strict *Brady/Strickland* standard of materiality or the less-strict *Agurs* standard). *See e.g. Tennison v. Henry*, 203 F.R.D. 435 (N.D. Calif. 2001) (granting discovery under comparable circumstances). But for the suppression of these conditions at trial, no reasonable juror would have been able to

---

[2] The indictment was returned on February 23, 1998, and thus, this Court would have had no jurisdiction to try Cisneros if the conditions needed to establish the jurisdictional element of the offense were not established as existing by the date exactly five years prior (roughly February 23, 1993). Prior to the April 20, 1998, bill of particulars, Garza had maintained that all phone calls he made to Martinez using a foreign facility occurred between September and November of 1992. In the bill and in his trial testimony, he stated that the calls could have occurred until in or about February 1993.

The Government, however, has made an admission causing even a colorable argument based on Garza's testimony and the bill of particulars to disappear, by admitting in its post-oral argument submission on direct appeal to the Fifth Circuit (at page 3) that all of Garza's alleged calls from Mexico occurred prior to February 14, 1993, well prior to the date the indictment was returned.

4

find, beyond a reasonable doubt, that the jurisdictional element of 18 U.S.C. § 1958 was met. It is extremely unlikely that Garza made such major and relevant changes in his account of the facts without some coaching or other inappropriate influence by Government agents aware of the jurisdictional problems. Discovery very reasonably should demonstrate that the Government knowingly coached Garza and solicited false testimony from Garza in order to convict Cisneros. At the very least, it should reveal that the Government was in possession of material/impeaching information showing how and when Garza came to change his testimony in order to meet the Government's jurisdictional problems, whether or not he was coached by agents.[3]

Cisneros asserts that the Government has suppressed the conditions wherein Garza was brought to change his story to fit the Government's need for a jurisdictional nexus, in violation of her Fifth and Sixth Amendment rights in *Brady v. Maryland*, 373 U.S. 83 (1963) (Claim for Relief No. 7), *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 437 U.S. 97

---

[3] Preparation of Garza as a witness for trial (after the return of the grand jury indictment in February 1998) would necessarily have involved a confrontation of Garza with the fact that his "story" of collect calls was negated by Martinez' telephone records, which the Government had previously obtained by grand jury subpoenas. It is beyond peradventure that someone on the prosecution team confronted Garza with the fact that he was lying about collect telephone records. Garza may or may not have admitted to previously lying to the Government, which would have had to have been disclosed to the Government (both as *Brady* and as *Giglio* material). The Government's non-prosecution of any such admission would have also impacted upon the "deal" the Government bestowed upon Garza and thus rendered his testimony about the deal "perjured" if, for example, the Government assured Garza he would not be prosecuted under 18 U.S.C. Section 1001 for previously having given false statements to the FBI Agents who had interviewed him. No such "deal" was testified to by Garza. *See* Trial Record at Volume 6, pages 1353-1355 (direct examination); 1405 to 1415 (cross-examination)(i.e, transcript of May 11, 1998, which was volume 11 of the record on appeal). Additionally, any prodding of Garza regarding whether he could have called from other telephones would have been in the nature of coaching and the knowing solicitation of perjured testimony, as certainly the Government's prosecution team would have realized that any such "creative" testimony, presented via Garza as the last witness substantive witness the Government presented (i.e., Garza testified at Volume 6, pages 1353 to 1460; two very short Government witnesses -- Jane Sebern and Eric Fischer -- testified at Volume 6, pages 1461 to 1473, at which time the Government rested), would completely "blind side" the defense.

(1976), and *Napue v. Illinois*, 360 U.S. 264 (1969) (Claim for Relief No. 8), and *Strickland v. Washington*, 466 U.S. 668 (1984) (Claim for Relief No. 9 – Fourth Act/Omission). In this regard, the Government has made two very notable admissions: (1) the Government already expressly has admitted that any calls made by Garza to Martinez occurred before February 14, 1993 (outside the limitations period); and (2) by its lack of any factual denials or arguments against materiality in its answer to Claims for Relief 7 and 8 in Cisneros' § 2255 Motion, the Government also impliedly has admitted to the ongoing suppression of material, exculpatory evidence in relation to these issues.

Cisneros believes that she has shown good cause for, is entitled to, and specifically requests the following:

> 1. Deposition of FBI Special Agent Freddy Vela on the circumstances wherein Daniel Garza's accounts relevant to the jurisdictional nexus in the offense for which Cisneros was convicted changed between the final interview (of which there is any FBI 302), i.e., February 18, 1998, and June 12, 1998, thirty days following Garza's trial testimony (so that any post-trial interviews or memoranda regarding Garza can be explored).[4]
>
> 2. Deposition of FBI Special Agent David Church on the same circumstances as set forth above in numbered paragraph 1. *See* footnote 4, *supra*.
>
> 3. Deposition of Assistant United States Attorney Oscar Ponce on the same circumstances as set forth above in numbered paragraph 1.[5]

---

[4] Special Agent Vela did not testify at trial, but was actively involved in the prosecution of Cisneros. Special Agent Vela and Special Agent Church were present throughout Cisneros' trial (sitting at the prosecution table) and Mr. Mosbacker had even designated both of them as potential witnesses during jury selection. *See* Volume 1 at pages 42 to 44 (transcript of May 4, 1998, which was volume 6 of the record on appeal). Additionally, Special Agents Vela and Church, along with Mr. Ponce and Mr. Mosbacker, were present for the pretrial preparation of Government witness Victor Moreno. *See* Volume 3 at page 590 (transcript of May 6, 1998, which was volume 8 of the record on appeal).

[5] Since Mr. Ponce was involved in the state court prosecution of Garza and Cisneros and also conducted the direct examination of Garza during Cisneros' trial, it would be safe to assume that he was the "lead" prosecutor preparing Garza for trial.

4. Deposition of Assistant United States Attorney Mervyn M. Mosbacker on the same circumstances as set forth above in numbered paragraph 1.[6]

5. Any and all evidence of interviews by Government agents with Daniel Garza, including but not limited to, the aforementioned prosecutors and FBI agents, conducted between February 18, 1998, and June 12, 1998 (thirty days after Garza's trial testimony), including, but not limited to production of all rough notes, reports of interviews, documentation reflecting that Garza was obtained from the custody of the United States Marshal for interviews on any particular day or days, video or audio tape recordings of such interviews, data stored on computer hard drive, floppy disk, or CD rom, and any other kind of recording or documentation relating to the date or dates that Daniel Garza was interviewed by any member of the FBI and/or any member of the United States Attorney's Office for the Southern District of Texas, whether in Brownsville and/or McAllen, Texas (where pretrial hearings and jury selection were conducted) or in Houston, Texas (where the trial was moved to after an aborted attempt to select a jury in McAllen), or anywhere in between the valley and the greater Houston area.

WHEREFORE, PREMISES CONSIDERED, Cisneros respectfull prays that that Honorable Court grant this motion and enter an Order authorizing discovery as requested herein.

Respectfully submitted,

_____
DAVID L. BOTSFORD
Law Office of David L. Botsford
State Bar No. 02687950
1307 West Ave.
Austin, Texas 78701
512-479-8030: Telephone
512-479-8040: Fax

A.J. "TONY" CANALES
State Bar No. 03737000
P.O. Box 5624
Corpus Christi, Texas 78465-5624
361-883-0601: Telephone
361-884-7023: Fax

---

[6] Since Mr. Mosbacker was in charge of he investigation and prosecution of Cisneros, it would be simply incredible if he was not present during the trial preparation of Garza, even though Mr. Ponce actually conducted the direct examination of Garza.

7

## Certificate of Service

I, David L. Botsford, do hereby certify that a true and correct copy of the above and foregoing motion has been served by placing the same in the United States mail, postage prepaid, on this the 25th day of March, 2003, addressed to Mr. James Turner, Assistant United States Attorney, 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216, and Mr. Tony Canales, P.O. Box 5624, Corpus Christi, Texas 78465.

DAVID L. BOTSFORD