IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|  Respondent, | § | |
| | § | |
| vs. | § | CR. NO. B-98-124 |
| | § | C.A. NO. B-02-191 |
| DORA GARCIA CISNEROS, | § | |
|  Petitioner. | § | |

**RESPONSE TO CISNEROS'S OBJECTIONS
AND MOTION FOR RECONSIDERATION**

TO THE HONORABLE JUDGE OF SAID COURT:

  The United States of America, hereinafter, "the government," files this response to Dora Garcia Cisneros's Objections to the Magistrate Judge's Denial of Motion for Discovery and Motion for Reconsideration. In support thereof, the government would show the court the following:

I

**FACTS AND PROCEEDINGS JUSTIFYING
THE MAGISTRATE JUDGE'S ORDER**

A. <u>Framing the issue: proceedings in the district court and court of appeals</u>

  Before trial, the government filed a bill of particulars explaining in detail what it expected to prove to satisfy the jurisdictional element of 18 U.S.C. § 1958. The

government alleged that it would satisfy the jurisdictional requirements under two distinct theories:

> I.
> The evidence in this case will show that, in regards to foreign travel, that Heriberto Pizana and/or other persons unknown traveled from Mexico to Brownsville, Texas via an international bridge on or about March 2, 1993;
>
> II.
> The evidence in this case will show, in regards to use of telephone communications facilities in foreign commerce, that Daniel Garza used telephone facilities in San Fernando, Tamaulipas, Mexico, and in Matamoros, Tamaulipas, Mexico, to call Maria Martinez in Brownsville, Texas, from in or about November, 1992 to in or about February, 1993.

On appeal, Cisneros contended that neither of these averments satisfied the requirements of § 1958, and further contended that the government did not satisfy its burden of proving the jurisdictional nexus beyond a reasonable doubt.

On appeal, the Fifth Circuit noted the factual bases for both of the government's theories. The Court summarized the evidence supporting the telephone calls first:

> There is an important - - highly important - - question about where Garza placed these calls. At trial he testified that he made at least four calls from two Mexican towns, San Fernando and Matamoros. He said that he had placed them in "casetas," booths where a caller pays for the call after making it. During cross-examination, however, defense counsel asked him why an FBI report from his interview with an agent said that he had made the calls collect, Garza testified that the agent was mistaken. Garza went on to explain that collect calls from Mexico were difficult, though he may have made one of them to Martinez. In its case-in-chief, the defense tried to show that no calls were made from Mexico. FBI Agent David Church was called as a defense witness. He testified that

>   while Garza had told him that all the calls were collect, Martinez's phone records did not show any such calls.

*United States v. Cisneros*, 203 F.3d 333, 337-38 (5th Cir. 2000).  The Court then summarized the evidence offered on the government's primary theory of jurisdiction:

>   We now turn to a development of uncertain connection to the hired killers, but one that we must mention.  At 6:39 that evening, a car crossed into the United States from Mexico at the Brownsville point of entry.  Border authorities recorded its Mexican license plate number as "821 THE7."  A vehicle with that plate had crossed the border eighteen times between August 1992 and March 1993.  At 8:26 p.m., Pizana and Ramon Palomares, another Cuellar hit man, checked into the LaQuinta Inn.  The receptionist registered their car as a white Grand Marquis with Mexican plates.  Her handwriting made it hard to decipher whether the plate number was "821 TWEX" or "821THE7."

203 F.3d at 338.  In addressing the issue Cisneros raised on appeal, the court reviewed the government's theories, 203 F.3d at 339, and observed, "Both theories that the government presented to show how Cisneros's murder-for-hire satisfied the foreign commerce requirement, **therefore, would easily qualify under the statute**."  203 F.3d at 340 (emphasis added).  The Court of Appeals rested its ultimate resolution of the jurisdictional issue on the telephone calls alone, "Because these telephone calls satisfy the interstate nexus requirement, we need not address the more complicated issue, the car travel between Mexico and Texas."  203 F.3d at 345.

B.      <u>Trial testimony and Cisneros's motion for § 2255 relief</u>

In her motion for relief under 28 U.S.C. §2255, Cisneros asserts that the government (a) offered perjured testimony on the jurisdictional issue, and (b) suppressed exculpatory evidence germane to the jurisdictional issue. Cisneros's assertion is undermined by the record and her pleading.

At trial, the government simply asked Garza how many telephone calls he made from Mexico and Garza told them four (Transcript p. 1366). This testimony is consistent with his statements to FBI Special Agent David Church. The prosecutor thus had no reason to believe that Garza committed perjury when he declared that he made telephone calls from Mexico. The prosecution, in eliciting this testimony, assumed the risk that Garza's testimony might be undermined by the absence of any records tending to corroborate the place from whence the calls were made. The gravamen of the government's case was that telephone calls were made from Mexico and Garza's testimony satisfied its burden on the alternative theory of jurisdiction.

On cross-examination, using the telephone records and FBI reports, provided in part by the government in discovery, Cisneros effectively impeached Garza's statement that he made the calls to Martinez collect (Transcript pp. 1398-1404). Moreover, this is the first instance in which Garza reported that he made the telephone calls from a "caseta." On redirect, the government asked Garza to explain what a "caseta" was and how one placed telephone calls from one (Transcript p. 1455-1456).

On re-cross, Cisneros confronted Garza with the FBI reports and pointedly asked Garza whether he had reviewed his telephone calls with the FBI agents before he testified at trial, Garza said he had not. Cisneros asked whether he had reviewed the telephone records with the prosecutor, Mr. Oscar Ponce; Garza said that he had not. Finally, Cisneros asked Garza whether anyone had reviewed the records with him before he testified; again Garza declared that no one had reviewed the telephone records with him. (Transcript pp. 1458-1459).

The trial transcript thus belies the crude suggestion that the government suppressed evidence showing that Garza changed his testimony before trial to meet the absence of any evidence that the telephone calls made from Mexico were made collect. It further undermines the suggestion that the government somehow knew that Garza would testify falsely with respect to the telephone calls from Mexico. The government asked Garza whether he called Martinez from Mexico; he said that he had. Cisneros availed herself of the material discovered during pre-trial discovery and investigation to impeach Garza. This last proposition refutes the assertion that Cisneros's attorneys abrogated her right to the effective assistance of counsel by not raising the issue on appeal - Cisneros had every reason to believe that neither the jury nor the court of appeals would find Daniel Garza's testimony sufficiently credible to support the verdict. It was thus reasonable for Cisneros to not raise the issue the

bogus and unfounded issue of prosecutorial misconduct on appeal or in a motion for new trial. Cisneros cannot sustain her burden of showing cause or prejudice justifying collateral relief or discovery. The magistrate judge's order should be affirmed and an interlocutory appeal denied.

## II

## **AUTHORITIES**

Cisneros asserts that discovery is justified under the authority of *Banks v. Dretke*, 540 U.S. 668 (2004). In *Banks*, the record supported a finding that the State suppressed favorable, material evidence. 540 U.S. at 689-690. Here, the record will not sustain a similar finding. From her own pleading, it is clear that the government consistently acknowledged that it had not found any records to support the FBI's report indicating that Garza had made collect calls. *See* pp. 82-83, & n. 67 and 68 (prosecutors advise counsel that government has no foreign records showing collect calls from Mexico to Martinez as late as March and April 1998). Absent some showing of suppression, *Banks* does not support Cisneros's motion for discovery nor does it support her motion for an interlocutory appeal.

The issues advanced in Grounds for Relief 7 and 8 simply reflect Cisneros's dissatisfaction with the jury's verdict and the court of appeals' assessment of the record. Cisneros's discovery motion reflects "a desire to use the habeas corpus

discovery mechanism to explore its case 'in search of its existence.'" *United States v. Webster*, 392 F.3d 787, 801 (5th Cir. 2004). At trial, Garza pointedly declared that no one had reviewed the telephone records with him in advance of trial - not the prosecutor and not the FBI agent. Cisneros's motion for discovery is a barren attempt to discover that which does not exist. The magistrate judge correctly denied Cisneros's motion for discovery.

        Respectfully submitted,

        MICHAEL T. SHELBY
        United States Attorney

By: _____
        JAMES L. TURNER
        Assistant United States Attorney
        State Bar No. 2031690
        Federal Bar Id. No.1406
        Bank One Center
        910 Travis, Suite 1500
        P.O. Box 61129
        Houston, Texas 77208-1129

## CERTIFICATE OF SERVICE

I, James L. Turner, do hereby certify that a true and correct copy of the above and foregoing Response to Cisneros's Objections to Denial of Motion for Discovery and Motion for Interlocutory Appeal was served on June 3, 2005, via certified mail, return receipt requested to:

<table>
<tr><td>Mr. David L. Botsford<br>1307 West Avenue<br>Austin, Texas 787701</td><td>Mr. A.J. "Tony" Canales<br>P.O. Box 5624<br>Corpus Christi, Texas 78465-5624</td></tr>
</table>

_____
JAMES L. TURNER
Assistant United States Attorney