IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 2 9 2005

Michael N. Milby
Clerk of Court

DORA CISNEROS,                     §
    Petitioner,                    §
                                   §
V.                                 §     Criminal No. B-98-124-01
                                   §     Civil Action No. B-02-191
UNITED STATES OF AMERICA,          §
    Respondent.                    §

## PETITIONER CISNEROS' OBJECTIONS
## TO THE REPORT AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

DAVID L. BOTSFORD
State Bar No. 02687950
Law Office of David L. Botsford
1307 West Ave.
Austin, Texas 78701
512-479-8030 (Tel)
512-479-8040 (Fax)
dbotsford@aol.com (E-Mail)

A. J. "TONY" CANALES
State Bar No. 03737000
P.O. Box 5624
Corpus Christi, Texas 78465-5624
361-883-0601 (Tel)
361-884-7023 (Fax)
Tonycanales@canalessimonson.com (E-Mail)

# TABLE OF CONTENTS

I. INTRODUCTION TO OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. OBJECTIONS TO SPECIFIC PORTIONS OF THE MAGISTRATE'S REPORT . . . . . 5

    Section I of Magistrate's Report: Background
          (Report at pages 1 to 2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Section II Of Magistrate's Report: Analysis
          A. The Fifth Circuit's En Banc Opinion
          (Report at pages 2 to 5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          **(Please Note That This Portion Of The Magistrate's Report
          And These Objections Relate To Claim For Relief No. 1 to No.
          5, And Also Impact Claim For Relief Nos. 6, 9 and 10)**

    Section II Of Magistrate's Report: Analysis
          B. The Causation and Required Relationship Instructions
            1. The Causation Instruction.
            (Report at pages 2 to 17) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          **(Please Note That This Portion Of The Magistrate's Report
          And These Objections Relate To Claim For Relief No. 6, And
          Also Impact Claim For Relief Nos. 4, 9 and 10)**

    Section II Of Magistrate's Report: Analysis
          B. The Causation and Required Relationship Instructions
            2. The Required Relationship Instruction
            (Report at pages 17 to 21) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

          **(Please Note That This Portion Of The Magistrate's Report
          And These Objections Relate To Claim For Relief No. 6, And
          Also Impact Claim For Relief Nos. 2, 3, 9 and 10)**

    Section II Of Magistrate's Report: Analysis
          C. Government's Alleged Failure to Disclose Witness' Modified Testimony
          and Alleged Use of Perjured Testimony.
          (Report at pages 21 to 29) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

          **(Please Note That This Portion Of The Magistrate's Report
          And These Objections Relate To Claim For Relief Nos. 7 and
          8, And Also Impact Claim For Relief Nos. 9 and 10)**

Section II Of Magistrate's Report: Analysis
    D. Ineffective Assistance of Trial and Appellate Counsel
        1. Trial Counsel's Performance.
        (Report at pages 29 to 32) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**(Please Note That This Portion Of The Magistrate's Report And These Objections Relate To Claim For Relief No. 9)**

Section II Of Magistrate's Report: Analysis
    D. Ineffective Assistance of Trial and Appellate Counsel
        2. Appeal Counsel's Performance.
            a. Failure to Challenge the Required Relationship Instruction
            (Report at pages 32 to 33) . . . . . . . . . . . . . . . . . . . . . . . . 37

**(Please Note That This Portion Of The Magistrate's Report And These Objections Relate To Claim For Relief No. 10, And Also Impact Claim For Relief Nos. 6 and 9)**

Section II Of Magistrate's Report: Analysis
    D. Ineffective Assistance of Trial and Appellate Counsel
        2. Appeal Counsel's Performance.
            b. Failure to Challenge the Omission of the Causation Instruction
            (Report at pages 33 to 34) . . . . . . . . . . . . . . . . . . . . . . . . 40

**(Please Note That This Portion Of The Magistrate's Report And These Objections Relate To Claim For Relief No. 10, And Also Impact Claim For Relief Nos. 6 and 9)**

Section II Of Magistrate's Report: Analysis
    D. Ineffective Assistance of Trial and Appellate Counsel
        2. Appeal Counsel's Performance.
            c. Failure to Raise Prosecutorial Misconduct
                (1) Violations of Rule 6
                (Report at pages 34 to 42) . . . . . . . . . . . . . . . . . . 42

**(Please Note That This Portion Of The Magistrate's Report And These Objections Relate To Claim For Relief No. 10)**

Section II Of Magistrate's Report: Analysis
   D. Ineffective Assistance of Trial and Appellate Counsel
      2. Appeal Counsel's Performance.
         c. Failure to Raise Prosecutorial Misconduct
            (2) FBI Agent Church's Grand Jury Testimony
            (Report at pages 42 to 47) . . . . . . . . . . . . . . . . . . 44

   **(Please Note That This Portion Of The Magistrate's Report
   And These Objections Relate To Claim For Relief No. 10)**

Section IV (SIC) Of Magistrate's Report: Recommendation
(Report at pages 47 to 48) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DORA CISNEROS, | § | |
|     Petitioner, | § | |
| | § | |
| V. | § | Criminal No. B-98-124-01 |
| | § | Civil Action No. B-02-191 |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

### PETITIONER CISNEROS' OBJECTIONS
### TO THE REPORT AND RECOMMENDATION OF THE
### UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Petitioner, DORA CISNEROS, by and through his counsel of record, David

L. Botsford and Tony Canales, and pursuant to 28 U.S.C. § 636(b)(1), timely presents her

Objections to the Report and Recommendation of the United States Magistrate Judge and, as

grounds therefor, would respectfully show this Honorable Court the following:

### I. INTRODUCTION TO OBJECTIONS

Cisneros respectfully objects to all portions of the Magistrate's Report. Specific objections

shall be made herein to the Magistrate's "specified proposed findings [and] recommendations"

in roughly the order in which the Magistrate has presented his "Report And Recommendation."

28 U.S.C. § 636(b)(1). The Magistrate's system of headings will be followed for purposes of

ease of identification.

At the outset, however, it should be noted that in order to fully understand and appreciate

the legal significance of these objections, it is necessary to have reviewed the three opinions from

the Fifth Circuit (the first two being vacated panel opinions) as well as the 2255 motion itself,

the motion for discovery (previously denied by the Magistrate Judge and upheld, after objections

were leveled thereto, by this Honorable Court). Additionally, the following is designed to assist

this Court:

In this case, the indictment and bill of particulars only reflect two evidentiary bases to potentially sustain federal jurisdiction: (1) phone calls made from Mexico to Brownsville from Daniel Garza to Maria Martinez, Garza's "curandera" (i.e., the alleged go-between between Garza and Cisneros); and (2) entry by an automobile from Matamoros, Mexico, to Brownsville, Texas. The first and second Fifth Circuit vacated panel opinions addressed the foreign telephone calls, mentioned the automobile entry, but avoided resolution of the automobile entry as a "more complicated issue." *See United States v. Cisneros*, 194 F.3d 626 at 637 and *United States v. Cisneros*, 203 F.3d 333 at 345 (both vacated).

The Government alleged that, in at least one of four calls (11 R. 1366) by Garza (who lived in San Antonio, Texas, 11R1355, 1400, 1419, but who had traveled to Mexico to see family members, 11R1402-1403, as well as to harvest land, 11R1422) to Martinez from Mexico, Martinez initiated discussion of the alleged murder-for-hire. All of the alleged calls from Mexico made by Garza to Martinez were for the purpose of receiving her advice about his own marital problems. 11R1367. Garza testified that, whenever Martinez would broach the subject of the "job" (paid assault), he would lie to her about having obtained someone to do it. 11R1368. He stated that, in "some call" from Mexico, the "job" was mentioned. 11R1365.

Subsequently, Garza met people in Brownsville who were part of the Cuellar crime gang, which was based in Dallas. Garza ultimately talked to them in Dallas about doing the "hit" and after Garza purchased a pistol in Dallas and gave it to Victor Moreno, the "hit men" traveled from Dallas to Brownsville shortly before the "hit." 8R576.[1] Even the Government's **opening**

---

[1] Pizana was a resident alien, 10R1247, but he and Palomares were both residents of Texas. Indeed, Pizana's address during the relevant time frame was 106 Jackson, Brownsville, Texas, 10R1230, and Palomares' address was 601 King Road, San Juan, Texas. 10R1231. *See*

2

statement to the jury admitted that the "hit-men" traveled from Dallas to Brownsville. 6R97.[2]

> Despite the foregoing, the en banc opinion states the following:
>
>> The relevant facts in Cisneros are also undisputed at this juncture. **Doris** (sic) Cisneros wanted to have her daughter's erstwhile boyfriend killed. Cisneros told this to her fortune teller and asked if the seer would find someone to commit the murder for a price. Acting as Cisneros's agent, the clairvoyant -- through another client -- ultimately located and employed two hit-men for Cisneros. In doing so the oracle **placed and received international phone calls between Texas and Mexico. The hit-men traveled from Mexico to Brownsville**, Texas, where they shot and killed Cisneros's intended victim. (footnote 10)
>
>> _____
>> Footnote 10: The facts are set forth more fully in the panel opinion. *Cisneros*, 203 F.3d at 337-39.

Emphasis added.

For purposes of clarity, it should be noted that the fortune teller is Maria Martinez, the "(an)other client" is Daniel Garza, and the hit-men were Eddie and Israel, along with, possibly, a third (Palomares).

However, the Government adduced uncontested evidence from Daniel Garza that the hit men were from Dallas; that they were members of the Cuellar organization (drugs and stolen vehicles), that he did not get them lined up to do the "hit" until he met with them in Dallas on or after February 14, 1993, 11R1370, that they agreed to do the "hit" whenever they would next travel from Dallas to Brownsville, 11R1172-1174, and that the "hit men" traveled from Dallas to Brownsville immediately before the "hit". Garza's testimony in this regard corroborated the

_____

*also* Govt. Exhibits 53 and 54.

[2] "Daniel Garza did look around for somebody and found some killers by the name of Israel Olivarez and Heriberto Pizana, people who worked for Rudy Cuellar **up in Dallas**, Texas....And you will hear from another person who worked for Rudy Cuellar, Victor Moreno, that Ramon Palomares **came down** with Israel Olivarez and Heriberto Pizana to kill that boy...." *See* 6R97.

testimony of Victor Moreno, a member of the Cuellar gang who overheard conversations to this effect while he was in Dallas.

Additionally, it is also uncontroverted that Martinez would only call Garza at his (Garza's) house in San Antonio: she never placed any calls to Garza while Garza was in Mexico. 11R1448.

Finally, Garza testified that he never told the hit men to actually kill Fischer, just to beat him up. 11R1438-1439.

Thus, the en banc Court's rendition of the "uncontested" facts were not just "dead wrong," but contrary to the uncontroverted evidence adduced by the Government in its case-in-chief. As noted above, the "hit men" did not travel from Mexico to the United States, but from Dallas to Brownsville. Additionally, Martinez never called Garza in Mexico, although Garza claimed he did call Martinez from Mexico. While there was an issue of whether a vehicle had crossed into the United States on the night before the "hit", both panel opinions did not reach any factual conclusions concerning whether that vehicle (which had crossed the border eighteen times between August 1992 and March 1993) contained anyone related to the "hit" or whether the crossing was even related to the "hit". The en banc opinion's rendition of the "uncontroverted facts", therefore, was incorrect and contrary to the true, uncontested facts. The true, uncontroverted facts, raise serious issues about the proper scope of 18 U.S.C. § 1958 as that statute is applied to Cisneros, and the underlying fairness of Cisneros' trial and appeal, as attacked in her 2255 Motion To Vacate. This Court should grant limited discovery, hold an evidentiary hearing and then conduct *de novo* review of Cisneros' 2255 Motion To Vacate. While this is a high publicity case and the thought of granting relief might be repugnant, Cisneros' constitutional rights have been violated and she is entitled to a new trial.

4

## II. OBJECTIONS TO SPECIFIC PORTIONS OF THE MAGISTRATE'S REPORT

### Section I of Magistrate's Report: Background
### (Report at pages 1 to 2)

The Magistrate describes the events underlying Cisneros' indictment and conviction as "voluminous and complex." To a certain extent, that is an accurate characterization. It is not at all easy to conclude on review of the record facts that, "simply stated," Cisneros hired a hit man to murder her daughter's ex-boyfriend. Report at 1. This relies upon all sorts of hearsay and testimony by alleged coconspirators who lack credibility. There are some facts, however, that are quite clear that have not been addressed by the Magistrate:

> 1. The Government never provided evidence that could prove that a jurisdictional nexus existed based upon travel by an automobile across the international boundary between Mexico and Texas.

> 2. The Government never proved that any alleged phone call from Daniel Garza in Mexico to Maria Martinez in Texas, in which anything related to the alleged murder-for-hire scheme was discussed, occurred within the time frame allowed by the statute of limitations.[3]

The conclusion from these facts is clear. Cisneros' conviction is based upon evidence that shows the Government had no jurisdiction to try her. In addition to the above facts (ignored as they were by the Magistrate), the record also suggests that, in order for the Government to attempt to create federal jurisdiction, Daniel Garza's story changed sometime between Cisneros' sojourn in the state and federal courts. Discovery and an evidentiary hearing are necessary for Cisneros to be able to prove the evident Government misconduct that led to her being retried in federal court for an offense for which she was acquitted in state court (by the Court of Appeals).

---

[3] As reflected at page 39 of Cisneros Motion To Vacate, "[a]ll of Garza's alleged calls from Mexico occurred prior to February 14, 1993, which the government conceded to be accurate in its post oral argument submission at page 3, yet the indictment was not returned until February 23, 1998", more than five years after the commission of the offense of murder for hire was completed.

The Magistrate's characterization of Cisneros' acquittal in State court is overly simple. Report at 1-2. The Texas Court of Appeals held not only that there was insufficient evidence to prove that Cisneros hired the alleged killers, Olivares or Pizana, but that the State failed to prove that Olivares or Pizana actually committed the killing. *State v. Cisneros*, 935 S.W.2d 789, 790 (Tex. Crim. App. 1996) (Keller, J., joined by McCormick and Mansfield, JJ., dissenting from denial of State's petition for discretionary review) ("The Court of Appeals first found that the evidence admitted against appellant was insufficient to prove, as specifically required by the jury charge, that either Olivares or Pizana killed Fischer. This conclusion appears to be supported by the record.").

**(REST OF PAGE INTENTIONALLY LEFT BLANK)**

**Section II Of Magistrate's Report: Analysis**
**A. The Fifth Circuit's En Banc Opinion**
**(Report at pages 2 to 5)**

**(Please Note That This Portion Of The Magistrate's Report**
**And These Objections Relate To Claim For Relief No. 1 to No. 5, And**
**Also Impact Claim For Relief Nos. 6, 9 and 10)**

At various points, the Magistrate relies on "law of the case" doctrine in order to recommend denial of relief on Cisneros' first five Claims For Relief.   Report at 3 ("The Government also urges that Cisneros' claims are barred from review by this Court under the law of the case doctrine."); 4 (same); 5 ("[I]t is well established that when an issue has already been determined on direct appeal, the court need not reconsider it on motion to vacate. . . .   In this case, the en banc court made no finding of clear error in the panel opinions, in which Cisneros' five issues were reviewed.   Cisneros has not demonstrated that she falls within any of the exceptions to the law of the case doctrine.   Cisneros is attempting to obtain review by this Court and possibly the Fifth Circuit, yet again, of the same issues which were found to be without merit on direct appeal from her criminal case.   The law of the case doctrine seeks to prevent this back door approach to multiple review of adjudicated issues.   This Court will not review the same arguments which have been made and addressed on appeal."); 19 ("Cisneros has not shown that her claim fits within the exception to the law of the case doctrine, i.e., that the earlier decision is clearly erroneous and would work a manifest injustice.");[4] 20 ("Cisneros has not provided authority for her proposition that meaningful review requires an en banc court to re-address all points previously reviewed in a panel opinion, or specifically re-instate parts of the panel

---

[4] Cisneros has shown that the earlier vacated appellate panel opinions do not exist and that the en banc decision's cursory review of the facts was clearly erroneous and does work a manifest injustice. *See also* footnote 9, *infra*, pointing out that the Magistrate's conclusion that no exception to the law of the case doctrine applied totally failed to consider or address Cisneros' arguments that the third exception did in fact apply (i.e., "dead wrong" and "manifest injustice").

7

opinions.").

Contrary to the Magistrate's conclusion,[5] Report at 4-5, there is no question that Cisneros asked this Court to consider the merits of her appellate points of error (realleged as Claims For Relief No. 1 to No. 5), which presently remain **without any adjudication**. At the outset of her discussion of the first five Claims For Relief, Cisneros stated:

> Accordingly, Cisneros asserts that she has not received appellate review of the issues she raised on direct appeal and thus her right to a meaningful appeal was denied. Cisneros thus asserts that this Court is fully empowered and actually must allow her to raise the substance of the issues contained in these five Claims for Relief."

Motion to Vacate at 22. The relief that Cisneros has requested for the first five Claims for Relief likewise is based upon adjudication of the underlying appellate points of error. Motion to Vacate at 42.

The Magistrate mistakenly recommends to this Court that "law of the case" applies to bar review of the substance of the appellate points of error. There is no dispute that the Fifth Circuit's order granting en banc review vacated its second panel decision, which in turn had vacated the first panel decision. *United States v. Cisneros*, 206 F.3d 448 (5th Cir. 2000) (vacating *United States v. Cisneros*, 203 F.3d 333 (5th Cir. 2000), and granting en banc rehearing). When a panel opinion is vacated by the grant of en banc rehearing, the panel opinion no longer is precedential. *Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 864 n.12 (5th Cir. 2004). For rulings or fact findings made by a panel to have any value, they must be "reinstated" by the

---

[5] The Magistrate says, "Cisneros' motion for relief under § 2255 does not appear to be asking this Court to consider the merits of her appellate points of error, but is instead seeking adjudication of a due process claim arising out of the appellate court's election to present its opinion in the manner in which it did. Cisneros has clearly framed her claim around the appellate court's action or inaction and its associated impact on Cisneros' constitutional rights." Report at 4-5.

en banc court in its decision. *Soffar v. Dretke*, 368 F.3d 441, 462 (5th Cir. 2004) (noting that en banc reconsideration vacated the panel opinion and that, upon deciding the en banc issue, the en banc court *reinstated* the panel's rulings granting or denying the other issues); *United States v. Vanhorn*, 344 F.3d 729, 732 (8th Cir. 2003) (noting that facts in previously vacated order are not law of the case unless the order is reinstated). The law of this circuit (as well as many others) does not allow application of "law of the case" to issues that are not reinstated from vacated decisions. *Brown v. Bryan County, Ok.*, 219 F.3d 450, 453 n.1 (5th Cir. 2000) (quoting *Johnson v. Chicago Bd. of Educ.*, 457 U.S. 52, 53-54 (1982) ("Because we have vacated the Court of Appeals' judgments in this case, the law of the case does not constrain either the District Court or, should an appeal subsequently be taken, the Court of Appeals.")); *Falcon v. General Telephone Co.*, 815 F.2d 317, 320 (5th Cir. 1987) ("In essence, when a judgment is vacated 'all is effectually extinguished.'") (quoting *Lebus v. Seafarer's International Union, Etc.*, 398 F.2d 281 (5th Cir. 1968)); *Troy State v. Dickey*, 402 F.2d 515, 517 (5th Cir. 1968); *Tyson v. Cazes*, 363 F.2d 742 (5th Cir. 1966); *Dorsey v. Continental Cas.Co.*, 730 F.2d 675, 678 (11th Cir. 1984) ("The law of the case does not apply to a finding that is later vacated. . . . Where a judgment is vacated for a new determination, findings previously made that are integral to that judgment are likewise vacated and are thus not subject to the law of the case doctrine."). In *Falcon*, the Fifth Circuit explicitly rejected recovery of fact findings from a vacated judgment:

> Falcon suggests that the Supreme Court only vacated the decision to allow the new standard of law to be incorporated into the District Court's decision, but did not disturb the original finding of fact that General Telephone had discriminated against Falcon. This argument misconceives the effect of vacating a judgment. As this court has stated before, to vacate a judgment "is to take away from it any precedential affect [sic]. . . . In essence, when a judgment is vacated "all is effectively extinquished."

9

*Falcon, supra*, 815 F.2d at 320.[6]

In short, there is no prior decision and there are no prior fact findings to which "law of the case" could properly apply. This Court does not have the discretion to "refuse to reopen what has been decided" (language used by the Magistrate to the fact findings and legal conclusions in the non-precedential, vacated Fifth Circuit appellate opinions in Cisneros' case; Report at 19-20). precisely because no court (the en banc Court of Appeals or the Supreme Court) reinstated one iota of the panel decisions' treatment of the issues in Claims for Relief No.1 to No. 5.[7] Nothing on those issues has been finally decided, and Cisneros is entitled to their final adjudication. She is not merely "disagreeing with the way the Fifth Circuit framed its en banc opinion." Report at 3.[8] She is saying that issues in vacated judgments must be affirmatively reinstated and re-decided by an en banc court before they can be finally decided and accorded "law of the case"

---

[6] Without reinstatement of the panel decision or the part of it relating to the issues the Court did not address in *Marek*, the en banc Court's passing reference to the facts (that they are "set forth more fully" in the panel decision) cannot cause those facts to be precedential, binding. *United States v. Marek*, 238 F.3d 310, 314 n.10 (5th Cir. 2001) (en banc).

[7] The situation is utterly distinguishable from *Messenger v. Anderson*, 225 U.S. 436, 444 (1912), which the Magistrate suggests would support exercise of discretion by this Court to deny Cisneros a new review of the facts and law in the first five Claims for Relief. Report at 19-20. In *Messenger*, a party was attempting to challenge and replace facts found in a prior appellate decision that had not been vacated. *Messenger*, 225 U.S. at 444.

[8] Cisneros strongly objects to the Magistrate's portrayal of her demand for meaningful appellate review as pushing to have the "district court review an appellate court's prerogative to hear, decide and frame opinions in the most appropriate manner it sees fit" as though she were shopping for a designer opinion. The vacating of the two panel opinions, without express adoption and incorporation of the panel treatment of the contested issues in the en banc opinion, or reinstatement of those issues and new treatment of them in the en banc opinion, left them abandoned and without any adjudication. The fact that "law of the case" doctrine cannot apply — because there is nothing left for it to apply to — strongly supports the additional conclusion that meaningful appellate review was denied. And, it should be noted, that Cisneros sought reinstatement of the second panel opinion after the en banc opinion (at pages 12 to 13 of her motion for rehearing from the en banc opinion) so that her right to seek certiorari would not be impaired and impeded. This request was obviously denied when the motion for rehearing en banc was denied.

status. It is a simple matter of fact that the Fifth Circuit vacated the judgment containing the issues in Claims for Relief No. 1 to No. 5 and, then, failed to reinstate them in its subsequent en banc opinion. Cisneros' right to meaningful appellate review therefore requires this Court to review them in the instant Motion To Vacate.[9]

Accordingly, Cisneros' objections to this section of the Magistrate's Report should be sustained and the merits of Claim For Relief Nos. 1 to 5 should be addressed de novo by this Court.[10] Based on the merits, as fully explained in Cisneros' Motion To Vacate at 20-40, relief should be granted.[11]

---

[9] Cisneros also objects to this section of the Magistrate's Report because the Magistrate did not address: (1) Cisneros' arguments that the third exception to the law of the case doctrine was clearly met because the Fifth Circuit was "dead wrong" and "manifestly unjust," as more fully explained in connection with the discussion of Claim For Relief No. 1 to No. 5 at pages 20 to 40 of Cisneros' Motion To Vacate; and (2) Cisneros' arguments reflected at pages 1 to 6 of her "Reply To Respondent's Answer To Section 2255 Motion And Motion To Dismiss."

[10] Cisneros further objects to this section of the Magistrate's Report because the Magistrate completely fails to address the statute of limitations issue (Claim For Relief No. 5), which is almost strange, given that Cisneros pointed out in her Reply To Respondent's Answer To Section 2255 Motion And Motion To Dismiss that the en banc Court also totally ignored the limitations period issues, leaving them unaddressed and unimplied. Reply to Respondent's Answer at 5. The second panel addressed the issue. *Cisneros*, 203 F.3d at 347-48. But the panel's assertion, now vacated and unbinding, that murder-for-hire is a "continuing offense" is dead wrong. Neither actual murder nor remuneration are necessary to prove the elements of § 1958, so the panel's use of the act of remuneration to place the offense within the limitations period is clear error. On its face, § 1958 allows conviction when the Government proves that a defendant caused another to travel in or use a facility of foreign commerce in order to further a murder solicited by a promise of remuneration. *See* Motion To Vacate at 35-40 and authorities cited therein. The crime is complete when the travel or use of facilities occurs. The Government did not prove beyond a reasonable doubt that the alleged travel between Mexico and Brownsville was relevant at all. It also did not prove beyond a reasonable doubt that any alleged international call in which Daniel Garza and Maria Martinez discussed anything relevant to the murder-for-hire scheme occurred within the limitations period. This Court's denial of Cisneros' Requested Jury Instruction 15, 11R1502-20, deprived Cisneros of a fair trial by allowing her to be convicted with constitutionally insufficient evidence outside of the limitations period.

[11] The Government's Answer And Motion To Dismiss waived it right to answer the merits of Cisneros' Claim For Relief Nos. 1 to 5. *See* Cisneros' Reply To Respondent's Answer at 6.

**Section II Of Magistrate's Report: Analysis**
**B. The Causation and Required Relationship Instructions**
**1. The Causation Instruction.**
**(Report at pages 2 to 17)[12]**

**(Please Note That This Portion Of The Magistrate's Report
And These Objections Relate To Claim For Relief No. 6, And
Also Impact Claim For Relief Nos. 4, 9 and 10)**

The Magistrate concludes that, "[a]lthough the 'but for' definition of causation -- the standard adopted in the now vacated second panel opinion regarding § 1958 cases -- was not provided to the jury, the lack of that further clarification did not prevent the jury from deciding the issue of causation." Report at 16. The Magistrate relies upon *Henderson v. Kibbe*, 431 U.S. 145 (1977), cited by Cisneros in her Motion To Vacate, for the proposition that the burden should be greater upon a petitioner who complains of the absence of a jury instruction that gives an explanation of the causation element which goes beyond the statutory language setting out the elements of the offense. Report at 14. The Supreme Court in *Henderson* presumed that "an omission, or an incomplete instruction, [would be] less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.

Without the instruction, Cisneros' jury probably would have considered sufficient evidence of "but for" causation adequate to prove the statutory element. Thus, the jury probably would not have been prejudiced by the lack of the instruction if the second vacated panel's view of causation under § 1958 is correct. Report at 16 (quoting the vacated *United States v. Cisneros*, 194 F.3d 626, 636 (5th Cir. 1999) (relying upon the inapposite conspiracy case, *United States v.*

_____

[12] It should be noted that the Magistrate has divided his treatment of Cisneros' Claim For Relief No. 6 into two subsections: section II(B)(1)(The Causation Instruction) and section II(B)(2)(The Required Relationship Instruction). These two subsections of Claim For Relief No. 6 also impact upon portions of Claim For Relief No. 9 (ineffective assistance of trial counsel) and Claim For Relief No. 10 (ineffective assistance of appellate counsel).

*Edelman*, 873 F.2d 791 (1989)).  However, in reality, the jury was greatly prejudiced because "but for" causation of international travel or communication cannot be sufficient to establish the foreign commerce nexus for federal court jurisdiction.  *See* § 2255 Motion at 26-28 (and cases cited therein, none of which are addressed by the Magistrate).

The Magistrate suggests that Cisneros confuses causation and *mens rea* in arguing that "but for" causation falls short of the Commerce Clause's requirements.  Report at 7, 15.  He fails thereby to recognize, as the Supreme Court does in *Henderson*, that criminal causation requires some kind of objective reference to mental state.  Criminal liability for causing federal crimes is created by 18 U.S.C. § 2(b), which reads, "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."  The causation standard incorporates a mental element ("willfully").  In *Henderson*, the Court observes that the "New York Court of Appeals concluded that the evidence of causation was sufficient because it can be said beyond a reasonable doubt that the 'ultimate harm' was 'something which should have been foreseen as being reasonably related to the acts of the accused.'" *Henderson*, 431 U.S. at 155.  The *Henderson* Court found, therefore, that the following would have been an adequate instruction on causation in its state law case:

> [I]f the ultimate harm should have been foreseen as being reasonably related to the defendant's conduct, that conduct should be regarded as having caused the death of Stafford.

*Henderson*, 431 U.S. at 155.  This foreseeability standard is far less onerous on the Government than "willfulness."  The Court ultimately found no harm in the absence of an instruction on causation because the jury had to find, at least, that the defendant acted "recklessly."  The Court found that the jury's necessary finding of the recklessness *mens rea* for the state law crime of second degree murder — being aware of and consciously disregarding a substantial and

13

unjustifiable risk — would have included a determination that the ultimate harm was foreseeable to the defendant. *Id.* at 157.

Consideration of mens rea in relation to causation is not at all unusual. In *Pereira v. United States*, in fact, the Supreme Court suggested that there must be a mens rea component to the causation of interstate transportation element of the National Stolen Property Act (18 U.S.C. § 2314), which for practical purposes is indistinguishable from the causation element in § 1958.[13] On the unique facts before it, the Court found that mens rea as to causation adequately could be inferred:

> When Pereira delivered the check, drawn on an out-of-state bank, to the [ [cashing] bank for collection, he "caused" it to be transported in interstate commerce. **It is common knowledge** that such checks must be sent to the drawee bank for collection, and it follows that Pereira intended the [cashing] bank to send this check across state lines. (emphasis added)

*Pereira v. United States*, 347 U.S. 1, 9 (1954). In the instant case, *it is absolutely impossible* to infer from the facts that Cisneros could have intended, known the risk, or even foreseen that her alleged acts in contacting the curandera could have caused interstate or international

---

[13] The relevant part of Section 2314 reads:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or *causes to be transported*, or induces any person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more; . . .

Section 1958 (a) reads:

> Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or *causes another* (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed . . . .

14

communication or transportation to occur. Thus, this Court's[14] denial of Cisneros' Requested Jury Instruction No. 15A was clear error that caused her egregious prejudice, because it allowed the Government to prove the causation element on less evidence than what is absolutely required by the Commerce Clause and 18 U.S.C. § 2(b). As Cisneros noted, § 2255 Motion at 18 n.23, her Requested Jury Instruction No. 15A, quoted below, was based upon *Pereira*:

> A person "causes" another to travel in foreign commerce or to use facilities in foreign commerce if he does an act with knowledge that the foreign travel or use of facilities in foreign commerce will follow in the ordinary course of business, or where such foreign travel or use of facilities in foreign commerce can reasonably be foreseen, even though not actually intended.

2R140.

The "but for" standard for causation that resulted from the lack of proper instruction created federal jurisdiction by happenstance. The second vacated panel's conclusion that federal jurisdiction can be established by an act which contributes to a murder-for-hire scheme by happenstance is clearly erroneous in light of *Pereira* and all other cases — principally *Rewis v. United States*, 401 U.S. 808, 813 (1971), which the Magistrate ignores — asserting that the Commerce Clause would require more. *See* Motion To Vacate at 25-26 (noting that *Rewis* held that reading mere "foreseeability" into the parallel Travel Act violated Congressional intent by making it too easy for the Government to establish the jurisdictional nexus); Motion To Vacate at 26-28, 33-34 (other cases).

The Magistrate asserts that Cisneros' issue regarding the omission of the causation

---

[14] Obviously, the term "this Court" is used at various locations for purposes of brevity. In this particular instance, it is meant to refer to the District Judge who presided over the trial, the Honorable Filemon B. Vela. The term "this Court" thus means either Judge Vela or Your Honor (the Honorable Andrew S. Hanen). Hopefully, the context in which the term "this Court" is used throughout these Objections is sufficiently clear, but regardless, no confusion or disrespect is intended.

instruction was not properly preserved for appeal, perhaps reaching for a justification for the appellate panels' failures to review the issue. Report at 10 (quoting the second panel opinion's mere notation that this Court "failed to give an instruction explaining the notion of causation to the jury"). Procedural default is unfounded because, as the Magistrate finds, trial counsel asked for and received a "running objection." Given that there was no doubt as to the scope of what was covered under the "running objection" granted with repeated reassurances by this Court that Cisneros' objections were preserved and that anything the Court did inconsistent with Cisneros' requested instructions would be preserved, the objections were sufficient to preserve appellate error as to the causation instruction (as well as the others sought). *Bartley v. Euclid Inc.*, 158 F.3d 261, 278 (5th Cir. 1998) (holding that civil defendant had properly preserved error when the district court granted leave to make a running objection); *United States v. Merida*, 985 F.2d 198, 201 (5th Cir. 1993) (finding that a running objection did not preserve error for an *unrelated* objection). Were it not crystal clear that Cisneros' objections to this Court's denial of her Requested Instruction No. 15A on causation were within the ambit of what this Court declared preserved (along with her other requested and denied instructions), this Court might have some justifiable hesitancy under *Merida* to find preserved the error. *Merida*, 985 F.2d at 201-02. But from the outset, this Court announced without doubt that it considered additional objection to denial of Cisneros' specific instruction requests unnecessary and the error preserved. Report at 7 (citing 11R1496; **"Anything I do that is inconsistent with what you have filed on record, you need not object to. You will preserve your exception**."); 8 (citing 11R1499-1500; "Remember, you do not have to object to anything you've already favored me with."); 8-9 (citing 11R1522; ". . . the refusal of the Court to give the requested instructions that we tendered, these are all preserved." This Court: "That is correct."); 9 (citing 12R1599 (sic:

16

actually, 11R1599); "I wanted to, I guess, formally reurge the requested instructions that the Court hadn't given." This Court: "They stand reurged and you have preserved that in toto."). The record reflects that, if trial counsel had even attempted individual objections to the Court's denial of instructions, which counsel indicated it might do, this Court would have cut counsel short. The Magistrate wants to find procedural default for failure to lodge an objection that this Court soundly rejected as superfluous. Report at 10 (musing that this Court's running "objection does not equate to an objection to the omission of a definition of causation as it related to the murder-for-hire scheme"). The Magistrate's finding that a "review of the entire record reveals that Cisneros did not object to the omission of a definition of causation" is clearly erroneous and without any legal or factual foundation in its implication that there was some sort of procedural default. Report at 10. Cisneros' Requested Jury Instruction No. 15A clearly put this Court on notice that Cisneros desired an instruction on causation and this Court's assurances that anything it did that was inconsistent with her requested jury instructions would be preserved. The Magistrate's finding is so unfounded that it seems like a stretch for a procedural ground through which to deny Cisneros review on the merits of this claim.

Since there obviously was no failure to object and no procedural default, Cisneros need not "offer . . . cause for failing to object," contrary to the Magistrate's conclusion. Report at 12. Furthermore, because objection was preserved on this appellate point which was raised in full in the prior briefing to the Fifth Circuit, and meaningful review of the point was denied Cisneros by the vacating of the panel opinions (which had failed in essence to address the issue anyway), the direct appeal standard for constitutional harm should apply, not the more onerous *Henderson* harm standard. Since the Fifth Circuit denied Cisneros a meaningful appeal of the causation issue, this Court now provides Cisneros' first forum for a full and fair opportunity at review and

17

she should not be asked to bear the burden of *Henderson*'s collateral attack rule. *Henderson*, 431 U.S. at 154; *Orndorff v. Lockhart*, 998 F.2d 1426, 1429-30 (8th Cir. 1993) (holding that the standard in *Chapman v. California*, 386 U.S. 18 (1967), applies when no court has previously evaluated the harmlessness of the error). *Henderson*, which now has some vintage, sets up a more stringent standard for finding a due process violation on collateral review. The *Henderson* standard appears to have been superseded by *Brecht v. Abrahamson* to the extent that it incorporates harmfulness of the constitutional error. *Mayhabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (observing that the *Brecht* standard is used on collateral review and requires only a finding that the constitutional error "had a substantial and injurious effect or influence in determining the jury's verdict") (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Indeed, the Supreme Court has determined that *Brecht* is to be used to gauge the harm in post-conviction review when the error consists of the omission of an instruction that helps to define the crime. *Id.* (citing *California v. Roy*, 519 U.S. 2 (1996).

Finally, if "cause and prejudice" were pertinent to the issue of causation instruction error, they would be shown in ineffective assistance of trial counsel for failure to object adequately to this Court's decision not to instruct the jury that it had to find that Cisneros actually caused Garza's alleged calls from Mexico or the crossing of the vehicle from Mexico. *See* Motion To Vacate at 128ff (Claim For Relief No. 9, Sixth Act/Omission). The Magistrate errs in finding that Cisneros "offers no cause for failing to object to the trial court's omission of a definition on causation." Report at 12. This is laid out clearly enough in footnote 41 at pages 47 to 49 of the Motion To Vacate, wherein Cisneros raises the point that it would be inconceivable that a competent attorney would, for strategic reasons, fail to request (or secure an objection against failure to give) an instruction that goes to the crux of the defendant's defense (discussing *Lawson*

18

*v. Warden, Mansfield Correctional Institution*, 197 F. Supp. 1072, 1084-1090 (S.D. Ohio 2002)). Failure to instruct on causation or on furtherance (or facilitation), the jurisdictional nexus, the statute of limitations, etc., are all tantamount to telling the jury that it can find the defendant guilty of the offense charged in the indictment without explaining the essential elements of the offense. This would be both objectively unreasonable under prevailing norms of attorney assistance and highly prejudicial, undermining confidence in the verdict, because the Constitution requires the jury to contemplate more than "but for" causation in the first clause of § 1958.

If trial counsel failed to adequately preserve the instructional error as to the causation element of the offense and Cisneros' jury was not adequately charged on that element, then her conviction fails to rest upon a jury determination that she is guilty of every element of the crime, in violation of her Fifth and Sixth Amendment rights. Report at 13 (citing *United States v. Gaudin*, 515 U.S. 506, 509-10 (1995)). This undermines confidence in the verdict, simultaneously meeting the *Strickland* prejudice standard and demonstrating "prejudice" to overcome procedural default, and the *Chapman* and *Brecht* standards of harm. For determining the harm caused by constitutional error on collateral review, *California v. Roy* and similar cases obviously have superseded *Henderson v. Kibbe*, supplanting its rather imposing standard with *Brecht*.

Grave doubt exists as to the harmlessness of this Court's omission of the causation instruction, because it lessened the Government's burden of proof to convict Cisneros on all of the elements of the offense. Thus, on this issue, the "petitioner must win." *Roy*, 519 U.S. at 5 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995) (describing the *Brecht* standard)).

Accordingly, Cisneros' objections to this section of the Magistrate's Report should be sustained and the merits of the first portion of Claim For Relief No. 6 should be addressed de

novo by this Court. Based on the merits, as fully explained in Cisneros' Motion To Vacate at 43-72, relief should be granted.

**(REST OF PAGE INTENTIONALLY LEFT BLANK)**