*B-02-cv-191*

**Section II Of Magistrate's Report: Analysis**
**B. The Causation and Required Relationship Instructions**
**2. The Required Relationship Instruction**
**(Report at pages 17 to 21)**

**(Please Note That This Portion Of The Magistrate's Report**
**And These Objections Relate To Claim For Relief No. 6, And**
**Also Impact Claim For Relief Nos. 2, 3, 9 and 10)**

"Law of the case" doctrine is irrelevant to review of Cisneros' claim that this Court erred by rejecting her proposed instructions related to "furtherance," Requested Instructions Nos. 12 and 14. *See* discussion of "law of the case," *supra* at pages 7 to 11 of these Objections, adopted herein by reference for purposes of brevity.

Relying upon the inapposite "law of the case" doctrine to dispose of Cisneros' furtherance issue, the Magistrate ignores the merits, which are based upon the United States Supreme Court's requirement that the acts establishing the jurisdictional element (international communication or travel) must be done **in furtherance of** the criminal scheme. *Rewis v. United States*, 401 U.S. 808, 812-13 (1971); *United States v. Presley*, 478 F.2d 163, 168 (5th Cir. 1973) (following *Rewis*). *See* Motion To Vacate at 28-35 (argument and authorities in support of furtherance instruction, pointing out that Supreme Court and Fifth Circuit cases use the term "in furtherance" and "facilitates" interchangeably and supporting conclusion that jurisdiction can not be based on happenstance).[15]

---

[15] Subsections a and b at pages 30 to 32 of Cisneros' Motion To Vacate stated the following regarding the second vacated panel opinion, which had held that the statute required the foreign commerce to "facilitate" the underlying offense or "make it easier" and found that her requested instructions on the required relationship (i.e., Requested Instruction Nos. 12 as supplemented by her theory of the defense instruction, No. 14) was incorrect because it used the term "in furtherance" of the murder-for-hire scheme (as opposed to "facilitated"). 203 F.3d at 346.

The second vacated panel opinion clearly erred -- it was "dead wrong" -- in suggesting the existence of a meaningful legal difference between the terms "facilitate" and "furtherance" for interpretation of the Travel Act and murder-for-

The Magistrate appropriately does not find any trial preservation problem with Cisneros'

---

hire statutes. The Supreme Court and the Fifth Circuit have used the terms interchangeably in cases dealing with Travel Act prosecutions. *See, e.g., Erlenbaugh v. United States*, 409 U.S. 239, 247 (1972) ("furtherance"); *Rewis v. United States*, 401 U.S. 808, 813 (1971) ("furtherance"); *Presley, supra* ("furtherance"); *United States v. Roberson*, 6 F.3d 1088, 1094 (5th Cir. 1993) ("facilitate"). The use of the term "facilitate" in the cases cited by the second vacated panel opinion, 203 F.3d at 344 n.7, merely follows the statutory language in 18 U.S.C. § 1952. *See United States v. Perrin*, 580 F.2d 730, 736 (5th Cir. 1978) ("[I]t is enough that the . . . use of interstate facilities makes easier or facilitates the unlawful activity.").

\* \* \*

The vacated second panel opinion expressly recognized a conflict between Cisneros' case and *United States v. Houlihan*, 92 F.3d 1271, 1292 (1st Cir. 1996), wherein the First Circuit "required the use of the facility in interstate commerce to be 'in furtherance' of the underlying murder scheme." **The second vacated panel opinion did not address the fact that Cisneros' trial counsel had specifically modeled their requested instruction (using "in furtherance") from a district court jury instruction given in a murder for hire case by United States District Judge Harry Lee Hudspeth.** (*United States District Judge, Western District of Texas*; explanation added)

The second vacated panel's finding that the Fifth Circuit itself only requires a showing that the use of the facility "facilitated" the underlying crime, i.e., "made it easier," also is inconsistent with other Fifth Circuit opinions. *United States v. Presley*, 478 F.2d 163, 168 (5th Cir. 1973) (reversing district court's denial of motions to withdraw nolo contendere pleas following *Rewis*, on finding that facts had not been developed regarding the "extent and significance of the crossing of state lines to the furtherance of the operations of [an] illegal gambling casino"); *United States v. Gooding*, 473 F.2d 425, 427-28 (5th Cir. 1973) ("The Travel Act does not proscribe all interstate travel which may incidentally lead to a furthering of unlawful activity.") (citing *United States v. Hawthorne*, 356 F.2d 740 (4th Cir. 1966)).

Indeed, **even the en banc opinion in** *Cisneros* **twice uses the term "in furtherance"**. *See e.g.*, 238 F.3d at 313 ("The Marek majority acknowledged *Cisneros* but reasoned that it was not binding because, **in furtherance** of her murder-for-hire scheme....) and 238 F.3d at 314 ("A panel of this court concluded that a reasonable jury could have found that (1) the fortune teller had participated in international calls as Cisneros' agent, and (2) those calls were sufficiently connected to the murder to be **"in furtherance"** of that crime."(footnote omitted)) (explanation added).

22

objection to this Court's omission of the "in furtherance" instruction (Requested Instruction No. 12). Accordingly, he raises no issue of procedural default. The panel opinions addressed the omission of the instruction without discussion of procedural default, which supports the finding that there was no procedural default in regard to all of the proposed instructions covered by this Court's grant of a running objection.

Given that "law of the case" is inapplicable and the claim of error related to Requested Instruction No. 12 is clearly preserved, relief should be granted, because it is entirely probable that Cisneros' jury convicted her without any finding that either alleged act of foreign commerce (car travel or phone call) "facilitated" (or was "in furtherance of") the "murder-for-hire scheme." Again, the *Chapman* standard should govern the calculation of harm to Cisneros' Fifth and Sixth Amendment rights because, with the vacated opinions, this Court's evaluation of the issue now is the first full and fair opportunity for its review. However, certainly the *Brecht* standard is met as well, because grave doubt exists as to the harmlessness of this Court's failure to instruct Cisneros' jury that the acts establishing the first element of the offense could not be merely incidental or happenstance, but (as the statute says) had to be done in order to "facilitate" the crime. *Roy, supra*, 519 U.S. at 5.

This Court "gave no instruction on the nexus requirement." Report at 20 (quoting *United States v. Cisneros*, 203 F.3d 333, n.9 (5th Cir. 2000)). In other words, in the instruction that this Court did give (1R93; 11R1516),[16] there was no direction to the jury that, once it found that

---

[16] The district court's instruction read:

The Government must prove that somebody, you know, involved in the venture, itself, traveled in foreign commerce or caused another to use a facility in foreign commerce. . . . Now, "facility in foreign commerce" includes means of transportation and communication. Now, as part of the burden of proof, the Government does not have to prove that the defendant intended that foreign travel

23

"somebody . . . involved in the venture . . . traveled in foreign commerce or caused another to use a facility in foreign commerce," it also had to find that this "facilitated" the murder-for-hire scheme (tracking the statutory language). *See* Motion To Vacate at 56 n.48, 59 n.50, & 62 n.53. The instruction given was sufficiently misleading to cause doubt that the jury was informed that, at a minimum, it had to find that the Government had proven beyond a reasonable doubt a relationship between the alleged foreign commerce and the murder-for-hire scheme. This violated due process. It also resulted in an unconstitutional application of 18 U.S.C. § 1958 to Cisneros because, absent that finding by the jury, there was no jury determination of the jurisdictional element. Without that, application of the statute to her violated the Commerce Clause (exceeding the limits of the commerce power). *See United States v. Lopez*, 514 U.S. 549 (1995). The lack of a specific nexus instruction and the lack of any correction to that problem in this Court's answer to the jury's question regarding the meaning of commerce (12R1600-1607), when viewed in the context of this Court's denial of the requested jury instructions, undermines confidence that Cisneros was convicted upon jury findings as to all elements of the offense, meeting both the

---

occur, or that foreign commerce facilities be used in connection with the murder, or even that the defendant knew that foreign travel occurred or would occur, or that foreign commerce facilities were or would be used. But the Government must prove that somebody, you know, involved in the venture, itself, traveled in foreign commerce or caused another to use a facility in foreign commerce.

1R93, 11R1516, 11R1593-1594. This language allowed the jury to convict Cisneros if "somebody...involved" traveled in or used a facility of foreign commerce regardless of the activity's connection to the murder. In fact, it affirmatively allowed the jury to convict even if the foreign commerce facilities were not used in connection with the murder, which constituted a constructive amendment of the indictment. "A constructive amendment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged." *United States v. Holley*, 23 F.3d 902, 912 (5th Cir. 1994) (*quoting United States v. Doucet*, 994 F.2d 169, 172 (5th Cir. 1993) *and United States v. Baytank, Inc.*, 934 F.2d 599, 606 (5th Cir. 1991). This aspect of Cisneros' Motion To Vacate, see page 17, n.22, the Magistrate has also failed to address.

*Strickland* prejudice standard (providing an exception to procedural default for any failure by trial counsel to preserve this point)[17] and *Brecht*.

Accordingly, Cisneros' objections to this section of the Magistrate's Report should be sustained and the merits of the second portion of Claim For Relief No. 6 should be addressed de novo by this Court. Based on the merits, as fully explained in Cisneros' Motion To Vacate at 43-72, relief should be granted.

**(REST OF PAGE INTENTIONALLY LEFT BLANK)**

---

[17] The Magistrate asserts that Cisneros attempts to avoid "law of the case" doctrine on this point. Report at 20. As has been demonstrated above, "law of the case" does not apply to vacated decisions (and even if it did, the "dead wrong" and "manifest injustice" exception applies). Cisneros acknowledges the possibility that she may not have sufficiently raised the specific issue of this Court's omission of a nexus instruction as a separate ground of error in her opening appellate brief (as it was not fully raised until her motions for rehearing on appeal). So, although "law of the case" probably is irrelevant, because there never were any judicial findings directly on point, procedural default on appeal is. *See* Motion To Vacate at 147-157 (First Act/Omission). Appellate counsel was ineffective for failing to raise or adequately raise on appeal this Court's improper overruling of her objections to the failure to instruct the jury in regard to the nexus requirement and for failing to also raise the Court's improper overruling of her objections to the language of the foreign commerce definition that this Court actually submitted to the jury, particularly given the supplemental instruction given to the jury in response to its question about commerce. Prevailing on the instant Claim for Relief No. 10 (First Act/Omission) would meet the "cause and prejudice" requirement to avoid procedural default of the issue. *Murray v. Carrier*, 477 U.S. 478, 485-88 (1986); *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991); *Lawson, supra*, 197 F. Supp. at 1084-90.

## Section II Of Magistrate's Report: Analysis
### C. Government's Alleged Failure to Disclose Witness' Modified Testimony and Alleged Use of Perjured Testimony.
### (Report at pages 21 to 29)

### (Please Note That This Portion Of The Magistrate's Report And These Objections Relate To Claim For Relief Nos. 7 and 8, And Also Impact Claim For Relief Nos. 9 and 10)

Cisneros very clearly argued that the conditions, suppressed by the Government, under which Daniel Garza changed his story — to reflect that, although he *might* have called Maria Martinez collect from Mexico, he also called her from phone booths in Mexico and retained no record of the calls, and that he called her within a time frame that *might* minimally/arguably place the alleged calls within the limitations period — undoubtedly are exculpatory and would materially affect the outcome of Cisneros' conviction under either *Brady v. Maryland* or *United States v. Agurs*, because, *but for the suppression of these conditions at trial*, no reasonable juror would have been able to find, beyond a reasonable doubt, that the jurisdictional element of § 1958 had been met. *See* Motion for Discovery and Memorandum of Law in Support at 4-6 (citing *Brady v. Maryland*, 373 U.S. 83 (1963) (Claim for Relief No. 7), and *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 437 U.S. 97 (1976), and *Napue v. Illinois*, 360 U.S. 264 (1969) (Claim for Relief No. 8), and *Strickland v. Washington*, 466 U.S. 668 (1984) (Claim for Relief No. 9, Fourth Act/Omission).[18]

---

[18] Cisneros also takes exception to the Magistrate's unsupported conclusion that all fourteen numbered items reflected at page 24 of the Report were available on appeal. The record on appeal affirmatively reflects that these fourteen items were not a part of the appellate record and, of course, items not a part of the record on appeal can not be alluded to or referenced in the appellate briefs. Cisneros also objects to the Magistrate's conclusion that "[i]t appears that Cisneros' trial counsel was aware of the modified testimony before trial and during trial," Report at page 25, and that "Cisneros became aware of the modified testimony when she received the Government's Bill of Particulars." Report at page 26. Such is clearly not the case: trial counsel had no earthly idea how the Government was going to attempt to get around the absence of collect telephone calls (the Bill of Particulars did nothing in this regard) and it was not until Mr.

Furthermore, Cisneros ably showed "cause" for not presenting the *Brady/Giglio* issues until the instant motion based in the Government's ongoing suppression and/or her own counsel's ineffectiveness at trial and on appeal, although the Magistrate fails to address it. *See* Cisneros' Reply To Respondent's Answer To Section 2255 Motion And Motion To Dismiss at 11 & nn. 11, 12 (applying the analysis of *Strickler v. Greene*, 527 U.S. 263 (1999), to the instant case). *Brady* suppression establishes "cause." *Strickler*, 527 U.S. at 282. *See also Banks v. Dretke*, 540 U.S. 668, 693-694 (2004)(discussing *Strickler, supra*). And *Brady* materiality satisfies prejudice. *Strickler*, 527 U.S. at 282; *Banks v. Dretke* (contemning policy of"prosecutor may hide, defendant must seek" as "not tenable in a system constitutionally bound to accord defendants due process." *Id.* at 697); *Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000). Ineffective assistance also establishes cause and prejudice.[19] No possible, reasonable strategy could have underlaid trial

---

Pounce elicited testimony from Garza that he had NOT called collect that counsel because aware that Garza had changed his story. This is clearly explained in rich detail and chronological sequence at pages 74 to 82 of Cisneros' Motion To Vacate. Clearly, had counsel known that Garza was going to claim, **for the first time at trial** (and as the last prosecution witness), that he had called Martinez from Mexico, not via collect calls (which was proven to be false by Martinez' telephone records), but from public pay phones or "casetas" where Garza had to pay money, counsel could have cross-examined Maria Martinez on this point earlier in the Government's case in chief since Martinez' prior statements reflected that Garza never called her from Mexico, only from Dallas and San Antonio (by Garza's own admissions to her). *See* Cisneros' Motion To Vacate at pages 102-113 (i.e., Claim For Relief No. 9, "Second Act/Omission"). Of course, Cisneros' counsels' failure to recall Martinez after the conclusion of Garza's testimony (and either before or after they called Agent Church) to impeach Garza's claims of calls from Mexico was simply deficient performance that undermined confidence in the outcome of the case, as alleged in Claim For Relief No. 9.

[19] The Magistrate is correct that ineffective assistance, as opposed to deficient performance alone, is "cause." Report at 22. To the extent that trial counsel provided deficient performance, because counsel did not thoroughly question Garza about his changed testimony and there was no possible strategic reason for such omission, *Strickland* prejudice still needs to be shown for "cause" as well as "prejudice" to be met, excusing procedural default for any failure to diligently pursue *Brady* challenges at trial and on appeal. As Cisneros has briefed, prejudice certainly is conceivable and likely to be proven with discovery, but discovery is necessary to prove it.

counsel's lack of delving into the conditions that changed Garza's testimony regarding facts relevant to the jurisdictional nexus. Reply to Respondent's Answer at 11 n.12.[20] The failure to develop that testimony undermines confidence in the outcome, because it suggests that proper impeachment based upon reasonable inquiry into Garza's change would have caused the jury to doubt proof of the jurisdictional nexus through the alleged Mexico phone calls. The migration of the car across the international border proved nothing relevant to jurisdiction for a multitude of reasons,[21] so there is a reasonable likelihood that proper impeachment would have led to an

_____

To the extent that trial and appellate counsel were diligent in making requests that should have led to the Government's release of the relevant facts, and no ineffective assistance is shown, as suggested by the Magistrate at Report at 23, there really is no need to show "cause and prejudice," because there is no conceivable procedural default. Even so, the ongoing *Brady* suppression would meet cause and prejudice if it were shown through discovery that the suppression undermines confidence in the verdict.

[20] The Magistrate seems to ignore this fact when observing, "It appears that Cisneros' trial counsel was aware of the modified testimony before trial and during trial. Cisneros has not shown good cause for failing to raise a *Brady* claim at trial or on appeal." Report at 25. Cause is partially shown by counsel's unsupportable failure to explore on cross-examination the bases for Garza's changed testimony.

The Magistrate's related conclusion that Cisneros "merely stated that trial counsel's deficient performance" was cause without "further argument" is not a fair or accurate reading of Cisneros' arguments. *Id.* at 22.

[21] As noted elsewhere in these Objections as well as in Cisneros' Motion To Vacate, a vehicle crossed the border from Matamoros, Mexico, to Brownsville, Texas, on March 2, 1993. Both vacated panel opinions state the following regarding the car crossing:

"We now turn to a development of uncertain connection to the hired killers, but one that we must mention. At 6:39 that evening, a car crossed into the United States from Mexico at the Brownsville point of entry. Border authorities recorded its Mexican license plate number as "821 THE7". A vehicle with that plate had crossed the border eighteen times between August 1992 and March 1993. At 8:26 p.m., Pizana and Ramon Palomares, another Cuellar hit man, checked into the La Quinta Inn. The receptionist registered their car as a white Grand Marquis with Mexican plates. Her handwriting made it hard to decipher whether the plate number was "821 TWEX" or "821 THE7". *See* 194 F.3d at 630; 203 F.3d at 338.

There was absolutely no testimony as to the type of vehicle that had the "821 THE7" attached

acquittal. As Cisneros pointed out in her Reply, this satisfies the prejudice requirement of *Brady* or *Strickland* and of the "cause and prejudice" exception to procedural default.

Strikingly, **as also pointed out by Cisneros**, the Government has not denied that it knew Garza's testimony was false when he presented it or that it has suppressed the evidence that Cisneros has sought through discovery to substantiate her Claims for Relief 7, 8, and 9 (Fourth Act/Omission). Reply to Respondent's Answer at 12. Cisneros also noted that there was absolutely no reason for Garza to modify his story about the phone calls without prompting by the Government to try to meet the jurisdictional requirement. Cisneros' Reply to the Government's "Response to Cisneros' Objections and Motion for Reconsideration" at 2-3. The array of facts displayed at pages 76-82 of the Motion To Vacate presents strong doubt about the credibility of the Government's key witness and the ethical nature of the Government's case, yet this is ignored by the Magistrate.[22] Because discovery could lead to evidence about the jurisdictional nexus that could undermine confidence in the conviction, it was error for this Court

---

to it when it crossed, the identity of the person or person(s) present in the vehicle when it crossed, or the reason it crossed. If, for example, the "hit" men had driven such a vehicle from Dallas to Brownsville and crossed to Mexico strictly so that the "hit" men could eat dinner, surely no one would suggest that the original crossing (in this example) or the return was "in furtherance" or "facilitated" the murder for hire scheme.

[22] The chronological sequence of events leads to but one conclusion: someone with the Government spoke with Garza before he was put on the witness stand on May 11, 1998, and either confronted him with the absence of collect telephone records to substantiate his earlier statements to the FBI or informed him that his testimony could not be verified, at which time some conversation had to have ensued. Mr. Pounce, who put Garza on the witness stand, is the logical choice since it would be rare for an Assistant U.S. Attorney to put a key witness on the stand without preparing him to testify. And, it should be remembered, Mr. Pounce had previously tried Cisneros in state court and ended up with an acquittal on direct appeal: a terribly embarrassing result! He clearly had the motive and opportunity to "massage" Garza's testimony and Garza's testimony was clearly massaged, yet the facts and circumstances surrounding his modification was never related to Cisneros, as it should have been.

to deny discovery.[23]

The Magistrate dodges directly dealing with Cisneros' suppression/false testimony issues (and the related ineffective assistance issue reflected in Claim For Relief No. 9, Fourth Act/Omission) by selectively citing and quoting her briefing (e.g. Report at 28-29) and asserting, without foundation, that somehow she has failed to "delve into the entire record" to show prejudice. Report at 29. Certainly, based upon Cisneros' extensive discovery briefing, the Magistrate should know that Cisneros *cannot* absolutely show prejudice without the discovery that she has requested (and renewed her requests for). The whole point of discovery is to give Cisneros a fair opportunity to develop her claims so that the pure speculation indulged by the Magistrate can be avoided. Report at 27 (suggesting "numerous possible explanations" and commenting, without knowing, that they only would have affected Garza's credibility).[24]

_____

[23] At a minimum, the Court should have ordered (and still should order) the Government to submit all reports and notes of interviews and contact with Daniel Garza between February 18, 1998 (when Garza was last interviewed by the Government, as far as Cisneros is aware) and the date of his testimony at Cisneros' trial (i.e., May 11, 1998). In the first instance, these notes could be reviewed by the Court, ex parte and in camera and, if appropriate, then distributed to Cisneros for further development. If no such notes exist, then interrogatories and/or depositions of should be permitted, for the sequence of events surrounding this unsavory development should be developed so the truth can be presented.

Indeed, the sequence of facts and events outlined in Cisneros' Claim For Relief No. 7 (suppression, fully reflected at pages 73 to 90 of her Motion To Vacate) sets forth the facts in a chronological perspective and demonstrates a very realistic probability of foul play (i.e., that someone spoke with Garza between February 18, 1998 and May 11, 1998, which resulted in a modification of Garza's prior rendition of events, as reflected by his eight statements/testimony, all of which is accurately summarized at pages 73 to 90). See footnote 22, *supra*.

[24] Certainly, the credibility of Garza's testimony about facts relevant to jurisdiction is material, because without his testimony about those facts, jurisdiction is clearly and unequivocally not established. Contrary to the Magistrate's further speculation that the "jury could have relied on testimony from other trial witnesses to find that a facility in foreign or interstate commerce was used or that there was travel in interstate or foreign commerce." Report at 27. Of course, only Garza testified about calls from Mexico to Martinez and there was no other testimony about travel other than the record reflecting that a vehicle with a license place similar to one registered

*Guidry v. Dretke*, 397 F.3d 306, 324 (5th Cir. 2005) (observing that the kind of "speculation" in which the Magistrate participates, "made necessary when findings on crucial issues are implied," demonstrates the need for further development of the facts). Because discovery was denied, *we simply do not know* what the explanations would have been for Garza's change in testimony and what could be said about the effect of that suppressed material on the outcome of the case.

Accordingly, Cisneros' objections to this section of the Magistrate's Report should be sustained and the merits of Claim For Relief Nos. 7 and 8 should be addressed de novo by this Court, after providing discovery as requested, necessary and appropriate. Based on the merits, as fully explained in Cisneros' Motion To Vacate at 73 to 93, and subject to discovery, relief should be granted on Claim For Relief Nos. 7 and 8.[25]

**(REST OF PAGE INTENTIONALLY LEFT BLANK)**

---

at the motel had crossed the border eighteen times between August 1992 and March 1993. Simply stated, the Magistrate's speculation in this regard is wholly unwarranted and refuted by the record.

[25] This of course also impacts upon Claim For Relief No. 9, Fourth Act/Omission.

**Section II Of Magistrate's Report: Analysis**
**D. Ineffective Assistance of Trial and Appellate Counsel**
**1. Trial Counsel's Performance.**
**(Report at pages 29 to 32)**

**(Please Note That This Portion Of The Magistrate's Report**
**And These Objections Relate To Claim For Relief No. 9)**

The Magistrate's portrayal of the law of ineffective assistance is unconstitutionally restrictive. Report at 30-31. The Magistrate gives an erroneous standard for deficient performance:

> Even egregious errors in tactical determinations (about whether to call certain witnesses or to ask certain questions) do not provide a basis for post-conviction relief. Report at 30.

The Magistrate follows it up with an erroneous prejudice standard:

> The mere possibility of a different outcome is not sufficient to prevail on the prejudice prong . . . . Rather, the defendant must demonstrate that the prejudice rendered sentencing fundamentally unfair or unreliable. Report at 31.

The Magistrate's performance standard is stiflingly and unconstitutionally narrow (egregious errors based on tactics cannot provide relief), derived from a case that predates *Strickland* by 14 years. Report at 30, *supra*, citing *United States v. Rubin*, 433 F.2d 442 (5th Cir. 1970). Under *Strickland*, even one objectively unreasonable tactical decision (made with or without reasonable investigation of law and facts) can undermine confidence in the outcome of a case and, thereby, be a basis for relief. *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (holding that the right to effective assistance may be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Strickland v. Washington*, 466 U.S. 668, 693-96 (1984); *United States v. Cronic*, 466 U.S. 648, 657 n.20 (1984).[26]   The relevant question is whether

---

[26] *See, e.g., White v. McAnich*, 235 F.3d 988 (6th Cir. 2000) (holding counsel's failure to request limiting instruction ineffective assistance because wholly unreasonable); *Moore v. Johnson*, 194 F.3d 586, 610 (5th Cir. 1999) (unreasonable strategy to exclude exculpatory parts

32

counsel's error, solitary as it may be, places his performance outside of the reasonable range of attorney performance. *Strickland*, 466 U.S. at 689. Of course, the more acts committed by an attorney in a trial that fall outside the reasonable range, the more likely it is that prejudice exists. For that reason, *Strickland* prejudice also is assessed cumulatively. *Cargyle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003); *Gonzales v. McKune*, 247 F.3d 1066, 1077-79 (10th Cir. 2001); *Moore v. Johnson*, 194 F.3d 586, 619 (5th Cir. 1999); *Stouffer v. Reynolds*, 168 F.3d 1155, 1163-64 (10th Cir. 1999).

The *Strickland* performance prong gives wide latitude to counsel for making strategic or tactical decisions, and judicial scrutiny of counsels' decisions is highly deferential.[27] *Strickland*, 466 U.S. at 691. Objective reasonable performance requires trial counsel to investigate the law as it impacts the evidence. *Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003) (quoting *Strickland*, 466 U.S. at 690-691). The United States Supreme Court and the Fifth Circuit flatly reject attempts to "justify [] limited investigation as reflecting a tactical judgment" to pursue a particular strategy. *Id.* No Court owes deference to such a "strategic judgment" made on the basis of an inadequate investigation. *Id.*

Under the *Strickland* prejudice prong, an unprofessional error (an objectively unreasonable decision) will not warrant setting aside a judgment if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691. It must be shown that there is a reasonable probability that the error affected the outcome of the trial. "A reasonable probability is a probability sufficient to

_____

of accused's confession where decision was based on misunderstanding of controlling case law.

[27] An exception to the presumption exists when the record clearly confirms that no reasonable trial counsel would have engaged in the complained of conduct or omission. *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992). Deficient performance, thus, may be confirmed by the appellate record without any additional evidence of trial counsel's alleged subjective "strategy." *Id.*

undermine confidence in the outcome." *Id.* at 694. The Magistrate's use of the standard in *Lockhart* that is more onerous for the petitioner is inappropriate and erroneous, because no "windfall" situation is presented by the facts and allegations in Cisneros' case. Report at 31, *supra* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). The Supreme Court has indicated that, in all such instances, the usual *Strickland* standard governs. *Williams v. Taylor*, 529 U.S. 362, 393 (2000) (using "straightforward application of *Strickland*" where ineffective assistance deprives the defendant of a substantive or procedural right).

The Magistrate recommends denial of Cisneros' ineffective assistance claims by categorically exempting the types of errors made by her counsel from ever being considered as objectively unreasonable. Report at 31 (asserting contrary to *Strickland* that "[f]ailing to object to admission of certain evidence, failing to adequately develop witness testimony, failing to adequately cross examine, and failing to request a jury instruction are within the realm of tactical determination and do not constitute objectively unreasonable performance"). By delivering trial counsel from the possibility that they could have made any unreasonable tactical decision, the Magistrate apparently sees no need to analyze for this Court the objective reasonableness of each of the alleged deficiencies of trial counsels' performance. The Magistrate quickly reaches the conclusory decision that the record would support a finding that counsels' performance fell within the wide range of reasonable professional assistance. Report at 32. Thus, the Magistrate does not address any of the following six acts/omissions:

> **FIRST ACT/OMISSION**: Trial counsel failed to object to the government's offer of transcripts of conversations between Daniel Garza and Maria Martinez;

> **SECOND ACT/OMISSION**: Trial counsel failed to cross-examine Maria Martinez concerning the fact that she was aware that Daniel Garza had called her from Dallas and San Antonio, but had never been called by Daniel Garza from Mexico, as established by Martinez' prior testimony and her statement to FBI Agent Church on January 28, 1998, and/or develop the fact that Garza had previously told Martinez that he was calling her

from Dallas and San Antonio, not Mexico;

**THIRD ACT/OMISSION**: Trial counsel failed to cross-examine Daniel Garza with his prior inconsistent statements, his lack of prior consistent statements and the contents of Martinez' prior testimony and statements;

**FOURTH ACT/OMISSION**: Trial counsel failed to discover and utilize (either on cross-examination of Garza and/or on direct examination of FBI Agent David Church, or as otherwise appropriate) the sequence of events that led to the inclusion in the government's bill of particulars the allegation that Garza had allegedly called Martinez from San Fernando, Mexico, as well as the sequence of events that led to Garza's dramatic change in story from February 18, 1998, to his trial testimony on May 11, 1998 (i.e., change from collect telephone calls from Matamoros in time frame prior to murder for hire to telephone calls from casetas from San Fernando and Matamoros in a time frame arguably within the murder for hire time frame);

**FIFTH ACT/OMISSION**: Trial counsel failed to adequately request a jury instruction that would have required the jury to find that the foreign commerce (i.e., Garza's alleged calls from Mexico to Martinez and the crossing of the vehicle) was sufficiently related to the murder for hire scheme before the jury could find the first element of the offense beyond a reasonable doubt; and

**SIXTH ACT/OMISSION**: Trial counsel failed to adequately request a jury instruction that would have required the jury to find that the foreign commerce (i.e., Garza's alleged calls from Mexico to Martinez and the crossing of the vehicle) were actually caused by Cisneros and were more than "but for" or "foreseeable" causation before the jury could find the first element of the offense beyond a reasonable doubt.

The Magistrate's treatment of Cisneros' trial counsel ineffective assistance issues is woefully deficient itself, because it is based upon erroneous legal standards that would not have required the Magistrate to legally weigh the pertinent facts. It is not at all surprising, therefore, that he treats the claims so cursorily and repeatedly comments earlier in the document that Cisneros, in his opinion, has failed to prove "cause and prejudice" in regard to issues within the first eight Claims for Relief that may not have been adequately raised or preserved by trial counsel.

The Magistrate has given this Court no guide for evaluating Cisneros' trial counsel ineffectiveness claims. His global finding that "a review of the trial transcript reveals that the

35

alleged deficiencies were the result of conscious and informed decision making on trial tactics and strategy" gives this Court nothing to work with and deserves no deference. The Magistrate essentially is making a credibility finding (without the benefit of an evidentiary hearing) that, when present counsel (who also were trial counsel) assert there was no strategy (and obviously no reasonable strategy) for the omissions that constitute the grounds for Cisneros' ineffectiveness claims, present counsel are not to be believed in light of the record. Cisneros disagrees with the Magistrate's assessment of the record, which clearly supports that no reasonable counsel could strategically make the omissions that form the bases of her ineffectiveness claims and arguments for the "cause and prejudice" to procedural default. Especially if this Court believes that proof of "cause and prejudice" is needed to reach any of the issues in Claims for Relief 1-8, then an evidentiary hearing is required — and substitute counsel can be utilized to conduct the hearing on those aspects which require the testimony of trial and appellate counsel — so that her present counsel can testify and her right to the great writ is not effectively suspended. The burden is on her to prove by a preponderance her ineffective assistance claims and, in turn, cause and prejudice for any procedural default. Denial of an evidentiary hearing would effectively curtail her ability to fairly litigate these issues.

Accordingly, Cisneros' objections to this section of the Magistrate's Report should be sustained and the merits of Claim For Relief No. 9, Act/Omission No. 1 through No. 6, should be addressed de novo by this Court, after an evidentiary hearing. Based on the merits, as fully explained in Cisneros' Motion To Vacate at 94 to 144, and subject to an evidentiary hearing, relief should be granted.

**(REST OF PAGE INTENTIONALLY LEFT BLANK)**

36

Section II Of Magistrate's Report: Analysis
D. Ineffective Assistance of Trial and Appellate Counsel
2. Appeal Counsel's Performance.
a. Failure to Challenge the Required Relationship Instruction
(Report at pages 32 to 33)

(Please Note That This Portion Of The Magistrate's Report
And These Objections Relate To Claim For Relief No. 10, And
Also Impact Claim For Relief Nos. 6 and 9)[28]

Cisneros agrees that error was preserved at trial as to her objection to the Court's decision

not to instruct the jury on the "in furtherance" requirement, and that the Court of Appeals reached

that issue in its vacated panel opinions. Report at 33. It is relatively easy to see that this Court's

assertion of a running objection to all disagreements about the charge (and the Court's submission

of anything that was **inconsistent** with Cisneros' requested jury instructions was also sufficiently

preserved) that has been addressed above (see pages 12 to 20 and 21 to 25 of these Objections)

covers the Court's rejection of specific instructions (e.g., on "causation" and "furtherance", as

embodied in Cisneros' Requested Jury Instructions Nos. 12, 14 and 15A[29]).

As reflected in Cisneros' Motion To Vacate at pages 54 to 72 (relating to Claim For

Relief No. 6, adopted into Claim No. 10 by express reference at page 147) and pages 128 to 136

---

[28] It should be noted that the Government's Answer To Section 2255 Motion And Motion
To Dismiss regarding Claim For Relief No. 10 (which claim is comprised of three separate
acts/omissions), consists of a general discussion of the law, *id.* at pages 42 to 45, followed by one
additional paragraph at page 45, to wit:

> In her first two complaints, Cisneros complains that her appellate attorney failed
> to adequately advance the jurisdictional nexus issue on direct appeal and his failure
> abrogated her right to the effective assistance of counsel. In her third complaint,
> Cisneros complains that counsel should have advanced an argument touching upon
> misconduct occurring before the grand jury. Viewing the totality of counsel's
> efforts on appeal, the alleged failure to raise these complaints cannot be deemed
> deficient. Relief on this ground should be overruled.

[29] These three instructions are set forth at pages 15 to 19 (and footnotes 20 to 25) of
Cisneros' Motion To Vacate.

(relating to Claim For Relief No. 9, adopted into Claim For Relief No. 10 by express reference at page 147), none of which was addressed by the Magistrate, it is abundantly clear that Cisneros put this Court on notice that she desired a nexus instruction. Her Requested Jury Instruction Nos. 12 and 14 both contained a nexus requirement and as reflected by footnote 49 of her Motion To Vacate at page 57), the issue was raised on appeal (but not addressed, for reasons not announced in the now vacated panel opinions).[30]

The Magistrate asserts that Cisneros "failed to object at trial and preserve [the nexus] issue for appeal, [and] therefore appellate counsel was barred from raising it." Report at 33. That is an inaccurate characterization of the situation.[31]

Assuming, however, that it the absence of a nexus instruction was not adequately raised at trial and on appeal, it bears repeating that the Magistrate Judge must resolve a factual allegation that it was not consciously defaulted at trial and on appeal in order to ascertain whether trial counsel or appellate counsel was acting within the wide range of reasonable attorney performance by failing to object or, in the alternative, failing to raise the point of appellate error. One way or the other, attorney error is present and given the factual allegations that trial counsel and appellate counsel did not make an informed, strategic choice to not object and to not raise it on appeal, the Magistrate had to disbelieve those factual assertions in order to reach his conclusion. This is entirely inappropriate in the absence of any proof to the contrary.

Additionally, prejudice is fully demonstrated at pages 147 to 157 of Cisneros' Motion To Vacate, as supplemented by pages 54 to 72 (relating to Claim For Relief No. 6, adopted into

---

[30] Either vacated panel opinion could have simply stated that the issue was not preserved, but that type of language is not reflected by either opinion.

[31] Assuming that error was not preserved at trial, appellate counsel could have urged the issue under a plain error standard.

Claim No. 10 by express reference at page 147) and pages 128 to 136 (relating to Claim For Relief No. 9, adopted into Claim For Relief No. 10 by express reference at page 147).

Accordingly, Cisneros' objections to this section of the Magistrate's Report should be sustained and the merits of Claim For Relief No. 10, First Act/Omission should be addressed de novo by this Court, after an evidentiary hearing. Based on the merits, as fully explained in Cisneros' Motion To Vacate at 145 to 158, and subject to an evidentiary hearing, relief should be granted.

**(REST OF PAGE INTENTIONALLY LEFT BLANK)**

Section II Of Magistrate's Report: Analysis
D. Ineffective Assistance of Trial and Appellate Counsel
2. Appeal Counsel's Performance.
b. Failure to Challenge the Omission of the Causation Instruction
(Report at pages 33 to 34)

(Please Note That This Portion Of The Magistrate's Report
And These Objections Relate To Claim For Relief No. 10, And
Also Impact Claim For Relief Nos. 6 and 9)

As was the situation in the immediately preceding section of these Objections, the Magistrate has again erred. The submission of Cisneros' Requested Jury Instructions Nos. 12, 14 and 15A, coupled with this Court's assurances that everything inconsistent with her requested instructions was preserved, reflects adequate notice to this Court that a charge on causation was being requested and that Cisneros was objecting to the failure to submit such an instruction. See pages 44 to 54 of Motion To Vacate (portion of Claim For Relief No. 6, adopted into Claim For Relief No. 9 at page 137, and also adopted into Claim For Relief No. 10 at page 158).

However, assuming there was no adequate objection at trial, the issue could have been raised on direct appeal as plain error, and it was otherwise raised in Cisneros' appellate briefs. The fact that the Fifth Circuit did not address it, in the absence of a notation that it was not preserved, is contrary to the Magistrate's conclusions that Cisneros "...had not preserved this error for appellate review," that Cisneros's appellate counsel "...could not have raised this issue even if he wanted to," and that "it was not addressed by the appeals court because it had not been preserved." Report at 33.

In any event, one way or the other, attorney error is present and given the factual allegations that trial counsel and appellate counsel did not make an informed, strategic choice to not object and to not raise it on appeal, the Magistrate had to disbelieve those factual assertions in order to reach his conclusion. This is entirely inappropriate in the absence of any proof to the

contrary.

Moreover, the Magistrate's conclusion that there is no prejudice, Report at 34, fails to address the distinguishing features between Cisneros's case and *Henderson v. Kibbe*, 431 U.S. 145 (1977) cited by the Magistrate, as fully explained by Cisneros at pages 65 to 68 (and beyond) of her Motion To Vacate.[32]  Additionally, prejudice is fully demonstrated at pages 158 to 165 of Cisneros' Motion To Vacate.

Accordingly, Cisneros' objections to this section of the Magistrate's Report should be sustained and the merits of Claim For Relief No. 10, Second Act/Omission should be addressed de novo by this Court, after an evidentiary hearing. Based on the merits, as fully explained in Cisneros' Motion To Vacate at 158 to 165, and subject to an evidentiary hearing, relief should be granted.

**(REST OF PAGE INTENTIONALLY LEFT BLANK)**

---

[32] The Magistrate makes no effort to discuss Cisneros' arguments that *Henderson v. Kibbe*, *supra* (cited by Cisneros), is clearly distinguishable. Similarly, the Magistrate also makes no effort to discuss Cisneros' additional arguments that follow her discussion of *Henderson* (i.e., the arguments contained at pages 68 to 72 of Cisneros Motion To Vacate).

Section II Of Magistrate's Report: Analysis
D. Ineffective Assistance of Trial and Appellate Counsel
2. Appeal Counsel's Performance.
c. Failure to Raise Prosecutorial Misconduct
(1) Violations of Rule 6
(Report at pages 34 to 42)

(Please Note That This Portion Of The Magistrate's Report
And These Objections Relate To Claim For Relief No. 10)

At the outset, the Magistrate assumes that there was deficient performance by not raising

the issue on appeal, but concludes that there was no prejudice. Report at 34. What follows

thereafter (Report at 34 to 42) is the Magistrate's assessment of why there is no prejudice -- that

there is not a reasonable probability that had it been raised, Cisneros would have prevailed on

appeal.

Cisneros objects to the conclusion of no prejudice for all of the reasons set forth at pages

168 to 172 of her Motion To Vacate. In particular, the Magistrate has concluded that Mr.

Mosbacker was not conducting his own investigation, in part based on the disclosure order that

has never been revealed to Cisneros (in terms of content or date),[33] despite the fact that at the

time Mr. Mosbacker caused the Brownsville grand jury subpoenas to be issued, he could not have

known that a Houston grand jury would ultimately be presented the evidence (unless he had

already filed the motion to disclose and the transfer order had already been granted). Since Mr.

Mosbacker admitted that there was no Brownsville grand jury investigating the case, it was an

unauthorized personal investigation because, as noted in Mr. Justice Powell's concurring opinion

in *Calandra* (cited at page 168 of Cisneros' Motion To Vacate), it is the grand jury that has the

---

[33] *See* Cisneros' Motion To Vacate at page 170-171.

42

power to issue subpoenas for documents or testimony.[34]

Additionally, it is worthwhile noting that this would have been an issue of first impression for the Fifth Circuit. It is dubious to presuppose that the Fifth Circuit might not have been greatly concerned about the apparent forum shopping and abuse of the grand jury system. Simply stated, there was a reasonable probability that had this issue been raised, it may have resulted in a favorable opinion.

Accordingly, Cisneros' objections to this section of the Magistrate's Report should be sustained and the merits of Claim For Relief No. 10, Third Act/Omission should be addressed de novo by this Court. Based on the merits, as fully explained in Cisneros' Motion To Vacate at 166 to 188, relief should be granted.

**(REST OF PAGE INTENTIONALLY LEFT BLANK)**

---

[34] The Magistrate also fails to address the fact that Agent Church testified that he (Agent Church) caused the issuance of these grand jury subpoenas, not Mr. Mosbacker, which directly conflicts with Mr. Mosbacker's testimony. *See* Motion To Vacate at page 176.

43

**Section II Of Magistrate's Report: Analysis**
**D. Ineffective Assistance of Trial and Appellate Counsel**
**2. Appeal Counsel's Performance.**
**c. Failure to Raise Prosecutorial Misconduct**
**(2) FBI Agent Church's Grand Jury Testimony**
**(Report at pages 42 to 47)**

**(Please Note That This Portion Of The Magistrate's Report**
**And These Objections Relate To Claim For Relief No. 10)**

Again, the Magistrate assumes that there was deficient performance by not raising the issue on appeal, but concludes that there was no prejudice. Report at 34. What follows thereafter (Report at 42 to 47) is the Magistrate's assessment of why there is no prejudice -- that there is not a reasonable probability that had it been raised, Cisneros would have prevailed on appeal.

In conducting his analysis, the Magistrate oversimplifies the significance of the conflicts between the truth, as Agent Church and Mr. Mosbacker are presumed to have known it (from the documents in the Government's care, custody and control which are fully delineated at pages 173 to 187 of Cisneros' Motion To Vacate[35]) and the substance of Agent Church's grand jury testimony. In a nutshell, a simple comparison between Cisneros' allegations and the Magistrate's conclusions regarding each of the five particular items reflects not just a simplistic summary, but

---

[35] The Magistrate's conclusion that "[i]n the event that Cisneros had shown false and material testimony was presented, Cisneros has not shown that the government had knowledge of it," Report at 47, seriously misconstrues the law, as it is clear that Mr. Mosbacker is presumed to know everything that his agents know (as well as knowing what is reflected in the materials he possesses). *See e.g., Kyles v. Whitley*, 514 U.S. 419, 437-438 (1995).

Again, it bears noting that the Government has not even denied that Agent Church materially misled the grand jury by his testimony (in any of the five respects). Whether the failure to deny misconduct, misleading and perjury should be deemed an admission against interest by this Court may be questionable, but given that failure, an evidentiary hearing is entirely justified (although discovery is also entirely appropriate).

44

a noticeable refusal to address all of Cisneros' arguments.[36] Rather, without citation to authority, the Magistrate concludes that "[t]he inconsistencies and conflicts appear to go to the adequacy and competency of the evidence and would not have substantially influenced the grand jury's decision to indict Cisneros." Report at 47. However, how could a grand jury indict without any evidence of the jurisdictional element (of foreign travel or foreign telephone calls). Agent Church's testimony falsely implied that Garza called Martinez collect. The Magistrate concludes that:

> The record shows that Garza was interviewed by FBI Agents Church and Vela on February 18, 1998. The memorandum of interview reflected that Garza made collect calls to Martinez from public telephones. Later, at trial, Garza testified that he may have called Martinez collect on one occasion, but the FBI was mistaken if they wrote down that all of Garza's calls to Martinez were collect. This conflict may have been due to misunderstanding of term "collect" calls, as trial testimony revealed that Garza made calls from "casetas" in Mexico, which the FBI agents may have misconstrued as collect calls. It stands however, that at the time of Agent Church's grand jury testimony, the February 18 interview, left him with the impression that Garza had made collect calls. The fact that this testimony turned out to be in conflict with the subpoenaed phone records does not equate to perjury.

Report at 45.

However, the Magistrate fails to realize and address that as of the date of Agent Church's

---

[36] As to four of the five instances of Church's misleading testimony/perjury (labeled "Statement No. 1", "Statement No. 2", etc. by the Magistrate), the Magistrate fails to address the following:

> Statement No. 1: Report at 44: The Magistrate fails to address the three statements identified at page 174 of Cisneros' Motion To Vacate;

> Statement No. 2: Report at 44 to 45: The Magistrate fails to address the arguments at page 175-176 of Cisneros' Motion To Vacate;

> Statement No. 3: Report at 45: The Magistrate fails to address the arguments identified at page 176 to 180 of Cisneros' Motion To Vacate; and

> Statement No. 4: Report at 45 to 46: The Magistrate fails to address the arguments identified at page 180 to 183 of Cisneros' Motion To Vacate.

testimony to the grand jury (i.e., February 23, 1998), he had already received the subpoenaed telephone records that reflected that **NO COLLECT CALLS had been made to Martinez**. *See e.g.*, page 177, footnote 123 of Cisneros' Motion To Vacate. It also ignores the fact that Agent Church was quite clear at trial that the report of February 18, 1998, was accurate because Garza had told Vela and him that he (Garza) always had called Martinez collect. The Government, moreover, has not even suggested the scenario of speculation in which the Magistrate has engaged. Rather than engaging in such speculation, the Magistrate should have recommended an evidentiary hearing so that any doubts could be resolved fairly and accurately.

It bears repeating that Agent Church (and Mr. Mosbacker) had the affirmative obligation not to adduce misleading testimony to the grand jury in an effort to obtain an indictment that was predicated upon foreign telephone calls when they possessed documentary evidence that reflected that Garza had lied to the Government because no collect calls had been made from Mexico to Martinez. Had Agent Church and Mr. Mosbacker shot straight with the grand jury, foreign telephone calls would not have formed a portion of the indictment as the grand jury could not have found that any such calls had been made. Given the totally uncertain nature of the "car crossing" (addressed elsewhere in these Objections), had this issue been raised on appeal, a dismissal of the indictment on appeal probably would have been entered and the evidentiary basis for affirmation of the conviction discussed by the two vacated panel opinions (i.e., foreign telephone calls) could not have resulted. Accordingly, prejudice is demonstrated by virtue of the failure to raise the denial of the motion to dismiss on direct appeal.

Accordingly, Cisneros' objections to this section of the Magistrate's Report should be sustained and the merits of Claim For Relief No. 10, Third Act/Omission should be addressed de novo by this Court, after an evidentiary hearing. Based on the merits, as fully explained in

46

Cisneros' Motion To Vacate at 166 to 188, and subject to an evidentiary hearing, relief should be granted.

**(REST OF PAGE INTENTIONALLY LEFT BLANK)**

### Section IV (*SIC*) Of Magistrate's Report: Recommendation

### (Report at pages 47 to 48)

For the reasons set forth above, coupled with Cisneros' prior objections to the Magistrate's Report recommending a denial of her motion for discovery (all of which are incorporated herein by reference), Cisneros respectfully objects to the Magistrate's recommendation.

This Court should allow discovery as previously requested, or at least direct the Government to tender any and all notes of interviews of Daniel Garza between February 18, 1998 and May 11, 1998, to the Court for *in camera* inspection and insertion into the record (if not otherwise provided to counsel for Cisneros after in camera inspection) for purposes of the record. Additional discovery should be considered based on the existence and content, if any, of those notes. An evidentiary hearing should be held so that the factual matters upon which the Magistrate has speculated can be developed and the truth presented, including the claims of ineffective assistance of counsel and procedural default. Cisneros has alleged facts, which if true, entitle her to relief. Discovery and an evidentiary hearing are entirely appropriate and necessary and this Honorable Court should grant the same before ruling on her Claims For Relief, de novo, on the merits. In the alternative, Cisneros seeks de novo review by this Court for all of the reasons stated hereinabove and/or adopted herein by reference.

Respectfully submitted,

DAVID L. BOTSFORD
State Bar No. 02687950
Law Office of David L. Botsford
1307 West Ave.
Austin, Texas 78701
512-479-8030 (phone)
512-479-8040 (fax)

48

A. J. "TONY" CANALES
State Bar No. 03737000
P.O. Box 5624
Corpus Christi, Texas 78465-5624
361-883-0601 (phone)
361-884-7023 (fax)

## CERTIFICATE OF SERVICE

I, David L. Botsford, do hereby certify that true and correct copies of the above and foregoing document have been served by placing the same in the United States mail, postage prepaid, on this the 28th day of November 2005, addressed to Mr. James L. Turner, Assistant United States Attorney, P.O. Box 61129, Houston, Texas, 77208-1129.

DAVID L. BOTSFORD

49