**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CIVIL NO. B-02-191 |
| | § | |
| DORA CISNEROS | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Report and Recommendation of the United States Magistrate Judge in which he recommended that Petitioner's Motion to Vacate, Set Aside, and Correct Judgment and Sentence [Docket No. 1] be denied. That report also recommended that the Government's Motion to Dismiss [Docket No. 5] be granted. Petitioner has filed lengthy and detailed objections to the Magistrate's rulings. [Docket No. 21] Aside from the more straight-forward legal issues, this case and Petitioner's objections to the Report and Recommendation present this Court with a somewhat unique opportunity. In addition to other bases for Petitioner's motion to vacate pursuant to 28 U.S.C. § 2255, he is, sometimes directly and sometimes more implicitly, requesting this District Court to hold that the Fifth Circuit Court of Appeals and subsequently the United States Supreme Court violated her constitutional rights and/or committed error. Rarely is a district court put in such a position and it is necessary to explain the procedural history of this matter to understand portions of the Petitioner's argument and how she has called upon this Court to rule on the actions of the Supreme and Circuit Courts.

## I.
### Background Facts and Procedural History

This case arises out of the 1993 murder of Joey Fischer, a high school student at St. Joseph Academy in Brownsville, Texas. During the spring of 1992 Fischer began dating Cristina Cisneros,

a fellow high school student, but ended the relationship shortly thereafter. Dora Cisneros, Cristina's mother, became upset about the break-up and, after attempting to reunite the teens, went to Maria Martinez, a local fortune teller (curandera), to arrange for Fischer's murder. Martinez asked one of her other clients, Daniel Garza, to hire someone to kill Fischer.

Garza discussed hiring a killer in several telephone conversations with Martinez. According to Garza's testimony at trial he made some of those calls from Mexico. Garza eventually hired Israel Olivarez and Heriberto "Eddie" Pizana, who worked for the Cuellar crime family. On the evening of March 2, 1993, a car with Mexican license plate number "821 THE7" crossed from Mexico into Brownsville, Texas. Later that night Pizana and Ramon Palomares, another hit man for the Cuellar family, checked into the La Quinta Inn in Brownsville and the receptionist registered their car as a white Grand Marquis with a Mexican license plate number of "821 TWEX" or "821 THE7" (the receptionist's handwriting was apparently difficult to decipher). Fischer was shot and killed as he left his house for school the next morning. Interestingly, a witness testified to passing a white four-door car with a Mexican license plate near Fischer's home at the time of the murder. Shortly thereafter, Garza and Pizana collected the money for the hit from Martinez. Garza attempted to leave the money with Pizana, but he insisted Garza return with him to the La Quinta Inn and give the money directly to Olivarez. After giving the money to Olivarez, Garza noticed that Olivarez and Pizana had two cars—a white pickup truck with a black stripe and a white Ford.

Cisneros was originally tried in state court, convicted of capital murder, and sentenced to life in prison. The Thirteenth Court of Appeals sitting in Corpus Christi overturned the conviction, holding that the evidence was insufficient to support a conviction. *Cisneros v. State*, 915 S.W.2d 217 (Tex. App.—Corpus Christi 1996) *pet. ref'd* 935 S.W.2d 789 (Tex. Cr. App. 1996) (*en banc*).

The Court of Criminal Appeals affirmed, explaining that despite the fact that Cisneros "wanted her daughter's former boyfriend dead[,] engaged a fortune teller [] to find someone to kill him [and even] . . . supplied money, information, and directions [to the fortune teller]," there was not sufficient evidence to prove the individuals hired by the fortune teller were actually the ones who committed the crime.  *State v. Cisneros*, 935 S.W.2d 789 (Tex. Crim. App. 1996).

Defendant was then tried and convicted under the federal murder-for-hire statute, 18 U.S.C. § 1958, in the United States District Court for the Southern District of Texas.  Cisneros appealed, arguing that: (1) there was not "sufficient evidence to show that Cisneros met the interstate/foreign commerce requirement for a federal murder-for-hire conviction," (2) a new trial was necessary because the government elicited testimony about the state court murder convictions, (3) the district court erred in rejecting five of Cisneros' proposed jury instructions, (4) "the district court erred in admitting the evidence of Fischer's murder under Fed.R.Evid. 403," (5) "the conviction should be reversed because the district court failed to maintain an appearance of impartiality in its questioning of witnesses and comments made during the trial," and (6) the district court abused its discretion by "admitting Moreno's testimony under the co-conspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E)."  *United States v. Cisneros*, 194 F.3d 626 (5th Cir. 1999).  The Fifth Circuit affirmed the judgment of the district court, rejecting each of Cisneros arguments.  *Id.*  The court held that there was sufficient evidence for a jury to find that Garza made phone calls from Mexico and that this was enough to meet the interstate/foreign commerce requirement.  *Id.* at 635-36.  The court rejected arguments that Cisneros did not cause the telephone to be used "in furtherance" of the murder, explaining that mere "but for" causation was all that was required.  *Id.* at 636.  The court also pointed out that "[b]ecause these telephone calls satisfy the interstate nexus requirement, we

need not address the more complicated issue, the car travel between Mexico and Texas. *Id.* at 637.

Turning to Cisneros' arguments that the government elicited testimony regarding the state court

proceedings, the Fifth Circuit held that "[t]he admission of this testimony was not an abuse of

discretion, since there was no chance of any 'significant impact' on the jury verdict." *Id.* Evaluating

each of the jury instructions individually, the Fifth Circuit rejected each objection lodged by

Cisneros.[1]   Addressing Cisneros' argument that the district court erred in admitting evidence of

Fischer's murder, the court stated that Cisneros' "offer to stipulate to the shooting of Fischer did not

reduce the probative value of evidence of how Fischer's parents found their son, the pathologist's

testimony about Fischer's autopsy, or the photographs of Fischer's corpse." *Id.* at 639.  "The

probative value of the challenged evidence, therefore, was not substantially outweighed by the

danger of unfair prejudice." *Id.*  In response to Cisneros' arguments that "the district court failed

to maintain an appearance of impartiality," the Fifth Circuit explained that "[a] trial court has the

discretion to clarify testimony, even if that elicits facts harmful to the defendant." *Id.* at 640.  The

court further explained that any potential impartiality the jury might have suspected was cured by

the court's instruction that the it had no opinion on the case and the jury should disregard any

statements that would indicate otherwise. *Id.* at 641.  Finally, the court held that admitting Moreno's

testimony under the co-conspirator exception to the hearsay rule was not error because "[t]he

---

[1]       The first jury instruction sought by Cisneros, "that the interstate/foreign commerce connection had to have been 'in furtherance' of the murder for hire," was rejected as it articulated an improper standard under Fifth Circuit precedent. *Id.* at 638.  Cisneros' second requested jury instruction, which amounted to an instruction on the burden of proof, was rejected because "the district court repeatedly emphasized that the government carried the burden." *Id.*  The third proposed instruction, which "sought to limit the jury's consideration of tape-recorded conversations," was not included because Cisneros failed to make a proper objection at trial. *Id.*  The fourth instruction, which concerned the issue of causation, was rejected because it was inconsistent with Fifth Circuit precedent. *Id.* at 639.  Finally, the fifth desired instruction, which involved the statute of limitations, was properly rejected because "[i]ts omission did not impair Cisneros' ability to present a defense because there was no defense under the statute of limitations. *Id.*

government met its burden of proving the co-conspirator exception to the hearsay rule by a preponderance of the evidence" by showing Moreno was a member of the Cuellar organization in which Palomares and Olivarez worked as hit men. *Id.*

On petition for rehearing, the Fifth Circuit panel applied different reasoning to certain arguments advanced by Cisneros, but reached the same conclusion, affirming the district court. *United States v. Cisneros*, 203 F.3d 333 (2000). In addressing Cisneros' argument that "the evidence did not establish that she caused the telephone to be used 'in furtherance' of the murder-for-hire," the court abandoned its previous holding that "but for" causation was all that was required, holding that Martinez' constant reminders during the telephone calls "facilitated" in bringing the murder to fruition. *Id.* at 344-45. The court also expanded on its previous holding that the district court did not err in failing to instruct the jury "that the use of the facility in foreign commerce had to have been 'in furtherance' of the murder-for-hire," explaining that the standard in the Fifth Circuit is "facilitated" or "made easier." *Id.* at 346. Thus, even though Garza's phone calls to Martinez arguably may not have been "in furtherance" of the murder-for-hire, the calls "facilitated" the murder because they allowed Martinez to advance the plot to kill Fischer. *Id.* Finally, the panel elaborated on its holding that the standard for causation argued by Cisneros was inconsistent with Fifth Circuit precedent. It ultimately decided Cisneros' proposed instruction was incorrect, finding no error on the part of the district court. *Id.* at 347. Thus, although the court's decision to grant a rehearing had the effect of vacating the opinion found at 194 F.3d 626, the only pertinent substantive changes were those discussed above.

On February 24, 2000, the Fifth Circuit, *sua sponte*, granted a rehearing *en banc*. *United States v. Cisneros*, 206 F.3d 448 (5th Cir. 2000). Although Cisneros had filed a motion for rehearing

*en banc* on virtually every point it had presented to the panel on two occasions, the court explained that the *en banc* hearing was granted to reconcile the dicta that "to satisfy the jurisdictional element, a facility must be used in an *inter* state fashion," found in *United States v. Cisneros*, 203 F.3d 333 (5th Cir. 2000), *vacating* 194 F.3d 626 (5th Cir. 2000), with the holding that *intra* state use is sufficient, found in *United States v. Marek*, 198 F.3d 532 (5th Cir. 1999). *United States v. Marek*, 238 F.3d 310, 313 (5th Cir. 2001). As pointed out in Cisneros' Petition, the *en banc* court chose only to address the conflict between *Marek* and *Cisneros* regarding the use of interstate commerce under the murder-for-hire statute.

Because the Fifth Circuit's decision to rehear the case *en banc* "had the collateral effect of vacating both panel decisions,"[2] Cisneros now argues in this § 2255 proceeding that she was denied her right to an appeal by the court's failure to reinstate either of the panel decisions. [Docket No. 1] The *en banc* decision was not the end of the procedural story as Cisneros moved for an additional rehearing of the *en banc* opinion on the remainder of her points of error and eventually sought relief from the United States Supreme Court, where her Petition for Writ of Certiorari was denied. *United States v. Garcia Cisneros*, 534 U.S. 813 (2001). In her Petition before the Supreme Court, Cisneros asked that it "grant review, vacate the Fifth Circuit *en banc* opinion as it relates to Petitioner, and remand the case with instructions that, since the *Marek en banc* decision did not address any of the material issues in Petitioner's case, the Fifth Circuit should reinstate the second Cisneros panel opinion, except as it addresses the issue taken up in the *en banc* opinion." *Pet. for Writ of Cert.*, No. 00-1526, 2001 WL 34125493 (Apr. 4, 2001). Her Petition for Writ of Certiorari was denied. *Garcia Cisneros v. United States*, 534 U.S. 813 (2001).

---

[2]     *Marek*, 238 F.3d at 313.

The record before this Court reveals three significant facts: (1) the Fifth Circuit's first and second panel decisions addressed each issue raised by Cisneros and denied each one in turn; (2) the Fifth Circuit's second panel decision at 203 F.3d 333 vacated the first and was itself vacated by the court's *en banc* opinion in *United States v. Marek*, 238 F.3d 310 (2001); and (3) both the Fifth Circuit sitting *en banc* and the United States Supreme Court were made aware of this situation, but denied Cisneros relief. Having been denied review by both of those courts, Cisneros now attempts to reargue before this Court most of the same issues she has already unsuccessfully argued to the Fifth Circuit.

## II.
## Petitioner's Objections

Petitioner's objections to the Report and Recommendation can be divided into four somewhat overlapping categories. The first category is one of a factual nature, but it is used by Petitioner throughout her legal objections. It concerns the Fifth Circuit statement in its *en banc* opinion that it was undisputed that "the hit men traveled from Mexico to Brownsville, Texas where they shot and killed Cisneros's intended victim." 238 F.3d at 314. The second group of objections are more legal in nature and are centered around the Magistrate's use of the "law of the case" doctrine in overruling certain objections. The third category of complaints deals with her claim that no appellate court ruled on the objections raised in her initial appeal. The fourth category of objections is focused upon the trial court's instructions to the jury—especially those relating to the causation and required relationship instructions.

    A.    <u>Factually-Based Allegations</u>

        1.    International Travel of the Hit Men

As stated above, the Fifth Circuit maintained in its *en banc* opinion:

> The relevant facts in Cisneros also are undisputed at this juncture. . . . The hit men traveled from Mexico to Brownsville, Texas where they shot and killed Cisneros's intended victim.[3]  A jury convicted Cisneros, and she appealed.  A panel of this Court concluded that a reasonable jury could have found that: (1) the fortune teller had participated in international calls as Cisneros's agent; and (2) that those calls were sufficiently connected to the murder to be "in furtherance" of that crime.  That panel, therefore, affirmed the conviction.

*Id.* at 314.

Petitioner goes to great lengths to attack the "undisputed" statement that the hit men traveled from Mexico to Brownsville, Texas.  She disputes both the factual accuracy of the statement and the fact that it is undisputed.  She details the testimony that seems to support the conclusion that the hit men, rather than merely crossing the Matamoros/Brownsville border, actually came down to Brownsville from Dallas where they had been engaged in various enterprises for the Cuellar crime organization.  Most of this evidence was adduced at trial by the Government and was argued by the Government in its presentation to the jury.  Petitioner concludes that the Fifth Circuit was "dead wrong."

The importance of this alleged factual error, if it be so, to the Petitioner's point-of-view, is that if this factual nexus does not exist, then 18 U.S.C. § 1958 cannot be properly applied to her.  This presents this Court with at least two interesting questions: First, can a district court overrule "factual findings" made by a Circuit Court of Appeals?  Second, in this case, does it matter if the Court of Appeals was in fact "dead wrong"?  Obviously, the Fifth Circuit can and has been reversing factual findings of district courts when they are "'left with a definite and firm conviction that a mistake has been made.'"  *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 622 (5th Cir.

---

[3]    Referring the reader to the factual recitation found in the second panel decision at 203 F.3d 337-39.

2005) (quoting *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003)).  Petitioner cites no authority which would support a district court's overruling either a factual statement made by a Fifth Circuit panel or made by the Court sitting *en banc*.  While some courts might even relish the chance presented by this novel situation, this Court sees no need to avail itself of this unique opportunity.

The Circuit, in its *en banc* consideration of Petitioner's appeal, was primarily concerned with a budding conflict between two of its panels concerning the second prong of 18 U.S.C. 1958, which proscribes paying another to commit murder only if the defendant "uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce."  The panel in Petitioner's case had suggested that a facility must be used in an interstate fashion (and, therefore, presumably intrastate use of a facility would not suffice even if that facility is generally an interstate commerce facility).  The panel in *United States v. Marek*, 198 F.3d 532 (5th Cir. 1999), while divided, held that wholly intrastate use of an interstate facility was sufficient to support § 1958 jurisdiction.  The Circuit in the consolidated *en banc* appeal chose to follow the rule suggested by the *Marek* majority to the effect that the use of an interstate commerce facility "satisfies the jurisdiction requirement of prong two of § 1958, regardless of whether its use was *inter* state or wholly *intra* state.

The Circuit noted that the *Marek* panel had even considered the panel's discussion in *Cisneros*, but the *Marek* panel reasoned that due to the international telephone calls—"an activity that indisputably satisfied the jurisdictional element"—the discussion in *Cisneros* was dicta.  The *en banc* opinion also described the statements by the *Cisneros* panel as dicta and, in doing so, impliedly adopted *Marek's* reasoning.  *Id*. at 313.

9

It is that same reasoning that relieves this Court of its need to consider the factual accuracy of the above-referenced Fifth Circuit description of the path followed by the hit men or whether that path was a disputed issue. That statement is merely dicta in the *en banc* opinion. In the very paragraph containing the complained of statement the court explained that the panel decision was based upon their conclusion that the international phone calls were a sufficient nexus. *Id*. at 314. The *en banc* court then concludes:

> In *Cisneros*, on the other hand, even if we assume *arguendo*, that the statute [18 U.S.C. 1958] should be accorded the narrowest interpretation possible, we must affirm Cisneros' conviction on the strength of the international (foreign) telephone calls.

*Id*.

    2.    The Telephone Calls [4]

Clearly, the *en banc* panel relied on the phone calls for the jurisdictional basis, rather than the hit men. Perhaps in recognition of that, Petitioner also questions the phone calls. Petitioner attacks the phone calls on both a factual and a legal basis. The factual basis will be discussed here, while the legal basis (which primarily focuses on the instructions given to the jury and as a basis for an ineffective assistance claim) will be discussed below.

Factually, the controversy centers around witness Daniel Garza and the phone calls he made to Maria Martinez, Cisneros' curandera. These calls are, of course, the basis of the jurisdictional nexus as discussed above and in both panel decisions. Petitioner claims that the prosecution mislead the grand jury as to whether the phone calls were collect. Garza testified at trial that he did not

---

[4]    While this Court does not view either of the prior Fifth Circuit panel opinions as triggering the application of the "law of the case" doctrine, (*see* Section II.C), it is instructive that the vacated panel opinions found at 203 F.3d 333, 344 (5th Cir. 2000) and 194 F.3d 626, 636 (5th Cir. 1999) also reviewed the factual sufficiency of these phone calls and the issue of the so-called collect calls and found no error.

remember exactly, but could not have made more than one collect call. The witness was questioned about these inconsistencies at trial, so the jury could judge his memory and credibility. The Magistrate Judge's conclusions concerning this topic and his analysis of the applicable legal factors are accurate and are hereby adopted.

B.    Ineffective Assistance

Next, Cisneros claims that these phone conversations, and their admission at trial, is the basis for an ineffective assistance of counsel claim. Her theory is that her counsel should have: (1) objected to the transcripts; (2) cross-examined more intensively in hopes of proving the calls originated in Texas rather than Mexico; (3) emphasized Garza's inconsistencies; (4) requested an instruction demanding the jury find the phone calls be sufficiently related to the murder and/or; (5) insisted on a causation instruction. Again, the Magistrate Judge's analysis of these allegations is correct and is hereby adopted.

Cisneros follows this argument with one complaining about her appellate counsel and their alleged failure to: (1) challenge the propriety of the foreign commerce instruction; (2) raise causation as an issue; and (3) raise the alleged "misconduct" before the jury. This court adopts the opinion of the Magistrate Judge on these items. This Court understands why counsel for Cisneros puts emphasis on Agent Church's recollection that the Mexico telephone calls were collect and compares that to Mr. Garza's testimony that they were probably not collect (or at most one was collect). Cisneros, however, leaps to three conclusions which do not necessarily follow: (1) that Agent Church lied to the grand jury; (2) that the absence of collect calls necessarily destroys the international nexus which is the basis for jurisdiction; and (3) that these two events, combined with the failure of counsel to either successfully exploit them, either at trial or on appeal, equates to

ineffective assistance of counsel.

Initially, this Court notes that direct (non-collect) calls such as those recounted by Mr. Garza at trial would be sufficient under the murder for hire statute as per controlling Fifth Circuit authority. Secondly, an agent's recollection of, or notes concerning, an event can differ from a witness without either the agent or the witness committing perjury. The important factor is that both witnesses' testimony detailed international phone calls in which the murder plot was embraced. This is not only the conclusion reached by this Court, but also the one reached by the Fifth Circuit in both vacated opinions. *Cisneros*, 203 F.3d at 343; *Cisneros*, 194 F.3d at 636. Further, it is not true that any of the items complained of would support a claim of ineffective assistance of counsel. The Magistrate Judge's opinion details the evidentiary showing what one must make to succeed on a collateral attack based upon ineffective assistance of counsel.[5] Tactical strategy and determinations, even those which later prove to be in error, do not suffice. Rather, counsel's performance is considered effective so long as it is based upon adequate investigation. Further, there must be a reasonable probability (not a mere possibility) that the result would have been different, but for the alleged errors. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). This Court adopts the Magistrate Judge's conclusions with regard to the claims of ineffective assistance of trial counsel.

Petitioner also attacks the performance of her appellate counsel on the basis of the failure to adequately challenge: (1) the required relationship or "furtherance" instruction; (2) the omission of the causation instruction; and (3) the failure to raise prosecutorial misconduct. Again, the

---

[5]    Cisneros' arguments that the Magistrate's report and recommendation is "unconstitutionally restrictive" and applies the erroneous standards are unavailing. The Magistrate Judge properly applied *Strickland v. Washington*, 466 U.S. 668 (1984), and correctly found that Cisneros did not make the requisite showing to prevail on an ineffective assistance of counsel claim. After evaluating the Magistrate Judge's Report and Recommendation and Cisneros' objections thereto, this Court is satisfied that Cisneros met neither the performance prong nor the prejudice prong of *Strickland* in order to prove an ineffective assistance of counsel claim.

Magistrate Judge's Report and Recommendation discusses in detail why § 2255 relief should not be granted.[6]  As such, this Court will not retrace those footsteps.  Suffice to say that such claims have been considered in detail and found to be wanting.

 C. <u>Law of the Case</u>

 While this Court has considered the Magistrate Judge's Report and Recommendation regarding Petitioner's objections to lack of a causation and required relationship instruction, it cannot totally accept his recitation of the law and applicable facts.  With regard to the Cisneros's argument that the jury should have been instructed about the required relationship between foreign commerce and the murder for hire scheme, the Magistrate Judge relied upon the vacated Fifth Circuit opinions as establishing a prevailing law of the case standard.  The Magistrate Judge accurately described the law of the case doctrine.  Reliance on this doctrine, however, is questionable when the decision establishing such "law" has been vacated.

 "The doctrine of the law of the case directs that a decision of an appellate court on an issue of law, unless vacated or set aside, governs the issue during all subsequent stages of litigation in the *nisi prius* court and thereafter on any further appeal." *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 769 (1st Cir. 1994); *see also Cohen v. Brown Univ.*, 101 F.3d 155 (1st Cir. 1996) (citing Moore's Federal Practice § 0.404 (2d ed. 1993)).  It is well established that reconsideration *en banc* vacates a panel's decision.  5TH CIR. R. 41.3 (stating that the "effect of granting a rehearing *en banc* is to vacate the panel opinion"); *see, e.g., Hooten v. Jenne*, 786 F.2d 692, 695 (5th Cir.

---

[6] The Fifth Circuit has held in that the failure to object to jury instructions in certain situations does not constitute ineffective assistance and this Court does not feel that the failure to object to the jury instructions in this case rose to the level of ineffective assistance.  *See, e.g., Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2003) (explaining that in order to prevail on an ineffective assistance of counsel claim an individual must show that the attorney's failure to object to the jury charged fell below an objective standard of reasonableness thereby causing prejudice as set forth in *Strickland*); *Harris v. Warden, Louisiana State Penitentiary*, 152 F.3d 430, 440 (5th Cir. 1998) (holding that trial counsel's deficient performance did not meet *Strickland's* prejudice requirement).

1986); *Longoria v. Wilson*, 730 F.2d 300, 304 (5th Cir. 1984). A vacated decision, while persuasive, is no longer binding precedent. *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 225 n.23 (5th Cir. 1998).

While arguments could be made to the contrary, most courts hold that a vacated opinion is deprived of its status such that it cannot be used to trigger the application of the law of the case doctrine. *See, e.g., Johnson v. Bd. of Educ. of the City of Chicago*, 457 U.S. 52, 53-54 (1982); *Brown v. Bryan City, OK*, 219 F.3d 450, 453 n.1 (5th Cir. 2000); *Creighton v. Anderson*, 922 F.2d 443, 449 (8th Cir. 1990); *Dorsey v. Cont'l Cas., Co.*, 730 F.2d 75 (11th Cir. 1984); *Banco Nacional de Cuba v. Farr*, 383 F.2d 166, 177-78 (2d Cir. 1967). That being the case, this Court finds the Magistrate Judge's use of the law of the case doctrine to be ill-advised and specifically chooses not to adopt or follow this line of reasoning. As such, this Court does not consider the vacated opinions to be controlling in this matter.

Despite the fact that the opinions upon which the Magistrate Judge relied were vacated (and thus do not command "law of the case" deference), they can still be instructive. *Ruhrgas*, 145 F.3d at 225, n.23. As detailed in the Magistrate Judge's opinion, the panel addressed in both opinions these very issues regarding the "furtherance" and causation instructions and rejected Petitioner's complaints each time because the requested instructions were not substantially correct and were not consistent with the law in the Fifth Circuit. [Docket No. 18] at 15-20; *Cisneros*, 203 F.3d at 346-47; *Cisneros*, 194 F.3d at 638-39. Both of those holdings are as accurate now as they were when they were written by the Fifth Circuit panels in 1999 and 2000. The *Marek/Cisneros en banc* opinion did not alter the reasoning or the law upon which both panel decisions were based. Further, as noted in the Magistrate Judge's opinion, Cisneros failed to object to the lack of an instruction on the nexus

14

requirement and instead objected only to the refusal of the trial court to use her proposed "furtherance" instruction. Cisneros has shown no error and certainly has not shown the requisite cause and prejudice which she must to prevail in this action. These requisites have been adequately described in the Magistrate Judge's opinion, as well as in the two vacated Fifth Circuit opinions. This Court, therefore, sees no reason to reiterate what has already been detailed and, while not bound to follow those decisions, sees no valid reason why they are not accurate and why the same reasoning should not be used here.

With respect to the issue of preservation of error and due process on the causation issue, the Magistrate Judge has analyzed this point in great detail and this court adopts the reasoning of the Report and Recommendation. Federal Rule of Civil Procedure 51 requires that a party objecting to a jury instruction or the failure to give an instruction state "distinctly the matter objected to and the grounds for the objection." FED. R. CIV. P. 51. "Where a party argues on appeal that the district court erred in refusing to give a proffered jury instruction, that party must 'show as a threshold matter that the proposed instruction correctly stated the law.'" *Russell v. Plano Bank & Trust*, 130 F.3d 715, 719 (5th Cir. 1997) (quoting *Federal Deposit Ins. Corp. v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994)). In this case the causation instruction submitted by Cisneros was properly denied as it was not a correct statement of the law. When the court refused to include Cisneros' proposed instruction, Cisneros did not offer an alternative definition or object to the fact that there was no definition in the jury instructions. When the proposed jury instruction misstates the law a district court is "under no obligation to tinker with the flawed proposed instruction until it [is] legally acceptable." *Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 845 (D.C. Cir. 1998). That is, "[a] requested instruction is properly refused if it is improper, and a trial court is not required to correct

a defective request." *Bueno v. City of Donna*, 714 F.2d 484, 490 (5th Cir. 1983). Furthermore, had the court come up with its own definition of causation and included it in the jury instructions it is unlikely it would have helped Cisneros.[7] Therefore, Cisneros' proposed definition was properly refused as it was incorrect and the court's decision not to included an alternative definition did not prejudice Cisneros.

### III.
### Denial Of Cisneros's Constitutional Rights By
### The Fifth Circuit And The United States Supreme Court

The most interesting and unusual point raised by the Petitioner is her claim that her constitutional rights were denied by the appellate courts. The genesis of her claim is that the Circuit, in its *en banc* opinion, failed to address each and every point of error in its opinion and that, ultimately, the Supreme Court erred in denying her Petition for Writ of Certiorari in which she argued the Court should order the reinstatement of the second panel opinion. Cisneros' argument is as follows:

(A)    The first Fifth Circuit opinion, which did address all of her points of error, was vacated by the second;

(B)    The second Fifth Circuit opinion, which also addressed all of her points of error, was vacated by the *en banc* opinion;

(C)    The *en banc* opinion, which vacated the second panel decision, addressed only the conflict between the second Cisneros opinion and the opinion in

---

[7]    Petitioner now claims that her counsel's failure to push for an alternative definition was ineffective assistance of counsel. This is not accurate. Indeed, one can postulate many reasons for not objecting and insisting on the inclusion of a definition of cause. One strategic reason readily comes to mind. At the time Petitioner's own offered definition had been refused. That being the case, counsel could have assumed, with near certainty, that any definition the court would give would be less favorable considering her view of the case than the one they proposed. With no definition counsel would still have the latitude to argue that no cause existed and would not be harmed by a more restrictive definition. To second-guess that decision—which may have been the height of "Monday-morning quarter-backing," a process the Supreme Court wisely counseled against in *Strickland*. *Strickland*, 466 U.S. at 689; *see also United States v. Molina-Uribe*, 429 F.3d 514, 520 (5th Cir. 2005).

*United States v. Mare*k, 198 F.3d 352 (5th Cir. 2001);

(D)     Despite the affirmance of the trial court by the Circuit sitting *en banc*, it denied Cisneros's "meaningful appellate review" and worked a "manifest injustice" and in effect denied Cisneros her right to "meaningful review" and "due process."

(E)     The Supreme Court, by denying her petition for certiorari, compounded the error by failing to correct the alleged Fifth Circuit error.

It is not clear whether Petitioner is objecting to the Magistrate's Report and Recommendation on this issue or she has chosen to accept his Report in this regard and merely concentrate her complaints on his use of the "law of case" doctrine. In an abundance of caution, this Court will address this somewhat unusual complaint.

Factually, this Court would note that Cisneros has had more appellate review, quantitatively speaking, than most litigants. She has had three judges consider all of her points of error and write one opinion. Those same three jurists granted a rehearing, reconsidered those points, and wrote a new opinion. Then the entire Fifth Circuit voted a rehearing *en banc* and heard her case, including her motion for rehearing. She then filed a petition for writ of certiorari, which was denied by the Supreme Court, in which she raised the subject matter of the panel opinions. Now, in addition to those judges, she has had a United States Magistrate Judge and a different United States District Judge consider her objections. Thus, in terms of sheer numbers, Cisneros has had almost the maximum number of judges one can possibly have review her case.

The Circuit sitting *en banc* ruled that "we therefore affirm both appellants' [*Marek* and *Cisneros*] convictions and sentences." *Marek*, 238 F.3d at 323. To affirm those convictions, the court had to have given  due consideration to any points raised. This Court is unaware of any requirement that an *en banc* panel of the Fifth Circuit write an opinion addressing each point raised

before the Panel or each point raised in a motion for rehearing. The *en banc* court also stated "we hold that both Cisneros's and *Marek's* murder for hire transactions violated 18 U.S.C. § 1958. Cisneros did so by causing her agent to make qualifying telephone calls between the United States and Mexico." *Id.*

This Court has not been provided with any authority holding that each opinion of an *en banc* appellate court must address each point of error or reinstate a vacated opinion. This Court finds that the due process rights of Cisneros have not been violated. She has had more than twenty-four appellate judges (three of whom considered her case on three separate occasions), two District Judges, and one United States Magistrate Judge consider the merits of her case. Both panel decisions considered all of her points of error, and all appellate judges considered these points when they addressed her motions for rehearing and petition for writ of certiorari. Otherwise, they could not have affirmed her conviction. There is no requirement for a court to reduce each such consideration to writing nor is there a requirement that the court reinstate a Circuit Panel opinion, which was vacated by virtue of rehearing *en banc*—especially when one considers Cisneros moved for rehearing *en banc*. In effect, she is complaining because the result of the rehearing *en banc* was not what she wanted. Cisneros was not deprived of the opportunity to have all her claims raised before the Supreme Court, merely by the failure to write on them by the Fifth Circuit sitting *en banc*. She was free to raise these issues in her petition for certiorari and, if granted, could have had each reviewed despite the Fifth Circuit's failure to address these in writing in the *en banc* opinion.

This holding is not merely an exercise in the obvious as it directly applies to at least two

portions of the Magistrate Judge's report to which she objects.[8]  Cisneros complains, as discussed above, about the Court's failure to include her proposed causation issue.  She admits that she appealed this issue and obtained relief in neither the panel decisions nor the *en banc* decision.  She writes that "the objection was preserved on this appellate point, which was raised in full in the prior briefing to the Fifth Circuit."  [Docket No. 21] at 17.  The fact that the panel decision, which addressed in writing and denied Cisneros relief on this point, was vacated does <u>not</u> mean this point has not been considered or ruled upon.  This affirmance of her conviction by the *en banc* court was a denial of this point of error notwithstanding the fact that the Circuit chose not to write on that issue.

Similarly, Cisneros's objection as to her proposed "furtherance" instructions were also briefed, heard and rejected by the Court of Appeals.  While this Court agrees it is not bound by, and will not apply, the "law of the case" doctrine, Petitioner's conclusion that she has never had a "full and fair opportunity" for review is patently false.  Her complaints have been considered by two panels, the Fifth Circuit *en banc*, and the United States Supreme Court.  Each court denied her relief.  Cisneros concludes:

> [I]t is entirely probable that Cisneros's jury convicted her without any finding that either alleged act of foreign commerce (car travel or phone car) facilitated (or was "in furtherance of") the "murder for hire scheme."

To suggest this was not considered by the Court of Appeals ignores both the vacated panel opinions <u>and</u> the *en banc* opinion.  As quoted above, the Court *en banc* wrote:

---

[8]    It could be argued, however, that the refusal to reinstate the opinion of the second panel could never be harmful error because that opinion affirmed her conviction just as the *en banc* decision did.  Thus, if the relief she requested had been granted either by the Fifth Circuit *en banc* or the Supreme Court and the panel decision reinstated, she would still be convicted.  Her argument that by their failure to reinstate the second panel decision the Fifth Circuit compromised her rights was presented in her Petition for Writ of Certiorari and denied by the United States Supreme Court.  This Court feels no compunction to hold that the Supreme Court committed error in issuing its denial.

[Cisneros violated the murder for hire statute] by causing her agent to make qualifying telephone calls . . . thereby using a facility in foreign commerce to facilitate a murder for hire.

These issues were obviously before the panel in both of its decisions and before the court sitting *en banc*. Cisneros admits the error was presented and was contained in her briefing to the Fifth Circuit. [Docket No. 21] at 23. She cannot now complain that her arguments were not accepted by a majority of that court. Simply because arguments that were put forth to the court were not accepted does not mean that they were not considered—even if their ultimate rejection was not detailed in an opinion.

Matters that have been rejected on appeal cannot be re-attacked collaterally pursuant to 28 U.S.C. § 2255. *Vernell v. United States*, 559 F.2d 963, 964 (5th Cir. 1977); *Del Genio v. United States*, 352 F.2d 304 (5th Cir. 1965).

## IV.
## Conclusion

With the few exceptions noted above, the report and recommendation of the Magistrate Judge is adopted. The Respondent's Motion to Dismiss [Docket No. 5] is **GRANTED** and the Petitioner's § 2255 motion is **DENIED**. The Court finds no merit to her claim that her conviction was marred by constitutional infirmities and/or ineffective counsel.

Signed this 28th day of September, 2006.

Andrew S. Hanen
United States District Judge