## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

Dora Cisneros                                   §
                                                §
                                                §    CASE NUMBER:  B02CV191 /
v.                                                                 B98CR124-01
                                                §    District Judge: Andrew S. Hanen
                                                §    Court Reporter(s):  N/A
United States of America                        §


## NOTICE TO THE CIRCUIT OF AN APPEAL

In connection with this appeal, a copy of the notice of appeal, the order being appealed and the docket sheet are attached.  Please acknowledge receipt on the enclosed copy of this notice.

In regard to this appeal:

- •    The Court of Appeal $455.00 filing and docketing fees have been paid or a motion for in forma pauperis has been granted.

- •    This case was decided without a hearing – no transcripts.


Michael N. Milby, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Dora Cisneros | § | |
| | § | |
| | § | CASE NUMBER: B02CV191 |
| v. | | B98CR124-01 |
| | § | District Judge: Andrew S. Hanen |
| | § | Court Reporter(s): N/A |
| United States of America | § | |

## <u>NOTICE TO THE CIRCUIT OF AN APPEAL</u>

In connection with this appeal, a copy of the notice of appeal, the order being appealed and the docket sheet are attached.  Please acknowledge receipt on the enclosed copy of this notice.

In regard to this appeal:

- The Court of Appeal $455.00 filing and docketing fees have been paid or a motion for in forma pauperis has been granted.

- This case was decided without a hearing – no transcripts.

Michael N. Milby, Clerk

United States District Court
Southern District of Texas
FILED

NOV 2 1 2006

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DORA CISNEROS, §
 Petitioner, §
 §
V. §  Criminal No. B-98-124-01
 §  Civil Action No. B-02-191
UNITED STATES OF AMERICA, §
 Respondent. §

## CISNEROS' NOTICE OF APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

 Comes now Petitioner, DORA CISNEROS, by and through her counsel of record, David L. Botsford and Tony Canales, and pursuant to Rule 4(a)(1)(B), Federal Rules of Appellate Procedure, timely[1] presents this her notice of appeal, and hereby evidences her intention to appeal to the United States Court of Appeals for the Fifth Circuit all adverse rulings of the District Court, including but not limited to the Orders and/or Recommendations reflected in Document #13, Document #17, Document #18, and Document #22 on the docket in this case.

 The appellate fee of $455.00 has been sent to the Clerk of this Court for filing along with this notice of appeal and an Application For Certificate of Appealability will be filed in this case with the District Clerk in the near future.

     Respectfully submitted,

     DAVID L. BOTSFORD
     State Bar No. 02687950
     Law Office of David L. Botsford
     1307 West Ave.
     Austin, Texas 78701
     512-479-8030 (phone)

---

[1] Under Rule 4(a)(1)(B), notice of appeal is due within sixty days of the September 28, 2006, entry of Document #22 on the docket. Thus, this notice of appeal is timely.

512-479-8040 (fax)

A. J. "TONY" CANALES
State Bar No. 03737000
P.O. Box 5624
Corpus Christi, Texas 78465-5624
361-883-0601 (phone)
361-884-7023 (fax)

## CERTIFICATE OF SERVICE

I, David L. Botsford, do hereby certify that true and correct copies of the above and foregoing document have been served by placing the same in the United States mail, postage prepaid, on this the 20th day of November 2006, addressed to Mr. James L. Turner, Assistant United States Attorney, P.O. Box 61129, Houston, Texas, 77208-1129.

DAVID L. BOTSFORD

United States District Court
Southern District of Texas
ENTERED

MAY 1 6 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

DORA GARCIA CISNEROS,                    §
            Petitioner,            §
                           §
vs.                                      §         CIVIL ACTION No. B-02-191
                           §
UNITED STATES OF AMERICA,                §
            Respondent.            §

## ORDER DENYING MOTION FOR DISCOVERY

### I. INTRODUCTION

Pending before the Court is Petitioner, Dora Garcia Cisneros's (hereinafter "Cisneros")

Motion for Discovery and Memorandum of Law in Support (Docket No. 9). Cisneros's Motion to

Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C § 2255 is also pending before the court.

(Docket No. 1). Cisneros's §2255 Motion states ten claims for relief, which will be addressed in due

course. Having reviewed the Motion for Discovery, the record, and the relevant law, the Court

**DENIES** Cisneros's Motion for Discovery.

### II. BACKGROUND

The underlying factual and procedural background of the instant case has been recited by the

Fifth Circuit in a detailed panel opinion.[1]

### III. CISNEROS'S DISCOVERY MOTION

In her Motion for Discovery[2], Cisneros seeks to obtain the deposition of the following

---

[1] *United States v. Cisneros*, 203 F.3d 333, 3339 (5ᵗʰ Cir. 2000).

[2] Such discovery motion was filed after Cisneros's §2255 motion was filed. However, this Court will first
address Cisneros's Motion for Discovery (Docket No.9). In a separate order, the court will address Cisneros's §2255
Motion (Docket No. 1).

individuals: 1) FBI Special Agent Freddy Vela; 2) FBI Special Agent David Church; 3) Assistant United States Attorney Oscar Ponce; 4) Assistant United States Attorney Mervyn M. Mosbacker. Cisneros also seeks "[a]ny and all evidence of interviews by Government agents with Daniel Garza". Specifically, Cisneros states that "the Government knew that, without some alteration in Garza's testimony from his pretrial statements, it would fail to prove beyond a reasonable doubt the existence of phone calls that could provide the jurisdictional nexus."

## IV. DISCUSSION

Under the rules governing §2255 proceedings, Cisneros may "invoke the process of discovery available under Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." 28 U.S.C. § 2255 Rule 6(a); *United States of America v. Webster*, 392 F.3d 787, 801 (5th Cir. 2004). The decision to grant discovery is left to the sound discretion of the district court. *East v. Scott*, 55 F.3d 996 (5th Cir. 1995).

Here, Cisneros requests the depositions of the above-named individuals "[o]n the circumstances wherein Daniel Garza's accounts relevant to the jurisdictional nexus in the offense for which Cisneros was convicted changed between the final interview...[.]"[3] According to Cisneros, Garza's testimony differed from his initial interviews and his testimony at trial. Cisneros suggests that the depositions of the above-named individuals would establish the missing jurisdictional element for a murder-for-hire conviction.

In a panel opinion, the Fifth Circuit expressly concluded[4]

---

[3] Motion for Discovery and Memorandum of Law in Support, pp. 6; B-02-CV-191; Docket No. 9

[4] *United States v. Cisneros*, 203 F.3d 333, 344 (5th Cir. 2000).

"Given [Garza's] language difficulties, some confusion during the
interview with [FBI special agent] Church would be expected....It is
not [the Fifth Circuit's] province to become embroiled in a credibility
debate between Church and Garza."

At trial, Garza was subjected to cross-examination. His testimony was evaluated by a jury

which convicted Cisneros. *United States v. Gaytan*, 74 F.3d 545, 555 (5th Cir. 1996).

## V. <u>CONCLUSION</u>

In the exercise of discretion, this Court finds that there is no good cause to allow discovery.

For the reasons stated herein, the court **DENIES** Cisneros's Motion for Discovery. (Docket No. 9).

DONE at Brownsville, Texas, this _16_ day of _MAY_ , 2005.

John Wm. Black
United States Magistrate Judge

-3-

United States District Court
Southern District of Texas
ENTERED

SEP 0 9 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Respondent, | § | |
| | § | C.A. NO. B-02-191 |
| V. | § | (CR. NO. B-98-124-01) |
| | § | |
| DORA GARCIA CISNEROS | § | |
| Petitioner. | § | |

## ORDER

Before the court is Dora Garcia Cisneros' Objections to the Magistrate Judge's Denial of her

Motion for Discovery, and Motion for Reconsideration, or, In the Alternative, Motion for

Interlocutory Appeal and Stay of Proceedings Pending Appeal.

The court has considered the matter and believes that the objections are without merit and

that the requested discovery is inappropriate under the particular facts of this case. Accordingly,

Cisneros' "objections" to the United States Magistrate Judge's Order of May 16, 2005, are hereby

overruled. The matter is referred back to the United States Magistrate Judge with the directive to

continue the consideration of the § 2255 motion which has yet to be addressed.

Signed this the 9th day of September, 2005.

Andrew S. Hanen
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**-BROWNSVILLE DIVISION-**

| | | |
|---|---|---|
| DORA CISNEROS, | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. B-98-124 |
| | § | CIVIL ACTION NO. B-02-191 |
| UNITED STATES OF AMERICA | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the court is Petitioner's Motion to Vacate or Set Aside Sentence, pursuant to 28 U.S.C. § 2255. For the reasons stated below it is recommended that the motion be denied.

### I. Background

The sequence of events which led to the indictment and conviction of Petitioner, Dora Cisneros, ("Cisneros") for capital murder are voluminous and complex. Simply stated, Dora Cisneros hired a hit man, through her association with Maria Martinez, a *curandera* (Mexican folk healer), and her client, Daniel Garza, to murder her teen-age daughter's ex-boyfriend, Joey Fischer, a high school student.

Cisneros was convicted of capital murder in the 357th Judicial District Court, Cameron County, Texas, Criminal Cause No. 93-CR-1515-E, and was sentenced to life imprisonment. Cisneros appealed the state conviction and on January 25, 1996, the Texas Appeals Court reversed her conviction. *Cisneros v. State*, 915 S.W.2d 217 (Tex.App.– Corpus Christi), *pet. ref'd.*, 935 S.W.2d 789 (Tex.Crim.App. 1996). The state court conviction was overturned because the state court jury was charged in such a way that in order for Dora Cisneros to have been found guilty, she would have had to have hired the killers. The evidence was that she used

an intermediary, maria Martinez, to hire the killers.

On February 23, 1998, Cisneros was indicted for the offense of murder for hire in violation of 18 U.S.C. § 1958, Criminal Cause No. B-98-124, in the United States District Court for the Southern District of Texas.  On May 12, 1998, after a jury trial, Cisneros was convicted and subsequently sentenced to life imprisonment. Cisneros appealed and the United States Court of Appeals for the Fifth Circuit affirmed the conviction in a published panel opinion.  *United States v. Cisneros*, 194 F.3d 696 (5th Cir. 1999).  On February 3, 2000, this opinion was vacated and a new panel opinion was issued, affirming the conviction. *United States v. Cisneros*, 203 F.3d 333 (5th Cir. 2000).  Then the Fifth Circuit, on its own motion, granted rehearing en banc and consolidated the case with *United States v. Marek*, 198 F.3d 532 (5th Cir. 1999).  On January 4, 2001, the en banc court affirmed Cisneros' conviction without additional elaboration on issues presented in the panel opinion. Cisneros' petition for re-hearing was denied.  The Supreme Court denied Cisneros' petition for writ of certiorari on October 1, 2001.  *Garcia Cisneros v. United States*, 122 S.Ct. 37 (2001).  Cisneros filed the instant motion on September 30, 2002, consisting of ten claims.  For purposes of this Court's analysis, Cisneros' claims have been consolidated into four sections.

## II.  Analysis

### A.  The Fifth Circuit's En Banc Opinion

Cisneros asserts that she was denied due process of law because the Fifth Circuit did not re-address the following claims in its en banc opinion, which in effect, denied her a meaningful right to appeal: (1) sufficiency of the evidence; (2) insufficient jurisdictional nexus; (3) the district court's submission of inadequate jury instruction on jurisdictional nexus; (4) the district

court's refusal to submit a causation instruction; and (5) the district court's refusal to submit statute of limitations instruction.

The Government contends that the en banc court's decision not to re-visit all of the issues, as previously ruled upon by the panel, does not equate to a violation of due process. Cisneros cannot claim that she was denied meaningful review when the appellate courts considered her appeal on four separate occasions. The Government argues that the Fifth Circuit, in its panel opinion, ruled on all five points raised by Cisneros and the en banc court simply affirmed these points without opinion and implicitly adopted the ruling of the panel.  The Government also urges that Cisneros' claims are barred from review by this Court under the law of the case doctrine.

In her 28 U.S.C. § 2255 motion, Cisneros asserts that her judgment and sentence were imposed in violation of the Constitution.  Specifically, Cisneros invokes the due process clause of the Fifth Amendment and argues she was denied her right to due process of law and meaningful appeal by virtue of the Fifth Circuit's failure to address her first five points of error. However, Cisneros fails to provide this Court with any authority for the proposition that her disagreement with the method in which the Fifth Circuit framed its en banc opinion rises to a violation of a constitutional right cognizable under § 2255.  Neither has Cisneros provided authority for her position that she has a constitutional right under § 2255 to have a district court review an appellate court's prerogative to hear, decide and frame opinions in the most appropriate manner it sees fit.  A review, by this Court, of the pertinent case law regarding permissible grounds for attacking sentences under § 2255 finds no authority for Cisneros' claim.

Cisneros argues that the due process clause guarantees her the right to a meaningful

3

review.  Although the right to appeal a criminal conviction is not constitutional, but statutory in nature, due process requires that the review be meaningful.  *See United States v. Pajooh*, 143 F.3d 203, 204 (5th Cir. 1998).  A litigant is entitled to have all issues fully considered by the appellate court.  *Id*.  However, meaningful review and the manner in which the appellate court announces its decision are distinguishable.  *Id*.  Whether a case merits a lengthy opinion, or summary affirmance without opinion, or some other form of summary disposition, is determined on a case by case basis and hinges on the benefit such disposition will have on the bench, bar, or litigants.  *Id*.

In this case, although the en banc court did not expressly re-visit all of Cisneros' arguments, her issues nonetheless received full consideration and a ruling.  This is apparent from the panel opinions provided on direct review as well as the en banc opinion which clearly concluded with a finding of no error and affirming Cisneros' conviction and sentence.  *United States v. Cisneros*, 238 F.3d 310, 323 (5th Cir. 2001).  Cisneros has not shown that the en banc court's omission of language reinstating parts of the panel opinions equates to a denial of meaningful review.

The Government has argued that the law of the case doctrine precludes Cisneros from raising issues in the instant motion that were already raised and considered on appeal.  The five issues that the en banc court did not re-visit, which form the basis of Cisneros' lack of meaningful review claim, were fully considered and found to be without merit in the first and second panel opinions.  *See United States v. Cisneros*, 194 F.3d 626 (5th Cir. 1999) and *United States v. Cisneros*, 203 F.3d 333 (5th Cir. 2000).

Cisneros' motion for relief under § 2255 does not appear to be asking this Court to

reconsider the merits of her appellate points of error, but is instead seeking adjudication of a due process claim arising out of the appellate court's election to present its opinion in the manner it which it did. Cisneros has clearly framed her claim around the appellate court's action or inaction and its associated impact on Cisneros' constitutional rights.

In the event that Cisneros is requesting this Court to review the five points of error presented in the appellate court, such request will not be entertained. Cisneros was not denied a meaningful review. Additionally, under the law of the case doctrine, it is well established that when an issue has already been determined on direct appeal, the court need not reconsider it on motion to vacate. *See United States v. Johnson*, 615 F.2d 1125, 1128 (5th Cir. 1980); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997). The law of the case doctrine may be applied discretionarily and is subject to three exceptions: (1) the evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002).

In this case, the en banc court made no finding of clear error in the panel opinions, in which Cisneros' five issues were reviewed. Cisneros has not demonstrated that she falls within any of the exceptions to the law of the case doctrine. Cisneros is attempting to obtain review by this Court and possibly the Fifth Circuit, yet again, of the same issues which were found to be without merit on direct appeal from her criminal case. The law of the case doctrine seeks to prevent this back door approach to multiple review of adjudicated issues. This Court will not review the same arguments which have been made and addressed on appeal.

5

### B.  The Causation and Required Relationship Instructions

Cisneros asserts that she was denied due process of law under the Fifth Amendment and her right to trial by jury under the Sixth Amendment because the jury was not instructed on: (1) causation, and (2) the required relationship between the foreign commerce and the murder-for -hire scheme.

The Government contends that this issue was addressed in the second panel opinion and found to be without merit.  The Government argues that the subsequent affirmance of the conviction by the en banc court, constitutes the law of the case and Cisneros has not shown clear error, nor that the absence of the instruction works a manifest injustice.

As Cisneros has raised these issues pursuant to a § 2255 motion, the threshold inquiry must be whether these issues were previously raised on direct appeal, and if not, whether Cisneros has demonstrated the requisite "cause and prejudice" which would allow collateral review by this Court.  *See United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593 (1982). The analysis below reveals that Cisneros has failed to show cause and prejudice for failing to raise these errors at trial and consequently on direct appeal.

### 1. The Causation Instruction

The record clearly shows that Cisneros offered an instruction on the elements of the murder-for-hire statute.  Cisneros also offered a definition of "causation" as it related to the first element of the murder-for-hire statute.  Both instructions were denied by the trial court. The subsequent Fifth Circuit panel opinions found Cisneros' instructions to be incorrect and the trial court's denial proper.  Cisneros' proposed *Instruction 15* set forth the first element of the murder-for-hire statute as follows:

6

> FIRST ELEMENT:    That the defendant: (A) caused Heriberto Pizana to travel from Mexico to Brownsville on March 2, 1993, in furtherance of the alleged murder-for-hire; and/or (B) caused Daniel Garza to use a facility in foreign commerce to call Maria Martinez in Brownsville from San Fernando and Matamoros, Tamaulipas, Mexico between November 1992 and February 1993, in furtherance of the alleged murder-for-hire.

Cisneros also submitted *Instruction 15A*, entitled "Causation" which attempted to set forth a definition of causation as it related to the murder-for-hire statute.  However, the problem with this instruction, as so aptly identified by the Fifth Circuit, is that it confused the mens rea requirement with correct legal definition of causation as it related to the murder-for-hire statute. *Instruction 15A* read as follows:

> "A person 'causes' another to travel in foreign commerce or to use facilities in foreign commerce if he does an act with knowledge that the foreign travel or use of the facilities in foreign commerce will follow in the ordinary course of business, or where such foreign travel or use of facilities in foreign commerce can be reasonably foreseen, even though not actually intended."

The trial court, during the charging phase of trial, indicated that objections to the final jury charge would be preserved based on any inconsistencies between the actual jury charge and the proposed charges presented by Cisneros.  The trial court stated:

> "Now, both sides have kindly favored the Court with requested jury charges.  The Court is about to give the charge to the jury this afternoon.  Anything that I do that is inconsistent with what you have filed on record, you need not object to.  You will preserve your exception. So you need not object to anything that you have already favored me with that I do inconsistent with respect to the charge I give to the jury." 11 R. 1496.

Immediately prior to charging the jury, the trial court advised Cisneros' counsel that he would have the opportunity to raise further objections, not covered by the "running" objection, after the

7

jury had been given their instructions:

> "You will not be precluded from further objections through tomorrow prior to the jury coming in, but just favor the court with any requested additional instructions overnight. Remember, you do not have to object to anything you've already favored me with." 11 R. 1499-1500.

The trial court then provided the parties with a copy of the charge. Counsel for Cisneros

acknowledged receipt of the charge:

> " Excuse me, Your Honor. The Court definitely did hand it to me, and I did have about four minutes to look at it. I do appreciate that." 11 R. 1502.

After the jury was charged, the trial court inquired as to the objections thereto:

| THE COURT: | Any objection from the Government? |
| --- | --- |
| MR. MOSBACKER: | No, Your Honor. |
| THE COURT: | From the Defendant, knowing well that you preserve everything that I did inconsistent with what you favored me with? |
| MR. BOTSFORD: | Yes, Your Honor, We would respectfully object to the failure of the Court to define under state law the words "intentionally and knowingly" and limit those two definitions under 1.07(a) of the Texas Penal Code to the result of conduct as opposed to the nature of conduct as specified by the Court of Criminal Appeals in numerous cases. 11 R. 1521. |

Cisneros' counsel seized the opportunity to object to items in the charge that were not covered

by the running objection. Cisneros' counsel made various other objections to items not covered

by the running objection, but clearly did not object to the omission of a definition on causation:

| MR. BOTSFROD: | And, Your Honor, I guess it's my understanding, and I don't mean to object to the Court's – the refusal of the Court to give the requested instructions that we tendered, those are all preserved. |
| --- | --- |
| THE COURT: | That is correct. |

MR. BOTSFORD:    Yes, Your Honor.

THE COURT:    Any other objections?

MR. BOTSFORD:    Your Honor, not at this time.  I would like to review my notes overnight, and if before the jury comes back in I have an additional, I will tell–

THE COURT:    Do them in writing and favor me with them by 8:30 in the morning.

MR. BOTSFORD:    If I have any additional, I shall do that, Your Honor.

11 R. 1522.

When the court reconvened, Cisneros' counsel addressed the court and clarified the objections to the trial court's denial of the proposed instructions, but did not object to the omission of a definition on causation:

MR. BOTSFORD:    May I address the Court on one matter on the record for about two seconds.  I just wanted to make sure, Your Honor, that after the instructions were read to the jury and the Court asked Mr. Canales and I if we had any additional objections and I said, no we didn't, Your Honor, I didn't want that to be construed as a waiver –

THE COURT:    Absolutely not.

MR. BOTSFORD:    – of instructions.

THE COURT:    You had already lodged all of your objections and preserved a record.  The only thing only thing I did were the cautionary instructions.

MR. BOTSFORD:    I wanted to, I guess, formally reurge the requested instructions that the Court hadn't given.

THE COURT:    They stand reurged and you have preserved that in toto.

12 R. 1599.

9

It is undisputed that Cisneros preserved her objections to the trial court's failure to use her proposed jury instructions. But no where on the record, did Cisneros make an objection to the fact that the jury charge did not have a definition of causation as it related to the murder-for-hire statute. Cisneros was given ample opportunity to object orally and in writing after the trial court had charged the jury. A review of the entire record reveals that Cisneros did not object to the omission of a definition of causation. Cisneros merely re-urged her objections to the trial court's decision not to use her proposed instructions. This objection does not equate to an objection to the omission of a definition of causation as it related to the murder-for-hire scheme.

The Fifth Circuit, in both panel opinions, found no error in the trial court's denial of Cisneros' proposed instructions, as they did not reflect the correct law of the Circuit. The Fifth Circuit did not, however, entertain Cisneros' argument as to whether the omission of a definition of causation was violative of due process. Cisneros, in her appellate brief, argued that "[t]he court refused to give the charge and did not charge on causation." "The failure to give the requested charge, which was not otherwise covered by the court's instructions, was harmful in that the jury had no guidance on causation, a key component of the first issue the jury had to consider in ascertaining whether Appellant had committed a crime." *See Appellant's Brief*, Appeal No. 98-40955, p. 41 (Feb. 09, 1999).

Although Cisneros raised the issue of the trial court's omission of a causation definition in her appellate brief, the issue had not been properly preserved for appeal. Both panel opinions appropriately refrained from entertaining Cisneros' argument regarding the omission. The Fifth Circuit's sole reference to the issue is in a footnote in the second panel opinion stating, "we note that the district court failed to give an instruction explaining the notion of causation to the jury".

10

*United States v. Cisneros*, 203 F.3d 333, 347 n. 11 (5th Cir. 2000).

The record thus far has shown that Cisneros objected to the trial court's failure to use her proposed jury instruction, but that Cisneros failed to object to the absence of a definition of causation as it related to the murder-for-hire statute. The focus now turns to the legal requirements regarding the procedural bar for collateral attacks brought pursuant to § 2255.

To obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his procedural default, and (2) "actual prejudice" resulting from the errors of which he complains. *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594 (1982). The proper inquiry, for determining prejudice for alleged errors in a jury charge is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned. *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730 , 1736 (1977).

This cause and actual prejudice standard presents a significantly higher hurdle than the plain error standard that is applied on direct appeal. *See United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991)(en banc). The application of this  rigorous standard ensures that final judgments command respect and that their binding effect does not last only until the next in a series of endless post conviction collateral attacks. *Id*. In an extraordinary case, in which a constitutional violation has probably resulted in the conviction of one who is actually innocent the Supreme Court has recognized a narrow exception to the cause and prejudice test. *See Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986). The Supreme Court has not yet found an appropriate case for the application of this exception, and it has emphasized

11

repeatedly that this exception is limited to "extraordinary" cases involving "manifest miscarriage [s] of justice" that would result in the continued incarceration of one actually innocent of the offense. *See Shaid*, 937 F.2d at 232.

Cisneros, in her § 2255 motion, argues "that cause and actual prejudice have been shown for any procedural default (as reflected elsewhere in this motion in claims relating to ineffective assistance of trial and appellate counsel)" or "that denial of this claims would result in a fundamental miscarriage of justice." *See Cisneros' Motion to Vacate*, n. 41, p. 48. A review by this Court, of Cisneros' arguments pertaining to ineffective assistance of counsel, does not reveal any mention of the cause and prejudice test.

Cisneros offers no cause for failing to object to the trial court's omission of a definition on causation as it related to the murder-for-hire statute. It appears that Cisneros' counsel was given the opportunity to object on at least three occasions and did not. It is unlikely that Cisnoeros' counsel misunderstood the trial judge's admonishment that only objections to the denial of her proposed instructions had been preserved. In fact, the record shows that Cisneros' counsel made objections other than the running objection. In light of this, it is apparent that Cisneros' counsel did not misunderstand what he was required to do in order to preserve an objection that was outside the scope of the running objection allowed by the trial court.

Likewise, Cisernos offers no showing of the type and extent of prejudice that is required under the law to invoke collateral review of this issue. The applicable standard under *Henderson* is whether the ailing instruction or the omission of the instruction, by itself, so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned. While Cisneros did not meet her burden

12

to demonstrate prejudice, the following analysis shows that Cisneros clearly did not suffer prejudice from the missing definition of causation.

The Fifth Amendment to the United States Constitution guarantees that no one will be deprived of liberty without due process of law and the Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. *See United States v. Gaudin*, 515 U.S. 506, 509-510, 115 S.Ct. 2310, 2313-2314 (1995). These provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. *Id*. The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970).

It is firmly established that the murder-for-hire statute, 18 U.S.C. § 1958, consists of three elements: (1) traveling or causing another to travel in interstate or foreign commerce, or using or causing another to use the mail or other facility of interstate or foreign commerce; (2) with intent that a murder be committed in violation of the laws of any State or the United States; and (3) as consideration for the receipt of pecuniary value. *United States v. Sharpe*, 193 F.3d 852, 864 n.6 (5th Cir. 1999). The record shows that the jury was charged on all three of the above elements:

> "For you to find the defendant, Dora Garcia Cisernos, guilty, you must be satisfied of all of the following matters, that all of the following matters have been proven to your satisfaction by proof beyond a reasonable doubt. I'm making reference to all of them. Number one, that she cause another to travel in foreign commerce or cause another to use a facility in foreign commerce." 11 R. 1516.

> "In addition to that, that she did that with the intent that the murder of Albert Joseph 'Joey' Fischer be committed in violation of the law of the State of Texas."

13

11 R. 1516-1517.

"In addition to that, that as consideration for a promise or agreement to pay, or the receipt of $3,000 in United States currency, the defendant did what she – what it is alleged that she did."   11 R. 1517.

The Supreme Court in *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730 (1977), a case in which a habeas petitioner challenged jury instructions to which he had not objected at trial, held that the failure to give any explanation beyond the reading of the statutory language itself was not prejudicial.  The *Henderson* court noted, "the respondent's burden is especially heavy because no erroneous instruction was given; his claim of prejudice is based on the failure to give any explanation beyond the reading of the statutory language itself of the causation element. An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.

In this case, the jury instructions mirrored the statutory language and referenced all three elements of the murder-for-hire statute.  One of the facts, which the murder-for-hire statute requires, is proof that the defendant "caused" another to travel in foreign commerce or "cause" another to use a facility in foreign commerce.  As both the panel and the en banc opinions found, the evidence was plainly sufficient to prove that fact beyond a reasonable doubt.  *Henderson* stands for the proposition that the jury in this case necessarily made a finding as to causation. There can be no question about the fact that the jurors were informed that the case included a causation issue that they had to decide.  The element of causation was stressed in the arguments of both counsel.

MR. PONCE:          "Yes, sir. – that Dora Garcia Cisneros *caused* to happen.  She *caused* – she *caused* someone to travel from Mexico to the U.S.

14

The records are there, that vehicle there.  You heard from Daniel Garza that throughout this two or three month period, she was on daily – almost on daily contact with Maria Martinez, and a lot of those conversations dealt with what was going to happen and when it was going to get done.  And some of those calls were from that village in San Fernando where they used casetas, phone boxes."
12 R. 1541.

MR. CANALES:          "All 12 of you must be proven beyond a reasonable doubt as to these three elements.  I'm not going to talk about the second and the third.  Talk about the first, that the defendant *caused* another to travel in foreign commerce or caused another to use a facility in foreign commerce.  12 R. 1563.

MR. CANALES:          "We're not being tried – what we're being tried for anyone to *cause* another to travel in foreign commerce or *cause* another to use any facility in foreign commerce or *cause* another to use any facility in foreign commerce with the intent that a murder be committed in violation of the laws of any state as consideration for the receipt of or as consideration for a promise and so forth."
12 R. 1564.

The statutory language, which the trial judge read to the jury, expressly refers to the requirement that defendant's conduct "caused another to travel in foreign commerce or caused another to use a facility in foreign commerce".  Written instructions with the same language were given to the jurors for their use during their deliberations. The trial judge instructed the jury that all elements of the crime must be proved beyond a reasonable doubt. Whether or not the arguments of counsel correctly characterized the law applicable to the causation issue, they surely made it clear to the jury that such an issue had to be decided.

The causation instruction proposed by Cisneros mistakenly confused intent with causation.  The Fifth Circuit, in the first panel opinion, discussed the causation issue and provided guidance about the kind of causation instruction that would have been acceptable.

"With respect to causation, *Edelman*[1] requires simple "but for" causation rather than foreseeability...". *United States v. Cisneros*, 194 F.3d 626, 636 (5th Cir. 1999). "Martinez would not have discussed the murder for hire with Garza over the telephone, but for Cisneros' request that Martinez find someone to kill Fischer. The 'in furtherance' requirement is not the law in this circuit. Instead, *Edelman* governs, and it requires that the use of the facility be 'in the commission of the offense.'" *Id.*

Cisneros bears the burden of showing not just the possibility of prejudice from the omission of the instruction, but an actual and substantial disadvantage, infecting her entire trial with error of constitutional dimensions. Cisneros has not met this burden. In light of the holding in *Henderson*, the missing definition of causation in this case was not prejudicial. The jury knew that causation was something they had to decide, based on the trial court's oral charge, the written charge they took with them into deliberations, and trial counsels' closing arguments. The jury was charged on all three elements of the offense as required in *Guadin*, 515 U.S. 506 (1995). Although the "but for" definition of causation, the standard in the Fifth Circuit for § 1958 cases, was not provided, the lack of that further clarification did not prevent the jury from deciding the issue of causation.

The trial court's omission of a definition on causation relating to the murder-for-hire scheme did not create a danger that the jury failed to make an essential factual determination within constitutional requirements that every fact necessary to constitute the crime be proved beyond a reasonable doubt. Such omission did not so infect the entire trial that the resulting conviction violated due process. Cisneros' argument that the jury decided the causation question

---

[1] *United States v. Edelman*, 873 F.2d 791, 794 (5th Cir.1989).

16

without adequate guidance and might have rendered a different verdict under proper instructions does not demonstrate the level of prejudice that is clearly required.

Neither has Cisneros made the argument that she is actually innocent. Cisneros has not shown that she fits within the narrow exception to the cause and prejudice test under *Murray v. Carrier*, 477 U.S. 478 (1986). Cisneros has not claimed that she is actually innocent, nor has she demonstrated the requisite cause and prejudice needed to obtain collateral review on this issue.

### 2. The Required Relationship Instruction

Cisneros argues that there was no instruction that informed the jury about the required relationship between the foreign commerce and the murder-for-hire scheme. Cisneros contends that the jury did not have to find that there was a relationship, which in effect allowed the jury to convict if somebody traveled in or used a facility in foreign commerce that was *not connected* to the murder-for-hire-scheme.

As Cisneros raises this issue in a § 2255 motion, it must be determined whether the law of the case doctrine bars this Court's review. When an issue has already been determined on direct appeal, a court need not reconsider it on motion to vacate. *See Moore v. United States*, 598 F.2d 439 (5th Cir. 1979); *United States v. Johnson*, 615 F.2d 1125 (5th Cir. 1980); *United States v. Kalish*, 780 F.2d 506 (5th Cir. 1986), cert. denied, 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986). The law of the case is not a jurisdictional rule, but a discretionary practice. The doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power. *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)(quoting *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)). The doctrine has three exceptions: (1) the evidence at a subsequent trial is substantially different;

17

(2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *United States v. Becerra*, 155 F.3d 740, 752-753 (5th Cir.1998).

 Cisneros previously raised this same argument on appeal.  Specifically, Issue No. 3, Subsection B, of Cisneros' appellate brief (entitled "Cisneros' proposed instruction regarding the jurisdictional element") tracks the same argument submitted in the instant motion.  Referring to the jury charge of the murder-for-hire statute, Cisneros stated:

> "The above quoted language allowed the jury to convict Cisneros if 'somebody...involved' traveled in or used a facility of foreign commerce regardless of the activity's connection to the murder.  In fact, it affirmatively allowed the jury to convict even if the foreign commerce facilities were not used in connection with the murder.  The charge therefore constructively amended the indictment and allowed Appellant to be convicted for conduct not charged in the indictment."  *Appellant's Brief,* Appeal No. 98-40955, p. 32.

In her §2255 motion Cisneros makes the same argument.  Cisneros claims that the jury was not instructed or alternatively not adequately instructed on whether the foreign commerce had to "facilitate" or "be in furtherance" of the alleged murder for hire scheme.  In support of this claim, Cisneros states:

> "The language of the District Court's actual instruction to the jury allowed the jury to convict Cisneros if 'somebody...involved' traveled in or used a facility in foreign commerce regardless of the activity's connection, if any, to the alleged murder for hire scheme.  In fact, it affirmatively allowed the jury to convict even if the foreign commerce facilities were not used in connection with the murder for hire scheme."  *See Cisneros' Motion to Vacate*, p. 57.

Although Cisneros' appellate point and collateral claim are titled differently, Cisneros is raising the same argument.  In response to this argument, the Fifth Circuit in the first panel opinion stated:

"Cisneros first sought to instruct the jury that the interstate/foreign commerce connection had to have been 'in furtherance' of the murder-for-hire. Because this instruction is taken from the First Circuit's decision in *United States v. Houlihan*, 92 F.3d 1271, 1292 (1st Cir.1996), rather than our decision in *Edelman*, it is neither the law in this circuit nor substantially correct. The court's refusal was appropriate. The court instead explained to the jurors that to find Cisneros guilty, they had to determine: 'Number one, that [Cisneros] caused another to travel in foreign or interstate commerce or caused another to use a facility in foreign commerce' to find Cisneros guilty. By setting out the causation requirement this clearly, the court established that use of such a facility would have to be the result of Cisneros's actions, and therefore in the commission of the offense charged." *United States v. Cisneros*, 194 F.3d 626, 638 (5th Cir. 1999).

Likewise, the second panel of the Fifth Circuit addressed Cisneros' claim of error:

"Cisneros first sought to instruct the jury that the use of the facility in foreign commerce had to have been 'in furtherance' of the murder-for-hire. As we have previously observed, 'in furtherance' is not the requirement in this circuit; 'facilitated' or 'made easier' is. *Garrett*, 716 F.2d at 266. That is, Garza's calls need not have been made for the purpose of furthering the murder-for-hire. It is enough that those calls facilitated the scheme incidentally, or by mere happenstance. *Id*. at 265-66. Here, it may well be true that Garza did not place the calls 'in furtherance' of the murder-for-hire scheme. He called Martinez for marital advice. Martinez was the one who would bring up the subject of the Fischer murder. But those international calls gave Martinez the opportunity to pursue her earlier requests that Garza arrange the murder. In that sense, they facilitated the murder, even though the use of the telephone across national boundaries was purely incidental. The difference between 'in furtherance' and 'facilitated,' therefore, can be significant. For that reason, Cisneros's proposed instruction was not substantially correct, and the district court's failure to give it does not constitute reversible error." *United States v. Cisneros*, 203 F. 3d 333, 345-46 (5th Cir. 2000).

Cisneros objected to and raised on appeal the trial court's denial of her instruction on the "jurisdictional element", also referred to as the "in furtherance", "required relationship", or "foreign nexus requirement" instruction. This issue was addressed by the Fifth Circuit in both panel opinions and found to be without merit. Cisneros has not shown that her claim fits within the exception to the law of the case doctrine, i.e. that the earlier decision is clearly erroneous and would work a manifest injustice. This Court, in its discretion, following the vernacular of the Supreme Court in *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739 (1912), refuses to

19

reopen what has been decided.

Cisneros attempts to avoid the law of the case doctrine by urging that this issue has not been determined on direct appeal because the panel opinions were vacated by the en banc court. Cisneros asserts no authority on this point.   "Determined" or "raised and reviewed" does not equate to a full written opinion from the en banc court on all issues previously decided by the panel opinions.  Cisneros raised the issue on appeal and the Fifth Circuit reviewed it.  Cisernos has not provided authority for her proposition that meaningful review requires an en banc court to re-address all points previously reviewed in a panel opinion, or specifically re-instate parts of the panel opinions.   It is clear that Cisneros' "in furtherance" or "nexus requirement" instruction has been raised and reviewed on direct appeal and on re-hearing on at least three occasions.

As to Cisneros' argument regarding the omission of an instruction on the nexus requirement, this Court finds it is not within its purview to address, as no contemporaneous trial objection was made.  The trial transcripts reveal that Cisneros failed to object to the omission of an instruction on the nexus requirement, other than her running objection regarding the denial of the proposed nexus instruction.  A review of Cisneros' appellate brief reveals that she only raised on appeal the denial of her proposed "in furtherance" instruction, but did not raise the issue of the trial court's omission of a nexus instruction.

The Fifth Circuit, in its second panel opinion noted the missing instruction, but did not make any findings with respect thereto, as the issue had not been preserved.  "We note that the district court gave no instruction on the nexus requirement." *United States v. Cisneros*, 203 F.3d 333, n.9 (5th Cir. 2000).  Cisneros clearly points out the fact that the omission of the instruction on the "nexus requirement" was not raised on direct appeal.  "The failure to submit any

instruction on what the jury had to find before it could find that the foreign commerce was sufficiently related to the murder for hire scheme was raised in Cisneros' motion for rehearing from both vacated panel opinions, as well as in her en banc supplemental brief, but the utter failure to have the jury instructed on this jurisdictional elements of the offense *was not addressed* by either panel or the en banc Court." *See Cisneros' Motion to Vacate*, n. 50, p. 59 (emphasis added).

As Cisneros is raising the lack of a nexus requirement instruction for the first time on appeal, to which no contemporaneous trial objection was made, Cisneros must demonstrate the requisite cause and prejudice in order to obtain review by this Court.  Cisneros has failed to meet this burden.  Cisneros argues simply that, "this issue is sufficiently preserved, but if the government takes a contrary position, Cisneros asserts that 'cause' and actual 'prejudice' have been shown for any procedural default (as reflected elsewhere in this motion)." *See Cisneros' Motion to Vacate*, n. 50, p. 59. The reference to the location of Cisneros' argument on this point is vague at best.  A review of the motion to vacate does not reveal Cisneros' grounds demonstrating cause and prejudice.  Cisneros has also failed to show that she meets the "actually innocent" exception to the procedural bar on this point.  Therefore, the issue of whether the omission of the nexus requirement instruction violated Cisneros' due process rights, is not reviewable by this Court.

### C.  Government's Alleged Failure to Disclose Witness' Modified Testimony and Alleged Use of Perjured Testimony

Cisneros asserts that the government abrogated her right to fair trial by failing to disclose Garza's purported modification of his testimony, as well as the use of perjured testimony.

21

Specifically, Cisneros argues that the Government suppressed evidence favorable to the accused in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) by not disclosing the sequence of events surrounding Daniel Garza's modification of his testimony, as reflected in the differences between his statements to the FBI and his testimony at the capital murder trial.

The Government argues that Cisneros' *Brady* claim was not raised on direct appeal and Cisneros has failed to demonstrate the requisite "cause and prejudice" necessary for the Court to review the claim in a habeas proceeding. Cisneros, in her reply to the Government's answer, argues that "cause for her failure to [raise the issue earlier is] found in the Government's ongoing violation of its duty to reveal *Brady* material and trial counsel's deficient performance. Prejudice is demonstrated by the materiality of the suppressed evidence." *See Cisneros' Reply to Respondent's Answer*, p. 7.

Cisneros sets forth two separate grounds for demonstrating cause. The first alternative consists of trial counsel's deficient performance. Ineffective assistance of counsel is cause for a procedural default. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir.), cert. denied, 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992). However, the fact that counsel failed to recognize a factual or legal basis for a claim, or failed to raise a claim despite recognizing it, does not constitute cause for a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639 (1986). Counsel's performance, in failing to raise the claim, must be constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In this case, Cisneros merely states that trial counsel's deficient performance demonstrates cause for her procedural default. There is no further argument to support this

22

contention.  There is no showing that counsel's failure meets the *Strickland* standard.   In fact, Cisneros makes an assertion to the contrary and states, "[t]rial counsel, in any event, was very diligent in making requests that should have led to the release of these facts." *Cisneros' Reply to Respondent's Answer*, p. 8.   "Trial Counsel thoroughly sought the very information Cisneros alleges has remained suppressed by filing multiple, interrelated, pretrial motions...".  *Id*. Therefore, Cisneros has not established cause for her procedural default arising from ineffective assistance of counsel.

Cisneros' alternate theory for demonstrating cause is the Government's purposeful suppression of information regarding the change in Garza's testimony, i.e. an objective factor external to the defense impeded counsel's efforts to raise this issue on appeal.  Cisneros contends that cause for her procedural default is obvious due to the nature of this particular claim and argues that the "facts themselves remain suppressed, however, and 'good cause' is shown for discovery to release them." *Cisneros' Reply to Respondent's Answer*, p. 7.

A review of the record indicates that there was no new information regarding Garza's inconsistent testimony that would have triggered Cisneros to raise this issue for the first time in a motion to vacate, that could not have been raised on appeal.  All the grounds that Cisneros lists in her motion to vacate which support her due process argument, existed at the time of her appeal.  In fact, no new information has been divulged by the Government which would have allowed Cisneros to discover this new claim.  Cisneros, in her motion to vacate, lists several sources of information that show Garza's alleged "gross modification" of his testimony.  The following information was available to Cisneros at trial, at the close of trial and on appeal.  It has not been changed or expanded since that time and was certainly available to Cisneros on appeal:

1.  Three page statement made by Garza, taken by Deputy Sheriff Alex Perez on March 1, 1993 (regarding calls from Garza to Martinez from San Antonio and Brownsville).

2.  Garza's testimony in the state court case on March 9, 1994 (regarding calls from Garza to Martinez from San Antonio).

3. Martinez's testimony in the state court case (regarding calls received from Garza from Dallas and San Antonio).

4.  Memorandum of Interview (FBI 302) dated June 28, 1996, with Garza (no calls were mentioned).

5. Memorandum of Interview (FBI 302) dated August 29, 1996, with Martinez (Garza called Martinez on numerous occasions, but no information about location of Garza).

6. Letter from Garza to Government, dated September 30, 1996 (regarding his willingness to assist as a witness in the federal case).

7.  Memorandum of Interview (FBI 302), dated November 22, 1996, with Garza (no calls were mentioned).

8.  Letter from Garza to Government, dated December 9, 1996 (regarding his willingness to assist as a witness in the federal case).

9. Memorandum of Interview (FBI 302) dated January 28, 1998, with Martinez (regarding Garza's collect calls from Dallas and San Antonio and unawareness of calls from Mexico).

10.  Memorandum of Interview (FBI 302), dated February 5, 1998 (regarding Garza's collect calls to Martinez).

11.  Memorandum of Interview (FBI 302), dated February 18, 1998 (regarding Garza's collect calls to Martinez between September and November 1992).

12.  Cisneros' defense counsel interview with Garza on February 18, 1998 (Garza could not recall calling Martinez from Mexico).

13.  Government's Bill of Particulars, dated April 20, 1998 (indicating calls from Garza to Martinez from Matamoros and San Fernando, Mexico between November 1992 through February 1993).

14. Discovery of the Government's telephone records of Martinez received on April 24, 1998 (showing no collect calls from Mexico to Martinez).

24

Cisneros sets forth a full argument (roughly 27 pages) regarding the Government's violation of *Brady* based on the discovery listed above. Cisneros, in connection with her motion to vacate, filed a motion for discovery, claiming that interrogatories, depositions and paper evidence would lead to further proof of her claim. Cisneros' request for discovery was denied, by written order on May 16, 2005.

The information upon which Cisneros bases her *Brady* claims in this motion, is the same information that was available to Cisneros at the time of her appeal. Cisneros was given the opportunity to cross examine Garza during the trial. By Cisneros own admission, defense counsel "failed to seek an explanation from the government or the District Court regarding Garza's gross modification of his story." *Cisneros' Motion to Vacate*, p. 82-83. Even though Cisneros was aware of the modification, as evidenced by Cisneros attempt to impeach Garza by calling FBI Agent Church to testify, trial counsel did not seek an explanation from Agent Church regarding Garza's modified testimony. It appears that Cisneros' trial counsel was aware of the modified testimony before trial and during trial. Cisneros has not shown good cause for failing to raise a *Brady* claim at trial or on appeal.

In the event that Cisneros has demonstrated cause, Cisneros has failed to show actual prejudice. Cisneros is required to demonstrate that defense counsel's failure to object or raise a *Brady* claim at trial, resulted in an actual and substantial disadvantage, which infected her entire trial with error of constitutional dimensions. To support this, Cisneros argues that the Government allowed Garza to create a false impression before the jury on the use of the foreign telephone facilities and that Cisneros's counsel was unable to effectively impeach Garza's credibility on the issue of whether the foreign telephone conversations took place. Cisneros

contends that knowledge of when Garza changed his story would have enabled her to more effectively advance her defense.  Specifically, Cisneros states that she was deprived of her right and ability to:

> (1) "develop the sequence of events that surrounded Garza's change from [his interview statements that] calls from Matamoros, Mexico, which were collect calls, to his trial testimony (i.e. calls to Martinez from Matamoros and San Fernando, made from casetas, not collect calls)"; and

> (2) "develop the sequence of events that surrounded Garza's change from [his interview statements that] calls to Martinez from Mexico occurred between September and November 1992, a time frame that clearly predated the point in time that Martinez told him that the client wanted Fisher killed, to late 1992 or early 1993, a time frame possibly including calls after Martinez told him that the client wanted Fischer killed in late January." *Cisneros' Motion to Vacate*, p. 85.

A *Brady* violation consists of three elements: (1) the evidence was suppressed; (2) the evidence was favorable to the accused; (3) evidence was material to guilt or punishment. *Jackson v. Johnson*, 194 F.3d 641, 648 (5th Cir. 1999).  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is the probability sufficient to undermine confidence in the outcome."  *Id*. at 649-50.

Cisneros fails to meet the third element of a *Brady* violation, i.e. Cisneros has not shown that the evidence of "*when* Garza modified his testimony" is material.  Cisneros' argument that knowing when Garza modified his testimony would have helped her to more effectively advance her defense and attack Garza's credibility, does not demonstrate that the result of the proceeding would have been different.

The record reveals that Cisneros became aware of the modified testimony when she received the Government's Bill of Particulars and again during trial, but chose not to cross

26

examine Garza more fully on this issue.  However, it was obvious to the jury that there was a

change in Garza's testimony, as evidence by his direct examination at trial:

> Q:    Do you recall whether or not you told them [FBI Agents Church or Vela] that any
>        phone calls you made to Maria Martinez from Mexico were collect?
>
> A:    The truth, the truth, I don't remember exactly because I would pay for the calls.
>
> Q:    You had – well, if these agents wrote a report that says that you told them that
>        you always made collect calls, you think they made a mistake when they
>        interviewed you?
>
> A:    There may be a mistake because if I called, maybe I called once collect.
>
> Q:    All right.  So can we agree that whatever times you called from Mexico to Maria
>        Martinez, it was only one time, is that correct.
>
> A:    Collect, that is correct.  11 R 1398-99.

There are numerous possible explanations for the change in Garza's testimony, including but not

limited to the accuracy of Garza's memory, FBI Agents' misunderstanding of the Spanish term

"casetas", or Garza's confusion as to relative terms such as "public" calls, "collect" calls, "credit

card" calls. These explanations could have been brought out by Cisneros' counsel on cross

examination and would have only affected Garza's credibility in the eyes of the jury.

   The jury was obviously aware that there was inconsistencies between Garza's previous

statements and his trial testimony.   The jury could have relied on testimony from the other trial

witnesses to find that a facility in foreign or interstate commerce was used or that there was

travel in interstate or foreign commerce.   Cisneros' failure to raise a *Brady* claim did not infect

the entire trial with error.   Even if Cisneros had knowledge of when Garza modified his

testimony, and more thoroughly cross examined Garza, it would not have ensured a finding of

not guilty.  The credibility of but one witness in the context of the whole trial, does not rise to

the level of prejudice required to allow this Court to collaterally review Cisneros' conviction.

Likewise, Cisneros has not demonstrated the requisite prejudice with respect to her claim that the Government allegedly used perjured testimony (*Napue*[2] violation).  Similar to the elements of a *Brady* violation, Cisneros must show that the Government knowingly used false or perjured testimony which "material" to the conviction.  *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994).  Under the cause and prejudice test, Cisneros must also demonstrate that her failure raise a Napue violation resulted in the requisite prejudice.

To support her contention that the false testimony was "material", Cisneros argues, "[a]ssuming, arguendo, that Garza's testimony was false and that the government well knew it, there could be no question that relief should be granted since it went to one of the two critical jurisdictional bases upon which the jury had to base its decision." *Cisneros' Motion to Vacate*, p. 92-93.  Cisneros, in a footnote, states the appropriate standard for materiality:

> "The materiality standard required to also meet the prejudice standard (for procedural default) is whether there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289."  "The touchstone of this inquiry is whether the evidentiary suppression would undermine this Court's confidence that the fact finder would have reached the same result.  *Strickler*, 527 U.S. at 300-01."  *Cisneros' Reply to Respondent's Answer*, n. 14, p. 13.

Although Cisneros sets forth the correct definition of materiality and prejudice, nowhere in her reply does she show how this definition applies to Garza's testimony and Cisneros' conviction.  Cisneros merely refers to the *Government's Answer* and states that the Government concedes prejudice:

---

[2]*Napue v. Illinois*, 360 U.S. 264, 269-70, 79 S.Ct. 1173, 1177-78 (1959)(government must not deliberately use perjured testimony or encourage the use of perjured testimony).

"The Government essentially concedes that, if discovery were to reveal that Garza's testimony about either (1) the dates when he allegedly made calls to Cisneros, or (2) the places (casetas) from which he made the calls was fabricated, *prejudice would be shown*". *Cisneros' Reply to Respondent's Answer*, p. 13. (emphasis added).

Cisneros tries to conclude that if the first two elements are shown (i.e. knowing use of false testimony), then prejudice necessarily exists. This is not the test. In order to demonstrate materiality and overcome the prejudice hurdle, Cisneros must specifically show how, in her particular case, the Government's non-disclosure placed the case in a different light so as to undermine confidence in the verdict. *See Kyles v. Whitley*, 514 U.S. 419, 435, 115 S.Ct. 1555, 1566 (1995). Merely re-stating the definition, as Cisneros has done, is not sufficient.

Cisneros has the burden of applying the definition to the facts of her case, in light of the entire trial, and demonstrating that had the government disclosed Garza's perjured testimony, there existed a reasonable probability that the jury would have found Cisneros not guilty of murder-for-hire pursuant to 18 U.S.C. § 1958. This type of showing essentially requires Cisneros to delve into the entire record, consider the jury's province to determine witness credibility, and establish that, absent the alleged perjured testimony, as to the dates and locations of the phone calls, the jury would probably not have convicted Cisneros under either prong of the murder-for-hire statute. This, Cisneros has not done. Cisneros has not met the burden of establishing prejudice sufficient to overcome the hurdle to collateral review in this Court.

### D. Ineffective Assistance of Trial and Appellate Counsel

### 1. Trial Counsels' Performance

Cisneros claims that her Sixth Amendment right to effective assistance of counsel was violated when her trial counsel: (1) failed to object to transcripts of conversations between Daniel Garza and Maria Martinez; (2) failed to develop testimony during cross examination of

29

Maria Martinez that she was aware of the fact that Garza called her from Dallas and San Antonio, but not from Mexico; (3) inadequately cross examined Daniel Garza; (4) failed to elicit testimony tending to demonstrate inconsistencies in Daniel Garza's testimony; (5) failed to request an instruction requiring the jury to find the telephone calls from Mexico were sufficiently related to the murder for hire scheme to support the jurisdictional element of 18 U.S.C. § 1958; and (6) failed to adequately request an instruction on causation.

The Government argues that Cisneros has not shown that counsel's performance was deficient, nor that counsel's errors were so serious as to deprive the defendant of a fair trial, under the *Strickland* standard.

In this case, Cisneros bears burden of showing by preponderance of evidence that she was deprived of her right to effective assistance of counsel. *See Clark v. Johnson*, 227 F.3d 273 (5th Cir. 2000). Cisneros must demonstrate that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 104 S.Ct. 2052, 2064 (1984). There is a strong presumption that counsel was competent. *See id*. at 689, 104 S.Ct. 2052. Judicial scrutiny of counsel's performance must be highly deferential. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), overruled on other grounds by *Tennard v. Dretke*, 542 U.S. 274, 124 S.Ct. 2562 (2004).

As to the deficient performance prong, Cisneros must show that counsel's performance was objectively unreasonable. *Strickland* at 688, 104 S.Ct. 2052. Decisions as to whether or not to call certain witnesses to stand, whether to ask or refrain from asking certain questions, and the like, are tactical determinations, and errors, even egregious ones, do not provide basis for post conviction relief. *United States v. Rubin*, 433 F.2d 442 (5th Cir. 1970). Defense counsel's

30

conscious and informed decision on trial tactics and strategy is not a permissible basis for a claim of ineffective assistance of counsel. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir.1997). So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance. *Moore v. Johnson*, 194 F.3d 586, 591-92 (5th Cir.1999).

As to the prejudice prong, Cisneros must show a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.1999). The mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. *Id*. Rather, the defendant must demonstrate that the prejudice rendered sentencing fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838 (1993).

In her § 2255 motion, Cisneros claims that her trial counsel was ineffective for (1) failing to object to transcripts of conversations between Daniel Garza and Maria Martinez; (2) failing to develop testimony during cross examination of Maria Martinez that she was aware of the fact that Garza called her from Dallas and San Antonio, but not from Mexico; (3) inadequately cross examining Daniel Garza; (4) failing to elicit testimony tending to demonstrate inconsistencies in Daniel Garza's testimony; (5) failing to request an instruction requiring the jury to find the telephone calls from Mexico were sufficiently related to the murder for hire scheme; and (6) failing to adequately request an instruction on causation.

Failing to object to admission of certain evidence, failing to adequately develop witness testimony, failing to adequately cross examine, and failing to request a jury instruction are within the realm of tactical determinations and do not constitute objectively unreasonable performance

31

under *United States v. Rubin*, 433 F.2d 442 (5th Cir. 1970).   A review of the trial transcript reveals that the alleged deficiencies were the result of conscious and informed decision making on trial tactics and strategy.   Examining trial counsel's perspective at the time of trial, without the distorting effects of hindsight, clearly result in the conclusion that counsel's conduct falls within the wide range of reasonable professional assistance.

### 2.  Appellate Counsels' Performance

Cisneros also claims that her right to effective assistance of counsel on appeal was violated when her appellate counsel: (1) failed to challenge the propriety of the district court's foreign commerce instruction; (2) failed to raise the issue of causation; and (3) failed to raise misconduct occurring before the jury.

The Supreme Court in *Evitts v. Lucey*, 469 U.S. 387, 396 105 S.Ct. 830, 836 (1985), held that due process requires effective assistance of counsel on appeal.   However, counsel does not have a duty to raise every colorable claim suggested by a client. *Jones v. Barnes*, 463 U.S. 745, 754 103 S.Ct. 3308, 3314 (1983).   The proper standard for evaluating ineffective assistance on appeal is that set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).   *See Smith v. Murray*, 477 U.S. 527, 535-536, 106 S.Ct. 2661 (1986).   Therefore, in order for Cisneros to be successful on this claim, she must demonstrate that: (1) counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them; and (2) there is a reasonable probability that, but for counsel's unreasonable failure, Cisneros would have prevailed on her  appeal. *See Smith v. Robbins*, 528 U.S. 259, 285 120 S.Ct. 746, 764 (2000).

### a. Failure to Challenge the Required Relationship Instruction

Cisneros contends that appellate counsel failed to challenge (or adequately challenge) on appeal the "required relationship" instruction. Cisneros raised this point on appeal as Issue No. 3, Subsection B, entitled "Cisneros' Proposed Instruction Regarding the Jurisdictional Element". This issue was addressed by the Fifth Circuit in both panel opinions and found to be without merit. In reviewing Cisneros' appellate argument on this point, it appears to be a non-frivolous, thoroughly briefed appellate point. There is no hint of any deficient performance on behalf of appellate counsel. In fact, the same language is used in Cisneros' §2255 motion, prepared by her appellate counsel, thereby belying her assertion that counsel was ineffective on this point. If Cisneros believed that appellate counsel was ineffective in drafting the argument on appeal, then Cisneros would most likely not have allowed the same counsel to replicate the same argument in the instant § 2255 motion. Cisneros has failed to meet the first prong under *Strickland*. To the extent that Cisneros claims appellate counsel was ineffective for failing to object to the omission of a required relationship instruction, Cisneros failed to object at trial and preserve this issue for appeal, therefore appellate counsel was barred from raising it.

### b. Failure to Challenge the Omission of the Causation Instruction

Cisneros argues that appellate counsel failed to challenge on appeal the lack of a "causation" instruction. As set forth in Part II., Subpart B., Section 1, of this opinion, Cisneros did not object to the omission of the causation instruction and had not preserved this error for appellate review. Cisneros' appellate counsel could not have raised this issue even if he wanted to. Although, a review of Cisneros' Appellate Brief reveals that the issue was raised on direct appeal, it was not addressed by the appeals court because it had not been preserved. Assuming arguendo, that trial counsel had preserved this error, and appellate counsel unreasonably failed to

33

raise it, the appeals court would probably not have found error, in light of the holding in *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730 (1977) (missing definition of causation is not prejudicial as the jury knew that causation was something they had to decide, based on the charge and closing arguments). Cisneros fails to demonstrate both prongs of ineffective assistance of appellate counsel under *Strickland*.

### c.  Failure to Raise Prosecutorial Misconduct

Cisneros argues that appellate counsel failed to raise on appeal the improper overruling of Cisneros' motion to dismiss the indictment due to prosecutorial misconduct before the grand jury. In order to obtain relief on this claim, Cisneros must demonstrate prejudice under *Strickland*, i.e. that had this issue been raised on appeal, there is a reasonable probability that, but for counsel's unreasonable failure, Cisneros would have prevailed. Assuming it was unreasonable for Cisneros' appellate counsel not to raise this issue on appeal, Cisneros has not shown the requisite prejudice.

During her criminal trial, Cisneros filed a motion to dismiss the indictment, seeking to invoke the supervisory power of the trial court to dismiss indictment based on the prosecutor's abuse of grand jury subpoena power in violation of FED. R. CRIM. P. 6 and sponsorship of false testimony by Agent Church.

The supervisory power of a district court can be used to dismiss an indictment on grounds of non-constitutional prosecutorial misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those "few, clear rules which were carefully drafted and approved by this Court and by Congress". *See United States v. Williams*, 504 U.S. 36, 46, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (quoting *United States v. Mechanik*, 475 U.S. 66, 74,

34

106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring in the judgment)).     Rule 6 of the

Federal Rules of Criminal Procedure contains a number of such rules.  *Id*.

The Supreme Court in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct.

2369 (1988), held that a court, invoking its supervisory power, may not dismiss an indictment

absent a showing of prejudice.  The prejudicial inquiry must focus on whether any violations had

an effect on the grand jury's decision to indict.  *Id*. at 263, 2378.  However, in cases in which the

structural protections of the grand jury have been so compromised as to render the proceedings

fundamentally unfair, prejudice is presumed.  *See Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct.

617, 88 L.Ed.2d 598 (1986)(racial discrimination in selection of grand jury); *Ballard v. United

States*, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946)(exclusion of women from grand jury).

### (1) Violations of Rule 6

Cisneros contends that the prosecutor for the Government violated FED. R. CRIM. P. 6 by

abusing grand jury subpoena power, conducting his own independent investigation, making

improper disclosures, and grand jury forum shopping.  Cisneros argues that the United States

Attorney, Mr. Mosbacker, issued three subpoenas[3], returnable to the Brownsville Grand Jury

(two for the telephone records of Maria Martinez and Daniel Garza and one for the appearance

of Agent Church), on his own authority because "there was no grand jury in Brownsville

*investigating* Cisneros."  *Cisneros' Motion to Vacate*, p. 170 (emphasis added).  Mr. Mosbacker

then transferred the case to Houston, where the grand jury returned the indictment.[4]  Cisneros

---

[3]These subpoenas were submitted as Defendant's Exhibits 28, 28A and 28B during the Pre-Trial Hearing
on April 27, 1998.  Exhibit 28 consisted of a subpoena issued by United States Attorney, Mervyn Mosbacker to
Southwestern Bell, returnable to Brownsville, Texas.  Exhibit 28A also consisted of a subpoena issued by United
States Attorney, Mervyn Mosbacker to Southwestern Bell, returnable to Brownsville, Texas.

[4]The heading on the indictment (Docket No. 1) in Criminal Case No. B-98-124, states United States District
Court for the Southern District of Texas, **Brownsville Division**.

contends that at least some of the subpoenas were made returnable to the Brownsville grand jury, but were instead returned to the Houston grand jury, thereby utilizing two grand juries.

Cisneros's arguments before the trial court were as follows:

> MR. CANALES: What I am saying, Judge, part of our motion that the Court is looking at, I am accusing the Government of Grand Jury shopping. The Grand Jury has violated Rule 6(e).
>
> THE COURT: Let's go at it this way. As you well know, there is no question they can go to any Grand Jury throughout the district to seek an indictment. The question is – and I so rule, absent you showing me something else. The question is, did you use the Grand Jury in Houston. And I gathered that you are attacking the composition or the constitution of the Grand Jury that was used in this case, which was not a Brownsville Grand Jury, is that right?
>
> MR. MOSBACKER: That is right.
>
> THE COURT: That's what you are addressing?
>
> MR. CANALES: No, Judge.
>
> THE COURT: What is it that you are addressing?
>
> MR. CANALES: What I am addressing is, I have here exhibits that will reflect that this investigation was being conducted, led by Mr. Mosbacker, investigating Ms. Cisneros, Grand Jury subpoenas were utilized out of the Grand Jury sitting in the Brownsville Division in the Southern District of Texas. Now, that Brownsville Grand Jury did not get to vote. The indictment was not presented to it. It was presented to another Grand Jury in Houston, Texas. They are utilizing two Grand Juries in this particular case. I do not know what happened where or how, but I know one thing, that I have asked and I have not seen any type of orders from this Court authorizing the Government to be able to use two Grand Juries to investigate this matter or receive information from one Grand Jury, transcripts of another Grand Jury, and all is prohibited by Rule 6(e)(3)(c)(3)(ii). And it says that while he is authorized to make a disclosure to another Grand Jury, he must get Court permission. Ans I submit to the Court that I have here exhibits, Grand Jury exhibits, of Grand Jury subpoenas, where they are utilizing two Grand Juries. How do I know perhaps he received information

36

from this Grand Jury and got no billed and he took it somewhere else and they get a bill.  They cannot do that, Your Honor.  So that's the reason I am trying to find out what happened in Houston as to what happened here.  And our motion goes to that.  I do not know –

THE COURT:        You had two Grand Juries working on this case?

MR. MOSBACKER:   Your Honor, we had subpoenas issued returnable to the Brownsville Grand Jury.  And, in fact, at least one of those subpoenas –

THE COURT:        My question is, did you have a Brownsville Grand Jury looking into this case?

MR. MOSBACKER:   No, Your Honor.  Did not receive any testimony in this case.

THE COURT:        They did not investigate this case?

MR. MOSBACKER:   No, You Honor.

THE COURT:        Your representation is that is was investigated by a Houston Grand Jury?

MR. MOSBACKER:   Your Honor, it was presented to the Houston Grand Jury, including returns of at least one of the subpoenas that was issued to the Brownsville Grand Jury.  It was transferred to Houston.

THE COURT:        Why would a Brownsville Grand Jury ask for a subpoena, seek a subpoena, if they weren't investigating the case?

MR. MOSBACKER:   Your Honor, the Assistant United States Attorney, which was me in this case, issued the subpoena.

THE COURT:        Not the Grand Jury?

MR. MOSBACKER:   That is correct, Your Honor.
4 R. 24-27


Generally, Rule 6(e) governs the secrecy and disclosure of grand jury proceedings.

Subsection (e)(2)(B) provides that matters occurring before the grand jury may not be disclosed,

37

however, subsection (e)(3) provides a list of exceptions to that rule, including disclosure to another federal grand jury. Rule 6(e)(3)(E)(i) enables the court to authorize disclosure of a grand jury matter preliminarily to or in connection with a judicial proceeding. Further, Rule 6(e)(3)(F) sets forth the manner by which such a disclosure may be obtained from the court:

> "(F) A petition to disclose a grand jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened. Unless the hearing is ex-parte -- as it may be when the government is the petitioner -- the petitioner must serve the petition on, and the court must afford a reasonable opportunity to appear and be heard to:
> (i) an attorney for the government;
> (ii) the parties to the judicial proceeding;
> (iii) any other person whom the court may designate.

As to the allegation that the Government was grand jury shopping, there is nothing under the law which prevents the United States Attorney from seeking an indictment in any division in the Southern District. As to the allegation that the disclosure of Brownsville Grand Jury matters to the Houston Grand Jury was violative of Rule 6, the rule does not require the petitioner to serve the disclosure order on defense counsel at the time of issuance. Mr. Mosbacker, the United States Attorney in the underlying criminal case, filed a disclosure order pursuant to Rule 6. Although at least some of the subpoenas issued by Mr. Mosbacker were made returnable to the Brownsville Grand Jury, the information received was then disclosed to the Houston Grand Jury in accordance with Rule 6.

MR. CANALES: The next thing, Your Honor, in that regard, we again request the Court to order the Government to provide me a copy for the purposes of this hearing of the Government's disclosure under Rule 6. They informed us day before yesterday in open court that they had filed some type of a disclosure order. Request for the Court, the Court denied me at that time my request, and we are renewing our request. If the Court refuses to provide us a copy of

38

|  |  |
|---|---|
|  | that, we ask that the Court attach it under seal for the purpose of the record. |
| THE COURT: | The disclosure of what? |
| MR. CANALES: | Mr. Mosbacker informed me that he filed a 6(e) disclosure form with the Court.  That is, people he had disclosed information from the Grand Jury.  I would like to get a copy of that request that he filed.  He will not give it to me. |
| THE COURT: | Favor the Court with it.  Have you done that? |
| MR. MOSBACKER: | Your Honor, we will do that. |
| THE COURT: | You do that. |

5 R. 3-4

As to Cisneros' allegation that an United States Attorney cannot issue a grand jury subpoena for the purposes of conducting his own investigation, she cites in support thereof *Durbin v. United States*, 221 F.2d 250, 522 (D.C. Cir. 1954).  In *Durbin*, The United States Attorney issued a subpoena whereby Mr. Durbin was directed to the Office of the U.S. Attorney and questioned by the United States Attorney and FBI Agents, but not the grand jury.  The D.C. Circuit Court held that it was improper for the United States Attorney to issue a grand jury subpoena for the purpose of conducting his own inquisition.

In this case, Mr. Mosbacker issued the subpoena on behalf of the Grand Jury sitting in the Southern District, presumably the Brownsville Division.  The subpoenas requested phone records and the presence of FBI Agent Church.  It appears that some of the phone records were returned to the Brownsville Grand Jury (later disclosed to the Houston Grand Jury) and some were returned to the Houston Grand Jury.  The record reflects that Agent Church testified before the Houston Grand Jury.  Therefore, Mr. Mosbacker did not abuse grand jury subpoena power to

conduct his own investigation, as the documents and testimony were ultimately presented to the Houston Grand Jury, who returned the indictment. It is immaterial that the grand jury sitting in Brownsville was not actively investigating Cisneros at the time when the Mr. Mosbacker issued the subpoenas.

Cisneros further argues that the materials obtained by the subpoena were not immediately turned over to any sitting grand jury and therefore were used by Mr. Mosbacker in conducting his own investigation. This argument is without merit. It is settled procedure for the government to analyze evidentiary data for the purpose of reporting back to the grand jury. *United States v. Shotwell Manufacturing Co.*, 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957). The subpoena should call for the witness to come before the grand jury, not to the United States attorney. *United States v. Hedge*, 462 F.2d 220, 222-223 (5th Cir. 1972). This does not preclude the United States attorney from interviewing witnesses in his or her office, and using summaries of those interviews as evidence before the grand jury, so long as subpoenas are not issued for the interviews. *United States v. International Paper Co.*, 457 F.Supp. 571 (S.D. Tex. 1978).

Cisneros attempts to make a distinction between the subpoena power of a United States Attorney under Rule 17 and the subpoena power of a grand jury. Rule 17 governs the issuance of subpoenas in criminal cases. The rule is not limited to subpoenas for trial. *United States v. Beckford*, 964 F.Supp.1010, 1017 n. 6 (D.C. Va. 1997) (quoting Wright & Miller, Federal Practice and Procedure § 271 (2000)). Rule 17 governs the issuance of subpoenas in all criminal proceedings in general and in grand jury proceedings in particular. *Bacon v. United States*, 449 F.2d 933, 940-941 (9th Cir. 1971).

In this case, Mr. Mosbacker issued a grand jury subpoena, not a subpoena for trial

purposes.  Pursuant to Rule 17, the grand jury subpoena was issued by the court clerk which was

signed and sealed but otherwise blank, to be filled in by the party requesting it, i.e. Mr.

Mosbacker, the United States Attorney. Cisneros contends that Mr. Mosbacker's use of the grand

jury subpoena power on behalf, of, but without direction from, an investigating Brownsville

Grand Jury resulted  in an invalid indictment which should be dismissed.  This contention is also

without merit.  A grand jury may request evidence, but the function of issuing process to obtain

it belongs to the prosecutor, who has the subpoena power to bring proof to the courthouse. *See*

*United States v. Thompson*, 251 U.S. 407, 413, 40 S.Ct. 289, 292, 64 L.Ed. 333, 342 (1920);

*United States v. Dymo Industries, Inc*., 418 F.2d 500 (9th Cir. 1969), cert. denied, 397 U.S. 937,

90 S.Ct. 946, 25 L.Ed.2d 116 (1970) (normal practice for the United States Attorney to cause

subpoenas to be issued).

It is of no significance that a different grand jury, from the one which subpoenas the

evidence, is presented with that evidence.  This procedure is common. *See United States v.*

*Thompson*, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333 (1928); *United States v. Owens-Corning*

*Fiberglass Corp.*, 271 F.Supp. 561, 566 (N.D.Cal.1967); *United States v. Culver*, 224 F.Supp.

419, 432 (D.Md.1963); *In Re Grand Jury Investigation of Banana Industry*, 214 F.Supp. 856

(D.Md.1963).  *United States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519, 522

(D.C.N.Y.1974) (fact that United States attorney's office obtained defendants' books and records

through the use of a subpoena issued in the name of a grand jury not in session returnable when

the grand jury was expected to be sitting on return date and fact that grand jury was not

consulted or notified did not render indictment invalid nor evidence obtained illegal).

Cisneros also argues that the structural protections of the grand jury were compromised

and rendered the proceedings fundamentally unfair, thereby mandating a presumption of prejudice. Cisneros fails to show exactly how structural protections were compromised in accordance with the applicable case law. It appears that Cisneros misunderstood the types structural protections, set forth by the Supreme Court, which trigger the presumption.

In order for Cisneros to demonstrate ineffective assistance of appellate counsel, she must show that she would have prevailed on this claim on appeal. Under *Nova Scotia*, Cisneros was required to demonstrate that the prosecutor's misconduct, if any, effected the grand jury's decision to indict. As the analysis above clearly delineates the shortcomings of Cisneros' claim on this issue, prejudice has not been shown.

### (2) FBI Agent Church's Grand Jury Testimony

Cisneros argues that the government engaged in non-constitutional prosecutorial misconduct by painting an unfair presentation to the grand jury and sponsoring false or perjured testimony by Agent Church. Cisneros points to five statements made by Agent Church given during his grand jury testimony which she believes conflicted with other evidence in the case which painted a false impression to the Houston Grand Jury, and was in effect, perjured testimony: (1) "--after the initial meeting, he [Garza] understood that the boy was supposed to be killed"; (2) "[Garza] crossed back over [from Mexico] sometime in the afternoon or evening. He [Garza] was not sure of the time when he came over"; (3) "[Garza] stated he always would do this [call Maria Martinez] by making collect calls from public telephones in Matamoros, Mexico"; (4) "there was activity at a safe deposit box at Texas Commerce Bank in Brownsville, Texas" [on March 3, 1993]; (5) "[the State] prosecuted or actually convicted Cisneros/Daniel Garza of the murder and the conspiracy."

42

Neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act. *See Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406 (1956). Indictments are not open to challenge upon ground that they are not supported by adequate or competent evidence and neither justice nor concept of a fair trial requires establishment of rule permitting such challenge. *Id*. The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. *See United States v. Calandra*, 414 U.S. 338, 344-45, 94 S. Ct. 613, 618, 38 L.Ed.2d 561, 569 (1974). Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *Id*. The Supreme Court in *United States v. Williams*, 504 U.S. 36, 112 S.Ct. 1735 (1992), aptly described the independence of the grand jury:

> "Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. Over the years, we have received many requests to exercise supervision over the grand jury's evidence-taking process, but we have refused them all." *Id*. at 49-50, 1743.

> Requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body. It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *Id*. at 51, 1744.

As to Cisneros' allegation of perjury by Agent Church, it is a violation of 18 U.S.C. § 1623(a) to knowingly make a material false declaration before the grand jury. The test of materiality is whether the false testimony was capable of influencing the tribunal on the issue before it. *Blackmon v. United States*, 108 F.2d 572, 573 (5th Cir. 1940); *Barnes v. United States*, 378 F.2d 646, 649 (5th Cir. 1967), cert. denied, 390 U.S. 972, 88 S.Ct. 1056, 19 L.Ed.2d 1184

43

(1968).  A district court may dismiss the indictment upon a finding that the Government

*knowingly* sponsored the perjured testimony.  *See United States v. Strouse*, 286 F.3d 767, 775

(5th Cir. 2002)(emphasis added).  Cisneros argues that the government had knowledge of the

perjured testimony because "clearly, the prosecutor in this case was every bit aware of the

evidence that existed as of the date of the grand jury".  *Cisneros' Motion to Vacate*, p. 186.

Further, Cisneros contends that the false testimony "was material because the vast majority of it

related to the two jurisdictional bases which comprised the first element of the offense of murder

for hire."  *Id*.

As to Statement No. 1, Cisneros argues that there is conflicting evidence from the state

court case that Daniel Garza was to find someone to "beat up" Joey Fischer, which was not made

available to the grand jury.  A review of the record shows that on February 5, 1998, Garza gave a

statement to the FBI, indicating that during phone conversations with Martinez, she inquired

about the job to kill Fisher.   The fact that there is other evidence which suggests that Garza was

initially asked to find someone to beat up Fischer goes to the adequacy or the competency of the

evidence, not that Agent Church fabricated his statement  "--after the initial meeting, he [Garza]

understood that the boy was supposed to be killed".

As to Statement No. 2, Cisneros argues that Garza's sworn testimony at the punishment

phase of his state trial, indicated that Garza's encounter with Olivarez occurred in the afternoon,

therefore Agent's Church's testimony (that Garza's encounter with Olivarez was evening or

afternoon) was conflicting.  It appears that Cisneros has misinterpreted Agent Church's

testimony, which relates to the time of day when Garza crossed over the border from Mexico

into the United States and does not relate to the encounter with Olivarez.  Cisneros' argument

that Agent Church fabricated the timing of the encounter is misplaced.  Even if the Court extends Cisneros' argument to reach the issue of conflicting evidence about the timing of Garza's crossing, it merely goes to the adequacy or the competency of the evidence, which is not adequate cause for dismissal of the indictment.  The fact that Agent Church stated afternoon or evening, in the alternative, does not demonstrate a material false statement. There was sufficient truthful testimony before the grand jury to support the indictment returned.

As to Statement 3, Cisneros argues that the subpoenaed phone records do not show collect calls were made to Maria Martinez, therefore Agent Church's testimony that Garza called Martinez collect from Mexico was conflicting.  The record shows that Garza was interviewed by FBI Agents Church and Vela on February 18, 1998.  The memorandum of interview reflected that Garza made collect calls to Martinez from public telephones. Later, at trial, Garza testified that he may have called Martinez collect on one occasion, but the FBI was mistaken if they wrote down that all of Garza's calls to Martinez were collect.  This conflict may have been due to misunderstanding of term "collect" calls, as trial testimony revealed that Garza made calls from "casetas" in Mexico, which the FBI Agents may have misconstrued as collect calls.  It stands however, that at the time of Agent Church's grand jury testimony, the February 18th interview, left him with the impression that Garza had made collect calls.  The fact that this testimony turned out to be in conflict with the subpoenaed phone records does not equate to perjury. Cisneros argument goes to the adequacy or the competency of the evidence, which is not adequate cause for dismissal of the indictment.

As to Statement No. 4, Cisneros argues that evidence in Cisneros' state court trial shows: (1) that bank records indicated Cisneros accessed her safety deposit box on either March 2, or

March 3, of 1993, at 10:28 a.m.; (2) Cisneros attended a doctor's appointment the morning of March 3, 1993; and (3) Martinez testified in the state case that she received the money from Cisneros on March 3, 1993, between 8:30 a.m. and 9:00 a.m.  Cisneros argues that this is in direct conflict with Agent Church's testimony that Cisneros accessed the deposit box on March 3, 1993. The state court testimony by Karen Wood Stevenson, indicated that the record of safety deposit box entry was unclear as to the date Cisneros accessed the box, but appeared to be either March 2, or March 3.  This record may have been the basis for Agent Church's testimony.  The fact that Cisneros may have attended a doctor's appointment after she paid Martinez, does not show Agent Church fabricated his testimony.  The fact that Martinez received money on March 3, 1993, before Cisneros accessed her safety deposit box does not show that Agent Church fabricated his testimony.  It is possible that Cisneros may have used other funds to pay Martinez and not funds removed from her box on March 3, 1993.  Even if the grand jury had been provided testimony that Cisneros accessed her safety deposit box on March 2, 1993, (the day before the payment was made to Martinez) that evidence would not have substantially influenced the grand jury to not indict Cisneros.  If anything, it would have strengthened the case against Cisneros.

As to Statement No. 5, Cisneros argues that the record of conviction from the state court case shows that Cisneros and Garza were only convicted of murder and not both murder and conspiracy, as testified by Agent Church.  Cisneros fails to provide an explanation as how this evidence, had it been provided to the grand jury, would have influenced their decision to indict Cisneros.  In any event, Agent Church testified, "[the State] prosecuted or actually convicted Cisneros/Daniel Garza of the murder and the conspiracy."  The use of the connector "or" makes

46

the statement somewhat ambiguous as to which crimes Cisneros was prosecuted with and which crimes she was ultimately convicted of.  The fact that this testimony is in conflict with Cisneros record of conviction, does not equate to perjury and Cisneros argument on this point goes to the adequacy or the competency of the evidence, which is not cause for dismissal of the indictment.

A review of Agent Church's statements in conjunction with the other evidence does not show them to be "false" or "material" (i.e. any misleading statements by Agent Church did not substantially influence the grand jury's decision to indict Cisneros).  The inconsistencies and conflicts appear to go to the adequacy and competency of the evidence and would not have substantially influenced the grand jury's decision to indict Cisneros.  In the event that Cisneros had shown false and material testimony was presented, Cisneros has not shown that the government had knowledge of it.

In order for Cisneros to demonstrate ineffective assistance of appellate counsel, she must demonstrate that she would have prevailed on this claim on appeal.  Under *Nova Scotia*, Cisneros must show prejudice, i.e. that the unfair presentation to the grand jury, if any, and the Government's knowingly sponsored perjury, if any, effected the jury's decision to indict.  As the above analysis exposes the weakness in Cisneros' arguments, it is clear that Cisneros has not made the requisite showing.

### IV.  Recommendation

Cisneros, pursuant to 28 U.S.C. § 2255, alleges ten violations of her constitutional rights. A thorough review of Cisneros' arguments on all points reveals they are without merit.

IT IS RECOMMENDED that Respondent's Motion to Dismiss (Docket No.5) be GRANTED and Petitioner's § 2255 motion (Docket No. 1) be DENIED.

47

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 20th day of October, 2005.

_____
John Wm. Black
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**—BROWNSVILLE DIVISION—**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CIVIL NO. B-02-191 |
| | § | |
| DORA CISNEROS | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Report and Recommendation of the United States Magistrate Judge in which he recommended that Petitioner's Motion to Vacate, Set Aside, and Correct Judgment and Sentence [Docket No. 1] be denied. That report also recommended that the Government's Motion to Dismiss [Docket No. 5] be granted. Petitioner has filed lengthy and detailed objections to the Magistrate's rulings. [Docket No. 21] Aside from the more straight-forward legal issues, this case and Petitioner's objections to the Report and Recommendation present this Court with a somewhat unique opportunity. In addition to other bases for Petitioner's motion to vacate pursuant to 28 U.S.C. § 2255, he is, sometimes directly and sometimes more implicitly, requesting this District Court to hold that the Fifth Circuit Court of Appeals and subsequently the United States Supreme Court violated her constitutional rights and/or committed error. Rarely is a district court put in such a position and it is necessary to explain the procedural history of this matter to understand portions of the Petitioner's argument and how she has called upon this Court to rule on the actions of the Supreme and Circuit Courts.

**I.**
**Background Facts and Procedural History**

This case arises out of the 1993 murder of Joey Fischer, a high school student at St. Joseph Academy in Brownsville, Texas. During the spring of 1992 Fischer began dating Cristina Cisneros,

a fellow high school student, but ended the relationship shortly thereafter. Dora Cisneros, Cristina's mother, became upset about the break-up and, after attempting to reunite the teens, went to Maria Martinez, a local fortune teller (curandera), to arrange for Fischer's murder. Martinez asked one of her other clients, Daniel Garza, to hire someone to kill Fischer.

Garza discussed hiring a killer in several telephone conversations with Martinez. According to Garza's testimony at trial he made some of those calls from Mexico. Garza eventually hired Israel Olivarez and Heriberto "Eddie" Pizana, who worked for the Cuellar crime family. On the evening of March 2, 1993, a car with Mexican license plate number "821 THE7" crossed from Mexico into Brownsville, Texas. Later that night Pizana and Ramon Palomares, another hit man for the Cuellar family, checked into the La Quinta Inn in Brownsville and the receptionist registered their car as a white Grand Marquis with a Mexican license plate number of "821 TWEX" or "821 THE7" (the receptionist's handwriting was apparently difficult to decipher). Fischer was shot and killed as he left his house for school the next morning. Interestingly, a witness testified to passing a white four-door car with a Mexican license plate near Fischer's home at the time of the murder. Shortly thereafter, Garza and Pizana collected the money for the hit from Martinez. Garza attempted to leave the money with Pizana, but he insisted Garza return with him to the La Quinta Inn and give the money directly to Olivarez. After giving the money to Olivarez, Garza noticed that Olivarez and Pizana had two cars—a white pickup truck with a black stripe and a white Ford.

Cisneros was originally tried in state court, convicted of capital murder, and sentenced to life in prison. The Thirteenth Court of Appeals sitting in Corpus Christi overturned the conviction, holding that the evidence was insufficient to support a conviction. *Cisneros v. State*, 915 S.W.2d 217 (Tex. App.—Corpus Christi 1996) *pet. ref'd* 935 S.W.2d 789 (Tex. Cr. App. 1996) (*en banc*).

The Court of Criminal Appeals affirmed, explaining that despite the fact that Cisneros "wanted her daughter's former boyfriend dead[,] engaged a fortune teller [] to find someone to kill him [and even] . . . supplied money, information, and directions [to the fortune teller]," there was not sufficient evidence to prove the individuals hired by the fortune teller were actually the ones who committed the crime. *State v. Cisneros*, 935 S.W.2d 789 (Tex. Crim. App. 1996).

Defendant was then tried and convicted under the federal murder-for-hire statute, 18 U.S.C. § 1958, in the United States District Court for the Southern District of Texas. Cisneros appealed, arguing that: (1) there was not "sufficient evidence to show that Cisneros met the interstate/foreign commerce requirement for a federal murder-for-hire conviction," (2) a new trial was necessary because the government elicited testimony about the state court murder convictions, (3) the district court erred in rejecting five of Cisneros' proposed jury instructions, (4) "the district court erred in admitting the evidence of Fischer's murder under Fed.R.Evid. 403," (5) "the conviction should be reversed because the district court failed to maintain an appearance of impartiality in its questioning of witnesses and comments made during the trial," and (6) the district court abused its discretion by "admitting Moreno's testimony under the co-conspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E)." *United States v. Cisneros*, 194 F.3d 626 (5th Cir. 1999). The Fifth Circuit affirmed the judgment of the district court, rejecting each of Cisneros arguments. *Id.* The court held that there was sufficient evidence for a jury to find that Garza made phone calls from Mexico and that this was enough to meet the interstate/foreign commerce requirement. *Id.* at 635-36. The court rejected arguments that Cisneros did not cause the telephone to be used "in furtherance" of the murder, explaining that mere "but for" causation was all that was required. *Id.* at 636. The court also pointed out that "[b]ecause these telephone calls satisfy the interstate nexus requirement, we

need not address the more complicated issue, the car travel between Mexico and Texas. *Id.* at 637.

Turning to Cisneros' arguments that the government elicited testimony regarding the state court

proceedings, the Fifth Circuit held that "[t]he admission of this testimony was not an abuse of

discretion, since there was no chance of any 'significant impact' on the jury verdict." *Id.* Evaluating

each of the jury instructions individually, the Fifth Circuit rejected each objection lodged by

Cisneros.[1]  Addressing Cisneros' argument that the district court erred in admitting evidence of

Fischer's murder, the court stated that Cisneros' "offer to stipulate to the shooting of Fischer did not

reduce the probative value of evidence of how Fischer's parents found their son, the pathologist's

testimony about Fischer's autopsy, or the photographs of Fischer's corpse." *Id.* at 639.  "The

probative value of the challenged evidence, therefore, was not substantially outweighed by the

danger of unfair prejudice." *Id.*  In response to Cisneros' arguments that "the district court failed

to maintain an appearance of impartiality," the Fifth Circuit explained that "[a] trial court has the

discretion to clarify testimony, even if that elicits facts harmful to the defendant." *Id.* at 640.  The

court further explained that any potential impartiality the jury might have suspected was cured by

the court's instruction that the it had no opinion on the case and the jury should disregard any

statements that would indicate otherwise. *Id.* at 641. Finally, the court held that admitting Moreno's

testimony under the co-conspirator exception to the hearsay rule was not error because "[t]he

_____

[1]        The first jury instruction sought by Cisneros, "that the interstate/foreign commerce connection had
to have been 'in furtherance' of the murder for hire," was rejected as it articulated an improper standard under Fifth
Circuit precedent. *Id.* at 638.  Cisneros' second requested jury instruction, which amounted to an instruction on the
burden of proof, was rejected because "the district court repeatedly emphasized that the government carried the
burden." *Id.*  The third proposed instruction, which "sought to limit the jury's consideration of tape-recorded
conversations," was not included because Cisneros failed to make a proper objection at trial. *Id.*  The fourth
instruction, which concerned the issue of causation, was rejected because it was inconsistent with Fifth Circuit
precedent. *Id.* at 639.  Finally, the fifth desired instruction, which involved the statute of limitations, was properly
rejected because "[i]ts omission did not impair Cisneros' ability to present a defense because there was no defense
under the statute of limitations. *Id.*

government met its burden of proving the co-conspirator exception to the hearsay rule by a preponderance of the evidence" by showing Moreno was a member of the Cuellar organization in which Palomares and Olivarez worked as hit men. *Id.*

On petition for rehearing, the Fifth Circuit panel applied different reasoning to certain arguments advanced by Cisneros, but reached the same conclusion, affirming the district court. *United States v. Cisneros*, 203 F.3d 333 (2000). In addressing Cisneros' argument that "the evidence did not establish that she caused the telephone to be used 'in furtherance' of the murder-for-hire," the court abandoned its previous holding that "but for" causation was all that was required, holding that Martinez' constant reminders during the telephone calls "facilitated" in bringing the murder to fruition. *Id.* at 344-45. The court also expanded on its previous holding that the district court did not err in failing to instruct the jury "that the use of the facility in foreign commerce had to have been 'in furtherance' of the murder-for-hire," explaining that the standard in the Fifth Circuit is "facilitated" or "made easier." *Id.* at 346. Thus, even though Garza's phone calls to Martinez arguably may not have been "in furtherance" of the murder-for-hire, the calls "facilitated" the murder because they allowed Martinez to advance the plot to kill Fischer. *Id.* Finally, the panel elaborated on its holding that the standard for causation argued by Cisneros was inconsistent with Fifth Circuit precedent. It ultimately decided Cisneros' proposed instruction was incorrect, finding no error on the part of the district court. *Id.* at 347. Thus, although the court's decision to grant a rehearing had the effect of vacating the opinion found at 194 F.3d 626, the only pertinent substantive changes were those discussed above.

On February 24, 2000, the Fifth Circuit, *sua sponte*, granted a rehearing *en banc*. *United States v. Cisneros*, 206 F.3d 448 (5th Cir. 2000). Although Cisneros had filed a motion for rehearing

*en banc* on virtually every point it had presented to the panel on two occasions, the court explained that the *en banc* hearing was granted to reconcile the dicta that "to satisfy the jurisdictional element, a facility must be used in an *inter* state fashion," found in *United States v. Cisneros*, 203 F.3d 333 (5th Cir. 2000), *vacating* 194 F.3d 626 (5th Cir. 2000), with the holding that *intra* state use is sufficient, found in *United States v. Marek*, 198 F.3d 532 (5th Cir. 1999). *United States v. Marek*, 238 F.3d 310, 313 (5th Cir. 2001). As pointed out in Cisneros' Petition, the *en banc* court chose only to address the conflict between *Marek* and *Cisneros* regarding the use of interstate commerce under the murder-for-hire statute.

Because the Fifth Circuit's decision to rehear the case *en banc* "had the collateral effect of vacating both panel decisions,"[2] Cisneros now argues in this § 2255 proceeding that she was denied her right to an appeal by the court's failure to reinstate either of the panel decisions. [Docket No. 1] The *en banc* decision was not the end of the procedural story as Cisneros moved for an additional rehearing of the *en banc* opinion on the remainder of her points of error and eventually sought relief from the United States Supreme Court, where her Petition for Writ of Certiorari was denied. *United States v. Garcia Cisneros*, 534 U.S. 813 (2001). In her Petition before the Supreme Court, Cisneros asked that it "grant review, vacate the Fifth Circuit *en banc* opinion as it relates to Petitioner, and remand the case with instructions that, since the *Marek en banc* decision did not address any of the material issues in Petitioner's case, the Fifth Circuit should reinstate the second Cisneros panel opinion, except as it addresses the issue taken up in the *en banc* opinion." *Pet. for Writ of Cert.*, No. 00-1526, 2001 WL 34125493 (Apr. 4, 2001). Her Petition for Writ of Certiorari was denied. *Garcia Cisneros v. United States*, 534 U.S. 813 (2001).

---

[2]     *Marek*, 238 F.3d at 313.

The record before this Court reveals three significant facts:  (1) the Fifth Circuit's first and second panel decisions addressed each issue raised by Cisneros and denied each one in turn; (2) the Fifth Circuit's second panel decision at 203 F.3d 333 vacated the first and was itself vacated by the court's *en banc* opinion in *United States v. Marek*, 238 F.3d 310 (2001); and (3) both the Fifth Circuit sitting *en banc* and the United States Supreme Court were made aware of this situation, but denied Cisneros relief.  Having been denied review by both of those courts, Cisneros now attempts to reargue before this Court most of the same issues she has already unsuccessfully argued to the Fifth Circuit.

## II.
## Petitioner's Objections

Petitioner's objections to the Report and Recommendation can be divided into four somewhat overlapping categories.  The first category is one of a factual nature, but it is used by Petitioner throughout her legal objections.  It concerns the Fifth Circuit statement in its *en banc* opinion that it was undisputed that "the hit men traveled from Mexico to Brownsville, Texas where they shot and killed Cisneros's intended victim."  238 F.3d at 314.  The second group of objections are more legal in nature and are centered around the Magistrate's use of the "law of the case" doctrine in overruling certain objections.  The third category of complaints deals with her claim that no appellate court ruled on the objections raised in her initial appeal.  The fourth category of objections is focused upon the trial court's instructions to the jury—especially those relating to the causation and required relationship instructions.

    A.    <u>Factually-Based Allegations</u>

        1.    International Travel of the Hit Men

As stated above, the Fifth Circuit maintained in its *en banc* opinion:

> The relevant facts in Cisneros also are undisputed at this juncture. . . . The hit men traveled from Mexico to Brownsville, Texas where they shot and killed Cisneros's intended victim.[3]  A jury convicted Cisneros, and she appealed.  A panel of this Court concluded that a reasonable jury could have found that: (1) the fortune teller had participated in international calls as Cisneros's agent; and (2) that those calls were sufficiently connected to the murder to be "in furtherance" of that crime.  That panel, therefore, affirmed the conviction.

*Id.* at 314.

Petitioner goes to great lengths to attack the "undisputed" statement that the hit men traveled from Mexico to Brownsville, Texas.  She disputes both the factual accuracy of the statement and the fact that it is undisputed.  She details the testimony that seems to support the conclusion that the hit men, rather than merely crossing the Matamoros/Brownsville border, actually came down to Brownsville from Dallas where they had been engaged in various enterprises for the Cuellar crime organization.  Most of this evidence was adduced at trial by the Government and was argued by the Government in its presentation to the jury.  Petitioner concludes that the Fifth Circuit was "dead wrong."

The importance of this alleged factual error, if it be so, to the Petitioner's point-of-view, is that if this factual nexus does not exist, then 18 U.S.C. § 1958 cannot be properly applied to her.  This presents this Court with at least two interesting questions: First, can a district court overrule "factual findings" made by a Circuit Court of Appeals?  Second, in this case, does it matter if the Court of Appeals was in fact "dead wrong"?  Obviously, the Fifth Circuit can and has been reversing factual findings of district courts when they are "'left with a definite and firm conviction that a mistake has been made.'"  *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 622 (5th Cir.

---

[3]     Referring the reader to the factual recitation found in the second panel decision at 203 F.3d 337-39.

2005) (quoting *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003)).  Petitioner cites no authority which would support a district court's overruling either a factual statement made by a Fifth Circuit panel or made by the Court sitting *en banc*.  While some courts might even relish the chance presented by this novel situation, this Court sees no need to avail itself of this unique opportunity.

The Circuit, in its *en banc* consideration of Petitioner's appeal, was primarily concerned with a budding conflict between two of its panels concerning the second prong of 18 U.S.C. 1958, which proscribes paying another to commit murder only if the defendant "uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce."  The panel in Petitioner's case had suggested that a facility must be used in an interstate fashion (and, therefore, presumably intrastate use of a facility would not suffice even if that facility is generally an interstate commerce facility).  The panel in *United States v. Marek*, 198 F.3d 532 (5th Cir. 1999), while divided, held that wholly intrastate use of an interstate facility was sufficient to support § 1958 jurisdiction.  The Circuit in the consolidated *en banc* appeal chose to follow the rule suggested by the *Marek* majority to the effect that the use of an interstate commerce facility "satisfies the jurisdiction requirement of prong two of § 1958, regardless of whether its use was *inter* state or wholly *intra* state.

The Circuit noted that the *Marek* panel had even considered the panel's discussion in *Cisneros*, but the *Marek* panel reasoned that due to the international telephone calls—"an activity that indisputably satisfied the jurisdictional element"—the discussion in *Cisneros* was dicta.  The *en banc* opinion also described the statements by the *Cisneros* panel as dicta and, in doing so, impliedly adopted *Marek's* reasoning.  *Id*. at 313.

9

It is that same reasoning that relieves this Court of its need to consider the factual accuracy of the above-referenced Fifth Circuit description of the path followed by the hit men or whether that path was a disputed issue. That statement is merely dicta in the *en banc* opinion. In the very paragraph containing the complained of statement the court explained that the panel decision was based upon their conclusion that the international phone calls were a sufficient nexus. *Id*. at 314. The *en banc* court then concludes:

> In *Cisneros*, on the other hand, even if we assume *arguendo*, that the statute [18 U.S.C. 1958] should be accorded the narrowest interpretation possible, we must affirm Cisneros' conviction on the strength of the international (foreign) telephone calls.

*Id*.

    2.    The Telephone Calls [4]

Clearly, the *en banc* panel relied on the phone calls for the jurisdictional basis, rather than the hit men. Perhaps in recognition of that, Petitioner also questions the phone calls. Petitioner attacks the phone calls on both a factual and a legal basis. The factual basis will be discussed here, while the legal basis (which primarily focuses on the instructions given to the jury and as a basis for an ineffective assistance claim) will be discussed below.

Factually, the controversy centers around witness Daniel Garza and the phone calls he made to Maria Martinez, Cisneros' curandera. These calls are, of course, the basis of the jurisdictional nexus as discussed above and in both panel decisions. Petitioner claims that the prosecution mislead the grand jury as to whether the phone calls were collect. Garza testified at trial that he did not

---

[4]    While this Court does not view either of the prior Fifth Circuit panel opinions as triggering the application of the "law of the case" doctrine, (*see* Section II.C), it is instructive that the vacated panel opinions found at 203 F.3d 333, 344 (5th Cir. 2000) and 194 F.3d 626, 636 (5th Cir. 1999) also reviewed the factual sufficiency of these phone calls and the issue of the so-called collect calls and found no error.

remember exactly, but could not have made more than one collect call. The witness was questioned about these inconsistencies at trial, so the jury could judge his memory and credibility. The Magistrate Judge's conclusions concerning this topic and his analysis of the applicable legal factors are accurate and are hereby adopted.

B.  Ineffective Assistance

Next, Cisneros claims that these phone conversations, and their admission at trial, is the basis for an ineffective assistance of counsel claim. Her theory is that her counsel should have: (1) objected to the transcripts; (2) cross-examined more intensively in hopes of proving the calls originated in Texas rather than Mexico; (3) emphasized Garza's inconsistencies; (4) requested an instruction demanding the jury find the phone calls be sufficiently related to the murder and/or; (5) insisted on a causation instruction. Again, the Magistrate Judge's analysis of these allegations is correct and is hereby adopted.

Cisneros follows this argument with one complaining about her appellate counsel and their alleged failure to: (1) challenge the propriety of the foreign commerce instruction; (2) raise causation as an issue; and (3) raise the alleged "misconduct" before the jury. This court adopts the opinion of the Magistrate Judge on these items. This Court understands why counsel for Cisneros puts emphasis on Agent Church's recollection that the Mexico telephone calls were collect and compares that to Mr. Garza's testimony that they were probably not collect (or at most one was collect). Cisneros, however, leaps to three conclusions which do not necessarily follow: (1) that Agent Church lied to the grand jury; (2) that the absence of collect calls necessarily destroys the international nexus which is the basis for jurisdiction; and (3) that these two events, combined with the failure of counsel to either successfully exploit them, either at trial or on appeal, equates to

ineffective assistance of counsel.

Initially, this Court notes that direct (non-collect) calls such as those recounted by Mr. Garza at trial would be sufficient under the murder for hire statute as per controlling Fifth Circuit authority. Secondly, an agent's recollection of, or notes concerning, an event can differ from a witness without either the agent or the witness committing perjury. The important factor is that both witnesses' testimony detailed international phone calls in which the murder plot was embraced. This is not only the conclusion reached by this Court, but also the one reached by the Fifth Circuit in both vacated opinions. *Cisneros*, 203 F.3d at 343; *Cisneros*, 194 F.3d at 636. Further, it is not true that any of the items complained of would support a claim of ineffective assistance of counsel. The Magistrate Judge's opinion details the evidentiary showing what one must make to succeed on a collateral attack based upon ineffective assistance of counsel.[5] Tactical strategy and determinations, even those which later prove to be in error, do not suffice. Rather, counsel's performance is considered effective so long as it is based upon adequate investigation. Further, there must be a reasonable probability (not a mere possibility) that the result would have been different, but for the alleged errors. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). This Court adopts the Magistrate Judge's conclusions with regard to the claims of ineffective assistance of trial counsel.

Petitioner also attacks the performance of her appellate counsel on the basis of the failure to adequately challenge: (1) the required relationship or "furtherance" instruction; (2) the omission of the causation instruction; and (3) the failure to raise prosecutorial misconduct. Again, the

---

[5]    Cisneros' arguments that the Magistrate's report and recommendation is "unconstitutionally restrictive" and applies the erroneous standards are unavailing. The Magistrate Judge properly applied *Strickland v. Washington*, 466 U.S. 668 (1984), and correctly found that Cisneros did not make the requisite showing to prevail on an ineffective assistance of counsel claim. After evaluating the Magistrate Judge's Report and Recommendation and Cisneros' objections thereto, this Court is satisfied that Cisneros met neither the performance prong nor the prejudice prong of *Strickland* in order to prove an ineffective assistance of counsel claim.

Magistrate Judge's Report and Recommendation discusses in detail why § 2255 relief should not be granted.[6]  As such, this Court will not retrace those footsteps.  Suffice to say that such claims have been considered in detail and found to be wanting.

    C.    <u>Law of the Case</u>

While this Court has considered the Magistrate Judge's Report and Recommendation regarding Petitioner's objections to lack of a causation and required relationship instruction, it cannot totally accept his recitation of the law and applicable facts.  With regard to the Cisneros's argument that the jury should have been instructed about the required relationship between foreign commerce and the murder for hire scheme, the Magistrate Judge relied upon the vacated Fifth Circuit opinions as establishing a prevailing law of the case standard.  The Magistrate Judge accurately described the law of the case doctrine.  Reliance on this doctrine, however, is questionable when the decision establishing such "law" has been vacated.

"The doctrine of the law of the case directs that a decision of an appellate court on an issue of law, unless vacated or set aside, governs the issue during all subsequent stages of litigation in the *nisi prius* court and thereafter on any further appeal."  *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 769 (1st Cir. 1994); *see also Cohen v. Brown Univ.*, 101 F.3d 155 (1st Cir. 1996) (citing Moore's Federal Practice § 0.404 (2d ed. 1993)).  It is well established that reconsideration *en banc* vacates a panel's decision.  5TH CIR. R. 41.3 (stating that the "effect of granting a rehearing *en banc* is to vacate the panel opinion"); *see, e.g., Hooten v. Jenne*, 786 F.2d 692, 695 (5th Cir.

---

[6]    The Fifth Circuit has held in that the failure to object to jury instructions in certain situations does not constitute ineffective assistance and this Court does not feel that the failure to object to the jury instructions in this case rose to the level of ineffective assistance.  *See, e.g., Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2003) (explaining that in order to prevail on an ineffective assistance of counsel claim an individual must show that the attorney's failure to object to the jury charged fell below an objective standard of reasonableness thereby causing prejudice as set forth in *Strickland*); *Harris v. Warden, Louisiana State Penitentiary*, 152 F.3d 430, 440 (5th Cir. 1998) (holding that trial counsel's deficient performance did not meet *Strickland's* prejudice requirement).

1986); *Longoria v. Wilson*, 730 F.2d 300, 304 (5th Cir. 1984). A vacated decision, while persuasive, is no longer binding precedent. *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 225 n.23 (5th Cir. 1998).

While arguments could be made to the contrary, most courts hold that a vacated opinion is deprived of its status such that it cannot be used to trigger the application of the law of the case doctrine. *See, e.g., Johnson v. Bd. of Educ. of the City of Chicago*, 457 U.S. 52, 53-54 (1982); *Brown v. Bryan City, OK*, 219 F.3d 450, 453 n.1 (5th Cir. 2000); *Creighton v. Anderson*, 922 F.2d 443, 449 (8th Cir. 1990); *Dorsey v. Cont'l Cas., Co.*, 730 F.2d 75 (11th Cir. 1984); *Banco Nacional de Cuba v. Farr*, 383 F.2d 166, 177-78 (2d Cir. 1967). That being the case, this Court finds the Magistrate Judge's use of the law of the case doctrine to be ill-advised and specifically chooses not to adopt or follow this line of reasoning. As such, this Court does not consider the vacated opinions to be controlling in this matter.

Despite the fact that the opinions upon which the Magistrate Judge relied were vacated (and thus do not command "law of the case" deference), they can still be instructive. *Ruhrgas*, 145 F.3d at 225, n.23. As detailed in the Magistrate Judge's opinion, the panel addressed in both opinions these very issues regarding the "furtherance" and causation instructions and rejected Petitioner's complaints each time because the requested instructions were not substantially correct and were not consistent with the law in the Fifth Circuit. [Docket No. 18] at 15-20; *Cisneros*, 203 F.3d at 346-47; *Cisneros*, 194 F.3d at 638-39. Both of those holdings are as accurate now as they were when they were written by the Fifth Circuit panels in 1999 and 2000. The *Marek/Cisneros en banc* opinion did not alter the reasoning or the law upon which both panel decisions were based. Further, as noted in the Magistrate Judge's opinion, Cisneros failed to object to the lack of an instruction on the nexus

14

requirement and instead objected only to the refusal of the trial court to use her proposed

"furtherance" instruction. Cisneros has shown no error and certainly has not shown the requisite

cause and prejudice which she must to prevail in this action. These requisites have been adequately

described in the Magistrate Judge's opinion, as well as in the two vacated Fifth Circuit opinions.

This Court, therefore, sees no reason to reiterate what has already been detailed and, while not

bound to follow those decisions, sees no valid reason why they are not accurate and why the same

reasoning should not be used here.

With respect to the issue of preservation of error and due process on the causation issue, the

Magistrate Judge has analyzed this point in great detail and this court adopts the reasoning of the

Report and Recommendation. Federal Rule of Civil Procedure 51 requires that a party objecting to

a jury instruction or the failure to give an instruction state "distinctly the matter objected to and the

grounds for the objection." FED. R. CIV. P. 51. "Where a party argues on appeal that the district

court erred in refusing to give a proffered jury instruction, that party must 'show as a threshold

matter that the proposed instruction correctly stated the law.'" *Russell v. Plano Bank & Trust*, 130

F.3d 715, 719 (5th Cir. 1997) (quoting *Federal Deposit Ins. Corp. v. Mijalis*, 15 F.3d 1314, 1318

(5th Cir. 1994)). In this case the causation instruction submitted by Cisneros was properly denied

as it was not a correct statement of the law. When the court refused to include Cisneros' proposed

instruction, Cisneros did not offer an alternative definition or object to the fact that there was no

definition in the jury instructions. When the proposed jury instruction misstates the law a district

court is "under no obligation to tinker with the flawed proposed instruction until it [is] legally

acceptable." *Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 845 (D.C. Cir. 1998). That is, "[a]

requested instruction is properly refused if it is improper, and a trial court is not required to correct

a defective request." *Bueno v. City of Donna*, 714 F.2d 484, 490 (5th Cir. 1983). Furthermore, had the court come up with its own definition of causation and included it in the jury instructions it is unlikely it would have helped Cisneros.[7] Therefore, Cisneros' proposed definition was properly refused as it was incorrect and the court's decision not to included an alternative definition did not prejudice Cisneros.

### III.
### Denial Of Cisneros's Constitutional Rights By
### The Fifth Circuit And The United States Supreme Court

The most interesting and unusual point raised by the Petitioner is her claim that her constitutional rights were denied by the appellate courts. The genesis of her claim is that the Circuit, in its *en banc* opinion, failed to address each and every point of error in its opinion and that, ultimately, the Supreme Court erred in denying her Petition for Writ of Certiorari in which she argued the Court should order the reinstatement of the second panel opinion. Cisneros' argument is as follows:

(A)    The first Fifth Circuit opinion, which did address all of her points of error, was vacated by the second;

(B)    The second Fifth Circuit opinion, which also addressed all of her points of error, was vacated by the *en banc* opinion;

(C)    The *en banc* opinion, which vacated the second panel decision, addressed only the conflict between the second Cisneros opinion and the opinion in

---

[7]    Petitioner now claims that her counsel's failure to push for an alternative definition was ineffective assistance of counsel. This is not accurate. Indeed, one can postulate many reasons for not objecting and insisting on the inclusion of a definition of cause. One strategic reason readily comes to mind. At the time Petitioner's own offered definition had been refused. That being the case, counsel could have assumed, with near certainty, that any definition the court would give would be less favorable considering her view of the case than the one they proposed. With no definition counsel would still have the latitude to argue that no cause existed and would not be harmed by a more restrictive definition. To second-guess that decision—which may have been the height of "Monday-morning quarter-backing," a process the Supreme Court wisely counseled against in *Strickland. Strickland*, 466 U.S. at 689; *see also United States v. Molina-Uribe*, 429 F.3d 514, 520 (5th Cir. 2005).

*United States v. Mare*k, 198 F.3d 352 (5th Cir. 2001);

(D)     Despite the affirmance of the trial court by the Circuit sitting *en banc*, it denied Cisneros's "meaningful appellate review" and worked a "manifest injustice" and in effect denied Cisneros her right to "meaningful review" and "due process."

(E)     The Supreme Court, by denying her petition for certiorari, compounded the error by failing to correct the alleged Fifth Circuit error.

It is not clear whether Petitioner is objecting to the Magistrate's Report and Recommendation on this issue or she has chosen to accept his Report in this regard and merely concentrate her complaints on his use of the "law of case" doctrine. In an abundance of caution, this Court will address this somewhat unusual complaint.

Factually, this Court would note that Cisneros has had more appellate review, quantitatively speaking, than most litigants. She has had three judges consider all of her points of error and write one opinion. Those same three jurists granted a rehearing, reconsidered those points, and wrote a new opinion. Then the entire Fifth Circuit voted a rehearing *en banc* and heard her case, including her motion for rehearing. She then filed a petition for writ of certiorari, which was denied by the Supreme Court, in which she raised the subject matter of the panel opinions. Now, in addition to those judges, she has had a United States Magistrate Judge and a different United States District Judge consider her objections. Thus, in terms of sheer numbers, Cisneros has had almost the maximum number of judges one can possibly have review her case.

The Circuit sitting *en banc* ruled that "we therefore affirm both appellants' [*Marek* and *Cisneros*] convictions and sentences." *Marek*, 238 F.3d at 323. To affirm those convictions, the court had to have given due consideration to any points raised. This Court is unaware of any requirement that an *en banc* panel of the Fifth Circuit write an opinion addressing each point raised

17

before the Panel or each point raised in a motion for rehearing.  The *en banc* court also stated "we hold that both Cisneros's and *Marek's* murder for hire transactions violated 18 U.S.C. § 1958. Cisneros did so by causing her agent to make qualifying telephone calls between the United States and Mexico." *Id*.

This Court has not been provided with any authority holding that each opinion of an *en banc* appellate court must address each point of error <u>or</u> reinstate a vacated opinion.  This Court finds that the due process rights of Cisneros have not been violated.  She has had more than twenty-four appellate judges (three of whom considered her case on three separate occasions), two District Judges, and one United States Magistrate Judge consider the merits of her case.  Both panel decisions considered all of her points of error, and all appellate judges considered these points when they addressed her motions for rehearing and petition for writ of certiorari.  Otherwise, they could not have affirmed her conviction.  There is <u>no</u> requirement for a court to reduce each such consideration to writing nor is there a requirement that the court reinstate a Circuit Panel opinion, which was vacated by virtue of rehearing *en banc*—especially when one considers Cisneros moved for rehearing *en banc*.  In effect, she is complaining because the result of the rehearing *en banc* was not what she wanted.  Cisneros was not deprived of the opportunity to have all her claims raised before the Supreme Court, merely by the failure to write on them by the Fifth Circuit sitting *en banc*. She was free to raise these issues in her petition for certiorari and, if granted, could have had each reviewed despite the Fifth Circuit's failure to address these in writing in the *en banc* opinion.

This holding is not merely an exercise in the obvious as it directly applies to at least two

portions of the Magistrate Judge's report to which she objects.[8]  Cisneros complains, as discussed above, about the Court's failure to include her proposed causation issue.  She admits that she appealed this issue and obtained relief in neither the panel decisions nor the *en banc* decision.  She writes that "the objection was preserved on this appellate point, which was raised in full in the prior briefing to the Fifth Circuit."  [Docket No. 21] at 17.  The fact that the panel decision, which addressed in writing and denied Cisneros relief on this point, was vacated does <u>not</u> mean this point has not been considered or ruled upon.  This affirmance of her conviction by the *en banc* court was a denial of this point of error notwithstanding the fact that the Circuit chose not to write on that issue.

Similarly, Cisneros's objection as to her proposed "furtherance" instructions were also briefed, heard and rejected by the Court of Appeals.  While this Court agrees it is not bound by, and will not apply, the "law of the case" doctrine, Petitioner's conclusion that she has never had a "full and fair opportunity" for review is patently false.  Her complaints have been considered by two panels, the Fifth Circuit *en banc*, and the United States Supreme Court.  Each court denied her relief. Cisneros concludes:

> [I]t is entirely probable that Cisneros's jury convicted her without any finding that either alleged act of foreign commerce (car travel or phone car) facilitated (or was "in furtherance of") the "murder for hire scheme."

To suggest this was not considered by the Court of Appeals ignores both the vacated panel opinions <u>and</u> the *en banc* opinion.  As quoted above, the Court *en banc* wrote:

---

[8]       It could be argued, however, that the refusal to reinstate the opinion of the second panel could never be harmful error because that opinion affirmed her conviction just as the *en banc* decision did.  Thus, if the relief she requested had been granted either by the Fifth Circuit *en banc* or the Supreme Court and the panel decision reinstated, she would still be convicted.  Her argument that by their failure to reinstate the second panel decision the Fifth Circuit compromised her rights was presented in her Petition for Writ of Certiorari and denied by the United States Supreme Court.  This Court feels no compunction to hold that the Supreme Court committed error in issuing its denial.

[Cisneros violated the murder for hire statute] by causing her agent to make qualifying telephone calls . . . thereby using a facility in foreign commerce to facilitate a murder for hire.

These issues were obviously before the panel in both of its decisions and before the court sitting *en banc*. Cisneros admits the error was presented and was contained in her briefing to the Fifth Circuit. [Docket No. 21] at 23. She cannot now complain that her arguments were not accepted by a majority of that court. Simply because arguments that were put forth to the court were not accepted does not mean that they were not considered—even if their ultimate rejection was not detailed in an opinion.

Matters that have been rejected on appeal cannot be re-attacked collaterally pursuant to 28 U.S.C. § 2255. *Vernell v. United States*, 559 F.2d 963, 964 (5th Cir. 1977); *Del Genio v. United States*, 352 F.2d 304 (5th Cir. 1965).

## IV.
## Conclusion

With the few exceptions noted above, the report and recommendation of the Magistrate Judge is adopted. The Respondent's Motion to Dismiss [Docket No. 5] is **GRANTED** and the Petitioner's § 2255 motion is **DENIED**. The Court finds no merit to her claim that her conviction was marred by constitutional infirmities and/or ineffective counsel.

Signed this 28th day of September, 2006.

Andrew S. Hanen
United States District Judge

2255, APPEAL, CLOSED, MAG

# U.S. District Court
## SOUTHERN DISTRICT OF TEXAS (Brownsville)
## CIVIL DOCKET FOR CASE #: 1:02-cv-00191

Cisneros v. USA
Assigned to: Judge Andrew S. Hanen
Referred to: Magistrate Judge John William Black
Demand: $0
Case in other court: Criminal Case, CrB-98-00124-01
Cause: 28:2255 Motion to Vacate / Correct Illegal Sentenc

Date Filed: 09/30/2002
Jury Demand: None
Nature of Suit: 510 Prisoner: Vacate
Sentence
Jurisdiction: U.S. Government
Defendant

**Petitioner**

**Dora Cisneros**                          represented by  **David L Botsford**
Attorney at Law
1307 West Ave
Austin, TX 78701
512-479-8030
Fax: 512-479-8040
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J A Tony Canales**
Canales & Simonson
2601 Morgan Ave
PO Box 5624
Corpus Christi, TX 78405
361-883-0601
Fax: 361-884-7023
Email:
tonycanales@canalessimonson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**United States of America**                represented by  **James L Turner**
US Attorneys Office
PO Box 61129
Houston, TX 77208-1129
713-567-9361
Fax: 713-718-3302
Email: jim.turner@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paula C Offenhauser**
US Attorneys Office

P O Box 61129
Houston, TX 77208
713-567-9364
Email: paula.offenhauser@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/30/2002 | 1 | MOTION to vacate under 28 U.S.C. 2255 by Dora Cisneros, Motion Docket Date 10/20/02 [1-1] motion , filed. Exhibits in support to motion attached. (ogutierrez) Modified on 10/03/2002 Additional attachment(s) added on 1/24/2006 (mperez, ). (Entered: 10/03/2002) |
| 09/30/2002 | | CASE REFERRED to Magistrate Judge John W. Black (ogutierrez) (Entered: 10/03/2002) |
| 10/04/2002 | 2 | ORDER Response to motion reset to 12/4/02 for [1-1] motion to vacate under 28 U.S.C. 2255 , entered; Parties notified. ( signed by Judge Filemon B. Vela ) (ogutierrez) (Entered: 10/04/2002) |
| 10/04/2002 | | CASE NO LONGER REFERRED TO Magistrate Judge John W. Black (ogutierrez) (Entered: 10/04/2002) |
| 12/03/2002 | 3 | MOTION for leave to extend time to file response by USA, Motion Docket Date 12/23/02 [3-1] motion , filed. (ogutierrez) (Entered: 12/03/2002) |
| 01/17/2003 | 4 | ORDER granting [3-1] motion for leave to extend time to file response , entered; Parties notified. ( signed by Judge Filemon B. Vela ) (ogutierrez) (Entered: 01/17/2003) |
| 01/21/2003 | 5 | ANSWER to Complaint by USA (Added attorney ), filed. (ogutierrez) (Entered: 01/22/2003) |
| 01/21/2003 | 5 | MOTION to dismiss by USA, Motion Docket Date 2/10/03 [5-1] motion , filed. (ogutierrez) (Entered: 01/22/2003) |
| 01/29/2003 | 6 | MOTION to extend time to file reply by Dora Cisneros, Motion Docket Date 2/18/03 [6-1] motion , filed. (ogutierrez) (Entered: 01/30/2003) |
| 02/07/2003 | 7 | ORDER granting [6-1] motion to extend time to file reply reset answer due for 3/25/03 for USA , entered; Parties notified. ( signed by Judge Filemon B. Vela ) (ogutierrez) (Entered: 02/07/2003) |
| 03/25/2003 | 8 | REPLY to [5-1] answer, motion to dismiss, [5-1] by Dora Cisneros , filed. (ogutierrez) (Entered: 03/25/2003) |
| 03/26/2003 | 9 | MOTION with memorandum in support for discovery by Dora Cisneros, Motion Docket Date 4/15/03 [9-1] motion , filed (ogutierrez) (Entered: 03/26/2003) |
| 04/21/2004 | | In accordance with General Order 2004-2, this case is transferred to Hon. Judge Andrew S. Hanen (rpinales) (Entered: 04/21/2004) |
| 08/19/2004 | 10 | ORDER, each party shall file with the court by September 3, 2004, a |

| | | |
|---|---|---|
| | | letter listing any and all motions, issues and/or pleadings whoch need the court's attention. If no such letters are recieved or if all letters indicate no pending matters, the court intends to close this file. If either side wishes to reply to the leter filed by its opposition, they may do so by letter if filed by September 17, 2004..( Signed by Judge Andrew S. Hanen ) Parties notified.(dahumada, ) (Entered: 09/05/2004) |
| 08/24/2004 | 12 | Correspondence by Dora Cisneros from Attorney David L. Botsford in re: addressing issues posed by Order of August 19, 2004, filed. (mperez, ) (Entered: 09/05/2004) |
| 09/02/2004 | 11 | ORDER REFERRING CASE to Magistrate Judge John William Black for all pending matters. Signed by Judge Andrew S. Hanen ) Parties notified. (mperez, ) (Entered: 09/05/2004) |
| 05/16/2005 | 13 | ORDER denying 9 Motion for Discovery .( Signed by Judge John William Black ) Parties notified.(rpinales, ) (Entered: 05/16/2005) |
| 05/26/2005 | 14 | Cisneros' Objections to the Magistrate Judges Denial of Her Motion for Discovery, and MOTION for Reconsideration of 13 Order on Motion for Discovery, or in the alternative, Motion for Interlocutory appeal and stay of proceedings pending appeal by Dora Cisneros, filed. Motion Docket Date 6/15/2005. (Attachments: # 1 Proposed Order)(rpinales, ) (Entered: 05/26/2005) |
| 06/03/2005 | 15 | RESPONSE to 14 MOTION for Reconsideration of 13 Order on Motion for Discovery, filed by United States of America. (Turner, James) (Entered: 06/03/2005) |
| 06/09/2005 | 16 | CISNERO'S Reply to the Government's Response to Cisneros 14 Objections and Motion for Reconsideration, filed. (bvasquez, ) (Entered: 06/09/2005) |
| 09/09/2005 | 17 | ORDER, entered. The court has considered the matter and believes that the objections are without merit and that the discovery is inappropriate under the particular facts of this case. Accordingly, Cisneros' "objections" to the United States Magistrate Judge's Order of May 16, 2005, are hereby overruled. The matter is referred back to the United States Magistrate Judge with the directive to continue the consideration of the 2255 motion which has yet to be addressed.( Signed by Judge Andrew S. Hanen ) Parties notified.(mperez, ) (Entered: 09/09/2005) |
| 10/20/2005 | 18 | REPORT AND RECOMMENDATIONS Objections to R&R due by 11/3/2005.( Signed by Judge John William Black ) Parties notified. (mperez, ) (Entered: 10/20/2005) |
| 11/01/2005 | 19 | Emergency MOTION for Extension of Time to File Petitioner's Objections to the "Magistrate Judge's Report and Recommendation by Dora Cisneros, filed. Motion Docket Date 11/21/2005. (Attachments: # 1 Exhibit 1# 2 Proposed Order)(dahumada, ) (Entered: 11/01/2005) |
| 11/03/2005 | 20 | ORDER granting 19 Emergency Motion for Extension of Time to File Petitioner's Objections to the "Magistrate Judge's Report and Recommendation." The Court has considered the matter and believes that an extension of tiem to file objections until November 30, 2005, is appropriate. It is therefore ORDERED that the deadline for Cisneros to |

| | | file objections to the "Magistrate Judge's Report and Recommendation" is hereby extended until November 30, 2005.( Signed by Judge Andrew S. Hanen ) Parties notified.(mperez, ) (Entered: 11/03/2005) |
|---|---|---|
| 11/29/2005 | 🌐 21 | PETITIONER CISNEROS' OBJECTIONS to 18 Report and Recommendations, filed by Dora Cisneros. (Attachments: # 1 Objections to R & R Continued)(bvasquez, ) (Entered: 11/29/2005) |
| 09/28/2006 | 🌐 22 | MEMORANDUM OPINION AND ORDER GRANTING 5 Motion to Dismiss and DENYING 1 Motion to Vacate, Set Aside, and Correct Judgment and Sentence. The Report and Recommendation of the Magistrate Judge is ADOPTED. The Court finds no merit to her claim that her conviction was marred by constitutional infirmities and/or ineffective counsel. (Signed by Judge Andrew S. Hanen) Parties notified. (rnieto) (Entered: 09/28/2006) |
| 11/21/2006 | 🌐 23 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 17 Order,,, 13 Order on Motion for Discovery, 22 Memorandum & Opinion,, 18 Report and Recommendations by Dora Cisneros (Filing fee $ 455), filed.(bcampos, ) (Entered: 11/21/2006) |
| 11/21/2006 | 🌐 | USCA Appeal Fees received $ 455, receipt number 121985 re: 23 Notice of Appeal, filed.(bcampos, ) (Entered: 11/21/2006) |