IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DORA CISNEROS,                          §
      Petitioner,                       §
                                        §
V.                                      §        Criminal No. B-98-124-01
                                        §        Civil Action No. B-02-191
UNITED STATES OF AMERICA,               §
      Respondent.                       §

## PETITIONER'S APPLICATION TO THE DISTRICT COURT FOR CERTIFICATE OF APPEALABILITY

TO THE HONORABLE ANDREW S. HANEN, UNITED STATES DISTRICT JUDGE:

      Comes now Petitioner, DORA CISNEROS, by and through her counsel of record, David L. Botsford and Tony Canales, and pursuant to 28 U.S.C. § 2253 and Rules 4(a) and 22(b), Federal Rules of Appellate Procedure, presents this her Motion for Certificate of Appealability from this Court's Memorandum Opinion and Order of September 28, 2006 (Doc #22) (adopting and modifying the Magistrate Judge's Report and Recommendation of October 20, 2005 (Doc #18)), this Court's Order of September 9, 2005 (Doc #17) (overruling Cisneros' objections to the Magistrate's order of May 16, 2005 (Doc # 14), denying her Motion for Discovery, and Motion for Reconsideration, or, In the Alternative, Motion for Interlocutory Appeal and Stay of Proceedings Pending Appeal(Doc #9), and the Magistrate's Order Denying Motion for Discovery dated May 16, 2005 (Doc #13), and as grounds therefor, would respectfully show this Honorable Court the following:

## I.

## Certificate of Appealability Standard

      Rule 22(b), Federal Rules of Appellate Procedure, provides that when an "applicant files a notice of appeal, the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue." Fed. R. App. Proc. 22(b) (1) (2004).  The certificate or statement is then forwarded to the appellate court along with the notice of appeal and file of proceedings in the district court. *Id.*; *see United States v. Youngblood*, 116 F.3d 1113, 1114 (5th Cir. 1997) (finding that district court must make first finding on certificate of appealability).

      The standard for obtaining a certificate of appealability is identical to the standard for the

former certificate of probable cause to appeal. *Slack v. McDaniel*, 120 S.Ct. 1595, 1603 (2000) ("§ 2253 is a codification of the CPC standard announced in *Barefoot v. Estelle*, 463 U.S., at 894, 103 S.Ct. 3383."). A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2004). In addition, the certificate must "indicate which specific issue or issues satisfy" this standard. 28 U.S.C. § 2253 (c)(3). According to the Supreme Court, a petitioner need not show a likelihood of prevailing on the merits to obtain a certificate. *Barefoot*, 463 U.S. at 893. Rather, a certificate should issue if the petitioner can show that "the issues are debatable among jurists of reason; that a court **could** resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (citations and internal quotation marks omitted, emphasis in original).

The Supreme Court's emphasis (on *could*) indicates that a petitioner need not show that any other court in fact *has resolved* the issues differently. He must only suggest a basis upon which the issues *could* be resolved differently by reasonable jurists. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). "The question is the debatability of the underlying claim, not the resolution of that debate." *Id.* at 342. The importance of an issue or the fact that it is one of first impression may also mean that it qualifies for a certificate of appealability because it "deserve[s] encouragement to proceed further." *Barefoot*, *supra*; *Houston v. Lack*, 487 U.S. 266, 269 (1988). In essence, a certificate of appealability "generally should indicate that an appeal is not legally frivolous." *Barefoot*, 463 U.S. at 894; *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995) (same, citing *Barefoot*). This Court should grant certificate of appealability unless the issue is "squarely foreclosed by statute, rule, or authoritative court decision, or is lacking any factual basis in the record of the case." *Barefoot*, 463 U.S. at 894

.

2

## II.

### Certificate of Appealability Issues

**First COA Issue: Whether a reasonable jurist could find that Cisneros was denied her rights to due process and a meaningful appeal by the Fifth Circuit's failure to restore those parts of its second panel decision not inconsistent with its holding in *Marek*.**

The first five claims in Cisneros' Motion to Vacate are treated together by this Court. They all pertain to the Fifth Circuit's failure to finally adjudicate her claims on direct appeal. This Court initially finds significant that the United States Supreme Court denied certiorari on Cisneros' direct appeal, asserting that "both the Fifth Circuit sitting *en banc* and the United States Supreme Court were made aware of this situation [the vacating of the panel decisions treating Cisneros' specific claims], but denied Cisneros relief." Memorandum Opinion and Order at 7. The relief requested — reinstatement of Cisneros' panel opinion, except as to the issue taken up in the *en banc* opinion — was sought in Cisneros' final request for rehearing *en banc* in the Fifth Circuit and Cisneros' subsequent certiorari petition.

This Court stretches in suggesting that the Supreme Court's denial of certiorari touched upon the merits of the question whether Cisneros' rights to due process and a meaningful appeal were violated by the *en banc* Fifth Circuit's failure to reinstate the second panel decision. "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case." *Missouri v. Jenkins*, 515 U.S. 70, 85 (1995) (quoting *United States v. Carver*, 260 U.S. 482, 490 (1923)). "The 'variety of considerations [that] underlie denials of the writ' . . . counsels against according denials of certiorari any precedential value." *Teague v. Lane*, 489 U.S. 288, 296 (1989). The Supreme Court's denial of certiorari itself does not signal whether Cisneros' rights to due process and meaningful appellate review were violated. Furthermore, the Supreme Court Rules limit the Supreme Court's ability to accept cases for certiorari review merely in order to correct "erroneous factual findings or the misapplication of a properly stated rule of law." Sup. Ct. R. 10. The *Marek* decision did both of these things, introducing the egregiously erroneous factual finding that the killers came to Brownsville from Mexico, rather than Dallas, and failing to apply the routine practice

of restoring panel decisions not in conflict with the *en banc* decision.

A reasonable jurist could disagree with this Court's ultimate finding that "[s]imply because arguments that were put forth to the [appellate] court were not accepted does not mean that they were not considered—even if their ultimate rejection was not detailed in an opinion."  Order at 20. Concomitantly, a reasonable jurist could disagree with this Court's similar conclusion that "[t]he fact that the panel decision, which addressed in writing and denied Cisneros relief on this point, was vacated does <u>not</u> mean this point [was not] . . . ruled upon" in the *en banc* affirmance of conviction, even though the *en banc* Court "chose not to write on that issue."  Order at 19.

The premise underlying these findings is erroneous.  That premise is that an *en banc* court need not reinstate those parts of a vacated panel opinion which the Court wishes to survive extinction.  Order at 18 (stating there is no "authority holding that each opinion of an *en banc* appellate court must address each point of error <u>or</u> reinstate a vacated opinion"); *see* Objections at 7 (citing Report at 20) (the Magistrate asserting that no authority had been presented requiring an *en banc* court to re-address all points previously reviewed in a panel opinion or to specifically reinstate parts of the vacated panel opinion).  Objections at 7 (citing Report at 20).

Numerous cases hold that when a judgment is *vacated*, everything in the decision is *extinguished*.  *See, e.g.*, cases cited in Objections at 7-10.  Thus, when *en banc* courts rule, they explicitly reinstate those parts of the previous panel opinions that they wish not to be *extinguished*. *E.g., Clark v. Stalder*, 154 F.3d 186, 187 (5th Cir. 1998) (en banc) ("All parts of the panel opinion except for Part III and related portions of Part V are hereby reinstated."); *United States v. Calderon-Pena*, 383 F.3d 254, 256 (5th Cir. 2004) (en banc) ("We voted this case en banc to resolve issues related to the application of the sixteen-level sentence enhancement, which was the ground urged in the petition for rehearing. We now reinstate that portion of the panel opinion . . . that rejected Calderon-Pena's attempt to collaterally attack his prior removal."); *Kinney v. Weaver*, 367 F.3d 337, 349 n.13 (5th Cir. 2004) (en banc) ("With respect to the plaintiffs' state law claim, we must apply the Texas law of official immunity, which differs slightly from the federal standard.  ***<u>Since we reinstate the portion of the panel opinion that dealt with the state law claim, we do not discuss</u>*** official

immunity under Texas law in today's opinion."); *id.* at 374 ("The panel affirmed the district court's denial of summary judgment on the state law claim. ***As the issues on rehearing centered upon the § 1985 and First Amendment claims, we now reinstate those portions of the panel opinion that rule on the due process and state law claims***, namely Parts IV.C and V.") (emphases added); *United States v. Herrera*, 313 F.3d 882, 885 (5th Cir. 2002) (en banc) ("For the foregoing reasons, the conviction for violation of 18 U.S.C. § 922(g)(3) (count 16) is AFFIRMED. For the other two counts of conviction (1 and 14), the applicable portions of the panel opinion, 289 F.3d at 314-19, are reinstated. Therefore, the judgments on all three counts are AFFIRMED."); *McClendon v. City of Columbia*, 305 F.3d 314, 321 n.3 (5th Cir. 2002) (en banc) ("***Because the portion of the panel opinion affirming summary judgment in favor of the City is soundly reasoned*** and does not implicate the same unsettled questions of law as the portions of that opinion addressing the claims against Detective Carney, ***we REINSTATE that portion of the panel opinion*** affirming summary judgment in favor of the City.") (emphasis added).

There are numerous additional examples of the *en banc* Fifth Circuit recovering those parts of vacated panel opinions that the Court wishes to retain as rulings in the case. Normally, the Court reinstates those parts that deal with issues other than the issue granted *en banc* review and that the Court deems "soundly reasoned." *McClendon*, *supra*. This is true in mixed cases as well as singular ones. *See, e.g., United States v. Longoria*, 298 F.3d 367, 371 n.4 (5th Cir. 2002) (en banc). In *Longoria*, the *en banc* Court granted review on an *Apprendi* issue that it found presented in two cases, *Longoria* and *Gonzalez*). The Court ultimately affirmed the convictions, and simultaneously reinstated those parts of the underlying vacated *Gonzalez* decision that were unrelated to the *Apprendi* issue. *Id.* ("In the alternative, Gonzalez contended that his guilty plea should be vacated as uninformed and involuntary. . . . The panel determined these arguments to be without merit and affirmed Gonzalez's conviction. . . . We reinstate this portion of the *Gonzalez* opinion.").

It is pure speculation on the part of this Court to maintain that the *Cisneros en banc* Court reached the merits of the issues in Cisneros' case that were not granted *en banc* review and that, somehow hidden in the *en banc Marek* opinion, there is an implied adjudication of those claims.

Clearly what happened is that the *en banc* Court was interested primarily in resolving an issue presented in *Marek* and, observing the circuit split caused by the *Cisneros* panel, tacked on the *Cisneros* case in its consideration of the issue.  Resolving the *en banc* issue, the Fifth Circuit merely failed in an apparently unprecedented way to reinstate the vacated, unrelated, extinguished *Cisneros* issues.

A reasonable jurist could find that the *en banc* Fifth Circuit's failure to reinstate the issues deprived Cisneros of a judgment or decision on those issues that could be reviewable by the Supreme Court on certiorari, because the second panel decision was a "simply a nullity."  Thomas Fowler, *Holding, Dictum . . . Whatever*, 25 N.C. Cent. L. J. 139, 157 (2003); William Atkins*, The History and Subsequent Demise of Vacatur Upon Settlement by the Federal Circuit*, J. Pat.& Trademark Off. Soc'y 295, 298 & n.14 (1996) ("Virtually all U.S. Courts of Appeal have likewise held that vacated judgments should not be considered persuasive authority, or, at least, have no stare decisis effects."); *Chandler v. System Council U-19*, No. CV85-AR-1948-S, slip op. at 4 (N.D. Ala. Oct. 20, 1986), available in LEXIS, Genfed Library, Dist File ("A decision which is vacated has no precedential value, and for all intents and purposes never existed"); *United States v. Sarmiento-Rozo*, 592 F.2d 1318, 1321 (5th Cir. 1979) (vacatur "removes any res judicata or precedential effect which the judgment might otherwise have").

This denied Cisneros a "meaningful appeal" whether or not this Court would now believe that, had the Fifth Circuit properly treated the case, it would have reinstated its prior treatment of the issues *verbatim*, once again affirming the conviction.  No matter how many judges are believed to have perused Cisneros' case, she was left without any appellate decision on the principal issues in her case, and this deprivation of an appellate decision essentially foreclosed review by the Supreme Court on those issues.

In any event, there should be no question among reasonable jurists that, because the second panel decision was vacated, there presently was no bar on this Court's review of the issues therein on the merits.  COA should be granted, therefore, on this "First COA Issue."  And, furthermore, there should be no doubt that neither *Marek* nor the vacated panel decisions in *Cisneros* have any

res judicata or precedential bearing on whether COA should be granted on the Second through the Sixth COA Issues presented herein. To the extent that they are relevant at all, the panel decisions may be considered as providing dicta — an illustration of how one set of jurists might have resolved the issues.

> **Second COA Issue: Whether a reasonable jurist could find that the evidence upon which Cisneros was convicted is legally insufficient, in violation of her right to due process under the Fifth Amendment.**[1]

With good reason, this Court does not attempt to find sufficiency based upon a jurisdictional nexus formed by the automobile that traveled across the international boundary. Memorandum Opinion at 10. The Government never proved facts underlying that theory of nexus beyond a reasonable doubt — i.e., that a car which passed across the international bridge identified by plates similar to a car tied to the hit men was, in fact, the car associated with the hit men, or, even assuming that to be true, that anyone in the car when it crossed the international bridge had anything to do with the offense for which Ms. Cisneros was charged.

This Court relies solely upon the "strength of the international (foreign) telephone calls" between Daniel Garza and the curandera, Maria Martinez, as establishing the jurisdictional nexus. Memorandum Opinion at 10 (quoting *United States v. Marek*, 238 F.3d 310, 314 (5th Cir. 2001)). Strikingly, this Court never addresses the fact that the Government never proved that any alleged phone call from Garza in Mexico to Martinez in Texas, in which anything related to the alleged murder-for-hire scheme was discussed, occurred within the time frame allowed by the statute of limitations.[2]

A reasonable jurist, therefore, could conclude that this Court's finding of sufficiency in the phone calls' formation of a jurisdictional nexus is in error. Neither this Court nor the Magistrate opted to address the Government's failure to provide proof within the limitations period. The

---

1 This COA Issue incorporates CLAIMS FOR RELIEF NOS. 1 and 5 of the Section 2255 Motion.

2 As reflected at page 39 of Cisneros Motion To Vacate, "[a]ll of Garza's alleged calls from Mexico occurred prior to February 14, 1993, which the government conceded to be accurate in its post oral argument submission at page 3, yet the indictment was not returned until February 23, 1998", more than five years after the commission of the offense of murder for hire was completed.

Second panel addressed limitations as follows:

> In this case, Cisneros's indictment charged her with "caus[ing] another to ··· use a facility in foreign commerce ··· with the intent that the murder of Albert Joseph (Joey) Fischer, Jr. be committed ··· as consideration for a promise and agreement to pay, *and the receipt of, $3,000.*" The crime, as charged and tried by the government, was complete upon the receipt of the $3,000 payment. The government presented uncontroverted testimony that Martinez paid Garza $3,000 on the day of the murder, March 3, 1993. Cisneros was indicted less than five years later, on February 23, 1998. The statute of limitations, therefore, was not a defense available to Cisneros.[FN13]
>
> FN13. Cisneros's additional contention, that evidence of the foreign calls fell outside the statute of limitations, is meritless:
>
>> The statute of limitations is a defense to prosecution, not a rule of evidence. Therefore, once prosecution is timely instituted, the statute of limitations has no bearing on the admissibility of evidence. It would be a bizarre result indeed if a crime properly prosecuted within the limitations period could not be proven because an essential element, such as intent, could only be established by proof of incidents occurring outside the period.
>
> *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir.1975). In addition, elements of a continuing offense, such as we have here, may fall outside the statute of limitations period without running afoul of the statute of limitations. *United States v. Bustamante,* 45 F.3d 933, 942 (5th Cir.1995).

*United States v. Cisneros*, 203 F.3d 333, 347-48 (5th Cir. 2000). The Panel ruled that the crime in 18 U.S.C. § 1958 is complete when the payment transaction occurs. *Id.* It added that, because (1) the statute of limitations is not a rule of evidence and (2) the crime of murder-for-hire is a continuing offense, if an element might fall outside the limitations period, where the Government otherwise had met the statute, jurisdiction would not be defeated.

Reasonable jurists clearly would dispute the Panel's characterization of when a crime under 18 U.S.C. § 1958 is "complete." *Toussie v. United States*, 397 U.S. 112, 115 (1970) (holding that the statute of limitations begins to run when an offense is complete). Essentially all jurisdictions concur that the limitations period begins to run "when every element in the statutory definition of the offense has occurred." 4 WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 18.5(a) (1999). The elements of murder-for-hire in § 1958 are:

> (a) traveling or causing another to travel in interstate or foreign commerce, or using or causing another to use the mail or other facility of interstate or foreign commerce that facilitates the murder-for-hire scheme; (2) with intent that a murder be

committed in violation of the laws of any State or the United States; and (3) as consideration for the receipt of pecuniary value.

*United States v. Sharpe*, 193 F.3d 852, 863 n.6 (5th Cir. 1999). "On its face, [§ 1958] allows a conviction if the government proves that a defendant traveled in interstate commerce with the intent that a contract murder be committed." *United States v. Ransbottom*, 914 F.2d 743, 746 (6th Cir. 1990). On its face, § 1958 also allows conviction if the government proves a defendant caused another to use a facility of foreign commerce in order to facilitate or further a murder solicited by her promise of remuneration. *United States v. Sanchez*, 3 F.3d 366, 367 (11th Cir. 1993). If the other elements are satisfied, the crime occurs at the moment of foreign or interstate movement or use of interstate or foreign facilities. Neither actual murder nor remuneration are necessary to prove all of the elements of the offense.[3] Therefore, there is neither express indication in the statutory language nor a conclusion necessarily arising from the nature of the substantive offense, that § 1958 was intended to be a continuing offense. *Toussie v. United States*, 397 U.S. 112, 115 (1970) (requiring one or the other for an offense to be "continuing").

The second vacated panel opinion conflicts with other circuit court decisions that find the crime to be complete with the use of interstate commerce facilities. *United States v. Finley*, 175 F.3d 645, 647 (8th Cir. 1999) (holding the murder-for-hire offense complete when letters furthering the offense had been mailed, including one promising earnest money); *United States v. Delpit*, 94 F.3d 1134 (8th Cir. 1996) (holding that once the interstate facility is used with the required intent, the crime of interstate murder-for-hire is complete); *United States v. Davidson*, 122 F.3d 531, 535 (8th Cir. 1997) ("Section 1958 . . . outlaws causing travel or the use of interstate commerce facilities with the intent that murder-for-hire be committed."); *United States v. Brockdorff*, 992 F. Supp. 22, 24 (D.

---

3  Thus, actual "receipt of pecuniary value" only completes the crime when it occurs simultaneously with satisfaction of the interstate nexus. 203 F.3d at 348 n. 12.  Of course, the panel's holding would be "consistent" with *United States v. Thompson*, 130 F.3d 676 (5th Cir.), *cert. denied* 118 S. Ct. 2307 (1998), where "payment occurred simultaneously with use of the facility in interstate commerce." *Id*. That is the **only** circumstance with which the second vacated panel's holding would be consistent. The problem is that the second vacated panel's holding is erroneous because, according to the government's proof, a promise to pay had been made prior to Garza's alleged, first call from Mexico to Martinez in Texas.

9

D.C. 1997) (applying *Delpit*); and *United States v. Superson*, 1997 WL 223072, at *1 (N.D. Ill. 1997) (unpublished Memorandum Opinion and Order).

Congressional intent undergirds the other circuits' opinions. "The **gist of the offense is the travel in interstate commerce or the use of the facilities of interstate commerce or of the mails with the requisite intent** and the offense is complete whether or not the murder [***much less the payment for the murder***] is carried out or even attempted." S. REP. NO. 225, 98TH CONG., 1ST SESS. 1983, at 306 (emphasis added). The Senate Record explains the provision that has become § 1958 as follows:

> Section 1952A would reach the travel in interstate or foreign commerce or the use of the mails or a facility in interstate or foreign commerce (such as a telephone if used for an interstate call) with the intent that a murder be committed in violation of state or Federal law. The murder must be planned or carried out as consideration for the receipt of something of pecuniary value or a promise or agreement to pay something of pecuniary value.

129 CONG. REC. 5600 (March 16, 1983). The Senate Record demonstrates that the focus of Congress' effort was to criminalize the travel in or use of foreign facilities in furtherance of a murder-for-hire scheme. The jurisdictional nexus, with mens rea, **is** the substantive federal offense, assuming the foreign commerce is sufficiently related to the murder for hire (i.e., it either "facilitated", made easier, or was "in furtherance" of the murder for hire). The description of murder-for-hire in the Congressional Record, focusing on the moment of travel or use, should dispel any notions that it is only complete upon actual receipt of payment or that it is some kind of "continuing offense."[4]

---

4 Congress obviously intended murder-for-hire to boil down to travel or use of interstate or foreign commerce facilities with intent. The offense does not correspond to "continuing offenses" for which the limitations period "begins to run only when [a] course of conduct . . . terminates." LAFAVE, ISRAEL, & KING, *supra*, at §18.5(a) (finding as "continuing offenses" concealment of assets, possession-of-contraband crimes, falsification schemes which continue to produce fruits, and conspiracy (for which counting begins with the last overt act in furtherance of the conspiracy)). Cisneros was not charged with conspiracy to commit a murder for hire, but rather the substantive offense.

In *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975), there was no statute of limitations problem, as noted by the second vacated panel opinion, 203 F.3d at 348 n. 13, where the mailings in furtherance of a mail fraud scheme occurred within the limitations period. The government in *Ashdown* proved a crime that was not complete until the mails were used. The

The conjunctive wording of Cisneros' indictment ("**and** the receipt of") does not obviate the fact that the offense would have been complete whenever Garza made his first phone call from Mexico during which Martinez asked about a hit man (assuming, for purposes of argument only, that the call was in furtherance of or facilitated the murder for hire scheme and recognizing that Garza actually stated that in **one** of his calls from Mexico (not all of them), Martinez asked about whether he had found a "hit man").  All of Garza's alleged calls from Mexico occurred prior to February 14, 1993, which the government conceded to be accurate in its post oral argument submission at page 3, yet the indictment was not returned until February 23, 1998.  The government does not have the option to "charge and try" a case in any way it desires if the offense, in fact, *cannot be charged* because the statute of limitations has already run.

COA should be granted on this point.  The conclusion from the facts is clear.  Cisneros' conviction is based upon evidence that shows the Government had no jurisdiction to try her.

**Third COA Issue: Whether a reasonable jurist could find that this Court erred by denying Cisneros' requested instruction on the statute of limitations.**[5]

Cisneros respectfully incorporates the Second COA Issue, *supra*, herein.

Had the jury been properly instructed in Cisneros' case regarding the statute of limitations, it would have found that the government failed to prove that the alleged foreign phone calls made by Daniel Garza to Maria Martinez occurred on or after February 23, 1993, and thus inside the five year limitations period prior to the date of the indictment, February 23, 1998. Reasonable jurists certainly could find that the second vacated panel opinion clearly erred by holding that Cisneros' Requested Instruction 15 was not necessary.

COA should be granted on this issue, along with the Second COA issue.

**Fourth COA Issue: Whether a reasonable jurist could find that the alleged jurisdictional nexus (i.e. Garza's alleged calls from Mexico or the car crossing) had an insufficient relationship to the alleged murder for hire scheme to satisfy**

---

problem for the government in Cisneros' case is that precisely the opposite occurred.  The government **failed to prove** that the use of the foreign facilities, required to complete the crime, occurred within five years prior to the indictment.

5  This COA Issue incorporates CLAIM FOR RELIEF NO. 5 of the Section 2255 Motion.

**the jurisdictional element.**[6]

**A. Causation.**

The second *Cisneros* panel opinion concluded that *United States v. Edelman*, 873 F.2d 791 (5th Cir. 1989), governed and only required the Government to prove "simple 'but for' causation rather than foreseeability" in order to establish the causation aspect of the foreign commerce element in § 1958, and thus prove a sufficient relationship between the jurisdictional nexus and the alleged murder-for-hire scheme. However, a reasonable jurist could find that this understanding of causation misapplies a conspiracy case (*Edelman*) to a straightforward murder-for-hire case and is prohibited by *Rewis v. United States*, 401 U.S. 808 (1971).

As Cisneros pointed out in her Section 2255 Motion, reviewing 18 U.S.C. § 1958 in light of 18 U.S.C. § 1952 (the Travel Act) is appropriate. *Edelman*, 873 F.2d at 794. The Supreme Court's decision in *Rewis* defines the parameters of the nexus between the interstate/foreign commerce and the underlying offense for purposes of the Travel Act and, by extension, the murder-for-hire statute, by interpreting Congressional intent through the rule of lenity. 401 U.S. at 811-12. The Supreme Court held in *Rewis* that reading "foreseeability" into the statute violated Congressional intent by making it too easy for the government to establish a nexus. *Id*. at 813. "Congress" provided "little, if any, evidence that [it] intended that foreseeability should govern criminal liability under § 1952." *Id*. at 813. For the sake of comity, Congress intended that the proof demonstrate, if not intent, something more than "but-for causation" **and** "foreseeability" in order to prevent expansive interpretation of the interstate/foreign nexus that would swallow up state law offenses and state jurisdiction.

The second vacated panel's "but-for causation" rule violates the principle oft-repeated throughout the Supreme Court's commerce clause jurisprudence, in addition to *Rewis*, that Congress may not create a jurisdictional "element," such as the interstate/foreign commerce nexus in §§ 1952 and 1958, that does not meaningfully limit federal power, **especially** "in areas such as criminal law

---

6  This COA Issue incorporates CLAIMS FOR RELIEF NOS. 1 and 2 of the Section 2255 Motion.

enforcement . . . where States historically have been sovereign." *United States v. Lopez*, 514 U.S. 549, 561, 564 (1995). By creating its "but-for causation" model, the second vacated panel, in the words of Judge Learned Hand, formed "a view of causation that would obliterate the distinction between what is national and what is local in the activities of commerce." *Lopez*, 514 U.S. at 567 (quoting cases). This is particularly egregious in light of the fact that this was an intrastate offense that the government attempted to transform into a federal offense (as demonstrated by the fact that Cisneros was previously acquitted in state court for the substantive offense of the murder of Fischer).

The second vacated panel opinion clearly conflicts with the reasonable jurists in other federal appellate jurisdictions who hold that § 1958 and related statutes require the Government to prove, beyond a reasonable doubt, that the defendant *intentionally or knowingly caused* the travel or use of an interstate facility. Cases wherein the defendant is directly charged, as opposed to charged as a coconspirator or aider and abettor,[7] make explicit or implicit findings regarding whether the **defendant intentionally or knowingly[8] caused** the travel or use of interstate facility. This involves the defendant herself travelling, using the facility, or an agent travelling or using the facility under the defendant's direction, and at least with her knowledge that the interstate facility is being used to further the offense. *See, e.g.*, *United States v. Finley*, 175 F.3d 645, 646 (8th Cir. 1999) (defendant personally put stamps on letters that were mailed)); *United States v. Weathers*, 169 F.3d 336, 344 (6th Cir. 1999) (defendant's numerous cell-phone conversations); *United States v. Garrett*, 716 F.2d

---

7 *Edelman*'s treatment of causation would apply to Cisneros' case only if she had been charged with conspiracy. Like *Edelman*, *United States v. Perrin*, 580 F.2d 730 (5th Cir. 1978), and *United States v. Razo-Leora*, 961 F.2d 1140 (5th Cir. 1992) are inapplicable to Cisneros' case to the extent that they also are based upon conspiracy charges and convictions. Because the *Edelman* jury was charged with conspiracy, it could automatically find Edelman **vicariously liable** for the act of coconspirator Young sending a letter through the mail to Zabitosky. *Edelman*, 873 F.2d at 792. This cannot be said of Garza and Martinez, because the jury was not charged with finding that they were coconspirators with Cisneros. Without the conspiracy charge, their actions had to be more substantially tied to Cisneros than through her possible foresight of those actions.

8 The cases rely upon "intent" or "knowledge" to establish the jurisdictional nexus. The point is, however, that something more than foreseeability is required and the jury must be charged with finding something more than foreseeability. Otherwise, a conviction can be obtained without any jury finding that the defendant actually caused the foreign commerce, which would run afoul of the Supreme Court's pronouncement in *United States v. Gaudin*, *supra*, that the jury must find every element of the offense beyond a reasonable doubt.

257, 265 (5th Cir. 1983) (defendant instructed codefendant to make an interstate phone call); *United States v. Pecora*, 693 F.2d 421, 424 (5th Cir. 1982) (phone call by defendant in Georgia to sheriff in Louisiana); *United States v. Jones*, 642 F.2d 909 (5th Cir. 1981) (defendant traveled between states to cash wagering checks); *United States v. Perrin*, 580 F.2d 730; 735 (5th Cir. 1978) (defendant, on instructions from co-defendants, made interstate telephone calls); *United States v. Archer*, 486 F.2d 670, 683 (2d Cir. 1973) (defendant's *receipt* of a phone call from Paris, France, in no way initiated by the defendant, although expected by him, was insufficient to establish nexus); *United States v. Kahn*, 472 F.2d 272, 285 (2d Cir. 1973) (finding nexus based upon extensive interstate travel and use of mails, distinguishing *Rewis* on basis that defendants there did not engage in interstate activities themselves and interstate travel was marginal or unforeseen). In *Marek*, for example, Marek personally delivered $500 to Western Union in Houston for transfer to the undercover agent in Harlingen. *Marek*, 198 F.3d 532 (5th Cir. 1999).

A reasonable jurist rejecting "but for" causation in the instant context could find that, because the Government failed to prove beyond a reasonable doubt that *Cisneros* intentionally or knowingly caused the travel or use of interstate facility, the evidence against her is legally insufficient. Thus, COA should be granted on this issue.

**B. Furtherance.**

The second vacated panel opinion agreed that § 1958 requires the Government to prove, beyond a reasonable doubt, that the foreign commerce "facilitates" or "make easier" the underlying offense of murder-for-hire, in order for the evidence to be legally sufficient. *Cisneros*, 203 F.3d at 346. But the panel rejected Cisneros' Requested Instructions Nos. 14 and 15A on causation, asserting that the "in furtherance" language in the requested instruction was incorrect. *Id*.

A reasonable jurist could conclude that the *Cisneros* panel was wrong to suggest any meaningful difference between the terms "facilitate" and "furtherance" for the interpretation of the Travel Act and murder-for-hire statutes. The Supreme Court and the Fifth Circuit have used the terms interchangeably in cases dealing with Travel Act prosecutions. *See, e.g.*, *Erlenbaugh v. United States*, 409 U.S. 239, 247 (1972) ("furtherance"); *Rewis*, *supra*, 401 U.S. at 813

14

("furtherance"); *Presley*, *supra* ("furtherance"); *United States v. Roberson*, 6 F.3d 1088, 1094 (5th Cir. 1993) ("facilitate").  The use of the term "facilitate" in the cases cited by the second vacated panel opinion,  203 F.3d at 344 n.7, merely follows the statutory language in 18 U.S.C. § 1952.  *See United States v. Perrin*, 580 F.2d 730, 736 (5th Cir. 1978) ("[I]t is enough that the . . . use of interstate facilities makes easier or facilitates the unlawful activity.").

The vacated second panel opinion expressly recognized a conflict between its treatment of the issue in Cisneros' case and *United States v. Houlihan*, 92 F.3d 1271, 1292 (1st Cir. 1996), wherein the First Circuit "required the use of the facility in interstate commerce to be 'in furtherance' of the underlying murder scheme."  *Cisneros*, 203 F.3d at 344 (noting "this is not the standard our circuit uses").  The panel failed to recognize that its position also was inconsistent with other Fifth Circuit panels.  *See United States v. Presley*, 478 F.2d 163, 168 (5th Cir. 1973) (reversing district court's denial of motions to withdraw nolo contendere pleas following *Rewis*, on finding that facts had not been developed regarding the "extent and significance of the crossing of state lines to the furtherance of the operations of [an] illegal gambling casino"); *United States v. Gooding*, 473 F.2d 425, 427-28 (5th Cir. 1973) ("The Travel Act does not proscribe all interstate travel which may incidentally lead to a furthering of unlawful activity.") (citing *United States v. Hawthorne*, 356 F.2d 740 (4th Cir. 1966)).   Indeed, even the en banc opinion in *Cisneros* twice uses the term "in furtherance".  *See e.g.*, 238 F.3d at 313 ("The Marek majority acknowledged *Cisneros* but reasoned that it was not binding because, **in furtherance** of her murder-for-hire scheme....) and 238 F.3d at 314 ("A panel of this court concluded that a reasonable jury could have found that (1) the fortune teller had participated in international calls as Cisneros' agent, and (2) those calls were sufficiently connected to the murder to be **"in furtherance"** of that crime."(footnote omitted)) (explanation added).

Thus, a reasonable jurist rejecting "but for" causation in the instant context could find that, because the Government failed to prove beyond a reasonable doubt that the travel or use of interstate facility furthered the crime of murder-for-hire,  the evidence against Cisneros is legally insufficient.  Thus, COA should be granted on this issue.

**Fifth COA Issue: Whether a reasonable jurist could find that Cisneros was denied her Fifth and Sixth Amendment rights to due process, a jury trial, and a reliable jury verdict because the jury was not instructed (or, if instructed in the legal sense, not adequately instructed) on "causation" *and* whether the foreign commerce had to "facilitate" or "be in furtherance" of the alleged murder for hire scheme, two essential components of the first element of the offense.[9]**

**A. The Causation Instruction.**

This Court held that Cisneros could not prevail on her claim that her Fifth and Sixth amendment rights were violated by its failure to instruct on causation, because the "causation instruction submitted by Cisneros . . . was not a correct statement of the law." Order at 15. That causation instruction was submitted as Requested Instruction No. 15A, and was supported as well by Requested Instruction No. 14. Another reasonable jurist could disagree with this Court that Cisneros gave an incorrect statement of the law when she submitted the following:

> A person "causes" another to travel in foreign commerce or to use facilities in foreign commerce if he does *an act with knowledge* that the foreign travel or use of facilities in foreign commerce will follow in the ordinary course of business, or where such foreign travel or use of facilities in foreign commerce *can reasonably be foreseen*, even though not actually intended.

2R140 (Requested Instruction No. 15A) (emphasis added).

A reasonable jurist could differ, in the first place, because as Cisneros pointed out (Section 2255 Motion at 45 n.37), the above instruction is taken from *United States v. Sneed*, 63 F.3d 381, 385 n.4 (5th Cir. 1995), quoting the Supreme Court in *Pereira v. United States*, 347 U.S. 1, 8-9 (1954), applying the type of language the Supreme Court has mandated in regard to whether a person "causes" the mails to be used within the meaning of the mail fraud statute, 18 U.S.C. § 1341. As noted in the Motion, a federal district court followed this analysis while acquitting a defendant of murder-for-hire, rejecting the Government's "but for" causation argument that the jurisdictional nexus would be sufficiently proven if a phone call was shown to simply "relate to" the murder-for-hire scheme. *United States v. Sullivan*, 809 F. Supp. 934, 936-37 (N.D. Ga. 1992). The court specifically held that the evidence was insufficient to show the "relate to" relationship, much less

---

9  The instant COA Issue embraces CLAIMS FOR RELIEF 3, 4, and 6 of the Section 2255 Motion.

that the use of the telephone in that case "facilitated" the murder.  *Id*. at 937-38.

A reasonable jurist could differ, in the second place, because the Supreme Court endorses the same standard requiring proof that the defendant could have "reasonably foreseen" that the acts (travel or use of facilities) would form a nexus with the murder.  *Henderson v. Kibbe*, 431 U.S. 145 (1977) (finding that criminal causation requires an objective reference to mental state).  The "causation" standard in 18 U.S.C. § 2(b) incorporates a "willful" mental element: "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."  In *Henderson*, the Court observes that the "New York Court of Appeals concluded that the evidence of causation was sufficient because it can be said beyond a reasonable doubt that the 'ultimate harm' was 'something which should have been foreseen as being reasonably related to the acts of the accused.'" *Henderson*, 431 U.S. at 155.  The *Henderson* Court found, therefore, that the following would have been an adequate instruction on causation in its state law case:

> [I]f the ultimate harm ***should have been foreseen*** as being reasonably related to the defendant's conduct, that conduct should be regarded as having caused the death of Stafford.

*Henderson*, 431 U.S. at 155 (emphasis added).  This foreseeability standard is far less onerous on the Government than "willfulness."  The Supreme Court ultimately found no harm in the absence of an instruction on causation because the jury had to find, at least, that the defendant acted "recklessly."  The Court found that the jury's necessary finding of the recklessness *mens rea* for the state law crime of second degree murder — being aware of and consciously disregarding a substantial and unjustifiable risk — would have included a determination that the ultimate harm was foreseeable to the defendant.  *Id*. at 157.

In the instant case, *it is absolutely impossible* to infer from the facts that Cisneros could have intended, known the risk, or even foreseen that her alleged acts in contacting the curandera could have caused interstate or international communication or transportation to occur.  Thus, this Court's denial of Cisneros' Requested Jury Instruction No. 15A was clear error that caused her egregious prejudice, because it allowed the Government to prove the causation element on less evidence than

17

what is absolutely required by the Commerce Clause and 18 U.S.C. § 2(b). .

The "but for" standard for causation that resulted from the lack of proper instruction created federal jurisdiction by happenstance. The second vacated panel's conclusion that federal jurisdiction can be established by an act which contributes to a murder-for-hire scheme by happenstance is clearly erroneous in light of *Pereira* and all other cases — principally *Rewis v. United States*, 401 U.S. 808, 813 (1971), which the Magistrate ignores — asserting that the Commerce Clause would require more. *See* Section 2255 Motion at 25-26 (noting that *Rewis* held that reading mere "foreseeability" into the parallel Travel Act violated Congressional intent by making it too easy for the Government to establish the jurisdictional nexus); *id.* at 26-28, 33-34 (other cases). The jury was greatly prejudiced by this Court's rejection of Cisneros' proposed instructions on causation, because "but for" causation of international travel or communication cannot be sufficient to establish the foreign commerce nexus for federal court jurisdiction. *See* § 2255 Motion at 26-28 (and cases cited therein, none of which are addressed by this Court or the Magistrate).

Contrary to the Magistrate's findings, a reasonable jurist could conclude that there is no procedural default of the issues related to this Court's denial of the suggested causation instruction, because trial counsel asked for and received a running objection. Such a reasonable jurist would be *this Court*, which stated *inter alia*, "Anything I do that is inconsistent with what you have filed on record, you need not object to. You will preserve your objection." 11R1496; *see* Petitioner Cisneros' Objections to the Report and Recommendation of the Magistrate Judge at 16-17.

**B. The Required Relationship Instruction.**

This Court's conclusion that Cisneros' requested instructions on "furtherance" and causation are "not consistent with the law in the Fifth Circuit," whether correct or not, is essentially an admission that the requested instructions are consistent with the law in other circuits. Order at 14. In fact, this Court's conclusion runs counter to Fifth Circuit precedent as well. This Court's adoption of the *Cisneros* panels' treatment of the instructions as a correct statement of law would be opposed by other reasonable jurists in this and other circuits, as noted by Cisneros in her Objections, quoting her Section 2255 Motion:

Subsections a and b at pages 30 to 32 of Cisneros' Motion To Vacate stated the following regarding the second vacated panel opinion, which had held that the statute required the foreign commerce to "facilitate" the underlying offense or "make it easier" and found that her requested instructions on the required relationship (i.e., Requested Instruction Nos. 12 as supplemented by her theory of the defense instruction, No. 14) was incorrect because it used the term "in furtherance" of the murder-for-hire scheme (as opposed to "facilitated"). 203 F.3d at 346.

The second vacated panel opinion clearly erred -- it was "dead wrong" -- in suggesting the existence of a meaningful legal difference between the terms "facilitate" and "furtherance" for interpretation of the Travel Act and murder-for-hire statutes.   The Supreme Court and the Fifth Circuit have used the terms interchangeably in cases dealing with Travel Act prosecutions.  *See, e.g.*, *Erlenbaugh v. United States*, 409 U.S. 239, 247 (1972) ("furtherance"); *Rewis v. United States*, 401 U.S. 808, 813 (1971) ("furtherance"); *Presley*, *supra* ("furtherance"); *United States v. Roberson*, 6 F.3d 1088, 1094 (5th Cir. 1993) ("facilitate").  The use of the term "facilitate" in the cases cited by the second vacated panel opinion, 203 F.3d at 344 n.7, merely follows the statutory language in 18 U.S.C. § 1952.  *See United States v. Perrin*, 580 F.2d 730, 736 (5th Cir. 1978) ("[I]t is enough that the . . . use of interstate facilities makes easier or facilitates the unlawful activity.").

* * *

The vacated second panel opinion expressly recognized a conflict between Cisneros' case and *United States v. Houlihan*, 92 F.3d 1271, 1292 (1st Cir. 1996), wherein the First Circuit "required the use of the facility in interstate commerce to be `in furtherance' of the underlying murder scheme." **The second vacated panel opinion did not address the fact that Cisneros' trial counsel had specifically modeled their requested instruction (using "in furtherance") from a district court jury instruction given in a murder for hire case by United States District Judge Harry Lee Hudspeth.** (*United States District Judge, Western District of Texas*; explanation added)

The second vacated panel's finding that the Fifth Circuit itself only requires a showing that the use of the facility "facilitated" the underlying crime, i.e., "made it easier," also is inconsistent with other Fifth Circuit opinions.  *United States v. Presley*, 478 F.2d 163, 168 (5th Cir. 1973) (reversing district court's denial of motions to withdraw nolo contendere pleas following *Rewis*, on finding that facts had not been developed regarding the "extent and significance of the crossing of state lines to the furtherance of the operations of [an] illegal gambling casino"); *United States v. Gooding*, 473 F.2d 425, 427-28 (5th Cir. 1973) ("The Travel Act does not proscribe all interstate travel which may incidentally lead to a furthering of unlawful activity.") (citing *United States v. Hawthorne*, 356 F.2d 740 (4th Cir. 1966)).

Indeed, **even the en banc opinion in *Cisneros* twice uses the term "in furtherance"**.  *See e.g.*, 238 F.3d at 313 ("The Marek majority acknowledged *Cisneros* but reasoned that it was not binding because, **in furtherance** of her murder-for-hire scheme....) and 238 F.3d at 314 ("A panel of this court concluded that a reasonable jury could have found that (1) the fortune teller had participated in international calls as Cisneros' agent, and (2) those calls were sufficiently connected to the murder to be **"in furtherance"** of that crime."(footnote omitted)) (explanation added).

19

For the same reasons that (1) there was a running objection and (2) the requested "required relationship" (or "furtherance") instructions (Requested Instructions 12 and 14) were substantially correct (including by the standards of the Fifth Circuit), a reasonable jurist surely could find that there was no procedural default in relation to those instructions or the lack of objection to this Court's omission to give *any* instructions on the "required relationship" or causation elements.

> **Sixth COA Issue: Whether a reasonable jurist could find that Cisneros was denied her right to due process by the prosecution's non-disclosure of the sequence of events surrounding Daniel Garza's gross modification of his story (as reflected by comparing his statements to the FBI on February 5 and 18, 1998, to his testimony on May 11, 1998, at Cisneros' trial) and/or by the prosecution's use of Daniel Garza's false testimony and creation of a false impression for the jury utilizing that testimony.**

Claims for Relief 7 and 8 are joined under this Sixth COA Issue, because they only differ as to the level of the prosecution's intent involved in the suppression of facts related to Daniel Garza's modification of his story and in its presentation of Garza's testimony. While adopting the Magistrate's Report, this Court otherwise appears not to have addressed either of these due process claims, except insofar as they are implied in the ineffective assistance claims. *See e.g.*, Order at 11-13.

The evidence of suppression is plainly demonstrated by the record of Garza's surprise switches in story from collect calls from Matamoros in a time frame predating the murder-for-hire scheme to calls from casetas in San Fernando and Matamoros in a time frame far more consistent with the murder-for-hire scheme. These circumstances leave little doubt that someone associated with the prosecution team had to have met with Garza and confronted him with the absence of any collect telephone call records. There is no reason why Garza would modify his story about the calls without prompting by the Government to try to meet the jurisdiction requirement. As Cisneros noted, the Government *did not deny* that it knew Garza's testimony was false when he presented it as the last Government witness or that the Government suppressed the evidence that Cisneros sought in her Seventh, Eighth, and Ninth (Fourth Act/Omission) Claims for Relief. Reply to Respondent's Answer at 12. Although ignored by the Magistrate and this Court, another reasonable jurist could find that the array of facts at pages 76-82 of the Section 2255 Motion presents strong doubt about

the credibility of the Government's key witness Garza and the ethical nature of the Government's case.  Objections at 29 & n.22.

The Magistrate (and this Court by implication) disposes of Claims for Relief 7, 8, and 9 (Fourth Act/Omission) by finding, without foundation, that there was no prejudice (for either the *Brady* or *Strickland* versions of the claims related to Garza's change in testimony) when discovery was necessary to determine prejudice.  Report at 27-29.  Reasonable jurists certainly could disagree with the Magistrate and this Court on the matter, as follows.

First, and most importantly, *Brady* or the equivalent *Strickland* prejudice may be based solely upon the credibility of the Government's key witness.  The Magistrate's finding that "[t]he credibility of but one witness in the context of the whole trial does not rise to the level of prejudice required to allow this Court to collaterally review Cisneros' conviction" is flat wrong.  Report at 27-28.  *See e.g.*, *Ex parte Richardson*,  70 S.W.3d 865 (Tex. Crim. App. 2002) (holding that prejudice exists where suppressed evidence would have led to impeachment of the State's key witness); *United States v. Bagley*, 473 U.S. 667, 676 (1985) (holding that impeachment evidence is included within the scope of exculpatory evidence); *Graves v. Dretke*, 442 F.3d 334, 339 (5th Cir. 2006) ("*Brady* applies equally to evidence relevant to the credibility of a key witness in the state's case against a defendant.") (citing *Giglio v. United States*, 405 U.S. 150 (1972)).  Given the lack of a basis for jurisdiction in the car crossing, it is apparent that, if the jury disbelieved the credibility of Garza regarding the making of phone calls to Martinez from Mexico, the Government would have provided insufficient proof of the jurisdictional nexus, requiring an acquittal.  The credibility of Garza's testimony (and of the Government's use of his testimony) was critically important — material to Cisneros' conviction.

Second, the Magistrate's mistaken notion about credibility of a key witness not being sufficient to show prejudice caused the Magistrate (and this Court) to err in the assessment of prejudice sufficient to meet the "cause and prejudice" test for overcoming procedural default (i.e., that no objection was made at trial or claim raised on appeal regarding the suppression of the mechanisms for Garza's change in story and false testimony).

Third, the Magistrate (and this Court) unreasonably denied Cisneros the discovery necessary to prove "prejudice," so as to be able to overcome the procedural default hurdle (by proving "cause and prejudice" through "ineffective assistance") and to prevail on the merits of the *Brady*, *Giglio*, and *Strickland* issues raised by Garza's change in story about the phone calls.  While denying discovery, the Magistrate unreasonably speculated at the same time about the facts that otherwise would be the subject of the discovery: "There are numerous possible explanations for the change in Garza's testimony, including but not limited to the accuracy of Garza's memory, FBI Agents' misunderstanding of the Spanish term 'casetas', or Garza's confusion as to relative terms such as 'public' calls, 'collect' calls, 'credit card' calls."  Report at 27; *see also* Report at 45.  The likelihood of such innocent explanations is small, but the only way to have known if they existed (or, conversely, if they did not) was through the discovery sought by Cisneros.  This Court independently treated the calls (and any discovery about them) in an unreasonable manner, making the uncontroversial point that direct (as well as collect) calls could form the jurisdictional nexus, but then asserting (referring to Agent Church and Garza) that "both witnesses' testimony detailed international phone calls in which the murder plot was embraced."  Order at 12.  This Court ignores Martinez, who matters a whole lot more than Church.  *The facts that make Garza's credibility so material are that* Martinez never said *Garza called her from Mexico and testified in the state trial that he* always *called her collect from* Dallas *or* San Antonio*, locations that obviously provided no international jurisdictional nexus.* Only Garza *provided statements supporting such a nexus (as also alleged by Church).  So Garza's credibility was critical.  See* Section 2255 Motion at 102-03 (relating, inter alia, that Maria Martinez told two FBI agents "that Garza had told Martinez during their telephone calls that he [Garza] was calling from Dallas and San Antonio, that Garza called Martinez collect every time he called her, and that Martinez was unaware of any telephone calls made to her by Garza that originated from outside of the State of Texas or from Mexico").  This Court bolsters its opinion by reference to the "conclusion . . . reached by the Fifth Circuit in both vacated opinions."  Order at 12.  However, the Fifth Circuit also did not consider the weightiness of the contradiction between Martinez's accounts (on and off the stand) that the calls from Garza

originated and terminated in the State of Texas and Garza's contrary testimony that he made calls from Mexico to Texas.  Order at 12 (citing *Cisneros*, 203 F.3d at 343; *Cisneros*, 194 F.3d 636) (identical).

> **Seventh COA Issue: Whether a reasonable jurist could find that Cisneros was denied her right to effective assistance of trial counsel, as guaranteed by the Sixth Amendment to the Constitution of the United States, by her trial counsels' acts and omissions.**

The key element in common in Cisneros' first five acts/omissions in which she alleges ineffective assistance of trial counsel is counsels' failure to comprehend the central importance of Maria Martinez's statements and state court testimony as potentially powerful impeachment evidence related to Garza's credibility and the integrity of the Government's case.  The prejudice caused by counsels' failure to integrate Martinez at trial and on appeal is reflected even in this Court's assessment of the *Brady* and *Strickland* issues involving Garza, wherein this Court fails to address the potential for a fatal contradiction between Martinez and Garza that would completely undermine confidence in the Government's proof of the jurisdictional nexus.

The key issue in this case was whether there was federal jurisdiction.  The indictment, as amplified by the Government's bill of particulars, established two potential jurisdictional bases which would be critical at trial: (1) Garza's alleged calls from Mexico to Martinez in Brownsville (which, as subsequently conceded by the Government on appeal,  all would have occurred prior to February 14, 1993); and (2) the car crossing on March 2, 1993.  Trial counsel had Martinez's prior state court testimony to utilize in an effort to deflect the alleged foreign telephone calls from Garza.  From that state court testimony, Cisneros' trial counsel were well aware that Martinez had previously testified in the state court litigation that **Garza had called her from Dallas and San Antonio: she never claimed that Garza had ever called her from Mexico**. *See* Section 2255 Petition at 102-112 (and accompanying exhibits).  From discovery in this case, trial counsel were aware from an FBI 302 (memorandum of interview) that on August 29, 1996, Maria Martinez had related to FBI Agents Barry Ross and Jorge Cisneros that Garza had called Martinez on numerous occasions, but Martinez did not discuss with them the locations from which Garza had allegedly called her. *Id*.  Similarly,

from discovery in this case, trial counsel were aware from an FBI 302 (memorandum of interview) that on January 28, 1998, Maria Martinez had related to FBI Agents David Church and Freddy Vela that Garza had told Martinez during their telephone calls that he (Garza) was calling from Dallas and San Antonio, that Garza called Martinez collect every time he called her, and that Martinez was unaware of any telephone calls made to her by Garza that originated from outside of the State of Texas or from Mexico. *Id.*

During the direct examination of Martinez, the government never asked Martinez if Garza had ever called her on the telephone. *See* 8R720-740; 9R864-881.  On cross-examination, trial counsel did not inquire about any telephone calls from Garza to Martinez. See 9R881-924. On neither redirect, 9R924-929, or on re-cross, 9R929-930, was the topic of whether Garza had ever called Martinez broached by either side.  Trial counsel asked this Court to continue to keep Martinez available as a witness for further cross-examination. 9R930-931.  But counsel never recalled her.

Thus, trial counsel failed to cross-examine Martinez and elicit testimony from her that Garza had only called her from Dallas and San Antonio, not from Mexico, and that Garza had always called her collect.  Trial counsels' failure to cross-examine Martinez was not the result of any strategic decision and there is clear prejudice.

This Court's adoption of the Magistrate's factual findings and conclusions of law on this point will be challenged by reasonable jurists.  In the first place, this Court's finding to the contrary (Order at 12 n.5), the Magistrate badly misunderstands the law.  The Magistrate's assertion that "[e]ven egregious errors in tactical determinations (about whether to call certain witnesses or to ask certain questions) do not provide a basis for post-conviction relief," is totally unsound, contrary to the law as promulgated by the Supreme Court, the Fifth Circuit, and other circuits.  *See* Objections at 32-34 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Strickland v. Washington*, 466 U.S. 668, 693-96 (1984); *United States v. Cronic*, 466 U.S. 648, 657 n.20 (1984); *White v. McAnich*, 235 F.3d 988 (6th Cir. 2000); *Moore v. Johnson*, 194 F.3d 586, 610 (5th Cir. 1999)).  The relevant question is whether counsel's error, no matter how solitary it may be, places his performance outside the reasonable range of attorney performance.  *Strickland*, 466 U.S. at 689.  Although a strategic

decision based upon an adequate investigation likely will "fall within the wide range of objectively reasonable performance (Report at 31)," no court owes deference to a "strategic judgment" made on the basis of an inadequate investigation. *Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003). No court owes deference to any judgment made by counsel that "no reasonable trial counsel would have engaged in." *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992). Finally, the Magistrate's reliance on *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993), is misplaced. *Fretwell* sets a higher threshold for prejudice under unique facts that do not apply to Cisneros, as was explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 393 (2000) (using "straightforward application of *Strickland*" where defendant did not arguably benefit from a "windfall"). Cisneros has to show a "reasonable probability" that, but for the deficient performance of trial counsel, the outcome of the trial might have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

All reasonable jurists would find that the Magistrate erred in concluding as a matter of law that the omissions Cisneros attributed to her trial counsel "are within the realm of tactical determinations and do not constitute objectively unreasonable performance." Report at 31-32 (citing *United States v. Rubin*, 433 F.2d 442 (5th Cir. 1970), which predates *Strickland* by more than a decade and merely states an erroneous legal rule in light of *Strickland*).

Also, reasonable jurists should find that the Magistrate unfairly treats the facts by asserting, *contrary to the clear assertions by present counsel (who also were trial counsel)*, that "a review of the trial transcript reveals that the alleged deficiencies were the result of conscious and informed decision making on trial tactics and strategy."[10] By asserting, without allowing discovery or holding

---

10  Counsel have sworn that they had no strategy but merely unreasonably failed to investigate, cross-examine, or exclude evidence in regard to the first four acts/omissions alleged regarding trial counsel. They disavow "strategy" for the lapses involved in the fifth and sixth acts/omissions, as well, and no reasonable strategy is imaginable for those acts/omissions, given that, if there are lapses of counsel, they involve failures to adequately preserve errors counsel was attempting to raise. There is no reasonable basis for counsels' failure to assert at trial that this Court's denial of the causation and required relationship instructions violated due process, as well as the Court's failure to give any instruction on those critical elements.

The Magistrate errs, for example, in finding that Cisneros "offers no cause for failing to

an evidentiary hearing that would give trial counsel the opportunity to make a record on the question of strategy, the Magistrate essentially accuses present counsel (trial counsel) of litigating in bad faith. At the same time, the Magistrate draws factual conclusions based upon a Record that obviously is deficient without further development, when not only the preparation and motives of trial counsel should be examined, but the nature of the testimony of Martinez, Garza, and Church so as to fairly develop the facts relevant to *Strickland* prejudice and *Brady* materiality (the same standard).

If the facts alleged by Cisneros were developed and proven through the requested evidentiary hearing and/or discovery, counsel would be shown ineffective. Thus, reasonable jurists would find that it was an abuse of discretion for this Court to deny her a hearing and discovery, and to rely instead on the Magistrate's speculations over the sworn statements of counsel in their verified Section 2255 Motion that their lapses were not strategic.

Under, *inter alia*, *Nixon v. Newsome*, 888 F.2d 112 (11th Cir. 1989), *Smith v. Wainwright*, 741 F.2d 1248 (11th Cir. 1984), and *Moffett v. Kolb*, 930 F.2d 1156 (7th Cir. 1991), the issue of ineffective assistance of counsel due to a failure to cross-examine and impeach, outlined above, is meritorious. The cross-examination would have explored areas upon which neither Martinez nor

---

object to the trial court's omission of a definition on causation." Report at 12. This is laid out clearly enough in footnote 41 at pages 47 to 49 of the Section 2255 Motion, wherein Cisneros raises the point that it would be inconceivable that a competent attorney would, for strategic reasons, fail to request (or secure an objection against failure to give) an instruction that goes to the crux of the defendant's defense (discussing *Lawson v. Warden, Mansfield Correctional Institution*, 197 F. Supp. 1072, 1084-1090 (S.D. Ohio 2002)). Failure to instruct on causation or on furtherance (or facilitation), the jurisdictional nexus, the statute of limitations, etc., are all tantamount to telling the jury that it can find the defendant guilty of the offense charged in the indictment without explaining the essential elements of the offense. This would be both objectively unreasonable under prevailing norms of attorney assistance and highly prejudicial, undermining confidence in the verdict, because the Constitution requires the jury to contemplate more than "but for" causation in the first clause of § 1958.

If trial counsel failed to adequately preserve the instructional error as to the causation and/or the "furtherance" (required relationship) element of the offense and Cisneros' jury was not adequately charged on that element, then her conviction fails to rest upon a jury determination that she is guilty of every element of the crime, in violation of her Fifth and Sixth Amendment rights. Report at 13 (citing *United States v. Gaudin*, 515 U.S. 506, 509-10 (1995)). This undermines confidence in the verdict, simultaneously meeting the *Strickland* prejudice standard and demonstrating "prejudice" to overcome procedural default, and the *Chapman* and *Brecht* standards of harm.

Garza were cross-examined upon and would have rendered Garza's testimony regarding the jurisdictional basis (foreign telephone calls) contained within the first element submitted to the jury far from credible.

A reasonable jurist could hold that a new trial should be granted due to trial counsels' failures. While it is obviously impossible to determine if in fact the jury would have acquitted had trial counsel utilized Martinez' state court testimony and her statements to FBI Agent Church, the failure to utilize those two fertile sources of information seriously undermines confidence in one of the two jurisdictional bases (i.e., telephone calls). Since the Government failed to prove the jurisdictional nexus through the border crossing by the car and the jury asked if they had to find both bases for jurisdiction, as opposed to one, during its deliberations (via a note to the Court), there is a reasonable probability that the result of the trial would have been different, but for counsels' unreasonable conduct. Thus, prejudice is shown.

> **Eighth COA Issue**: Whether a reasonable jurist could find that Cisneros was denied her right to effective assistance of appellate counsel, as guaranteed by the Sixth Amendment to the Constitution of the United States, by her appellate counsels' acts and omissions.

**1. Failure to Raise Instructional Error.**

A reasonable jurist should find that the Magistrate and this Court err by holding that appellate counsel was barred from raising the claims that this Court's denials of appropriate instructions on causation and required relationship ("furtherance") violated due process and subsequent failure to instruct on those issues also violated due process. Report at 33. These issues could (and should) have been raised as plain error, assuming they were not adequately preserved at trial (*see* Seventh COA Issue, *supra*); *e.g., United States v. Arnold*, 416 F.3d 349, 355 n.3 (5th Cir. 2005) (reviewing charge error for plain error when the objection was not specific enough to bring the alleged error to the court's attention). For the sake of brevity, the Fifth and Seventh COA Issues are incorporated herein.

The outcome of the appellate ineffective assistance claim, as it regards the jury instructions and lack thereof, depends on the merits of the proposed instructions and the prejudice caused by the

lack of proper instruction on causation or required relationship.  As illustrated in the Fifth COA Issue, *supra*, those questions surely are debatable among jurists of reason, because this Court's treatment of those questions is at odds with precedent from the Supreme Court, the Fifth Circuit, and other federal circuits.  Cisneros has made a "substantial showing of the denial of a constitutional right" as to the substantive constitutional issues.  28 U.S.C. § 2253(c)(2).  When a jury is allowed to convict a citizen without an instruction on every element of the offense, the Fifth and Sixth Amendments are violated.  *United States v. Gaudin*, 515 U.S. 506, 509-11 (1995).  Given the very attenuated relationship between Cisneros and either one of the Government's alleged bases for jurisdiction, the failure of this Court to adequately instruct the jury on the necessity that Cisneros have a real relationship to the jurisdictional nexus very well may have caused her conviction.

Given the evidence that trial counsel simply failed to object and preserve error, based on trial counsels' uncontested sworn admissions (in the verified Section 2255 Motion) to a lack of any strategic basis at all for the absence of objection, reasonable jurists should also find that the respective omissions/commissions of trial and appellate counsels as to these instructions violated Cisneros' Fifth and Sixth Amendment rights and caused her to be convicted on a standard less than "beyond a reasonable doubt" and short of Congressional intent, wherein all the jury had to do was find "but for" causation and simple use of a facility in international commerce, whether or not it bore any relationship to the criminal scheme.

Plain error is found when (1) there is error; (2) it is plain; and (3) it affects substantial rights. *Arnold*, 416 F.3d at 355 (citing *United States v. Cotton*, 535 U.S. 625, 631 (2002)).  The constitutional, instructional error present in Cisneros' case is plain, affects substantial constitutional rights, and seriously affects the fairness of the judicial proceedings, a final criterion for relief due to plain error.  *Id*.  The requested instructions on causation and "required relationship" were substantively correct, not substantially covered [at all] in the charge given the jury, and were concerned with adequately guiding the jury to find an element of the offense, a critical aspect of the trial.  *Id*.  Failure to give the requested charges and the lack of any other charges giving the jury adequate guidance on the jurisdictional nexus element of the offense very "seriously impaired" the

jury's ability to perceive that the Government failed in its proof of the nexus element. Undermining the fairness of Cisneros' trial, the error also undermines confidence in the outcome of the trial (meeting the *Strickland* prejudice prong) because of its centrality in the jury's necessary findings of the offense.

### 2. Failure to Raise Overruling of Motion to Dismiss Indictment.

The Magistrate and this Court assume that deficient performance is shown by the failure to raise on appeal the improper overruling of Cisneros' motion to dismiss the indictment due to prosecutorial misconduct before the grand jury. A reasonable jurist could find that the Magistrate and this Court erred in finding no prejudice.

### A. Violation of Rule 6.

A reasonable jurist could conclude that the Magistrate (and this Court) erroneously found that the Government prosecutor, Mervyn Mosbacker, did not conduct his own investigation. *See Durbin v. United States*, 221 F.2d 520, 522 (D.C. Cir. 1954) ("It [is] clearly an improper use of the District Court's process for the Assistant United States Attorney to issue a grand jury subpoena for the purpose of conducting his own inquisition."). There is no evidence in the *disclosed* Record to support this finding, unless a sealed disclosure order introduced in the April 29, 1998, pretrial hearing shows authorization for the materials subpoenaed as returnable to the Brownsville grand jury to be transferred to the Houston grand jury. Even this is complicated by the fact that Mr. Mosbacker openly admitted that, at the time he secured the subpoenas, there was no Brownsville grand jury investigating the case, thus strongly leading credence to a finding that he was conducting a personal inquisition. Finally, this testimony by Mr. Mosbacker is directly contradicted by Agent Church's testimony that he, not Mosbacker, caused the issuance of the grand jury subpoenas. *See* Section 2255 Motion at 176.

A reasonable jurist could find that this Court abused its discretion by deciding this issue without giving Cisneros the benefit of an evidentiary hearing or discovery for the sake of clarifying the real facts and resolving the contradictions in the Government's testimony. The prospect of COA is enhanced because this grand jury misconduct issue presents an issue of first impression in the Fifth

Circuit.  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *Houston v. Lack*, 487 U.S. 266, 269 (1988).

### B. Agent Church's False Testimony to the Houston Grand Jury.

The Magistrate and this Court oversimplified the significance of the conflicts between the truth, as Agent Church and Mr. Mosbacker are presumed to have known it (from the documents in the Government's care, custody and control which are fully delineated at pages 173 to 187 of Cisneros' Section 2255 Motion[11]) and the substance of Agent Church's grand jury testimony. A simple comparison between Cisneros' allegations and the Magistrate's conclusions regarding each of the five particular items reflects not just a simplistic summary, but a noticeable refusal by the Magistrate to address all of Cisneros' arguments.[12]

Without citation to any authority, the Magistrate concludes regarding all of the relevant evidence that "[t]he inconsistencies and conflicts appear to go to the adequacy and competency of

---

11 The Magistrate's conclusion that "[i]n the event that Cisneros had shown false and material testimony was presented, Cisneros has not shown that the government had knowledge of it," Report at 47, seriously misconstrues the law, as it is clear that Mr. Mosbacker is presumed to know everything that his agents know (as well as knowing what is reflected in the materials he possesses). *See e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 437-438 (1995).

Again, it bears noting that the Government has not even denied that Agent Church materially misled the grand jury by his testimony (in any of the five respects). Whether the failure to deny misconduct, misleading and perjury should be deemed an admission against interest by this Court may be questionable, but given that failure, an evidentiary hearing is entirely justified (although discovery is also entirely appropriate).

12 As to four of the five instances of Church's misleading testimony/perjury (labeled "Statement No. 1", "Statement No. 2", etc. by the Magistrate), the Magistrate and this Court fail to address the following:

Statement No. 1: Report at 44: The Magistrate fails to address the three statements identified at page 174 of Cisneros' Section 2255 Motion;

Statement No. 2: Report at 44 to 45: The Magistrate fails to address the arguments at page 175-176 of Cisneros' Section 2255 Motion;

Statement No. 3: Report at 45: The Magistrate fails to address the arguments identified at page 176 to 180 of Cisneros' Section 2255 Motion; and

Statement No. 4: Report at 45 to 46: The Magistrate fails to address the arguments identified at page 180 to 183 of Cisneros' Section 2255 Motion.

30

the evidence and would not have substantially influenced the grand jury's decision to indict Cisneros." Report at 47. A reasonable jurist would find that this conclusion is unsupportable in regard to Agent Church's testimony which falsely implied that Garza called Martinez collect from Mexico. This testimony provided the evidence for the jurisdictional element necessary to the return of an indictment by the grand jury. It does not go to "adequacy and competency" but to the existence of evidence required for the grand jury to set the prosecution in motion.

The following findings by the Magistrate, adopted by this Court, are clearly and convincingly contrary to the Record:

> The record shows that Garza was interviewed by FBI Agents Church and Vela on February 18, 1998. The memorandum of interview reflected that Garza made collect calls to Martinez from public telephones. Later, at trial, Garza testified that he may have called Martinez collect on one occasion, but the FBI was mistaken if they wrote down that all of Garza's calls to Martinez were collect. This conflict may have been due to misunderstanding of term "collect" calls, as trial testimony revealed that Garza made calls from "casetas" in Mexico, which the FBI agents may have misconstrued as collect calls. It stands however, that at the time of Agent Church's grand jury testimony, the February 18 interview, left him with the impression that Garza had made collect calls. The fact that this testimony turned out to be in conflict with the subpoenaed phone records does not equate to perjury.

Report at 45.

A reasonable jurist would find that the Magistrate and this Court failed to realize and address that as of the date of Agent Church's testimony to the grand jury (i.e., February 23, 1998), he had already received the subpoenaed telephone records that reflected that **NO COLLECT CALLS had been made to Martinez**. *See e.g.*, page 177, footnote 123 of Cisneros' Section 2255 Motion. It also ignores the fact that Agent Church was quite clear at trial that the report of February 18, 1998, was accurate because Garza had told Vela and him that he (Garza) always had called Martinez *collect.* The Government, moreover, did not even suggest the scenario of speculation which substitutes for proper findings of fact on this issue. Rather than engaging in such speculation, the Magistrate should have recommended an evidentiary hearing so that any doubts could be resolved fairly and accurately. The Record, without more, does not support the finding of no perjury. Church was in possession of competent exculpatory evidence (the phone records) that directly contradicted his sworn testimony to the grand jury, and he did not address it. The phone records, moreover, were consistent with

Maria Martinez's testimony from the state trial, presumably known to Agent Church, that Garza exclusively called her from places *within Texas*, not from outside the country (or state).

Church's testimony was false (contradicted by competent evidence in his possession) and material, because it went directly to the question whether the Government had established proof of a jurisdictional nexus.  It bears repeating that Agent Church (and Mr. Mosbacker) had the affirmative obligation not to adduce misleading testimony to the grand jury in an effort to obtain an indictment that was predicated upon foreign telephone calls when they possessed documentary evidence that reflected that Garza had lied to the Government because no collect calls had been made from Mexico to Martinez.  Had Agent Church and Mr. Mosbacker shot straight with the grand jury, foreign telephone calls would not have formed a portion of the indictment as the grand jury could not have found that any such calls had been made. Given the totally uncertain nature of the "car crossing," had this issue been raised on appeal, a dismissal of the indictment on appeal probably would have been entered and the evidentiary basis for affirmation of the conviction discussed by the two vacated panel opinions   (i.e., foreign telephone calls) could not have resulted.  Accordingly, prejudice is demonstrated by virtue of the failure to raise the denial of the motion to dismiss on direct appeal.

> **Ninth COA Issue: Whether a reasonable jurist could find that this Court abused its discretion in denying Cisneros expansion of the record through discovery and an evidentiary hearing.**

A reasonable jurist could find that this Court abused its discretion by rendering a decision on the claims underlying Cisneros' Sixth, Seventh, and Eighth COA Issues without granting her the fair opportunity she requested to expand the Record through discovery and an evidentiary hearing. Cisneros has alleged facts that entitle her to relief.  Discovery and an evidentiary hearing are required under such circumstances. *United States v. Webster*, 392 F.3d 787, 801-02 (5th Cir. 2004) (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994)) (""A federal habeas court **must** allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief.") (emphasis added); *Perillo v. Johnson*, 79 F.3d 441, 451 (5th Cir. 1996).  A motion brought under 28 U.S.C. Section 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.

*United States v. Auten*, 632 F.2d 478 (5th Cir. 1980). Again, good cause to permit discovery exists where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 299 (1969).

A reasonable jurist could find that the Magistrate and this Court unreasonably denied development of the facts through discovery and a hearing by speculating regarding the facts without allowing for their full development through the only means available to Cisneros. This Court recognizes that the alleged phone calls by Garza to Martinez form the "basis of the jurisdictional nexus as [maintained by this Court] and in both panel decisions." Order at 10. The record as it stands suggests that, in order to create this federal jurisdictional nexus, the Government caused Daniel Garza's story to change sometime between Cisneros' sojourn in the state and federal courts Instead of allowing discovery and a hearing on Cisneros' claims of material suppression and false testimony related to the obvious shift in Garza's statements, this Court (which *did not* sit in on the trial) speculates about the truthfulness of Garza's testimony at trial when he stated "he did not remember exactly, but could not have made more than one collect call." The problem is that the suppression and false testimony claims are not *record* claims; thus, findings about credibility are not possible without full record development that shows *how it is that Garza's testimony changed* and, thus, whether the Government meddled with Garza.

It's an abuse of discretion for a court to rule on material suppression and false testimony claims *while preventing discovery of that which was suppressed.* At a minimum, the Magistrate or this Court should have ordered the Government to submit all reports and notes of interviews and contact with Daniel Garza between February 18, 1998 (when Garza was last interviewed by the Government, as far as Cisneros is aware) and the date of his testimony at Cisneros' trial (i.e., May 11, 1998). As Cisneros previously argued, these notes could have been reviewed by this Court, ex parte and in camera and, if appropriate, then distributed to Cisneros for further development. If no such notes exist, then interrogatories and/or depositions of should have been permitted, for the development of the sequence of events surrounding the unsavory development of Garza's story. A

reasonable jurist could find that, in light of this Court's refusal to assist in disclosure of the likely Government misconduct, it is highly unreasonable for this Court to dismiss the claims by simply asserting that Garza "was questioned about [his] inconsistencies at trial, so the jury could judge his memory and credibility." The relevant question is, what would a reasonable jury have done if it had been apprised of all the *extra-record* evidence relevant to Government meddling? That question could not be fairly answered without discovery and a hearing, given that the evidence lies solely in the hands of the Government and obviously now will not be disclosed without court order. The same analysis holds in regard to development of the facts underlying the grand jury misconduct claims within COA Issue 8, *supra*.

A reasonable jurist could find further that this Court unreasonably denied an evidentiary hearing in relation to the evidence of deficient performance in Cisneros' COA Issues 7 and 8, *supra*. Order at 16 n.7. As noted, this Court chose to speculate as to the motives of trial and appellate counsel for not raising or adequately preserving certain grounds of error, rather than to accept or test through the evidentiary hearing process counsels' sworn pleadings to the effect that they had no reasonable strategic grounds for their omissions.

## Conclusion and Prayer

PREMISES CONSIDERED, Cisneros prays that this Court grant COA on all issues herein.

Respectfully submitted,

/s/David L. Botsford
DAVID L. BOTSFORD
State Bar No. 02687950
Law Office of David L. Botsford
1307 West Ave.
Austin, Texas 78701
512-479-8030 (phone)
512-479-8040 (fax)
dbotsford @ aol.com (E-Mail)

A. J. "TONY" CANALES
State Bar No. 03737000
P.O. Box 5624
Corpus Christi, Texas 78465-5624

361-883-0601 (phone)
361-884-7023 (fax)

## CERTIFICATE OF SERVICE

I, David L. Botsford, do hereby certify that true and correct copies of the above and foregoing document have been served by placing the same in the United States mail, postage prepaid, on this the 7th day of February, 2007, addressed to Mr. James L. Turner, Assistant United States Attorney, P.O. Box 61129, Houston, Texas, 77208-1129.

/s/ David L. Botsford
DAVID L. BOTSFORD