**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-**

DORA CISNEROS,                          §
    Petitioner,                         §
                                        §
VS.                                     §          CRIMINAL ACTION NO. B-98-124
                                        §          CIVIL ACTION NO. B-02-191
UNITED STATES OF AMERICA                §
    Respondent.                         §

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the court is Petitioner's Application for Certificate of Appealability

("COA").  For the reasons stated below, it is recommended that the COA be denied on all issues.

### I. Background

Cisneros ("Petitioner") was convicted of capital murder in the 357th Judicial District

Court, Cameron County, Texas, Criminal Cause No. 93-CR-1515-E, and was sentenced to life

imprisonment.  Cisneros appealed the state conviction and on January 25, 1996, the Texas

Appeals Court reversed her conviction.  *Cisneros v. State*, 915 S.W.2d 217 (Tex.App.– Corpus

Christi), *pet. ref'd.*, 935 S.W.2d 789 (Tex.Crim.App. 1996).

On February 23, 1998, Cisneros was indicted for the federal offense of "murder for hire"

in violation of 18 U.S.C. § 1958, Criminal Cause No. B-98-124, in the United States District

Court for the Southern District of Texas.  On May 12, 1998, after a jury trial, Cisneros was

convicted and subsequently sentenced to life imprisonment. Cisneros appealed and the United

States Court of Appeals for the Fifth Circuit affirmed the conviction in a published panel

opinion.  *United States v. Cisneros*, 194 F.3d 696 (5th Cir. 1999).  On February 3, 2000, this

opinion was vacated and a new panel opinion was issued, affirming the conviction. *United States*

*v. Cisneros*, 203 F.3d 333 (5th Cir. 2000). Then the Fifth Circuit, on its own motion, granted rehearing *en banc* and consolidated the case with *United States v. Marek*, 198 F.3d 532 (5th Cir. 1999). On January 4, 2001, the *en banc* court affirmed Cisneros' conviction without additional elaboration on issues presented in the panel opinion. Cisneros moved for an additional rehearing of the *en banc* opinion. Cisneros' petition for re-hearing was denied. The Supreme Court denied Cisneros' petition for writ of certiorari on October 1, 2001. *Garcia Cisneros v. United States*, 534 U.S. 813, 122 S.Ct. 37 (2001).

On September 30, 2002, Petitioner filed a Motion to Vacate pursuant to 28 U.S.C. § 2255 in the above styled civil case. On October 20, 2005, the undersigned magistrate judge recommended that the district court deny relief (Docket No. 18). On September 28, 2006, the district court issued a Memorandum Opinion and Order denying Petitioner's relief and dismissing the case (Docket No. 22). Petitioner filed a Notice of Appeal on November 21, 2006 (Docket No. 23). On February 7, 2207, Petitioner filed an Application for COA (Docket No. 26).

## II. Substantial Showing of Denial of a Constitutional Right

Petitioner has raised nine issues which she believes are debatable among reasonable jurists and upon which a COA should issue. It is important to note that, Petitioner, in her first four issues, is asking this Court to determine whether reasonable jurists would find the Fifth Circuit's rulings (regarding her claims of error on appeal from her criminal conviction) debatable. Petitioner is apparently confused about what is required for a COA. The correct inquiry is whether reasonable jurists would find the district court's assessment of her constitutional claims (presented in her § 2255 motion) debatable. As set forth in her application

2

for COA, Petitioner presents the following issues:

> Issue 1: Cisneros was denied her right to due process and a meaningful appeal by the Fifth Circuit's failure to restore those parts of its second panel decision not consistent with its holding in *Marek*;

> Issue 2: Evidence upon which Cisneros was convicted was legally insufficient, in violation of her right to due process under the Fifth Amendment (a reasonable jurist could conclude that the Fifth Circuit's finding of sufficiency in the phone calls' formation of a jurisdictional nexus is in error);

> Issue 3: The second *Cisneros* panel erred in denying Cisneros' requested instruction on the statute of limitations;

> Issue 4: A reasonable jurist could find that the alleged jurisdictional nexus had an insufficient relationship to the alleged murder for hire scheme to satisfy the jurisdictional element (the Fifth Circuit erred in finding that "but for" causation was the correct standard and that there is a meaningful difference between the terms "facilitate" and "in furtherance");

> Issue 5: Cisneros was denied her Fifth and Sixth Amendment rights to due process, a jury trial, and a reliable jury verdict because the jury was not instructed on "causation" and that foreign commerce had to "facilitate" or "be in furtherance" of the alleged murder for hire scheme, two essential components of the offense;

> Issue 6: Cisneros was denied her right to due process by the prosecution's non-disclosure of the sequence of events surrounding Daniel Garza's gross modification of his story and by the prosecution's use of Daniel Garza's false testimony and creation of a false impression for the jury utilizing that testimony;

> Issue 7: Cisneros was denied her right to ineffective assistance of trial counsel in violation of the Sixth Amendment;

> Issue 8: Cisneros was denied her right to effective assistance of appellate counsel in violation of the Sixth Amendment;

> Issue 9: This Court abused its discretion in denying Cisneros' request for expansion of the record through discovery and an evidentiary hearing.

A COA may issue if the Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" requires the applicant to

demonstrate that the issue are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the question is adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003); *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999).  Thus, the question for this Court is the debatability of the underlying constitutional claim, not the resolution of that debate. *Miller-El*, 537 U.S. at 342.  "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has granted and the case has received full consideration, that the petitioner will not prevail." *Id*. at 338.

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542  (2000).  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.*

## COA Issue 1

### The *En Banc* Fifth Circuit's Failure to Reinstate Parts of the Panel Opinion

Petitioner makes a similar argument in her motion to vacate.  *See Motion to Vacate*, Docket No. 1, pp. 21-22.  Petitioner argues that a reasonable jurist could find that the *en banc* Fifth Circuit's failure to reinstate the parts of the panel decision which dealt with issues other than the one(s) chosen for *en banc* review, deprived Cisneros of a judgement on those issues

which could have been reviewable by the Supreme Court on certiorari, in violation her Fifth Amendment due process rights. Petitioner reasons that she was left without any appellate decision on the principal issues in her case and that the deprivation of an appellate decision essentially foreclosed review by the Supreme Court on those issues. Petitioner contends that because the second panel opinion was vacated, there was no review of the issues on the merits.

Petitioner raised this claim in her § 2255 motion. The undersigned magistrate judge recommended that the claim be denied and the district judge adopted the recommendation, finding that Petitioner did not demonstrate a due process violation because the failure of the *en banc* court to reinstate portions of the vacated panel opinions did not deny her meaningful review. However, this Court notes that Petitioner's claims fail for another reason.

Section 2255 motions are reserved for constitutional errors that occurred at trial and at sentencing. There is no legal authority which suggests that a petitioner can raise, in district court, constitutional errors allegedly made at the appellate level, after trial and sentencing. The legal precedent is in fact, to the contrary. The few courts which have addressed this issue have clearly found that actions of the appellate courts are not properly reviewable in a motion to vacate. *See U.S. v. Sanders*, 142 F.Supp. 638, 641 (D.C.Md. 1956)("This court cannot properly vacate a sentence imposed here and affirmed by the Court of Appeals for any alleged or suggested error of the Court of Appeals."); *Vega v. U.S.*, 261 F.Supp.2d 175, 178 (E.D.N.Y.,2003)("[Petitioner] **does not allege nor prove that the Second Circuit's denial of his motion for re-argument implicates the legality of his sentence. Thus, it is not a proper claim for a Section 2255 motion.**"). It is clear that § 2255 motions are reserved for federal prisoners challenging the legality of the imposition of a sentence. Therefore, Petitioner's § 2255 claims

5

regarding any alleged errors by the *en banc* Fifth Circuit are not properly presented in a motion to vacate. Petitioner's burden in requesting a COA is to show that the district court's assessment of her constitutional claims are debatable by reasonable jurists. Petitioner has not done this. The case law is clear with respect to which claims are cognizable in a motion to vacate. Alleged errors by the appellate court are not. Petitioner has failed to show that reasonable jurists would find this issue debatable. *Slack*, 529 U.S. at 484.

Aside from the fact that Petitioner's claims, regarding the actions of the appellate court, cannot be raised in a motion to vacate, they are without merit. Due process does not guarantee the right to appeal. There is no constitutional right to appeal; the right to appeal is a statutory one. *See Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038-39 (1977); *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir.1992); 8 U.S.C. § 3742. However, because Congress created the statutory mechanism by which to appeal a criminal judgment of conviction, due process entitles a defendant to "meaningful appellate review" by which litigants are entitled to have all issues fully considered and ruled on by a panel of the *Court of Appeals*. *See U.S. v. Pajooh*, 143 F.3d 203, 204 (5th Cir. 1998)(emphasis added). Meaningful review does not equate to a full written opinion. *Id*. The review process is distinguishable from the manner in which the Court announces its decision. *Id*. Even though an appeals court does not expressly discuss, in written form, a defendant's point of error, it nonetheless receives full consideration and a ruling where the court makes a finding of "no reversible error" and affirms the defendant's conviction and sentence. *See U.S. v. Garza*, 165 F.3d 312, 314 (5th Cir. 1999).

In Petitioner's case, she received meaningful review by a court of appeals in the first and second panel opinions. Although they were vacated, Petitioner provides no legal authority for

the proposition that the vacatur instantly eliminated the meaningful review that her issues had already received.  Nor does Petitioner provide authority for her argument that the vacatur prevented the Supreme Court from meaningfully reviewing those issues, had certiorari been granted.

The *en banc* court found that there was no reversible error and affirmed Cisneros conviction and sentence.  *See Marek*, 238 F.3d at 323.  Therefore, Petitioner received full consideration and a ruling.  *See Garza* at 314.  Contrary to Petitioner's argument, she did receive an appellate decision and a meaningful review by a court of appeals.  That is all that is required by the Fifth Amendment's due process clause.  *Pajooh*, 143 F.3d at 205.  Petitioner has not shown that "meaningful review," under the due process clause, requires an *en banc* court to reinstate portions of a vacated opinion, when the underlying conviction is affirmed and there is no finding of error.

It is not dispositive that the Fifth Circuit has, on past numerous occasions, reinstated portions of vacated panel opinions.  A pervasive custom, habit or practice does not create a due process right.  As so aptly noted by the district judge in his memorandum opinion, "Cisneros was not deprived of the opportunity to have all her claims raised before the Supreme Court, merely by the failure to write on them by the Fifth Circuit *en banc*.  She was free to raise these issues in her petition for certiorari and, if granted, could have had each reviewed despite the Fifth Circuit's failure to address these in writing in the *en banc* opinion."  *Memorandum Opinion and Order*, Docket No. 22, p. 18.  Petitioner has failed to present any authority for her contention that failure to reinstate certain parts of a vacated panel decision forecloses review by the Supreme Court and amounts to a lack of meaningful review in violation of due process.

In order to be entitled to a COA on this issue, Petitioner must show that the district court's assessment of her constitutional claim is debatable by reasonable jurists. Petitioner has not done this. The case law is clear with respect to what constitutes meaningful review. Petitioner received meaningful review by the Fifth Circuit on three separate occasions. Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to show that reasonable jurists would find this Court's assessment of her constitutional claims debatable. *Slack*, 529 U.S. at 484. Petitioner is not entitled to a COA on this issue.

## COA Issue 2

## Second *Cisneros* Panel Opinion - Jurisdictional Nexus and

## the Limitations Period

Petitioner raised a similar argument in her motion to vacate. *See Motion to Vacate*, Docket No. 1, pp.24-42 (Claims for Relief Nos. 1-5.). In her Application for COA, Cisneros states that "[a] reasonable jurist could conclude that this Court's [Fifth Circuit's] finding of sufficiency in the phone calls' formation of a jurisdiction nexus is in error." *Application for COA*, Docket No. 26, p. 7. "Reasonable jurists clearly would dispute the Panel's characterization of when a crime under 18 U.S.C. § 1958 is 'complete'." *Id*. at 8. "The second vacated panel opinion conflicts with other circuit court decisions that find the crime to be complete with the use of interstate commerce facilities." *Id*. at 9.

Petitioner raised this claim in her § 2255 motion asking the district court to collaterally review an alleged error by the Fifth Circuit. The undersigned magistrate judge recommended that the claim be denied and the district judge adopted the recommendation, finding that

Petitioner's constitutional claim was without merit. The district court found that Petitioner had received "meaningful review", as required by the due process clause as she "has had more than twenty-four appellate judges (three of whom considered her case on three separate occasions), two District Judges, and one United States Magistrate Judge consider the merits of her case. Both panel decisions considered all her points of error, and all appellate judges considered these points when they addressed her motions for rehearing and petition for writ of certiorari." *Memorandum Opinion and Order*, Docket No. 22, p. 18.

In order to be entitled to a COA on this issue, Petitioner must show that the district court's assessment of her constitutional claim is debatable by reasonable jurists. Petitioner has not done this. Petitioner, incorrectly asks this Court to review the findings of the Fifth Circuit and determine whether reasonable jurists would find its decision debatable. The only pertinent inquiry is whether reasonable jurists would find the district court's assessment of Petitioner's due process claim debatable. This Court finds that reasonable jurists would not. The case law is clear with respect to what constitutes meaningful review and Petitioner has failed to show that she did not receive meaningful review of her claims of error at the appellate level. Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to show that reasonable jurists would find this Court's assessment of her constitutional claims debatable. *Slack*, 529 U.S. at 484. Petitioner is not entitled to a COA on this issue.

## COA Issue 3

### Second *Cisneros* Panel Opinion - Statute of Limitations

Petitioner raised a similar argument in her motion to vacate. *See Motion to Vacate*,

Docket No. 1, pp.24-42. Petitioner argues that the jury was not properly instructed on the statute of limitations and that "[r]easonable jurists certainly could find that the second vacated panel opinion clearly erred by holding that Cisneros' Requested Instruction 15 [on the statute of limitations] was not necessary." *Application for COA*, Docket No. 26, p. 11.     As set forth at length above, any claimed error made by the appellate court is not reviewable in a motion to vacate. *See Sanders*, 142 F.Supp. at 641; *Vega*, 261 F.Supp.2d at 178. Notwithstanding, Petitioner raised this issue in her motion to vacate. The district court properly denied relief finding that Petitioner had received meaningful review of her claims as required by the due process clause. Petitioner, in her instant argument, again misinterprets the requirements for granting a COA. Petitioner is required to show that reasonable jurists would find the district court's assessment of her § 2255 claim debatable (i.e. whether the district court's determination that Cisneros received meaningful review is debatable). Petitioner, instead asks this Court to entertain the issue of whether reasonable jurists would find that the second *Cisneros* panel erred in its appellate decision regarding Required Instruction No. 15. Petitioner has gone to great lengths, in a futile attempt, to explain why the second *Cisneros* panel was wrong in its analysis.

The appropriate focus, in determining whether a COA should issue, is on the constitutional assessment made by the district court. In her motion to vacate, Petitioner offered no legal precedent and the district court found none, for the authority to collaterally review any alleged errors made by the Fifth Circuit. Further, the district court thoroughly analyzed the guarantees provided by the due process clause and found that Cisneros had clearly received meaningful review by the Fifth Circuit which was not extinguished by the *en banc* court's vacatur of the panel opinions. The district court further found that any alleged failure of the

Fifth Circuit did not foreclose possible review by the Supreme Court, had certiorari been granted. Petitioner's subjective belief that the Fifth Circuit erred in its ruling in the second panel decision does not amount to a denial of a constitutional right.

Petitioner has not come forward with any new authority for the proposition that the district court was wrong in its due process analysis or that a district court has authority to review (in a motion to vacate) an action or decision of the Fifth Circuit. A motion to vacate is used to raise constitutional errors made at trial or sentencing, which are subject to collateral attack. Petitioner inappropriately re-argues an issue that was not even properly raised in her motion to vacate, much less one upon which reasonable jurists would debate.

Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to show that reasonable jurists would find this Court's assessment of her constitutional claim debatable. *Slack*, 529 U.S. at 484. Petitioner has not presented any legal authority for her argument and reasonable jurists would not disagree regarding the utter lack of arguable merit underlying Petitioner's claim. Petitioner is not entitled to a COA on this issue.

## COA Issue 4

### Second *Cisneros* Panel Opinion - Causation and Furtherance

Petitioner raised a similar argument in her motion to vacate. *See Motion to Vacate*, Docket No. 1, pp. 24-42. Petitioner states that a "reasonable jurist could find that the alleged jurisdictional nexus...., had an insufficient relationship to the alleged murder for hire scheme to satisfy the jurisdictional element." *Application for COA*, Docket No. 26, p. 11-12. Petitioner argues that the second *Cisneros* panel erred in finding that "but for" causation was the standard

and that "[t]he second *Cisneros* panel opinion concluded that *United States v. Edelman*, 873 F.2d 791 (5th Cir. 1989) governed and only required the Government to prove 'simple but for causation rather than forseeability' in order to establish.... causation" *Id*. at 12. "[A] reasonable jurist could find that this understanding of causation misapplies a conspiracy case (*Edelman*) to a straightforward murder-for-hire case and is prohibited by *Rewis v. United States*, 401 U.S. 808 (1971)." *Id*. "A reasonable jurist rejecting 'but for' causation.... could find that, because the Government failed to prove beyond a reasonable doubt that Cisneros intentionally or knowing caused the travel or use of interstate facility, the evidence against her is legally insufficient." *Id*. at 12.

Petitioner is arguing that the Fifth Circuit decided certain issues on appeal incorrectly. First, she takes issue with the second *Cisneros* panel's finding regarding the type of causation required. Second, she attacks the second *Cisernos* panel's rejection of Cisneros' Requested Instructions Nos. 14[1] and 15A[2] regarding her theory of defense and causation, respectively. The panel found that Petitioner's proffered instructions were not accurate, noting that the "in furtherance" language was not correct. Petitioner argues that "a reasonable jurist could conclude that the *Cisneros* panel was wrong to suggest any meaningful difference between the

---

[1]Cisneros' Requested Instruction No. 14 was a "theory of defense" instruction which stated: "The defendant's position is that she is not guilty of the offense of murder-for-hire. Her position is that she did not agree with Maria Martinez or anyone else, for that matter, to pay anyone to kill Albert Joseph 'Joey' Fischer, Jr. It is also her position that the government has not proven beyond a reasonable doubt either (A) that she **caused** Heriberto Pizana to travel from Mexico to Brownsville on March 2, 1993, in furtherance of the alleged murder-for-hire; and /or (B) that she caused Daniel Garza to use a facility of foreign commerce to call Maria Martinez in Brownsville from San Fernando and Matamoros, Tamaulipas, Mexico between November 1992 and February 1993, **in furtherance** of the alleged murder-for-hire.

[2]Cisneros' Requested Instruction No. 15A was the "causation" instruction which stated: "A person 'causes' another to travel in foreign commerce or to use facilities in foreign commerce if he does an act with knowledge that the foreign travel or use of facilities in foreign commerce will follow in the ordinary course of business, or where such foreign travel or use of facilities in foreign commerce can reasonably be foreseen, even though not actually intended."

terms 'facilitate' and 'furtherance' for the interpretation of the Travel Act and murder-for-hire, statutes." *Id*. at 14. Petitioner concludes that "a reasonable jurist rejecting 'but for' causation in the instant context could find that, because the Government failed to prove beyond a reasonable doubt that the travel or use of interstate facility 'furthered' the crime of murder-for-hire, the evidence again Cisneros is legally insufficient." *Id*. at 15.

Again, Petitioner has not made the required showing for issuance of a COA. Petitioner incorrectly asks this Court to determine whether reasonable jurists could find that the second *Cisneros* panel erred in holding that "but for" causation was the standard and that there was a difference between the terms "facilitate" and "in furtherance". However, the correct inquiry, is whether reasonable jurists could find the district court's assessment of this constitutional claim debatable. As previously noted, the district court found that there was no due process violation as Petitioner received a meaningful review of her issues on appeal. In the present COA application, Petitioner fails to present any authority which shows that reasonable jurists would find the district court's assessment debatable.

Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to show that reasonable jurists would find this Court's assessment of her constitutional claim debatable. *Slack*, 529 U.S. at 484. Petitioner has not presented any legal authority for her argument and reasonable jurists would not disagree regarding the utter lack of arguable merit underlying Petitioner's claim. Petitioner is not entitled to a COA on this issue.

**COA Issue 5**

13

**The Causation and Required Relationship (Nexus) Instruction**

In her Application for COA, Petitioner argues that she was denied due process of law under the Fifth Amendment and her right to trial by jury under the Sixth Amendment because the jury was not instructed on: (1) causation; and (2) the required relationship between the foreign commerce and the murder-for-hire scheme. In the motion to vacate, the undersigned magistrate judge recommended denial of this claim on procedural grounds, as Petitioner failed to object to the omission of the causation and required relationship instructions, failing to preserve error for appellate review. The undersigned magistrate judge found that Petitioner failed to demonstrate the requisite "cause and prejudice" which would allow collateral review. *See United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593 (1982).

In adopting the magistrate's recommendation, the district court noted that Petitioner failed to object to the lack of an instruction on the nexus requirement and instead only objected to the refusal of the trial court to use her proposed "furtherance" instruction. *Memorandum Opinion and Order*, Docket No. 22, p. 14-15. The district court noted, with respect to the causation instruction, that when the trial court refused to include Cisneros' instruction, as it was not a correct statement of the law, Cisneros did not offer an alternative instruction or object to the fact that there was no definition in the jury instructions. *Memorandum Opinion and Order*, Docket No. 22, p. 15. The district court concluded that Cisneros "has shown no error and certainly has not shown the requisite cause and prejudice which she must to prevail in this action." *Id.*

Petitioner argues that a "reasonable jurist could disagree with this Court that Cisneros gave an incorrect statement of the law [for Requested Instruction No. 14 (causation)]."

Petitioner, in addressing the procedural default, states that "contrary to the Magistrate's findings, a reasonable jurist could conclude that there is no procedural default... because trial counsel asked for and received a running objection." *Application for COA*, Docket No. 26, p. 18.

When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). In this case, the district court found that Petitioner's claim was procedurally barred and that she failed to demonstrate the requisite cause and prejudice. Therefore, Petitioner must show that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

A review of Petitioner's motion to vacate reveals that she did not present any arguments regarding the cause for her failure to object to the omission of the "causation" and "nexus" definitions and any resulting prejudice. Petitioner instead argues that she preserved error via her running objection. This argument is too little, too late. A review of the Fifth Circuit panel opinions belies Petitioner's assertion. The appellate court did not review this claim of error. The magistrate and the district judge found that there was no objection and that the error was not preserved for review. The district court noted that "Federal Rule of Civil Procedure 51 requires that a party objecting to a jury instruction or the failure to give an instruction state 'distinctly the matter objected to and the grounds for the objection.' FED.R.CIV.P. 51." *Memorandum Opinion and Order*, Docket No. 22, p. 15.

For a COA to issue on this claim Petitioner is required to show that the district court's procedural ruling is debatable. This would necessarily require Petitoiner to show that she demonstrated the requisite cause and prejudice and the district court's assessment was wrong or debatable. This she has not done. Petitioner is also required to show that her petition states a valid claim of the denial of a constitutional right. Petitioner has failed to make this showing.

The Fifth Amendment to the United States Constitution guarantees that no one will be deprived of liberty without due process of law and the Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. *See United States v. Gaudin*, 515 U.S. 506, 509-510, 115 S.Ct. 2310, 2313-2314 (1995). These provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. *Id*. The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970).

The murder-for-hire statute, 18 U.S.C. § 1958, consists of three elements: (1) traveling or causing another to travel in interstate or foreign commerce, or using or causing another to use the mail or other facility of interstate or foreign commerce; (2) with intent that a murder be committed in violation of the laws of any State or the United States; and (3) as consideration for the receipt of pecuniary value. *United States v. Sharpe*, 193 F.3d 852, 864  n.6 (5th Cir. 1999). The record shows that the jury was charged on all three of the above elements.   The jury instructions mirrored the statutory language and referenced all three elements of the murder-for-hire statute, including causation. As both the panel and the *en banc* opinions found, the evidence

was plainly sufficient to prove causation beyond a reasonable doubt.

The definition of causation submitted by Petitioner was properly refused as it was an incorrect statement of the law.  The trial court was not required to correct a defective request.  The lack of a definition of causation and the nexus did not violate Petitioner's due process rights.  Petitioner must show that any alleged error in a jury charge, by itself, so infected the entire trial that the resulting conviction violates due process, not merely that the instruction is undesirable, erroneous, or even universally condemned. *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730 , 1736 (1977).  In this case, Petitioner's burden of demonstrating a constitutional violation is especially onerous because no erroneous definition was given.  Petitioner's claim is based on the failure to give any explanation beyond the reading of the statutory language itself of the causation element.  An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.  *Id*.  Petitioner has failed to demonstrate that the omitted definitions, by themselves, so infected the entire trial that her conviction violates due process.  The district judge, in denying Petitioner's motion to vacate, noted that there may have been strategic reasons for counsel's failure to object to the omission of a causation definition, which could have possibly worked in her favor:

> Indeed, one can postulate many reasons for not objecting and insisting on the inclusion of a definition of cause.  One strategic reason readily comes to mind.  At the time Petitioner's own offered definition had been refused.  That being the case, counsel could have assumed, with near certainty, that any definition the court would give would be less favorable considering her view of the case than the one they proposed.  With no definition counsel would still have the latitude to argue that no cause existed and would not be harmed by a more restrict definition.

*Memorandum Opinion and Order*, Docket No. 22, p. 16, n. 7.

Petitioner's arguments are misguided.  In her Application for COA, Petitioner argues that

17

the definition of "causation" and "nexus" which she offered were substantially correct.  Again, Petitioner misunderstands the COA requirement.  The Fifth Circuit already found that Petitioner's proffered definitions were not correct and were inconsistent with the law in the circuit.  *Cisneros*, 203 F.3d at 346-47; *Cisneros*, 194 F.3d at 638-39.  That page has turned.  This court cannot, in a request for COA, review appellate rulings as Petitioner suggests.  Petitioner's argument, i.e. that reasonable jurists could find that the definitions were substantially correct, is completely irrelevant.

This Court's inquiry is limited.  It cannot review and compare the Fifth Circuit's findings with those of reasonable jurists.  It can only analyze whether the district court's procedural ruling is debatable or wrong, and whether her petition stated a valid claim of the denial of a constitutional right.  The analysis above, as well as those set forth in the undersigned magistrate's recommendation and the district court's order, clearly show that Petitioner has failed to demonstrate a valid claim of the denial of a constitutional right.  The omitted definitions did not amount to a denial of due process.

Petitioner has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to show that reasonable jurists would find this Court's assessment of her constitutional claim debatable.  *Slack*, 529 U.S. at 484.  Petitioner has not presented any legal authority for her argument and reasonable jurists would not disagree regarding the utter lack of arguable merit underlying Petitioner's claim.  Petitioner is not entitled to a COA on this issue.

### Issue 6

### Cisneros' *Giglio/Brady/Napue* Claim

18

Petitioner, in her motion to vacate, argued that the Government violated her due process rights by: (1) failing to disclose the sequence of events surrounding the modification of Daniel Garza's witness testimony; (2) using false testimony; and (3) suppressing impeachment evidence.   The trial witness, Daniel Garza ("Garza"), was the client of Maria Martinez, the *curandera*, who Petitioner paid to find and hire the hit-men in the murder-for-hire scheme. Petitioner alleges that Garza initially stated, in FBI interviews, that his telephone calls (the jurisdictional nexus) with Maria Martinez were made in a time frame pre-dating the murder-for-hire scheme and were made "collect".

However, at trial, Garza testified that he made pre-paid direct telephone calls from San Fernando, Mexico, in a time frame consistent with the murder-for-hire scheme.  Petitioner alleges that "[t]here is no reason why Garza would modify his story about the calls without prompting by the Government to try to meet the jurisdictional requirement."  *Application for COA*, Docket No. 26, p. 20.  Petitioner argues that the Government failed to disclose exculpatory evidence and used perjured testimony in violation of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972), *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) and *Napue v. Illinois*, 360 U.S. 264, 269-70, 79 S.Ct. 1173 (1959).

Petitioner, in her Application for COA, argues that "[a] reasonable jurist could find that the array of facts at pages 76-82 of [Cisneros'] Section 2255 Motion presents strong doubt about the credibility of the Government's key witness and the ethical nature of the Governments' case."  *Application for COA*, Docket No. 26, pp. 20-21.  Petitioner contends that "[g]iven the lack of a basis for jurisdiction in the car crossing, it is apparent that, if the jury disbelieved the credibility of Garza regarding the making of phone calls to Martinez from Mexico, the

19

Government would have provided insufficient proof of the jurisdictional nexus, requiring an acquittal. *Id*. at 21.

The district court, in denying the motion to vacate, found that Petitioner failed to raise this issue on direct appeal and failed to demonstrate the requisite cause and prejudice needed to secure collateral review. The undersigned magistrate judge found that Petitioner failed to establish cause for the procedural default, as trial counsel was not ineffective and there was no objective external factor which impeded counsel's efforts to raise the issue on appeal. The undersigned magistrate judge also found that Petitioner failed to establish prejudice, as the jury was aware of Garza's inconsistent statements and could have relied on testimony from the other trial witnesses to find the required relationship or jurisdictional nexus (i.e. that a facility in foreign or interstate commerce was used or that there was travel in interstate or foreign commerce).

As this claim was denied by the district court on procedural grounds (failure to demonstrate "cause and prejudice"), Petitioner must demonstrate a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Petitioner claims that the government failed to disclosed Garza's modification of his testimony. A *Brady* violation consists of three elements: (1) the evidence was suppressed; (2) the evidence was favorable to the accused (either exculpatory or impeaching); (3) evidence was material to guilt or punishment. *Jackson v. Johnson*, 194 F.3d 641, 648 (5th Cir. 1999). Evidence is material only if there is a reasonable probability that had the evidence been disclosed to the

defense, the result of the proceeding would have been different. *Id*. at 649-50. A reasonable probability is the probability sufficient to undermine confidence in the outcome. *Id*.

The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles v. Whitley*, 514 U.S. 419, 434-35, 115 S.Ct. 1555, 1566 (1995). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions, it is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Id*.

Petitioner fails to meet the first and third elements of a *Brady* claim. First, Petitioner has not demonstrated that evidence was suppressed. The record shows that Garza told the FBI, during an interview, that he consistently made "collect" calls to Martinez. Subsequent to the FBI interviews, on February 18, 1998, defense counsel interviewed Garza, during which he stated that he did not recall making calls from Mexico. Approximately two months later, on April 20, 1998, the government filed its Bill of Particulars in which it stated that the "evidence in the case will show, in regards to use of telephone communications facilities in foreign commerce, that Daniel Garza used telephone facilities in San Fernando, Tamaulipas, Mexico, and in Matamoros, Tamaulipas, Mexico, to call Maria Martinez in Brownsville, Texas....". *U.S. v. Cisneros*, Criminal Case No. B-98-124-1, Docket No. 59.

At trial, Garza testified on direct examination that there must have been a mistake regarding his prior interview statements about always calling Martinez "collect". Garza testified

that he must have called "collect" only once.  Whether Garza's mistake was due to a communication, translation, or memory error, it is of no import.  Defense counsel knew about Garza's statements to the FBI and was aware that the government was going to present evidence of phone calls from Mexico, as set forth in its Bill of Particulars.  The government attempted to clarify on direct examination, the type and location of calls made to Martinez.  It is not beyond the realm of possibility that Garza's initial statements to law enforcement and his eventual trial testimony differed for reasons other than coercion by the government to present perjured testimony.  The defense knew that the government was going question Garza regarding calls made from Mexico, even though Garza had told defense counsel that he only made calls from Texas.

Petitioner also fails to meet the third element of a *Brady* claim, i.e. the evidence was "material" to guilt or punishment.  The term "material" has a very specific meaning.  Evidence is "material" only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  The materiality inquiry focuses on whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.  *Kyles*, 514 U.S. at 434-35.  The record provides strong support for the conclusion that had defense counsel cross examined Garza regarding the modification of his story, putting his credibility at issue, it would not have undermined confidence in the verdict.  The government did defense counsel's job for him right at the outset.  The government questioned Garza, on direct examination, about his prior inconsistent statements.  The government brought to light the fact that Garza had made a prior inconsistent statements to the FBI and questioned him regarding that modification.  The

government put Garza's credibility at issue and the jury was made aware of it.  Defense

counsel's failure to cross examine Garza regarding that modification was a strategic choice.  In

hindsight,the failure to cross examine may have had an adverse impact on the defense, but it

cannot be corrected on collateral review by claiming that the government suppressed evidence.

Even if defense counsel had questioned Garza even more thoroughly regarding the

change in testimony, Petitioner has not shown that the jury would have found his testimony

about the direct calls from Mexico not credible.  Although Maria Martinez testified that she

believed that the calls she received from Garza were made from either San Antonio and Dallas

and Garza testified about his inconsistent statements, the jury nonetheless believed Garza's

testimony that he had also made direct calls from San Fernando, Mexico.

Petitioner is correct in her contention that a *Brady* claim may be based on suppressed

evidence which would lead to the impeachment of a key witness.   The duty to disclose evidence

encompasses impeachment evidence as well as exculpatory evidence.  *United States v. Bagley*,

473 U.S. 667, 676, 105 S.Ct. 3375 (1985).  However, Petitioner must establish that the

government "suppressed" this evidence and that it was "material" to guilt or punishment.  Not

every violation of that duty necessarily establishes that the outcome was unjust. *Strickler v.

Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948 (1999).   Strictly speaking, there is never a real

" *Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability

that the suppressed evidence would have produced a different verdict.  *Id*.

Petitioner has not made this showing.  It is true that evidence of Garza's change in his

story was impeaching, but that is not all that is required to succeed on a *Brady* claim.  When

Brady evidence would have only a "cumulative" or marginal impact on the jury's credibility

assessment, habeas relief is not in order because the evidence is not material. *Jackson v. Johnson*, 194 F.3d 641, 650 (5th Cir. 1999). *See also Pyles v. Johnson*, 136 F.3d 986, 999 (5th Cir.1998)(*Brady* evidence with "marginal negative impact on jury's credibility assessment" does not warrant habeas relief); *Westley v. Johnson*, 83 F.3d 714, 725 (5th Cir.1996)(*Brady* evidence that does not constitute "significant new evidence" does not warrant habeas relief); *Spence v. Johnson*, 80 F.3d 989, 995 (5th Cir. 1996) (*Brady* evidence that is "cumulative" does not warrant habeas relief); *Drew v. Collins*, 964 F.2d 411, 419-20 (5th Cir.1992)(*Brady* evidence with only "incremental impeachment value" does not warrant habeas relief).

The government impeached Garza on direct examination and questioned him about his prior statements. Garza's credibility was open to question. Additional evidence that Garza changed his story (in his interviews with the FBI, defense counsel, and the prosecution) would have only been cumulative. The fact that the government impeached Garza and the jury still found that Garza made the international phone calls, in and of itself shows that the evidence was not "material" as defined in the relevant case law.

Petitioner also claims that the government elicited perjured testimony from Garza in violation of *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959). Petitioner alleges that the government knew Garza did not make any phone calls from Mexico, but somehow forced him to give false testimony to meet the jurisdictional nexus requirement. Petitioner offers no support for this conspiracy theory of manufactured evidence, other than the fact that Garza stated in his interview with defense counsel that he did not make any phone calls from Mexico. A review of the record reveals that there is no evidence of forced perjury. It is entirely likely, given Garza's frequent change in his story, that the statements he made to defense counsel were not credible.

24

Petitioner must show the following to obtain reversal of his conviction on the grounds that the government elicited false testimony: (1) the testimony was false, (2) the prosecution knew it was false, and (3) it was material. *United States v. Scott*, 48 F.3d 1389, 1394 (5th Cir. 1995), cert. denied, 516 U.S. 902, 116 S.Ct. 264 (1995). The false testimony is material if there is "any reasonable likelihood" that it could have "affected the judgment of the jury." *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766 (1972).   Petitioner has failed to show that Garza's testimony was false and that the government knew it was false.  Petitioner's blank assertion, that Garza's change in testimony itself is evidence of government wrongdoing, is not a sufficient showing under the law.  Petitioner has failed to show a valid claim of the denial of a constitutional right under *Gigilo*, *Brady*, or *Napue*.

Finally, because the district court denied this claim based on procedural grounds, Petitioner must show that reasonable jurists would find the district court's procedural ruling debatable or wrong.  The district court found that Petitioner had not demonstrated the requisite "cause and prejudice" needed to overcome the procedural default.

Petitioner argues that the "cause" for failing to raise the *Brady* claim on direct appeal was that she was unaware of the factual basis of the claim.  The record belies this assertion.  Since the trial, no new facts have come to light, upon which a *Brady* claim could be made.  Defense counsel knew about Garza's interview statements with defense counsel and the FBI, as well as his trial testimony, and was aware that there were inconsistencies.  Petitioner argues that "evidence of suppression is plainly demonstrated by the record of Garza's surprise switches in story..."[3].  If this is so, then Petitioner would have been able to raise a *Brady* claim at trial and on

---

[3]*Application for COA*, Docket No. 26, p. 20.

direct appeal, because the "switch in story" was known at the time of the trial.  Likewise, Petitioner fails to demonstrate prejudice, for the same reasons that the impeachment evidence was not "material" as it did not put the whole case in such a different light as to undermine confidence in the verdict.  Petitioner has failed to show that reasonable jurists would find the district court's procedural ruling debatable or wrong.  Petitioner is not entitled to COA on this issue.

**Issue 7**

**Ineffective Assistance of Trial Counsel**

In Petitioner's motion to vacate, she claimed ineffective assistance of trial counsel based on defense counsel's failure to: (1) object to the transcripts of Garza and Martinez's phone calls; (2) cross examine Martinez on the location of the phone calls; (3) emphasize Garza's inconsistent statements; (4) request a causation instruction; (5) request an instruction on the jurisdictional nexus.  The undersigned magistrate judge found that counsel's alleged failure to make objections, adequately cross examine, or ask for specific instructions, were tactical or strategic decisions which fall within the wide range of objectively reasonable professional assistance and was not ineffective under *Strickland v. Washington*, 466 U.S. 668, 687 104 S.Ct. 2052, 2064 (1984).  The district judge, in adopting the magistrate's recommendation, found that the testimony of both Garza and the FBI agents detailed international phone calls in which the murder plot was embraced.  The district court noted that the absence of "collect" calls was not fatal, because direct international calls would satisfy the jurisdictional nexus.

In support of her Application for COA, Petitioner makes the following arguments: (1) reasonable jurists would find that the Magistrate erred in concluding as a matter of law that the

omissions Cisneros attributed to her trial counsel are within the realm of tactical determination and do not constitute objectively unreasonable performance; and (2) reasonable jurists should find that the Magistrate unfairly treats the facts by asserting that a review of the trial transcripts reveals that the alleged deficiencies were the result of conscious and informed decision making on trial tactics and strategy.

Petitioner's arguments are weak at best. The necessary showing for a COA requires more than just stating that reasonable jurists would find that the district court erred. Petitioner must show reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. This involves reviewing the constitutional analysis made by the district court and pinpointing any errors and presenting arguments to the contrary which are supported by relevant legal authority. Petitioner has failed to do this.

Petitioner instead argues that defense counsel "...had no strategy but merely unreasonably failed to investigate, cross examine, or exclude evidence..." and "...no reasonable strategy is imaginable for those acts/omissions...". *Application for COA*, Docket No. 26, p. 25, n.10. Petitioner concludes that "[t]rial counsels' failure to cross-examine Martinez was not the result of any strategic decision and there is clear prejudice." *Id*. at 24. Petitioner further contends that the district court could not properly address the ineffectiveness issue because it cannot "draw factual conclusions based upon a record that obviously is deficient without further development" where the "preparation and motives of trial counsel should be examined". *Id*. at 24.

Petitioner apparently misunderstands the *Strickland* standard and finds that prejudice exists with no underlying analysis. Petitioner cannot establish ineffectiveness by merely conceding that counsel was ineffective and concluding that the performance was prejudicial.

Petitioner must demonstrate both that counsel's performance was deficient and that the deficiency prejudiced the defense such that the result of the trial would have been different. *Id*. at 687, 104 S.Ct. at 2064. Both prongs must be shown by a preponderance of the evidence. *Rector v. Johnson*, 120 F.3d 551 (5th Cir.1997). To establish the first prong of deficient performance, Petitioner must show that her trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. However, this Court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id*. at 689, 104 S.Ct. at 2065. Therefore, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

For the second prong, Petitioner must show a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. The possibility of a different outcome is not sufficient to prevail on the prejudice prong. *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir.), cert. denied, 522 U.S. 944, 118 S.Ct. 361, 139 L.Ed.2d 281 (1997). Rather, the defendant must demonstrate that the prejudice rendered sentencing "fundamentally unfair or unreliable." *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993)). Counsel's performance is considered effective so long as it is based upon adequate investigation. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999)

Petitioner's allegations are not sufficient, however, to demonstrate that she was denied the effective assistance of counsel. There is a strong presumption that trial counsel rendered

28

adequate assistance and that the challenged conduct was the product of reasoned trial strategy.
*Strickland* at 690, 104 S.Ct. at 2066.  It requires the defendant to overcome the presumption that,
under the circumstances, the challenged action might be considered sound trial strategy. Id. at
689.  Petitioner's bald assertion, that the deficient acts were not part of a strategy, does not
counteract *Strickland's* presumption.

First we consider Petitioner's arguments regarding cross examination of Martinez
Petitioner argues that defense counsel would have liked to have Martinez testify that Garza
called her from Texas only.  However, questions about the phone calls may have put Martinez's
credibility at issue in light of her prior statements about receiving only "collect" calls and the
absence of collect calls in the telephone records.  Martinez stated, in pre-trial FBI interviews,
that the calls she received from Garza were "collect".  Despite these statements, telephone call
logs revealed that no collect calls were received, thus placing Martinez's credibility at issue.
Defense counsel, as part of their reasoned strategy, may not have wanted to question Martinez in
anticipation of this inconsistency.  Therefore, the defense would have foregone the opportunity
to cross examine on this issue, concluding that it would have no effect.  Any testimony by
Martinez, regarding a lack of jurisdictional nexus (i.e. only calls from Texas) may not have been
believable, as a result of Martinez's inconsistent statements about the alleged "collect" calls.
Decisions about whether to conduct cross examination or the scope of cross examination are
tactical decisions made as part of a trial strategy.  *See U.S. v. Stedman*, 69 F.3d 737, 740 (5th Cir.
1995); *Prejean v. Smith*, 889 F.2d 1391, 1398-99 (5th Cir.1989)(defendant was not denied
effective assistance because of attorney's decision not to call character witnesses, where
cross-examination would have revealed unfavorable facts about defendant's criminal history).

As for counsel's failure to request the causation and jurisdictional nexus instructions, Petitioner likewise fails to overcome the presumption that these actions were part of a reasoned trial strategy.  As the district court noted, after Petitioner's proposed instructions were refused "counsel could have assumed, with near certainty, that any definition the court would give would be less favorable considering her view of the case than the ne they proposed."  *Memorandum Opinion and Order*, Docket No. 22, p. 16, n.7.  "To second guess that decision-which may have been a well thought out strategy-would be the height of 'Monday-morning quarter- backing,' a process the Supreme Court wisely counseled against in *Strickland*."  *Id*.

Petitioner has also failed to demonstrate prejudice.  Petitioner argues that the defense counsel's failure to use "Martinez's state court testimony and her statements to FBI Agent Church.... undermines confidence in one of the two jurisdictional bases (i.e. telephone calls)" and there is "a reasonable probability that the result of the trial would have been different."  *Application for COA*, Docket No. 26, p. 27.  Just because Martinez's testimony may have included statements that she believed Garza's collect calls to be from Texas, doesn't necessarily negate Garza's testimony that he made pre-paid direct calls from Mexico.

The jury would still have had to weigh Martinez's and Garza's credibility regarding their testimony about the origin of the calls.  Even if the jury was given the instructions that Petitioner suggests, it may still have found Garza's and Agent Church's  testimony credible, i.e. that Garza made phone calls from Mexico which embraced the murder-for-hire scheme.  The possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing "fundamentally unfair or unreliable."  *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 843 (1993).

Petitioner has failed to make this showing. Tactical determinations, even those which later prove to be in error, are not sufficient. The Sixth Amendment does not guarantee the right to errorless counsel. Petitioner has not shown that reasonable jurists would find the district court's assessment of her Sixth Amendment claims debatable or wrong. Petitioner is not entitled to a COA on this issue.

**Issue 8**

**Ineffective Assistance of Appellate Counsel**

In her motion to vacate, Petitioner attacked the performance of her appellate counsel on the basis of the failure to adequately challenge: (1) the required relationship or "furtherance" instruction; (2) the omission of the causation instruction; (3) motion to dismiss the indictment based on prosecutorial misconduct. The district court found that appellate counsel was not ineffective because:

> (1) the challenge to the "required relationship" instruction was raised on appeal (Issue No. 3, Subsection B) as a non-frivolous thoroughly briefed appellate point addressed by the Fifth Circuit in both panel opinions and found to be without merit;

> (2) the challenge to the lack of a "causation" instruction was raised on appeal as a non-frivolous thoroughly briefed appellate point which the Fifth Circuit chose *not* to address in either of its panel opinions (possibly because defense counsel failed to object and preserve error);

> (3) counsel does not have a duty to raise every colorable claim; counsel did not unreasonably fail to discover this nonfrivolous issue; Petitioner failed demonstrate prejudice.

In her Application for COA, Petitioner makes a creative but completely misguided argument regarding counsel's failure to adequately challenge the "required relationship" and "causation" instructions. Petitioner argues that assuming these two issues were not adequately preserved at trial, the Fifth Circuit could and should have reviewed them for plain error, as set forth in

31

FED.R.CRIM.P. 52, which provides that "[a] plain error that affects substantial rights may be considered even though it was not to the court's attention."  Petitioner fails to comprehend that the required showing for a COA is that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong (i.e. appellate counsel was not ineffective).  Therefore, Petitioner's focus should be appellate counsel's efforts and any possible prejudice resulting from arguments that counsel unreasonably failed to raise.

Instead, Petitioner focuses on the actions of the Fifth Circuit and suggests that they could have reviewed the challenged instructions for "plain error."  Again, Petitioner is requesting that the district court, on collateral review, pass judgment on the Fifth Circuit's disposition of Petitioner's appellate case.  This court declines such invitation.  The fact remains that Petitioner challenged both instructions on appeal (even if not properly preserved at trial) and appellate counsel thoroughly briefed those points.

Under the standard for ineffective assistance on appeal, *see Smith v. Robbins*, 528 U.S. 259, 285 120 S.Ct. 746, 764 (2000), Petitioner has failed to meet the first prong, i.e. counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. Appellate counsel did discover the challenges to both instructions and filed a merits brief raising them.  What the Fifth Circuit chooses to do, or not do, with the information in the briefs cannot be attributed to appellate counsel.  Petitioner has not shown that reasonable jurists would find the district court's assessment of the ineffective assistance claim debatable or wrong.  Petitioner is not entitled to a COA on this issue.

Lastly, Petitioner argues that her appellate counsel was ineffective for not raising on appeal, the trial court's denial of defendant's motion to dismiss the indictment based on

prosecutorial misconduct. Petitioner's prosecutorial misconduct claim was based on the: (1) prosecutor's alleged abuse of grand jury subpoena power in violation of FED. R. CRIM. P. 6; and the (2) prosecutor's alleged sponsorship of false testimony by FBI Agent Church. The district court found that assuming appellate counsel unreasonably failed to raise these issues on appeal, she did not demonstrate prejudice, i.e. that there was a reasonable probability that, but for counsel's failure, defendant would have prevailed on her appeal. To be entitled to a COA, Petitioner must show that reasonable jurists would find the district court's prejudice analysis was debatable or wrong. Petitioner has not done this.

Petitioner has not clearly set forth which sections of Rule 6 she believes have been violated. Petitioner fails to show how the structural protections of Rule 6 were compromised. The record shows that the prosecutor issued three subpoenas returnable to the Brownsville Grand Jury (two for the telephone records of Maria Martinez and Daniel Garza and one for the appearance of FBI Agent Church). However, at the time the subpoenas were issued, there was no grand jury sitting in Brownsville, Texas. The prosecutor filed a proper disclosure order pursuant to Rule 6(e)(3)(C)[4] (court authorization not needed) and transferred the case to Houston. FBI Agent Church testified before the Houston Grand Jury, which returned the indictment.

There were not two grand juries as Petitioner suggests. There was only one grand jury (the Houston Grand Jury) which reviewed the evidence and returned an indictment. Petitioner has not shown that merely because the subpoenas were made returnable to Brownsville that this

---

[4]An attorney for the government may disclose any grand-jury matter to another federal grand jury.

somehow amounts to a violation of Rule 6.[5]  The prosecutor is free to go to any grand jury throughout the Southern District to seek an indictment.  The prosecutor filed the proper disclosure order and transferred the case to Houston.  The subpoenas correctly called for the witness to come before the grand jury and not the United States Attorney. There is no hint of a Rule 6 violation.

At trial, defense counsel, in support of his motion to dismiss the indictment, insinuated that the Houston Grand Jury was constitutionally prohibited from reviewing the evidence if a Brownsville Grand Jury had already decided not to return an indictment.

> MR. CANALES:    How do I know perhaps he [the prosecutor] received information from this Grand Jury and got no billed and he took it somewhere else and they get a bill.  They cannot do that, Your Honor.  So that's the reason I am trying to find out what happened in Houston as to what happened here.  And our motion goes to that.
>
> 4 R. 24-27.

If the basis of Petitioner's motion to dismiss the indictment is that the prosecutor is constitutionally barred from using the Houston Grand Jury, her argument is clearly erroneous. The Double Jeopardy Clause of the Fifth Amendment does not bar a grand jury from returning an indictment when a prior grand jury has refused to do so. *See Ex parte United States*, 287 U.S. 241, 250-251, 53 S.Ct. 129, 132, 77 L.Ed. 283 (1932); *United States v. Thompson*, 251 U.S. 407, 413-415, 40 S.Ct. 289, 292, 64 L.Ed. 333 (1920).

Petitioner also argues that FBI Agent Church falsely testified before the grand jury (February 23, 1998) when he stated that Garza said he would always call Martinez "collect".

---

[5]*See United States v. Thompson*, 251 U.S. 407, 40 S.Ct. 289 (1928); *United States v. Owens-Corning Fiberglass Corp*., 271 F.Supp. 561, 566 (N.D.Cal.1967); *United States v. Culver*, 224 F.Supp. 419, 432 (D.Md.1963); *In Re Grand Jury Investigation of Banana Industry*, 214 F.Supp. 856 (D.Md.1963); *United States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519, 522 (D.C.N.Y.1974).

Petitioner reasons that Agent Church falsely testified because he had already received the subpeoned telephone records reflecting that no collect calls had been made to Martinez. Petitioner states, "Church was in possession of competent exculpatory evidence that directly contradicted his sworn testimony.... and he did not address it." *Application for COA*, Docket No. 26, p. 31. Petitioner's argument is without merit.

The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. *See United States v. Calandra*, 414 U.S. 338, 344-45, 94 S. Ct. 613, 618, 38 L.Ed.2d 561, 569 (1974). Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *Id.* However, it is a violation of 18 U.S.C. § 1623(a) to knowingly make a material false declaration before the grand jury.

FBI Agent Church told the grand jurors that Garza stated he called Martinez collect. This was not a false declaration. Garza did, in fact, tell Agent Church that he called Martinez collect. Agent Church merely relayed Garza's statements. Whether or not Garza was correct in his characterization of the calls as "collect" does affect the veracity of Agent Church's statements regarding Garza's interview testimony. The prosecutor did not cause Agent Church to testify falsely. Although the prosecutor may have had doubts about the accuracy of Garza's statements, it does not equate to having knowledge of falsity.

The grand jury 'can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not.' " *United States v. R. Enterprises, Inc*., 498 U.S. 292, 297, 111 S.Ct. 722, 726 (1991) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643, 70 S.Ct. 357, 364 (1950)). It need not identify the offender it suspects, or even "the

precise nature of the offense" it is investigating. *Blair v. United States*, 250 U.S. 273, 282, 39

S.Ct. 468, 471 (1919). The grand jury sits not to determine guilt or innocence, but to assess

whether there is adequate basis for bringing a criminal charge. *See United States v. Calandra*,

414 U.S. 338, 343, 94 S.Ct. 613, 617 (1974). The Fifth Amendment does not require the

prosecutor to disclose exculpatory evidence in his possession to the grand jury.  *U.S. v. Williams*,

504 U.S. 36, 45, 112 S.Ct. 1735, 1741 (1992).  Requiring the prosecutor to present exculpatory

as well as inculpatory evidence would alter the grand jury's historical role, transforming it from

an accusatory to an adjudicatory body.  *Id*. at 51.

> Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system. If a "balanced" assessment of the entire matter is the objective, surely the first thing to be done-rather than requiring the prosecutor to say what he knows in defense of the target of the investigation-is to entitle the target to tender his own defense. To require the former while denying (as we do) the latter would be quite absurd.

> *Id*. at 52.

Petitioner characterizes the phone records as exculpatory evidence, although it is not.

As this Court discussed earlier at length, Garza's characterization of the calls as "collect" may

have been an innocent misnomer due to a communication or translation factor.  Therefore, it

would not necessarily be exculpatory evidence, that is to say, that Garza may have still made the

calls from Mexico, although they were not "collect".  Assuming that Agent Church reviewed the

phone records, he was not required to explain the absence of collect calls to the grand jurors.

The grand jurors were given the phone records and could have made that conclusion themselves.

The Houston Grand Jury was free to evaluate the discrepancy between Garza's statements

(relayed through Agent Church) and the phone records, as both were before them.  Agent Church

did not have to explain the discrepancy, as it was plainly in front of the grand jurors. Even if the

phone records were exculpatory evidence, the record shows that the grand jurors received it. In any event, neither Agent Church nor the prosecutor was required to present exculpatory evidence to the grand jury.

A district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants. *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 256, 108 S.Ct. 2369, 2374 (1988). Dismissal of the indictment is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. *Id.* at 256.

Petitioner has failed to establish prejudice, i.e. that had his appellate counsel raised the trial court's denial of his motion to dismiss the indictment, he would have prevailed on appeal. First, Petitioner has failed to show that the prosecutor committed a violation of Rule 6 and there was an error in grand jury proceedings. Second, the fact that a Houston Grand Jury and not a Brownsville Grand Jury returned the indictment does not influence the jurors' decision to indict, therefore the error, if any, did not prejudice the defendant. Third, the phone records were not exculpatory in nature, and even if they were, the grand jurors did receive them even though the government had no duty to disclose exculpatory evidence. Therefore, the prosecutors conduct was not a significant infringement on the grand jury's ability to exercise independent judgment.

The district court found that Petitioner had failed to establish the prejudice prong of his ineffective assistance of appellate counsel claim. From the above analysis it is clear that the district court's denial of Petitioner's claim was not wrong or debatalble among reasonable jurists. Petitioner is not entitled to a COA on this issue.

**Issue 9**

**Abuse of Discretion by the District Court**

Petitioner argues in her Application for COA that "[a] reasonable jurist could find that this Court abused its discretion by rendering a decision on the claims .... without granting her the fair opportunity to expand the record through discovery and an evidentiary hearing." *Application for COA*, Docket No, 26, p. 32. Petitioner filed a Motion for Discovery (Docket No. 9) seeking discovery regarding her seventh, eight, and ninth claims for relief which dealt with the changes that occurred in Garza's testimony about the telephone calls. Petitioner wished to obtain the deposition of: (1) FBI Agent Freddy Vela; (2) FBI Agent David Church; (3) Assistant US Attorney Oscar Ponce; (4) Assistant US Attorney Mervyn Mosbacker; and (5) any and all evidence of interviews by the Government with Garza. The undersigned magistrate judge denied Petitioner's motion for discovery (Docket No. 13) noting Garza was subjected to cross examination at trial and his testimony was evaluated by a jury that ultimately convicted the Petitioner. The undersigned magistrate judge further noted that the Fifth Circuit reviewed the issue of Garza's change in testimony and concluded:

> Given [Garza's] language difficulties, some confusion during the interview with [FBI Special Agent] Church would be expected..... It is not [the Fifth Circuit's] province to become embroiled in a credibility debate between Church and Garza.
>
> *United States v. Cisneros*, 203 F.3d 333, 344 (5th Cir. 2000).

To obtain a COA, a petitioner a must make a substantial showing of a denial of a constitutional right "regarding each claim for habeas corpus relief sought to be appealed". 28

U.S.C. § 2253(c)(3).  A contention not raised by a habeas petitioner in his/her petition filed in the district court cannot be considered for the first time on appeal.  *Johnson v. Puckett*, 930 F.2d 445 (5th Cir.  1991).  Petitioner's complaint regarding the denial of her discovery motion is not a constitutional claim which was raised in her motion to vacate.  A COA cannot issue on a claim that was not presented in the motion to vacate.  Put another way, Petitioner cannot raise a new complaint in her Application for COA, which was not present in her habeas petition.  A COA issues only upon those claims of constitutional error which were denied by the district court and upon which an appeal is being sought.  Petitioner is not entitled to a COA on this issue.

### III.  Recommendation

IT IS RECOMMENDED that Petitioner's Application for COA (Docket No. 26) be DENIED on ALL ISSUES.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 4th day of April, 2007.

John Wm. Black
United States Magistrate Judge

39