IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DORA CISNEROS, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | Criminal No. B-98-124-01 |
| | § | Civil Action No. B-02-191 |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**PETITIONER CISNEROS' OBJECTIONS
TO THE "MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION"
ON CISNEROS' APPLICATION TO THE DISTRICT COURT
FOR CERTIFICATE OF APPEALABILITY**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Petitioner, DORA CISNEROS, by and through his counsel of record, David L. Botsford and Tony Canales, and pursuant to 28 U.S.C. § 636(b)(1), timely[1] presents her Objections to the "Magistrate Judge's Report and Recommendation" on Cisneros' Application to the District Court for Certificate of Appealability and, as grounds therefor, would respectfully show this Honorable Court the following:

## I. INTRODUCTION TO OBJECTIONS

Cisneros respectfully objects to all portions of the Magistrate's Report. Specific objections shall be made herein to the Magistrate's "specified proposed findings [and] recommendations" in roughly the order in which the Magistrate has presented his "Magistrate Judge's Report And Recommendation." 28 U.S.C. § 636(b)(1). Cisneros specifically reurges everything in her Application for Certificate of Appealability and reasserts that she is entitled to COA on all issues raised in her 2255 motion to vacate and her motion for discovery, all of which have been raised in her original COA under the nine (9) COA issues.

---

[1] Counsel received the Magistrate's Report on April 4, 2007. Under Rule 6(a), Federal Rules of Civil Procedure, intermediate saturdays, sundays and holidays are excluded. Accordingly, these objections are timely filed if they are filed by April 18, 2007.

## II. OBJECTIONS TO SPECIFIC PORTIONS OF THE MAGISTRATE'S REPORT

### SECTION I OF MAGISTRATE REPORT: BACKGROUND
### (Report at pages 1 to 2)

The Magistrate alleges that Cisneros is "confused about what is required for a COA." Report at 2. Cisneros is not confused. Cisneros concurs in essence with the Magistrate's conveyance of the shorthand COA standard from *Slack v. McDaniel*, 529 U.S. 473, 484 (2000):

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Report at 4. In examining each issue for which Cisneros seeks COA, this Court should look into the following:

> (1) When a claim presents a substantive constitutional issue, is the constitutional issue debatable by jurists of reason? Could it be resolved in a different manner by this or another court? Does the issue "deserve encouragement" to be reviewed again?

> (2) When this Court may have denied relief on procedural grounds (for either a constitutional or procedural [discovery or hearing rights] claim), is this Court's procedural ruling debatable by jurists of reason? Could it be resolved in a different manner by this or another Court? Does the procedural issue "deserve encouragement" to be reviewed again?

### FIRST COA ISSUE
### The *En Banc* Fifth Circuit's Failure to Reinstate Parts of the Panel Opinions.

On certiorari review, the United States Supreme Court does not review issues that were not decided by the courts below. *Lee v. Kemna*, 534 U.S. 362, 388 (2002); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 553 (2001); *National Collegiate Athletic Association v. Smith*, 525 U.S. 459, 470 (1999) (declining to reach issues "not decided below"). When an issue has been raised in the courts below, *but not decided*, the Supreme Court will remand the case for the lower courts to decide it. *Burns v. Alcala*, 420 U.S. 575, 587 (1975) ("Neither the District Court nor the Court of Appeals considered respondents' constitutional arguments. Rather than decide those questions here, where they have not been briefed and argued, we remand the case for consideration of the equal protection and due process issues that were raised but not decided below."). This is how the Supreme Court

should have responded to Cisneros' certiorari petition on direct review. It should have granted, vacated, and remanded to the Fifth Circuit for that court to *render a decision* on the issues that had been jettisoned when en banc review was granted.

Whatever *merely persuasive* value a vacated federal appellate court decision may have, it does not stand as a decision and, therefore, cannot be reviewed by the Supreme Court. Nor, however, can it bar subsequent review as *res judicata*. The issues formerly decided within the *Cisneros* panel decisions that were not reinstated in the *Marek en banc* decision do not now stand as *decided* because the vacated panel decisions are "nullities." Essentially all courts of appeal have held that the vacatur of judgments removes any res judicata effect regarding issues that are not reinstated. *See* William Atkins, *The History and Subsequent Demise of Vacatur Upon Settlement by the Federal Circuit*, J. Pat. & Trademark Off. Soc'y 295, 298 & n.14 (1996) ("Virtually all U.S. Courts of Appeal have . . . held that vacated judgments should not be considered persuasive authority, or, at least, have no stare decisis effects."); *see* other authorities at COA at pages 4-6. The precise result of vacatur is to "clear[] the path for future relitigation of the issues." *United States v. Munsingwear*, 340 U.S. 36, 40 (1950). A reasonable jurist should hold that a party who in no way has "slept on her rights," but instead has demanded her constitutional rights to a meaningful appeal and to due process at every turn, and has objected to vacatur (and failure of reinstatement) of certain of her appellate issues on every possible occasion, should be granted her right to *relitigate* the issues rendered *undecided* by the vacatur. *Id*.

The Magistrate errs to suggest that this Court cannot consider the merits of a meaningful appellate review claim in a Section 2255 Motion because it cannot review the decisions of a higher court. Report at 5. This very Court itself previously has reviewed a Fifth Circuit decision alleged not to have afforded a meaningful appeal, that issue has gone up on application for COA to the Fifth Circuit, and the Fifth Circuit has rendered a decision about the constitutional muster of its own prior appeal. *United States v. Garza*, 165 F.3d 312, 314 (5th Cir. 1999). In *Garza*, the movant complained that the Fifth Circuit's direct appeal decision in his case did not comport with meaningful review because the appellate court did not expressly address one of the issues he raised. The Fifth Circuit

3

recognized the right of meaningful review, but noted that a "litigant's right to have all issues fully considered and ruled on by the appellate court does not equate to a right to a full written opinion on every issue raised." *Id*. The Court held that it was "apparent" from its own opinion on direct review that the complained of issue received "full consideration and a ruling" because the direct appeal opinion made two express general findings of "no reversible error." At the beginning of the opinion, there was a "clear, general finding of 'no reversible error'" and at the end another statement, "Garza has shown no error." *Id*. The Court concluded, "Each of these statements is broad enough to encompass Garza's challenge to the [missing issue]." *Id*

*Decisively, there is no such language in the Marek decision, which is all that remains of Dora Cisneros' appeal*. There is no language at all that Cisneros has "shown no error" — language which could possibly cover the issues lost with the panel vacaturs. The *Marek* decision focuses on the unique issue at hand that brings Marek and Cisneros together. It treats Cisneros as an addendum to the Marek case, rendering the following conclusion, expressly leaving Cisneros out of any global error finding:

> Satisfied that intrastate use of an interstate commerce facility has satisfied federal jurisdiction under § 1958, **there was <u>no error</u>, plain or otherwise, in <u>Marek's</u> conviction** or her plea of guilty. We therefore affirm both appellants' convictions and sentences.

*United States v. Marek*, 238 F.3d 310, 323 (5th Cir. 2001) (emphasis added). Saying Cisneros' conviction and sentence are "affirmed" is not enough without saying why. There is a high likelihood that the Fifth Circuit en banc court merely *slipped up* in not restoring the lost panel decisions or even in failing to say there was no error in Cisneros' case. But the Court did slip up, and that makes all the difference as to whether this Court and/or the Fifth Circuit may reach the claims again. Surely this Court would agree that —especially given all the care that the Fifth Circuit and other appellate courts give to restoring parts of vacated decisions— a reasonable jurist could find that *no restoration* of the decisions on the panel issues occurred.

Marek may be covered, if by the slimmest of margins, by the Fifth Circuit's approach in *Garza*, analyzing its own decisional language to determine if meaningful review occurred. It would be only the most unreasonable speculation to conclude that language affirming two completely

separate convictions and sentences in two completely different cases *on the basis of a simple finding that there is no error in only one of those cases* meets the requirement of meaningful appellate review for both.  The Magistrate implies that the *Marek* decision finds "no reversible error" in *Cisneros*, which it plainly and clearly *does not*.  Report at 7.  And by the Fifth Circuit's own authority, that is crucial.

In sum, this very Court, having apparently reached the merits of a prior meaningful appellate review claim in a Section 2255 Motion (that was subsequently reviewed by the Fifth Circuit), should count itself as a "reasonable jurist" that would reject the Magistrate's position that "alleged errors by [an] appellate court are not . . . cognizable in a motion to vacate."  Report at 6.  The Magistrate's authorities from other district courts are instructive.  In *Vega*, no constitutional claim was raised regarding an alleged error made by the appellate court clerk, so there was no ground for action to be taken by the district court.  *Vega v. United States*, 261 F. Supp.2d 175, 178 (E.D. N.Y. 2003).   In *Sanders*, the district court does address a due process violation and it concludes (in a case predating Certificates of Appealability), based upon a literalistic reading of the language in Section 2255, that it should defer action on the movant's complaint about the appellate court to the appellate court:

> It seems obvious therefore that if the defendant's present reason for vacation of the sentence is based on some action of the Court of Appeals or has reference to entertaining and deciding his appeal, his application, if any, in that respect must be made to the Court of Appeals and not to this trial court.

*United States v. Sanders*, 142 F. Supp. 638, 641 (D.C. Md. 1956).  Presently, that is precisely what Cisneros is asking of this Court: that it grant COA on an issue that obviously must finally go before the Fifth Circuit to be fully and fairly adjudicated.

The Magistrate alleges that Cisneros "received meaningful review by the Fifth Circuit on three separate occasions."  Report at 8.  But "meaningful appellate review" as defined by the Fifth Circuit is the "right to have all issues fully considered and **ruled on** by the appellate court."  *Garza*, 165 F.3d at 314 (citing *United States v. Pajooh*, 143 F.3d 203, 204 (5ᵗʰ Cir. 1998)) (emphasis added). With the issuance of *Marek*, which shows **no evidence** of full review of *Cisneros'* issues, and the prior vacatur of the panel *Cisneros* decisions, nothing remains of the *rulings* by the Fifth Circuit on any of the issues in *Cisneros* other than the one presented in *Marek*.  Meaningful appellate review

of those issues was denied.  Certiorari on those issues not left with rulings was impossible, because no *decision* was left for which certiorari could be granted.  (The Supreme Court did err in failing to correct the problem with a GVR.)  On the flip side, however, because there remain *no decisions* on any of the issues other than that in *Marek*, there has been nothing about the appellate process barring this Court from reaching the merits of those substantive constitutional issues now.  COA should be granted.

### SECOND COA ISSUE
### Second *Cisneros* Panel Opinion — Jurisdictional Nexus and the Limitations Period

The Magistrate bootstraps the legal sufficiency issue to the question whether Cisneros received "meaningful appellate review" of the issue, and then alleges that she did.  Report at 8-9. Cisneros believes that reasonable jurists could disagree with the Magistrate and this Court as to whether she received meaningful appellate review.  *See*, *e.g., Garza*, *supra*, and accompanying discussion.  Meaningful appellate review, again, as described by the Fifth Circuit, requires that it be possible to reasonably find that the language of the appellate opinion shows that a decision or ruling was made on the issue in question.  *Marek* actually is devoid of such language as to *Cisneros*, notwithstanding the quotation cited by this Court that Cisneros violated 18 U.S.C. § 1958 by "causing her agent to make qualifying telephone calls between the United States and Mexico." *United States v. Cisneros*, 456 F. Supp.2d 826, 839 (S.D. Tex. 2006) (quoting *Marek*, 238 F.3d 323). The language is most reasonably viewed as descriptive, referring only to the question under scrutiny in *Marek*, whether inter- and intra- state transactions both may satisfy the jurisdictional element.

Reasonable jurists could disagree with this Court's procedural finding that the language of *Marek* successfully indicates a *decision* or *ruling* on the issues that were dropped from the panel opinions, and thereby suggests that there was meaningful appellate review.  This Court appropriately rejected the panel opinions as controlling "law of the case," precisely because they were vacated, and the *decisions* or *rulings* on the specific issues within them could not be precedent.  A reasonable jurist surely could disagree with this Court's implied additional finding that all those *decisions* and *rulings* were clandestinely restored by *Marek*.  There is absolutely no finding anywhere in *Marek* that

"no reversible error" exists in Cisneros' case.  Under such circumstances, it really is strained to conclude that, although "law of the case" cannot bar review, a meaningful appellate review was had that bars review because it reestablished precedent.

The Fifth Circuit made findings on the issue that were vacated, so Cisneros has calculated those findings into the reasonableness evaluation undertaken to show that reasonable jurists might differ with *this Court's* (and the Fifth Circuit's) treatment of the issue, as this Court suggested should be done.  *Id.* (observing that vacated decisions can be "instructive"). The Fifth Circuit addressed the legal sufficiency issue in a manner that agrees with the conclusion of *this Court*, but other reasonable courts clearly address it differently and in a way that should lead to the opposite conclusion: that, at a minimum, COA should be granted.  The key question is how the crime in 28 U.S.C. § 1958 is defined.  When is it complete?  The Fifth Circuit panel said it is complete when the payment transaction occurs and that the crime is a "continuing offense."  COA at pages 8-9.  Other appellate courts hold that the crime is complete at the moment the jurisdictional nexus is formed.  COA  at pages 9-11  (citing *United States v. Ransbottom*, 914 F.2d 743, 746 (6th Cir. 1990); *United States v. Sanchez*, 3 F.3d 366, 367 (11th Cir. 1993)).  Since it is quite possible that the jurisdictional nexus, if formed at all, was formed by an event that occurred outside the statute of limitations period (e.g., a phone call from Mexico more than five years prior to the federal indictment), the legal question, disputed by reasonable jurists, determines whether evidence against Cisneros was sufficient.[2]  COA should be granted.

### THIRD COA ISSUE
### Second *Cisneros* Panel Opinion — Statute of Limitations

The Magistrate ignores that *Cisneros'* chief complaint is that *this Court* erred by denying Cisneros' requested instruction on the statute of limitations.  Report at 10 (arguing that "any claimed error made by the appellate court is not reviewable in a motion to vacate").  Cisneros' argument that

---

2 It must be remembered that the Government conceded, in its post-oral argument "Supplemental Brief: Limitations Instruction" at page 4 (filed in the Fifth Circuit) that all of Garza's calls from Mexico to Martinez were made **prior to February 14, 1993**, yet the instant indictment was not returned by the grand jury until February 23, 1998 (i.e., more than five years after the latest of Garza's alleged calls).

the panel "erred in its appellate decision regarding Required Instruction No. 15" (to quote the Magistrate), is using, as in COA Issue 2 *supra*, the "instructive" value of the badly-decided but vacated appellate decision to aid in this Court's determination whether reasonable jurists could differ on the basic charge that *this Court* erred in denying the instruction. Furthermore, it has always been necessary to show this Court the *harm* caused by the Fifth Circuit's denial of meaningful appellate review.

The Magistrate erects a "straw man" by asserting that Cisneros "offered no legal precedent and the district court found none, for the authority to collaterally review any alleged errors made by the Fifth Circuit." Report at 10. If the panel decision on the specific issue was vacated (and thus, is void, presenting nothing to which *res judicata* might attach; to which this Court has agreed), and if the specific issue was not preserved (even by reasonable implication) in the *Merek* decision (to which this Court appears not to have agreed, at least as of yet), thus again leaving no precedent to which *res judicata* might attach, then nothing bars this Court from reaching the specific issue on motion to vacate. There is no need for Cisneros to have to conjure up impossible authorities, of the sort the Magistrate demands, that would give a district court a general power to grade the papers of a circuit court. COA should be granted.

### FOURTH COA ISSUE
### Second *Cisneros* Panel Opinion — Causation and Furtherance

Again, the Magistrate frames the essential claim as though Cisneros is merely attempting to have this Court grade the Fifth Circuit's papers. "Petitioner is arguing that the Fifth Circuit decided certain issues on appeal incorrectly." Report at 12. "Again, Petitioner has not made the required showing for issuance of a COA. Petitioner incorrectly asks this Court to determine whether reasonable jurists could find that the second *Cisneros* panel erred in holding that 'but for' causation was the standard and that there was a difference between the terms 'facilitate' and 'furtherance'. However, the correct inquiry, is whether reasonable jurists could find the district court's assessment of this constitutional claim debatable." Report at 13.

Again, how is Cisneros to convince this Court that it erred in assessing the constitutional claim and, even more importantly at this stage should be granted COA on the claim, if she does not

show how the claim should have been resolved differently, how the Fifth Circuit erred, and how appellate courts other than the Fifth Circuit probably would have resolved the claim differently? If the "constitutional claim" to which the Magistrate refers is merely that of "meaningful appellate review," Cisneros has shown (inter alia, via *Garza*, supra) that the question of "meaningful appellate review" is cognizable before a district court in a Section 2255 Motion. That also stands to reason, of course, because the conviction and sentence are not "final" until the appellate court has ruled. Thus, an allegation of failure to provide meaningful appellate review very much is an attack on the conviction and sentence. Cisneros also has shown that, if it acts in a way consistent with its prior authority (*Garza*), the Fifth Circuit might hold that Cisneros was denied meaningful appellate review by the *Marek* en banc court. COA should be granted, therefore, on all issues involving "meaningful appellate review" and on the underlying substantive claims this Court also determines could be debatable among jurists of reason. As to the substantive issue —whether there was an insufficient relationship between the alleged jurisdictional nexus and the alleged murder-for-hire scheme for the jurisdictional element to be met— the Magistrate seems to say that Cisneros presented no "legal authority." Report at 13. Cisneros presented plenty of authority in her COA to show that reasonable jurists would disagree on this substantive issue. See COA at pages 11 to 15. COA should be granted on the question of "meaningful appellate review" as well as the substantive issue.

## FIFTH COA ISSUE
### The Causation and Required Relationship (Nexus) Instruction

The Magistrate again tells this Court that it "cannot review and compare the Fifth Circuit's findings with those of reasonable jurists." Report at 18. It is believed that the Magistrate means "with those of *other* reasonable jurists." But, of course, this Court must make that comparison in order to assess whether COA should be granted — by determining the degree to which reasonable jurists might differ on the question whether *this Court* erred by failing to afford Cisneros' requested instructions on causation and the jurisdictional nexus at trial, and again erred by denying relief in the instant motion on the grounds that Cisneros asked for instructions that were "not consistent with the law in the Fifth Circuit." Order at 14.

The Magistrate appears to rely upon "law of the case" doctrine, without stating it, when he

says that Cisneros' argument that "reasonable jurists could find that the definitions were substantially correct [] is completely irrelevant." Report at 18. Of course, that argument *is* relevant *and absolutely necessary for a COA application*, when there is no decisional law setting a precedent binding upon this Court on the substantive issue and, assuming that *Marek* did not reach the issue (and Cisneros did not receive meaningful appellate review), the Fifth Circuit only has issued what must be considered as no more than *persuasive* authority on the issue. The Magistrate cites only to the two *vacated* panel decisions in *Cisneros* for his assertion that Fifth Circuit findings stand against Cisneros' "preferred definitions." *Id*. Vis a vis this Court, they are persuasive authority, at best.

In the COA at pages 16 to 20, Cisneros has provided significant authority from other federal appellate jurisdictions and the U.S. Supreme Court demonstrating that the petition states valid constitutional claims regarding the causation and nexus instructions and that the claims could be resolved differently by other reasonable jurists. The Magistrate does not provide any explanation as to why he believes it was not "clear error" for Cisneros to be deprived by this Court of instructions on causation and nexus. He merely states that "Petitioner has failed to demonstrate that the omitted definitions, by themselves, so infected the entire trial that her conviction violates due process." Report at 17. Cisneros made potent arguments for the kind of plain error that overcomes procedural default:

> *[I]t is absolutely impossible* to infer from the facts that Cisneros could have intended, known the risk, or even forseen that her alleged acts in contacting the curandera could have caused interstate or international communication or transportation to occur. Thus, this Court's denial of Cisneros' Requested Jury Instruction No. 15A was clear error that caused her egregious prejudice, because it allowed the Government to prove the causation element on less evidence than what is absolutely required by the Commerce Clause and 18 U.S.C. 2(b)."

COA at pages 17-18. It is obvious that the failure to explain causation was very prejudicial. Contra Report at 17. Secondly, the Magistrate completely ignores Cisneros' showing that reasonable jurists (namely another Texas district court and the First Circuit Court of Appeals) actually have differed with this Court and the *Cisneros* Fifth Circuit panel on the content of the required relationship instruction. Splits between *and within* circuits sure are good signs that reasonable jurists disagree.

It would be an irony for this Court to grant Cisneros a running objection at trial and then, on

10

review of her Section 2255 Motion, to deny her relief and COA on the omission of the causation instruction by finding a procedural default and speculating that she might not have objected for a *strategic reason*. The Court is right. The Record provides the obvious strategic reason: Cisneros was obeying in good faith this Court's promise to her that she did not need to make specific objections to each of the Court's decisions on proposed instructions in order to preserve error.

COA should be granted on all substantive and procedural issues.

### SIXTH COA ISSUE
### Cisneros' *Giglio/Brady* Claim

The Magistrate's observation that Cisneros' jury "could have relied on testimony from other trial witnesses to find the required relationship or jurisdictional nexus (i.e. that a facility in foreign or interstate commerce was used or that there was travel in interstate or foreign commerce)" makes no sense, because the *travel* approach simply failed (as the Government showed no relationship between the car that allegedly crossed the international bridge and the crime) and the *phone call* approach relied *completely and totally* on Garza's sudden recollection that some calls were made by him from Mexico and his apparent fabrication that they were not "collect" telephone calls (prior to his earlier statement, as testified to by FBI Special Agent Church). Even the Magistrate recognizes that Martinez testified that Garza called her from within Texas. Report at 23. The twist in Gaza's story is the slim thread by which Cisneros' conviction is held together. Cut that thread with proof of Government collusion with Garza to change his story, and the Government's jurisdiction and conviction lose their basis. If that does not create a loss of confidence in the outcome, it is hard to conceive of what would. As Cisneros argued in her COA, this level of prejudice would meet the "prejudice" prong of the "cause and prejudice" exception to procedural default (the alleged failure of counsel to object and seek discovery at the time of trial of collusion between the Government and Garza in his change of testimony). The equivalent standards for *Brady* materiality and *Strickland* prejudice are sufficient "prejudice" for overcoming procedural default. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004); *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Gonzales v. Quarterman*, 458 F.3d 384, 390 (5th Cir. 2006); *Johnson v. Scott*, 68 F.3d 106, 109-10 (5th Cir. 1995) (equating *Brady* materiality and *Strickland* prejudice) and *Coleman v. Thompson*, 501 U.S. 722, 750

11

(1991), *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995), citing *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995)(holding that ineffective assistance of counsel – both deficient performance and prejudice – is sufficient establish cause and prejudice necessary to overcome a procedural default).

The Magistrate actually concedes that it is possible the Government committed intentional misconduct.  Remarkably, he says:

> *It is not beyond the realm of possibility* that Garza's initial statements to law enforcement and his eventual trial testimony differed for *reasons other than coercion* by the government to present perjured testimony.

Report at 22 (emphasis added).  Wouldn't we like to know for sure?  The Magistrate's "not beyond the realm of possibility that the Government did not commit intentional misconduct" standard is not a very sound one for denying the discovery and evidentiary hearing that could prove prejudice sufficient to surpass any procedural default and to support relief.[3]

It is hard to imagine what defense lawyer in his right mind would intentionally choose to avoid cross examining a witness in order to expose collusion between the witness and the Government to change his testimony so as to meet the Government's constitutional burden to prove all of the elements of the offense beyond a reasonable doubt.  But, without any elaboration, the Magistrate baldly asserts that Cisneros' trial counsel made such a ridiculous "strategic choice," which in itself would constitute ineffective assistance.  Report at 23.  The Magistrate calls it a "strategic" "failure to cross examine."  He says that "in hindsight, the failure . . . may have had an adverse impact on the defense, but it cannot be corrected on collateral review by claiming that the government suppressed evidence."  *Id*.  Laying aside the contradiction that a "failure" cannot be "strategic," three other points need to be made: 1) there is no hindsight involved (it is obvious that no rational defense lawyer would have strategically avoided the cross-examination and discovery that were needed regarding the change in story, and it is obvious that, at the time, a defense lawyer providing constitutionally adequate defense would have seen the [deadly] adverse impact on the

---

3 This is true particularly in light of the realization that the Government has not denied that it knew that Garza's testimony was false or that it did not suppress the evidence that Cisneros sought in her Seventh, Eighth and Ninth (Fourth Act/Omission) Claims For Relief in her 2255.

defense of the change of story);  2) the Magistrate himself found that trial counsel for Cisneros was effective in all ways, including in their attempt to unearth the reasons for Garza's change in stories ("Examining trial counsel's perspective at the time of trial, without the distorting effects of hindsight, clearly result (sic) in the conclusion that counsel's conduct falls within the wide range of reasonable professional assistance." *Cisneros*, 456 F. Supp. 2d at 860); and 3) the Magistrate is wrong in stating that the error, induced by the Government's suppression, cannot be corrected on collateral review. *Banks v. Dretke*, *supra*, 540 U.S at 691 ("Corresponding to the second *Brady* component (evidence suppressed by the State), a petition shows "cause" when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third *Brady* component (prejudice), prejudice within the compass of the "cause and prejudice" requirement exists when the suppressed evidence is "material" for *Brady* purposes..") (citation omitted). .

   The Magistrate maintains that the Government's own "impeachment" of Garza by referring to some of his prior statements suffices to show that the evidence sought by Cisneros in discovery is not material.  Report at 24.  However, the Magistrate obviously would have to concede that the Government's direct examination of Garza did not seek to disclose what Cisneros alleges was suppressed — Government collusion with Garza to change his story in order to retain federal jurisdiction and to keep the possibility of sufficient proof for a conviction.  Report at 24.  No Government (nor defense) references to inconsistent statements by Garza come close to touching this.  There is a difference between impeachment that is cumulative or incremental (Report at 24) and impeachment that would have led, by itself, to acquittal.  Proven suppression of Government collusion in the changing of Garza's story and/or Government subornation of false testimony by Garza on the phone calls, without more, would have led to acquittal of Cisneros by any rational jury.

   It is purely cynical for the Magistrate to deny Cisneros the discovery and/or hearing needed to prove that the Government intentionally suppressed its likely collusion in the change of Garza's story about the phone calls, and then to assert that "the record reveals that there is no evidence of forced perjury."  Report at 24.  Or to say that "Petitioner has failed to show a valid claim."  *Id*. at 25.

Although intentional elicitation of false testimony (not "forced perjury") would be sufficient to meet the *Giglio* standard — i.e., there is no need to show the Government *forced* Gaza to falsely testify; there is no need to prove Garza's testimony was *perjury*, as opposed to merely *false*; and it need only be shown that the Government *knew* he was falsely testifying and did not correct it — discovery and/or a hearing are necessary to make the claim and to obtain relief. Discovery and an evidentiary hearing are required where, as here, "a factual dispute, if resolved in the petitioner's favor, would entitle [her] to relief." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

COA should be granted on the basis that reasonable jurists would disagree as to whether there was any procedural default of the *Brady* and *Giglio* issues, whether, if there was, the Government's suppression (and/or trial counsel's deficient performance) is "cause," whether Cisneros has shown "prejudice" on the basis of what might be disclosed with adequate discovery and a hearing, and whether discovery and an evidentiary hearing should have been afforded for the development of the *Brady/Giglio* issues. Given that relief should ensue, should the claims be proven, the claims cannot be fairly resolved without discovery and a hearing.

**SEVENTH COA ISSUE**
**Ineffective Assistance of Trial Counsel**

While having found that trial counsel provided adequate performance in every respect, the Magistrate nevertheless also asserts that trial counsel procedurally defaulted the above *Brady/Giglio* issues by failing to adequately object and cross-examine Gaza at trial about his changes of story in regard to the phone calls. If counsel did provide deficient performance in that regard, prejudice is shown. (The discussion of prejudice in Issue 6 above is expressly incorporated herein.) COA should be granted on the question whether trial counsel failed to cross-examine Gaza with his prior inconsistent statements, his lack of prior consistent statements, and the contents of Martinez' prior testimony and statements. Reasonable jurists would not find such omissions to be reasonable trial strategy. *See infra* discussion.

The Magistrate groundlessly states in regard to Cisneros' IAC claim related to Martinez that "Petitioner apparently misunderstands the *Strickland* standard and finds that prejudice exists with no underlying analysis. Petitioner cannot establish ineffectiveness by merely conceding that counsel

14

was ineffective and concluding that the performance was prejudicial." Report at 27. To the contrary, Cisneros made the following very clear argument in her COA in support of prejudice, tracking the *Strickland* standard for prejudice, placed within the context of what is needed for COA:

> A reasonable jurist could hold that a new trial should be granted due to trial counsels' failures. While it is obviously impossible to determine if in fact the jury would have acquitted had trial counsel utilized Martinez' state court testimony and her statements to FBI Agent Church, the failure to utilize those two fertile sources of information seriously undermines confidence in one of the two jurisdictional bases (i.e., telephone calls). Since the Government failed to prove the jurisdictional nexus through the border crossing by the car and the jury asked if they had to find both bases for jurisdiction, as opposed to one, during its deliberations, there is a reasonable probability that the result of the trial would have been different, but for counsels' unreasonable conduct. Thus, prejudice is shown.

COA at page 27. The Magistrate finds that the above prejudice argument fails to meet the level of prejudice required by *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993), which Cisneros already has explained is the wrong standard for the issue. The "fundamentally unfair or unreliable" standard belongs to a different kind of case. *See* COA at page 25.

As to the performance prong, the Magistrate asserts that "Petitioner's bald assertion, that the deficient acts were not part of a strategy, does not counteract *Strickland's* presumption." Report at 29. Surely such statements as were given by undersigned counsel under oath that *no strategy* was involved in their failure to specifically object to this Court's denial of the causation and jurisdictional nexus instructions "counteract" the *Strickland* presumption. Of course, this Court still is entitled to look at the statements in light of all other evidence, in order to judge their credibility. However, given that the statements were rendered to this Court under oath by present counsel (who also was trial counsel), it is disrespectful to present counsel for the Magistrate to essentially call counsel liars by *speculating* as to what their real agenda might have been. "Defense counsel, as part of their reasoned strategy, may not have wanted to question Martinez in anticipation of this inconsistency. Therefore, the defense would have foregone the opportunity to cross examine on this issue, concluding that it would have no effect. . . . Decisions about whether to conduct cross examination or the scope of cross examination are tactical." *Id.* at 29. If this Court is going to hold against COA on this issue, on the basis of the Magistrate's speculation, it should also charge present counsel for contempt for making a false statement under oath. If the Court is prone not to do the latter

immediately, it then should grant the evidentiary hearing that is required to fully develop the facts of this claim as well as its prejudice.  That way, counsel can be fairly treated in regard to their motives and strategy, and Martinez can be "cross-examined" under oath, so that it is clear what her testimony would have been and how it would have fit with the other evidence and testimony presented.

As noted above in regard to the causation and jurisdictional nexus instructions, it is evident that trial counsel would have rested in this Court's assurance that a "running objection" would be granted to preserve any appellate error for its decisions on requested instructions.  Report at 30. Obviously, that was not a reasonable strategy and counsel has made a sworn statement to the effect that there was no other strategy.

Counsel wants to reiterate that as to Cisneros' Seventh COA Issue , see COA at pages 23 to 27, she sought and continues to seek COA on all six of the acts and omissions in her original Claim For Relief No. 9, and that she objects to all portions of the Magistrate's Report that are contrary to the granting of a COA, including but not limited to the assertion by the Magistrate that there was procedural default as to the Fourth Act/Omission (i.e., trial counsel's failure to discover and utilize, either on cross-examination of Gaza and/or direct examination of AFI Agent Church, or otherwise appropriate, the sequence of events that led to the inclusion in the Government's bill of particulars of the allegation that Gaza had allegedly called Martinez from San Fernando, Mexico, as well as the sequence of events that led to Garza's dramatic change in story from February 18, 1999 to his trial testimony on the last day of the trial on May 11, 1998 [i.e., change from collect telephone calls from Matamoros in a time frame prior to the murder for hire time frame  to telephone calls from casettas from San Fernando and Matamoros in a time frame arguably within the murder for hire time frame]. *See* Claim For Relief No. 9, Fourth Act/Omission at Cisneros 2255 motion at pages 113 to 123).

Clearly, there was not any procedural default: counsel were diligent before trial in seeking any and all statements of Gaza that were inconsistent with his prior statements, in moving for a bill of particulars, in seeking discovery after the bill of particulars seeking statements and details attendant to the modification of Garza's statement of February 18, 1999 after the bill of particulars,

in interviewing Gaza (as reflected by Mr. Canales' cross-examination of Gaza), by vigorously cross-examining Gaza, and by calling Special Agent Church to impeach Garza's apparent recent fabrication regarding calls to Martinez from "Casettas." The Government's non-disclosure of the facts and circumstances surrounding Garza's modification /recent fabrication should have been turned over prior to trial or, at a minimum, during trial, and the Government has continued to suppress the facts and circumstances surrounding Garza's modification during the course of this 2255 proceeding. Simply stated, the issue could not have been raised on direct appeal as there was no "hard evidence" of suppression. However, as noted above in connection with Cisneros' Sixth COA issue, if there was any procedural default, it is cured by cause and prejudice reflected by the *Brady* suppression and ineffectiveness of trial counsel. The fact that counsel were diligent does not mean that the Government's non-disclosure does not constitute suppression or that the Government's suppression did not render counsel ineffective. *See again Banks v. Dretke, supra*, 540 U.S. at 691.

## EIGHTH COA ISSUE
### Ineffective Assistance of Appellate Counsel

Cisneros's Claim For Relief No. 10 consisted of three acts/omissions of appellate counsel. Cisneros continues to assert that COA should be granted as to each of these acts/omissions and objects to the Magistrate's findings to the contrary. Cisneros believes that her COA on this COA issue (COA at pages 27 to 32) fully supports COA and thus objects to the Magistrate's report to the contrary.

## NINTH COA ISSUE
### Denial Of Expansion Of Record By Discovery And Evidentiary Hearing

Cisneros's diligently sought expansion of the record throughout the course of the Section 2255 proceeding. All efforts by Cisneros were denied by the Magistrate Judge and/or the Court. In seeking COA relating thereto, the Magistrate incredibly concludes that Cisneros' Section 2255 Motion did not seek an evidentiary hearing or discovery, but that is incorrect. See Cisneros' Section 2255 Motion To Vacate at pages 189 to 190 (seeking discovery, an evidentiary hearing and permission to amend based on what discovery afforded by the Court might provide). As reflected

by any number of Fifth Circuit cases, the denial of expansion of the record via discovery and/or an evidentiary hearing is proper for COA consideration. *See United States v. Hall*, 455 F.3d 508, 523 (5th Cir. 2006)(explaining why the record does not support COA due to a limited evidentiary hearing and denial of discovery); *United States v. Webster*, 392 F.3d 787, 801-02 (5th Cir. 2004)(discussing discovery in a 2255 proceeding and stating that "[a] federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief...", citing *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994)). Cisneros' original 2255 petition, and subsequent pleadings, clearly alleged facts which if true, entitle her to relief. The Magistrate Judge has admitted as much from time to time, as noted above in these objections. Additionally, Cisneros' COA arguments at pages 32 to 34 fully justify COA. This Court should grant COA.

## CONCLUSION

Certainly the Government has perceived that Cisneros "got off on a technicality" in the state courts. It may be that the judges who have reviewed this case, in their own feelings about the case, have concurred. It may have been felt by all that, with her arguments unrelated to any moral culpability for the murder of Joey Fischer — e.g., about statutes of limitations, causation and furtherance, whether phone calls were made from Mexico and whether cars crossed bridges — Cisneros again is attempting to rely on "technicalities." Cisneros did not write the federal law that governs the case and defines the crime. Yet, as a criminal defendant who was tried under our Constitution, she is entitled to have been convicted of the federal crime defined by that statute if *and only if* all of the elements of that crime were proven by the Government *beyond a reasonable doubt*. She argues phone calls and car trips, and the rest of the lot, because that's what the statute under which she was convicted requires her to do. It defines that to which she must respond and, we would urge, to which this Court and others must respond. The Constitution affords Cisneros the right to defend herself and to have that defense heard, reasonably considered, and decided on the merits by federal courts. She has never slept on her rights, but yet has not been fairly heard.

Cisneros prays that COA may be granted on all of the issues.

Respectfully submitted,

/s/ David L. Botsford
DAVID L. BOTSFORD
Southern District Federal #25349
Texas State Bar No. 02687950
Law Office of David L. Botsford
1307 West Ave.
Austin, Texas 78701
512-479-8030 (phone)
512-479-8040 (fax)

A. J. "TONY" CANALES
Texas State Bar No. 03737000
P.O. Box 5624
Corpus Christi, Texas 78465-5624
361-883-0601 (phone)
361-884-7023 (fax)

## CERTIFICATE OF SERVICE

I, David L. Botsford, do hereby certify that true and correct copy of the above and foregoing document will be served via the Electronic filing system of the United States District Court for the Southern District of Texas upon Mr. James L. Turner, Assistant United States Attorney, at the time that this document is filed electronically on April 18, 2007.

/s/ David L. Botsford
DAVID L. BOTSFORD

19